UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VIRGINIA SLOAN<br>2808 Battery Place, NW<br>Washington, DC 20016,<br><br>and<br><br>GARY M. SABLE<br>2 Fox Place, Newton Centre<br>Newton, Massachusetts 02459,<br><br>and<br><br>ROBERT McGRANAHAN<br>1604 Chandler Road<br>Ann Arbor, Michigan 48105,<br><br>and<br><br>SHARI PERLOWITZ<br>23317 Treeline Drive<br>Boca Raton, Florida 33428<br><br>on behalf of themselves and all other natural<br>persons similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA, acting by and<br>through the INTERNAL REVENUE SERVICE<br>c/o United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br>Civil Action No. |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, MONETARY AND OTHER RELIEF

The following allegations are made by plaintiffs upon information and belief after investigation by their Counsel.

## I. NATURE OF THE ACTION

1.        Plaintiffs bring this action against the United States of America acting by and through the Internal Revenue Service (the "Government") as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and 23(b)(3) on behalf of themselves and all other natural persons similarly situated. Plaintiffs' individual claims are each for less than $10,000.

2.        The gravamen of the Complaint involves the deprivation of the Plaintiffs' property by the Government without due process through the collection of monies under the guise of an excise tax that Congress has not authorized. This Complaint challenges, and seeks redress for, the sustained, improper and forced collection of an excise "tax" of three percent on certain long distance telephone charges purportedly authorized by Section 4251 of the Internal Revenue Code, but in fact not authorized by that, or any other, enactment of Congress. This "tax" is collected by long distance companies from unknowing individual consumers who pay monthly or other periodic phone bills to long distance carriers under certain rates. As numerous Courts -- including the United States Courts of Appeal for the Sixth, Eleventh and District of Columbia Circuits -- have all found, there is no Congressional authority for this governmental exaction of money from consumers of telephone services.

3.        These levies total billions of dollars -- extracted a few cents at a time on a regular basis -- from millions of consumers of telephone service through their phone bills. Because telephone service is so highly regulated, most consumers naturally believe that the "taxes" they pay are both authorized and required. These unsuspecting taxpayers have no idea that some of these "taxes" are illegal. Thus, as a general matter, individual taxpayers are unaware and highly unlikely to become aware that (a) this "tax" is being collected, (b) Congress has not enacted such a tax so as to permit the Government to collect it; and (c) there is a bureaucratic procedure in

2

place to request a refund of the tax. The Government's action constitutes an illegal exaction violating these unwitting taxpayers' constitutional right to due process of law and effects an uncompensated taking prohibited by the United States Constitution. This Complaint seeks declaratory, injunctive, monetary, and other relief as set forth more fully below.

## II. IDENTIFICATION OF THE PARTIES

a.    **Plaintiffs**

4.    Plaintiff Virginia Sloan resides at 2808 Battery Place, NW, Washington, DC 20016. Plaintiff is a resident of the District of Columbia who has paid some long distance charges on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service.

5.    Plaintiff Gary M. Sable resides at 2 Fox Place, Newton Centre, Newton, Massachusetts 02459. Plaintiff is a resident of Middlesex County in the Commonwealth of Massachusetts who paid some long-distance telephone charges on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service.

6.    Plaintiff Robert McGranahan resides at 1604 Chandler Road, Ann Arbor, MI 48105. Plaintiff is a resident of Washtenaw County, Michigan, which is within the Sixth Circuit. He has paid long distance charges on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service.

7.    Plaintiff Shari Perlowitz resides at 23317 Treeline Drive, Boca Raton, Florida 33428. Plaintiff is a resident of Palm Beach County, Florida, which is within the Eleventh Circuit. She has paid long distance charges on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service.

3

8.      As to all of the allegations set forth below, "Plaintiffs" shall include the named Plaintiffs, members of the proposed class, and/or their predecessors in interest.

b.      **Defendant**

9.      The Defendant is the United States of America, which shall be referred to in the allegations set forth below as the "Defendant" or the "Government." For purposes of the facts giving rise to this action, the Defendant has acted principally through the Internal Revenue Service.

### III. SUBSTANTIVE ALLEGATIONS

10.     Wariness runs deep in the Anglo-American legal tradition concerning the power to collect taxes. This is a wariness that recognizes that the principles of law that govern those who wield the tax-collecting power are as important as the amounts collected. A bedrock of this legal tradition is, of course, the elementary rule that taxes may not be imposed and collected without competent legislative authorization.  And that rule has been vigorously defended throughout Anglo-American legal history even when the amount at stake for any individual is small, the collection of an unlawful tax is disguised, and the proceeds of the unlawful tax have been hidden by being mingled with other, lawful tax collections. In Hampden's Case (1638), the great struggle (leading to the English Civil War) over King Charles I's taxes that were unauthorized by Parliament culminated in John Hampden's challenging an assessment for a mere 20 shilling ship-tax. This he successfully challenged in court as a taking of his goods without consent, since he was an inland merchant and the ship-tax had only been authorized by Parliament to be imposed on merchants at the coast. In the Stamp Act of 1765 and the Tea Act of 1773, the great struggle over King George III's taxes unauthorized by Colonial assemblies culminated in challenges to the mere three-penny tea tax, challenged in part because it was being

collected – wrongfully - in the King's vice-admiralty courts, where there were no juries of the taxpayers' peers. That tea tax led to the Boston Tea Party, and these individually small taxes led to the protest in the Declaration of Independence against "Imposing Taxes without our Consent."

11.    On information and belief, no American case has ever held that the plain and effective means invoked by this complaint to challenge an imposition of the kind involved in this case should be unavailable on the legal fiction that individuals have a meaningful and available procedure in seeking from the IRS individual sums of money at stake on their telephone bills - - amounts no greater in scale than Hampden's 20 shilling assessment in 1638 or perhaps even on the level of the three penny tax on tea in 1773.

12.    In crafting our Constitution, the Founding Fathers firmly invested exclusive control of taxing authority in the elected Congress: "Congress shall have Power to lay and collect Taxes, Duties Imposts and Excises" ( Art.  I , Sec. 8, cl. 1).  As an additional check, the Constitution provides: "All Bills for raising revenue shall originate in the House of Representatives" (Art. I, Sec. 7, cl 1), the legislative chamber whose Members stood for and continue to stand for popular election every two years.

13.    It is, therefore, axiomatic that the Federal taxation power lies exclusively with the Congress.  Unless Congress enacts a tax, neither the Government nor any of its constituent departments, agencies, or commissions may levy, impose, exact, or in any way collect a tax from the people.

14.    Plaintiffs are purchasers of long distance telephone services who have been charged for and paid as part of their telephone bill an excise "tax" that is unauthorized by Congress and whose collection is therefore illegal.

15.    The Internal Revenue Code authorizes certain excise taxes, including an excise tax of three percent on "toll telephone service". 26 U.S.C. § 4251, et. seq. (the "Communications Excise Tax").    The coverage of the telephone tax was last updated by Congress in 1965 as part of the Excise Tax Reduction Act of 1965, Pub. L. No. 89-94, § 302, 79 Stat 136, 145-46. Consistent with the state of telephony at that time, section 4252(b) defines "toll telephone service" to encompass service subject to the traditional "Message Telephone Service" ("MTS") by which long distance service is billed by both distance of the connection and time of the call, i.e., "a toll charge which varies in amount with distance and elapsed time of each individual communication." Section 4252(b)(1) (emphasis added).

16.    The 1965 Act also extended the excise tax to "wide area" telephone service ("WATS"), i.e., "a service which entitles the subscriber, upon payment of periodic charge (determined as a flat amount upon the basis of total elapsed transmission time) to the privilege of an unlimited number of telephone communications to and from a substantial of persons" outside the telephone system.

17.    Since 1965, there has been a techno-revolution in telecommunications. With the break up of the former unified telephone Bell monopoly and the popularity of wireless technology came a vastly increased level of competition in the provision of long distance telephone services.

18.    Currently, consumers purchase telephone services from a host of long distance telephone providers. These providers include familiar names such as AT&T, MCI, Sprint, as well as a host of other carriers. The gross revenues generated from interstate long distance service in the United States totaled $53 billion in 2000 and Communications Excise Tax ("CET") receipts exceeded $1.5 billion.

6

19.    Many, if not all of these long distance companies provide a variety of services that do not meet the legal definition of "toll telephone service" set forth in 26 U.S.C. §4252(b)(1) and (2).  Many long distance providers charge for calls at a flat rate per minute for dialing anywhere in the country.  AT&T for example, abandoned its distance and time formulation in favor of a time-only formulation in 1997.  MCI followed suit in 2000.

20.    For several years, the Government has been aware that the charges for long distance service based on elapsed time only do not meet the definition of "toll telephone service" contained in 26 U.S.C. §4252 and, therefore, a tax thereon is unauthorized.  Also, see Rev. Rul. 79-404, 1979-2 C.B. 382 ("literally, the service provided in this case does not come within the definition of . . . 'toll telephone service'. . . because the charge for such service does not vary with distance and, therefore, does not meet the requirements of 4252(b)(1)."

21.    Nonetheless, pursuant to Treasury Regulation Section 49.4351(c), the Government has required long distance carriers to collect and remit to the United States a "tax" on toll telephone calls that the Government knows is not authorized or permitted by the Communications Act.  As a result, the Government has illegally collected billions of dollars pursuant to an unauthorized "tax" from millions of Americans.

22.    Court after court, including the United States Court of Appeals for the District of Columbia Circuit, has found that these charges do not constitute "toll telephone service" within the meaning of the law and have ordered refunds.  National Railroad Passenger Corp. v. United States, 431 F.3d 374, 376-379 (D.C. Cir. 2005);  OfficeMax, Inc. v. United States, 428 F.3d 583 (6th Cir. 2005), aff'g 309 F. Supp,.2d 984 (N.D. Ohio 2004); Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331-1337 (11th Cir. 2005), rev'g 308 F. Supp. 2d 1360 (S.D. Fla. 2004); Hewlett-Packard Co. v. United States No. C-04-03832, 205 WL 1865419, at *2-*5, 2005 U.S.

Dist. LEXIS 19972, at *5-*13 (N.D. Cal. Aug. 4, 2005); <u>Reese Bros., Inc. v. United States</u>, No. 03-CV-745, 2004 WL 2901579, at *3-*13, 2004 U.S. Dist. LEXIS 2750, at *10-*44 (W.D. Pa. Nov. 30, 2004); <u>Fortis, Inc. v. United States</u>, No. 03 Civ. 5137, 2004 WL 2085528, at *5-*13, 2004 U.S. Dist. LEXIS 18686, at *17-*45 (S.D.N.Y. Sept. 16 2004); <u>Am. Online, Inc. v. United States</u>, 64 Fed. Cl. 571, 576-581 (Ct. Fed. Cl. 2005); <u>Honeywell Int'l, Inc. v. United States</u>, 64 Fed. Cl. 188, 198-203 (Ct. Fed. Cl. 2005).

23.     Despite these rulings, the Government continues to "collect and assess" this illegal excise tax.  In 2005, the IRS stated: "Collectors" (<u>i.e.</u>, long distance companies) "should continue to collect the tax."  IRS Notice 2005-79.  "Persons paying for taxable communications service (taxpayers) are required to pay the tax to a collection agent -- and collection agents are required to pass over the tax to the United States Treasury." <u>Id</u>.

24.     On information and belief, the putative class members are not aware that the taxes that have been collected from them have been declared illegal.  Nothing in the long-distance carriers' phone bills discloses that these taxes have been found to be illegal or offers the payer any information on how to challenge the bill.

25.     Traditional methods of requiring taxpayers to file individual administrative requests for a tax refund using Internal Revenue Service Form 8849 are entirely ineffectual in this context and do not afford individual taxpayers a viable or adequate remedy to redress this constitutionally prohibited taking of the money of the Plaintiffs under the guise of the taxing power.  The relatively small amount of money that is collected from a particular individual on a monthly and/or annual basis, the time required to complete the refund form and the cost of postage effectively prevent even those consumers who might be aware of the illegality from utilizing these traditional methods. For example, if an individual's monthly long distance charge

is $15, the "tax" collected is a mere .45¢ per month or $5.40 per year. Yet, because of the number of customers using such long distance services, the Government illegally collects billions of dollars. Presumably, the reason the Government persists in collecting a "tax" that at least since 1979 it has known is not specifically authorized is that in the end, if taxpayers must submit individual claim forms, the United States will be permitted to keep the vast majority of the illegally collected monies in clear violation of the United States Constitution.

26.    Perhaps even more remarkable is the fact that the IRS has publicly stated that refund demands "will not be processed while there are pending cases in other United States Courts of Appeals". I.R.S. Notice 2005-79. The only provisions of law, and regulations, specifically relating to the toll telephone service tax, anticipated that credits or refunds for such taxes would be sought by the long-distance carriers which have been, and continue to be, required to collect them. 26 C.F.R. 49.4291-1, 301.6415-1. The aforementioned I.R.S. Form 8849 is for refunds of excise taxes reported on Form 720, Quarterly Federal Excise Tax Return, but individual telephone callers do not file Form 720, only carriers do. In the wake of I.R.S. Notice 2005-79, carriers facing 26 C.F.R. 49.4291-1 and 301.6415-1 will not stop collecting the "tax" from individuals, nor seek refunds or credits for individuals. Thus, by I.R.S. Notice 2005-79, the Government has decided that individual callers shall have no effective means for "a claim for refund or credit [to be] duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. 7422.

27.    Because of the small size of the amount collected from each taxpayer, the obscured nature of the collection apparatus, and the Defendant's refusal to make a procedure available that would be consistent with the repeated judicial rulings against the validity of the

exaction, there is no practical or effectual procedure for obtaining either an individual, or a class-wide, refund of this tax.

28. Similarly, the collection will cause irreparable injury to the Plaintiffs. The Defendant does not maintain a recordkeeping and processing system which would allow the Plaintiffs to recover what is collected from them, without expending more than they receive. Moreover, this issue is not like those that arise in the course of collection of other taxes, in which the Defendant's recordkeeping and processing system reflects the collection of each tax so that a refund of an amount collected pursuant to a particular tax is practical. Rather, the excise tax at issue is not separately collected or recorded, but obscured in the larger aggregate of taxes on telephone service. There is no adequate remedy at law, and collection of this tax is thus an irreparable injury.

## IV. JURISDICTION

29. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1346; 28 U.S.C. § 1331; 5 U.S.C. § 702; and 28 U.S.C. § 2201.

30. The Court has personal jurisdiction over all parties in that Plaintiffs are United States citizens or otherwise consent to jurisdiction, and the Defendant is the United States government.

31. Venue is proper in this Court under 28 U.S.C. § 1391.

32. No adequate remedy for the Plaintiffs' claims is available elsewhere.

33. The claims for relief are not barred by sovereign immunity.

## V. CLASS ACTION ALLEGATIONS

34.    Plaintiffs bring this action against the United States as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and 23(b)(3).  The definition of the proposed class is:

> All natural persons who have paid and/or continue to pay money allegedly due for Communications Excise Tax on interstate toll telephone services that were not charged by duration and distance from March 15, 2000 to the present. Excluded from the class are any Judge or Judicial officers to whom this case is assigned and members of his or her immediate family.

35.    No Plaintiff's claim exceeds $10,000.

36.    There are numerous questions of law and fact common to the class including, but not limited to:

a.    Whether the Government is authorized to collect excise taxes on toll telephone service that were and are not billed on a time and distance basis;

b.    Whether the Government was and is legally entitled to require collection of this alleged excise tax by long distance carriers;

c.    Whether the Government repaid any of the excise tax illegally collected to taxpayers;

d.    Whether the Government's imposition of this tax without Congressional authorization deprives Plaintiffs of their property without due process of law in violation of the Fifth Amendment to the United States Constitution;

e.    Whether the collection of the illegal tax constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.

11

f.      Whether the continued collection of the unauthorized and illegal excise tax

constitutes a violation of the Fifth Amendment of the United States

Constitution that should be enjoined as it is clear that under no

circumstances will the United States ultimately prevail in its position that

the tax is authorized.

37.     Plaintiffs' claims are typical of the claims of the class as a whole.

38.     Plaintiffs will fairly and adequately protect the interests of the class.  The interests of the plaintiffs are coincident with, and not antagonistic to, those of the remainder of the class. Plaintiffs have obtained counsel experienced and qualified to prosecute this action and class actions generally.

39.     Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress of claims too small to be pursued through traditional methods of seeking and/or obtaining a tax refund.

40.     Class treatment is also appropriate because the Government has acted uniformly with respect to the Plaintiffs.

41.     Further, the questions of law and fact common to the members of the class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between Plaintiffs and the Government.

42.     Joinder of all Plaintiffs  who are geographically dispersed and number, upon information and belief, in the tens of millions is impractical.  Furthermore, the expense and burden of other methods of seeking redress, including individual litigation makes it impractical and/or virtually impossible to redress the wrong done to Plaintiffs on an individual-by-individual

12

claim basis.  Upon information and belief, members of the class are not already engaged in litigation concerning this controversy.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION – DUE PROCESS

43.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

44.    The Fifth Amendment to the United States Constitution prohibits the deprivation of property by the Government without due process of law.

45.    The United States Constitution delegates to the Congress the power to enact and impose taxes in compliance with the requirements of Article I of the Constitution.

46.    26 U.S.C. §4251 et. seq. was enacted by Congress and imposes an excise tax on certain toll telephone service as specifically defined therein.

47.    Neither this provision nor any other act of Congress authorizes the Government to exact the excise tax collected from Plaintiffs that is at issue here.

48.    The Government has deprived Plaintiffs of their property without due process of law by exacting the excise tax at issue here without congressional authorization in violation of the Constitution.

### SECOND CAUSE OF ACTION - UNCONSTITUTIONAL TAKING

49.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

50.    The exaction of the excise tax at issue here constitutes a taking of Plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution.

51.    Plaintiffs are thus entitled to reimbursement of the excise taxes they have paid, along with interest, as just compensation for this taking.

13

### THIRD CAUSE OF ACTION –
### UNJUST ENRICHMENT

52.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

53.    The Government has been unjustly enriched by its exaction of the excise tax at issue here without authorization by Congress.

54.    Each individual Plaintiff's claim does not exceed $10,000.

55.    Plaintiffs are thus entitled to reimbursement payment from the Government in the amount the Government has been unjustly enriched at the expense of the Plaintiffs.

### FOURTH CAUSE OF ACTION –
### EQUITABLE RELIEF/INJUNCTION

56.    Plaintiffs' reallege the preceding paragraphs as if fully set forth herein.

57.    The monies that have been collected by the Government from the Plaintiffs and are currently being collected by the Government from the Plaintiffs under the guise of the excise tax at issue here do not constitute a tax authorized by the Congress of the United States.

58.    The Government acknowledged as far back as 1979 that toll telephone service charged on a basis other than time and distance is not within the definition of service subject to tax pursuant to 26 U.S.C. §4252(b)(1).

59.    In every instance in which the Government has litigated the issue of whether toll telephone service charged on a basis other than time and distance is subject to the tax provided in 26 U.S.C. §4251, the Government has lost, and courts have uniformly found that there is no valid, authorized tax on toll telephone service that is charged on the basis of other than time and distance.

60.    It is now clear that under no circumstances could the Government ultimately prevail in its position and, therefore, the attempted collection of the illegal tax may be enjoined.

14

61.    Equity dictates that an injunction issue immediately prohibiting the Government from collecting the illegal "tax" on toll telephone service not charged by time and distance. It is clear that the Plaintiffs will prevail on the merits given that their position has been uniformly upheld by every court that has considered the issue.

62.    In addition, the Plaintiffs in this action, who are individuals with damages of less than $10,000, will clearly suffer irreparable harm if an injunction does not issue. Due to the nature and expense of the administrative refund procedure relating to I.R.S. Form 8849, the Plaintiffs are highly unlikely to be aware of the procedure or to be willing to follow it given the amounts at issue. Furthermore, the combination of the government's issuing regulations and forms adapted only to claims for refunds and credits by long-distance carriers, not individuals, together with the government's issuing I.R.S. Notice 2005-79 which bars processing of refund demands and which will keep carriers continuing their collection, further assures that plaintiffs will forfeit their rights as to this "tax." Plaintiffs effectively have no remedy at law to seek the redress of their Constitutional rights. In fact, one can only infer by its actions that the Government is well aware of this fact and has continued to collect the tax knowing that it may be permitted to retain literally billions of dollars that it is currently, illegally, collecting. Certainly, under these circumstances, equity and public policy dictate against this Court permitting the Government to reap the illicit windfall of this unauthorized tax without ever having to answer to those from whom it has illegally exacted this money.

63.    Issuance of an injunction prohibiting the continued collection of the "alleged tax" is dictated by the principles of equity.

### FIFTH CAUSE OF ACTION - DECLARATORY RELIEF

64.    The Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

15

65.     An actual controversy has arisen between the Plaintiffs and the Government as to whether the Government has the authority and right to assess a three per cent excise tax on toll telephone service charged on a basis other than time and distance.

66.     The controversy does not involve a Federal tax insofar as due to circumstances, it is clear there is no likelihood that the Government will ultimately prevail in its position that the monies collected on toll telephone service charged on a basis other than by time and distance was, in fact, a tax.

67.     This Court should declare that the Government lacks the authority to assess an excise tax on toll telephone service charge on a basis other than by time and distance.

**SIXTH CAUSE OF ACTION –
ADMINISTRATIVE PROCEDURE ACT:
AGENCY ACTION EXCEEDING AUTHORITY**

68.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

69.     The continued exaction and collection of the so-called "tax" at issue is "agency action" that exceeds the authority of the Government under 5 U.S.C. § 706.

**SEVENTH CAUSE OF ACTION
ADMINISTRATIVE PROCEDURE ACT:
AGENCY ACTION UNREASONABLY WITHHELD**

70.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

71.     Section 7422 of the Internal Revenue Code provides that no suit for recovery of a tax illegally assessed or collected may be filed until a claim for a refund has been filed with the Secretary of the Treasury.  This provision is not self-executing, but expressly provides that such a claim must be brought according to regulations to be promulgated by the Secretary.

72.     The Secretary has not promulgated any regulations setting out the procedure by which taxpayers may claim a refund for illegal excise taxes collected by seller-distributers.  As

16

previously described, in the wake of I.R.S. Notice 2005-79, carriers facing 26 C.F.R. 49.4291-1 and 301.6415-1 will not stop collecting the illegal "tax" on toll telephone service from individuals, nor seek refunds or credits for individuals. The IRS has issued Form 8849 for the general purpose of claiming excise tax refunds, but Form 8849 does not provide a means for refunds to be effectively claimed by or for the millions of affected individual taxpayers, particularly after I.R.S. Notice 2005-79. Neither Form 8849 nor any other action by the Secretary or the IRS implements Section 7422 of the Internal Revenue Code with respect to refund claims for an illegal toll telephone service tax advanced by a class of taxpayers. Accordingly, Section 7422 of the Internal Revenue Code has not yet been made effective with respect to refund claims for an illegal toll telephone service tax brought by a class of taxpayers due to inaction by the Secretary.

73.    The failure of the Secretary to promulgate regulations or any process by which the millions of aggrieved taxpayers may claim a refund of the aforementioned illegal "tax" constitutes agency action that has been unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706.

## VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

a.    Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

b.    Adjudge and decree that Government's conduct as described herein, violated the Fifth Amendment of the United States Constitution.

c.    Order the return of any and all monies in the possession of the Government that were illegally collected as an alleged tax on toll telephone service charged on a basis other than by time and distance, plus interest.

d.    Order the Government to provide an accounting by taxpayer of all monies illegally collected from March 15, 2000 to present.

e.    Award compensation in amounts to be determined at trial or, where applicable, to the full extent allowed by law.

f.    Award pre-judgment interest to Plaintiffs to the fullest extent allowed by law.

g.    Award Plaintiffs the costs of bringing this action, including the payment of reasonable attorneys' fees;

h.    Declare that the Government lacks the authority to collect or retain monies as a percentage of bills for toll telephone service charged on a basis other than time and distance;

i.    Order the Secretary of the Treasury to promulgate regulations providing a procedure by which a class of taxpayers may seek a refund of excise taxes;

j.    Issue a temporary restraining order followed by a permanent injunction prohibiting the Government from collecting monies under the guise of a tax as a percentage of bills for toll telephone service charged on a basis other than time and distance;

k.    Impose a constructive trust for the benefit of the Plaintiffs on all monies currently held or collected after the date of this Complaint as a result of the Government's collection of monies as a percentage of bills for toll telephone service charged on the basis other than time and distance; and

18

l.      Grant such other relief as the Court deems just and proper.


DATED: March 15, 2006.                         CUNEO GILBERT & LaDUCA, LLP

                                        By: _____
                                               Jonathan W. Cuneo, Esquire (DC Bar# 939389)
                                               Charles J. LaDuca, Esquire  (DC Bar# 476134)
                                               William Anderson
                                               507 C Street, NE
                                               Washington, DC 20002
                                               (202) 789-3960

                                               Christopher Weld, Jr., Esquire
                                               TODD & WELD LLP
                                               28 State Street
                                               Boston, MA  02109
                                               (617) 720-2626

                                               Robert J. Cynkar, Esquire  (DC Bar# 957845)
                                               EGAN, FITZPATRICK, MALSCH & CYNKAR,
                                               PLLC
                                               8300 Boone Boulevard, Suite 340
                                               Vienna, VA  22182
                                               (703) 891-4050

                                               Professor Charles Tiefer  (DC Bar#  330910)
                                               University of Baltimore
                                               3904 Woodbine Street
                                               Chevy Chase, MD  20815
                                               (301) 951-4239