## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGINIA SLOAN,<br>2808 Battery Place, NW<br>Washington, DC  20016, | ) ) ) ) |
| GARY M. SABLE,<br>2 Fox Place, Newton Centre<br>Newton, Massachusetts 02459, | ) ) ) ) ) |
| ROBERT McGRANAHAN,<br>1604 Chandler Road<br>Ann Arbor, Michigan 48105, | ) ) ) ) ) |
| SHARI PERLOWITZ,<br>23317 Treeline Drive<br>Boca Raton, Florida 33428, | ) ) ) ) |
| REGINALD A. KRASNEY,<br>8 Hickory Lane<br>Chester Springs, Pennsylvania 19425, | ) ) ) ) ) |
| MARION SACHUK,<br>1067 Weikel Road<br>Lansdale, Pennsylvania 19446, | ) ) ) ) |
| CAROLYN HRUSOVSKY,<br>1067 Weikel Road<br>Lansdale, Pennsylvania 19446, | ) ) ) ) ) |
| STACY MARKOWITZ,<br>200 Campbell Circle, Apt. 14<br>Downingtown, Pennsylvania 19335, | ) ) ) ) |
| JOAN DENENBERG,<br>518 Sussex Road<br>Wynnewood, Pennsylvania 19096, | ) ) ) ) ) |
| CATERING BY DESIGN, INC., a<br>Pennsylvania Corporation,<br>110 East Hector Street<br>Conshohocken, Pennsylvania 19428,<br>on behalf of themselves and<br>all other similarly situated taxpayers;<br>Plaintiffs, | ) ) ) ) ) ) ) ) |
| vs. | ) ) ) |
| THE UNITED STATES<br>OF AMERICA c/o United States<br>Department of Justice, 950 Pennsylvania<br>Avenue, NW, Washington, DC 20530,<br>Defendant. | ) ) ) ) ) ) |

**Case No.: 1:06cv00483**

**Judge: Ricardo M. Urbina**

**CLASS ACTION**
**AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. NATURE OF THE ACTION...........................................................................1

II. IDENTIFICATION OF THE PARTIES....................................................3

    The Plaintiffs.........................................................................3

    The Defendant.......................................................................6

III. SUBSTANTIVE ALLEGATIONS................................................6

    I.R.S. Notice 2005-79...........................................................10

    Objections to and Disparate Collection of the Improper Excise Tax by
    Communications Service Providers....................................13

    The I.R.S.'s Positions Are Not Taken In Good Faith.....................15

    The I.R.S.'s Actions Exceed The Limits of its Administrative Authority.............18

IV. JURISDICTION........................................................................19

V. CLASS ACTION ALLEGATIONS...............................................20

    The Class Definition.............................................................20

VI. CAUSES OF ACTION..............................................................24

    First Cause of Action – Due Process.....................................24

    Second Cause of Action – Unconstitutional Taking....................25

    Third Cause of Action – Unjust Enrichment............................25

    Fourth Cause of Action – Illegal Exaction..............................26

    Fifth Cause of Action – Equitable Relief/Injunction...................28

    Sixth Cause of Action – Declaratory Relief.............................28

    Seventh Cause of Action – Administrative Procedure Act: Agency Action
    Exceeding Authority............................................................29

    Eighth Cause of Action – Administrative Procedure Act: Agency Action

TABLE OF CONTENTS *(continued)*

Unreasonably Withheld..............................................................30

**Ninth Cause of Action – Refunds of Amounts Improperly and Illegally Collected by Defendant**..............................................................30

**Tenth Cause of Action – Writ of Mandamus**............................32

**VII.  PRAYER FOR RELIEF**.............................................34

## AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, MONETARY AND OTHER RELIEF

The following allegations are made by Plaintiffs upon information and belief after investigation by their Counsel.

## I. NATURE OF THE ACTION

1.    Plaintiffs Virginia Sloan, Gary M. Sable, Robert McGranahan, Shari Perlowitz, Reginald A. Krasney, Marion Sachuk, Carolyn Hrusovsky, Stacy Markowitz, Joan Denenberg, and Catering By Design, Inc. (collectively "Plaintiffs") seek for themselves and on behalf of all similarly situated taxpayers the return of all money in possession of Defendant the United States of America, acting by and through the Internal Revenue Service (collectively referred to as the "Government," "I.R.S.," and/or "Defendant"), that was unconstitutionally exacted under the guise of an excise "tax" that was not authorized by Congress.  In the alternative, Plaintiffs, on behalf of themselves and all other similarly situated taxpayers, seek a refund of amounts illegally collected by the I.R.S. in connection with its improper administration of the Communications Excise Tax, 26 U.S.C. § 4251, *et. seq.* ("Communications Excise Tax").  Finally, Plaintiffs seek, on behalf of all similarly situated taxpayers, injunctive, declaratory, and other equitable relief to halt the improper and unconstitutional collection of this "tax."

2.    The gravamen of the Complaint is the deprivation of the Plaintiffs' property by the Government without due process through the collection of monies under the guise of an excise tax that Congress has not authorized.  This Complaint challenges, and seeks redress for, the sustained, improper and forced collection of an excise "tax" of three percent on certain long distance telephone charges purportedly authorized by § 4251 of the Internal Revenue Code, but in fact not authorized by that, or any other, enactment of Congress.  This tax is collected by long distance companies from individual consumers who are billed (and pay) it by long distance carriers as part of the consumers' monthly bills.  As numerous Courts – including the United States Courts of Appeal for the Second, Sixth, Eleventh and District of Columbia Circuits – have

all found, there is no Congressional authority for this governmental exaction of money from consumers of toll telephone services.

3.    These collections total billions of dollars each year – extracted a few cents at a time on a regular basis from tens of millions of consumers of telephone service.  Because telephone service is regulated, most consumers simply assume that the taxes they pay are both authorized and required.  These unsuspecting taxpayers have no idea that some of these taxes are illegal.  Thus, as a general matter, individual taxpayers are unaware (and highly unlikely to become aware) that (a) Congress has not enacted the tax they are paying; and (b) there was a bureaucratic procedure in place to request a refund of the tax.

4.    The traditional method of requiring taxpayers to file individual administrative claims for a tax refund using a separate Internal Revenue Service Form 8849 for each taxable quarter is not intended for, and is entirely ineffectual in this context.  Over a billion claims would be required were each telephone customer to seek the refund to which he or she is entitled.  The government could not process, much less act on, claims in that volume, and therefore the existing administrative process – even if it can be reinstated – cannot afford Plaintiffs a viable or adequate remedy (as intended by Congress) to redress this constitutionally prohibited exaction of money under the guise of the taxing power.  This has been confirmed by the I.R.S.'s unequivocal announcement in Notice 2005-79 that it is refusing to process refund requests and will continue to collect the Communications Excise Tax. (attached hereto as Exhibit 1).  In addition, at least one attempt by certain class members to file Form 8849 refund claims with the I.R.S. seeking a return of the money illegally exacted from themselves and from all other similarly situated taxpayers was immediately denied by the I.R.S. on or around April 10, 2006 in a letter stating that the class claim could not be processed.  Accordingly, even if Form 8849 is construed as an applicable administrative remedy, Plaintiffs seeking a return of monies illegally exacted under the guise of this excise tax on behalf of themselves and all other similarly situated taxpayers have exhausted whatever administrative remedies might be theoretically available, have satisfied any

statutory and jurisdictional prerequisites for bringing suit against the United States for a return of their illegally exacted money, and are therefore eligible to sue the United States in this District Court to obtain a return of that money, plus interest.

5.     The continued illegal collection of this tax by the I.R.S. exceeds the statutory authority of the I.R.S., is a deprivation of Plaintiffs' property without due process of law, and effects an uncompensated taking in violation of the Fifth Amendment to the United States Constitution.

## II. IDENTIFICATION OF THE PARTIES

6.     Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. Rule 23(b)(2) on behalf of themselves and all other persons similarly situated.  The Plaintiffs seek on behalf of themselves and the Class, as defined herein, the return of monies improperly and illegally collected by the I.R.S. under the guise of a legitimate tax, when it was not authorized by Congress.  Plaintiffs also seek equitable and declaratory relief on behalf of the Class.

**The Plaintiffs.**

7.     Plaintiff Virginia Sloan ("Sloan") resides at 2808 Battery Place, NW, Washington, DC 20016.  Sloan is a resident of the District of Columbia who has paid some long distance charges on an elapsed time basis.  Sloan has paid and continues to pay the Federal excise tax on  long distance service with respect to which charges for individual calls did not vary with distance.

8.     Plaintiff Gary M. Sable ("Sable") resides at 2 Fox Place, Newton Centre, Newton, Massachusetts 02459.  Sable is a resident of Middlesex County in the Commonwealth of Massachusetts who paid some long distance telephone charges solely on an elapsed time basis. Sable has paid and continues to pay the Federal excise tax on a long distance service with respect to which charges for individual calls did not vary with distance.

9.     Plaintiff Robert McGranahan ("McGranahan") resides at 1604 Chandler Road, Ann Arbor, MI  48105.  McGranahan is a resident of Washtenaw County, Michigan, which is

within the Sixth Circuit. McGranahan has paid and continues to pay long distance charges solely on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service with respect to which charges for individual calls did not vary with distance.

10.    Plaintiff Shari Perlowitz ("Perlowitz") resides at 23317 Treeline Drive, Boca Raton, Florida 33428. Perlowitz is a resident of Palm Beach County, Florida, which is within the Eleventh Circuit. Perlowitz has paid and continues to pay long distance charges solely on an elapsed time basis. Plaintiff has paid the Federal excise tax on a long distance service with respect to which charges for individual calls did not vary with distance.

11.    Plaintiffs Sloan, Sable, McGranahan, and Perlowitz *did not* file an administrative refund claim with the I.R.S. because Defendant has unconstitutionally extracted from each of these Plaintiffs – as well as from all members of the Class – excise taxes on monies paid for toll telephone services with respect to which charges for individual calls did not vary with distance. Additionally, the only existing administrative refund mechanism does not provide a practical or realistic means to return to Plaintiffs monies unlawfully extracted by Defendant.

12.    Reginald A. Krasney ("Krasney") resides at 8 Hickory Lane, Chester Springs, Pennsylvania 19425. Krasney is and has been a customer of Cingular and Nextel, and has paid and continues to pay the Federal excise tax on a wireless service with respect to which charges for individual calls did not vary with distance.

13.    Marion Sachuk ("Sachuk") resides at 1067 Weikel Road, Lansdale, Pennsylvania 19446. Sachuk is a customer of T-Mobile (and has recently been a customer of Qwest), and has paid and continues to pay the Federal excise tax on wireless and long distance services with respect to which charges for individual calls did not vary with distance.

14.    Carolyn Hrusovsky ("Hrusovsky") resides at 1067 Weikel Road, Lansdale, Pennsylvania 19446. Hrusovsky is a customer of T-Mobile, a long distance customer of Verizon, and also purchases pre-paid calling cards. Hrusovsky has paid and continues to pay the Federal

excise tax on wireless, long distance, and pre-paid calling card services with respect to which charges for individual calls did not vary with distance.

15.    Stacy Markowitz ("Markowitz") resides at 200 Campbell Circle, Apt. 14, Downingtown, Pennsylvania 19335.  Markowitz is a customer of Verizon Wireless, and has paid and continues to pay the Federal excise tax on a wireless service with respect to which charges for individual calls did not vary with distance.

16.    Joan H. Denenberg ("Denenberg") resides at 518 Sussex Road, Wynnewood, Pennsylvania 19096.  Denenberg is a long distance landline telephone service customer of MCI, and  has paid and continues to pay the Federal excise tax on a long distance service with respect to which charges for individual calls did not vary with distance.

17.    Catering By Design, Inc. ("Catering By Design") is a Pennsylvania Corporation with a principal place of business at 110 East Hector Street, Conshohocken, Pennsylvania 19428. Catering By Design has paid and continues to pay the Federal excise tax with respect to telecommunications services, the charges for which do not vary with time and distance.

18.    Prior to the filing of this Complaint, Plaintiffs Krasney, Sachuk, Hrusovsky, Markowitz, Denenberg, and Catering By Design filed with the I.R.S. a Form 8849 and an accompanying Schedule 6, requesting a refund of the Communications Excise Tax on behalf of themselves and all those similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible.  Copies of these refund claims, mailed to the I.R.S. between February 9, 2006 and April 3, 2006, are attached hereto as Exhibits 2 through 7, and are incorporated by reference herein.  On or around April 10, 2006, the I.R.S. sent a letter to Krasney refusing to process the class refund claim.  A copy of the I.R.S. letter refusing to process Krasney's class refund claim is attached hereto as Exhibit 8 and is incorporated by reference herein.

19.    The individual claim of each of the Plaintiffs is less than $10,000.

20.    Members of the Class include all other similarly situated taxpayers.

**The Defendant.**

21.    The Defendant is the United States of America ("Government," "I.R.S.," and/or "Defendant").

### III. SUBSTANTIVE ALLEGATIONS

22.    The Anglo-American legal tradition is deeply wary of the power to collect taxes, and recognizes that the principles of law that govern those who wield the tax-collecting power are as important as the amounts collected. A bedrock of this legal tradition is the rule that taxes may not be imposed and collected without competent legislative authorization. That rule has been vigorously defended throughout Anglo-American history even when the amounts at stake for any one individual are small, the collection of an unlawful tax is disguised, and the proceeds of the unlawful tax have been hidden by being mingled with other, lawful tax collections. In Hampden's Case (1638), the great struggle (leading to the English Civil War) over taxes levied by King Charles I that were unauthorized by Parliament culminated in John Hampden's challenge to a 20 shilling ship-tax. Hampden persuaded the court that the tax was a taking of his goods without consent or authorization – he was an inland merchant and the ship-tax had only been authorized by Parliament to be imposed on merchants at the coast. In the Stamp Act of 1765 and the Tea Act of 1773, the great struggle over British taxes unauthorized by Colonial assemblies culminated in to the Colonist's assault on a three-penny per pound tea tax, challenged in part because it was being collected – wrongfully – in the King's vice-admiralty courts, where there were no juries of the taxpayers' peers. As every schoolboy (and schoolgirl) knows, the tax on tea led to the Boston Tea Party, and the small taxes imposed by Parliament in the Stamp Act and Townshend Acts underlay the protest in the Declaration of Independence against "Imposing Taxes without our Consent."

23.    On information and belief, no American court has ever held that the plain and effective means invoked by this complaint to challenge an imposition of the kind involved in this case should be unavailable on the legal fiction that individuals have a meaningful and available

procedure in seeking from the I.R.S. individual sums of money at stake on their telephone bills – amounts much smaller in scale than the three penny tax imposed on tea before 1773.

24.     In crafting our Constitution, the Founding Fathers vested exclusive control of taxing authority in Congress: "Congress shall have Power to lay and collect Taxes, Duties Imposts and Excises" (U.S. CONST. art. I , § 8, cl. 1). As an additional check, the Constitution provides: "All Bills for raising revenue shall originate in the House of Representatives" (U.S. CONST., art. I, § 7, cl 1), the legislative chamber whose Members stand for popular election every two years.

25.     Therefore, it is axiomatic that the Federal taxation power lies exclusively with the Congress. Unless and until Congress enacts a tax, neither the Government nor any of its constituent departments, agencies, or commissions may levy, impose, exact, or in any way collect that tax from the people.

26.     Plaintiffs and Class members, as defined herein, are purchasers of telephone services who have been charged and continue to be charged for and paid as part of their telephone bill an excise tax that is unauthorized by Congress and whose collection is therefore illegal and unconstitutional.

27.     The Internal Revenue Code authorizes certain excise taxes, including an excise tax of three percent on "toll telephone service." The coverage of the telephone tax was last considered and updated by Congress in the Excise Tax Reduction Act of 1965, Pub. L. No. 89-94, § 302, 79 Stat 136, 145-46. Consistent with the state of telephony at that time, § 4252(b) defines "toll telephone service" to encompass traditional "Message Telephone Service" ("MTS"), a service for which there is "a toll charge which varies in amount with distance and elapsed time of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added).

28.     The 1965 Act also added to toll service so-called "wide area telephone service" ("WATS"), which the statute defined as "a service which entitles the subscriber, upon payment of periodic charge (determined as a flat amount or upon the basis of total elapsed transmission

time), to the privilege of an unlimited number of telephone communications to or from all or a substantial portion of the persons ... outside the local telephone system area." 26 U.S.C. § 4252(b)(2). This particular provision was specifically designed to tax WATS lines, and does not permit the assessment of tax on telecommunication services that do not fall within its terms.

29.    Since 1965, there has been a revolution in telecommunications. With the break-up of the Bell telephone monopoly and the introduction and growing popularity of wireless technology came a proliferation of long distance telephone services and service providers.

30.    Currently, consumers purchase telephone services from a host of long distance telephone providers. The gross revenues generated from interstate long distance service in the United States totaled $53 billion in 2000, and Communications Excise Tax ("CET") receipts on long distance or toll service exceeded $1.5 billion.

31.    Many if not all of the long distance and wireless companies provide a variety of services that do not meet the definition of "toll telephone service" set forth in § 4252(b)(1) and/or (b)(2). Most charge a flat rate per minute for calls anywhere in the country. AT&T, for example, abandoned distance and time billing in favor of a time-only formulation in 1997. MCI followed suit in 2000.

32.    For over 25 years the Government has been aware that the charges for long distance service based only on elapsed time do not fall within the definition of "toll telephone service" in 26 U.S.C. § 4252 and that a tax thereon is therefore unauthorized. See Rev. Rul. 79-404, 1979-2 C.B. 382 ("literally, the service provided in this case does not come within the definition of . . . 'toll telephone service' . . . because the charge for such service does not vary with distance and, therefore, does not meet the requirements § 4252(b)(1).").

33.    Nonetheless, pursuant to Treasury Regulation § 49.4351(c), the Government has required long distance carriers to collect and remit to the United States a tax on toll telephone calls that the Government knows is not authorized or permitted by the Communications Act. As

a result, the Government has illegally collected billions of dollars pursuant to an unauthorized tax from scores of millions of Americans.

34.    Court after court, including the United States Court of Appeals for the District of Columbia Circuit, has found that non-distance sensitive long distance service does not constitute "toll telephone service" within the meaning of the Internal Revenue Code, and have ordered refunds. *National Railroad Passenger Corp. v. United States*, 431 F.3d 374, 376-379 (D.C. Cir. 2005), Exhibit 9; *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005), Exhibit 10, *rehearing en banc denied*, ___ F.3d ___ (6th Cir. 2006); *Fortis, Inc. v. United States*, ___ F.3d ___ (2d Cir. Apr. 27, 2006), *aff'g*;  2004 WL 2085528 (S.D.N.Y. Sept. 16, 2004), Exhibit 11; *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331-1337 (11th Cir. 2005), *rev'g* 308 F. Supp. 2d 1360 (S.D. Fla. 2004) Exhibit 12; *Hewlett-Packard Co. v. United States* Exhibit 13, 2005 WL 1865419 (Aug. 5, 2005), *appeal docketed*, No. 06-15052 (9th Cir. Jan. 20, 2006); *Reese Bros., Inc. v. United States*, 2004 WL 2901579 (W.D.Pa. Nov. 30, 2004)**,** Exhibit No. 14**,** *appeal docketed*, No. 05-2135 (3d Cir. Apr. 18, 2005); *Am. Online, Inc. v. United States*, 64 Fed.Cl. 571 (Fed. Cl. 2005), *appeal docketed*, No. 05-5138 (Fed. Cir. Nov. 29, 2005); *Honeywell Int'l, Inc. v. United States*, 63 Fed. Cl. 188 (Fed. Cl. 2005), *appeal docketed*, No. 05-5145 (Fed. Cir. Jul. 12, 2005).

35.    The courts' rejection of the I.R.S.'s interpretation of § 4252(b) has been clear and emphatic.  By way of illustration, the D.C. Circuit Court of Appeals wrote:

> In 1965, when Congress passed section 4252(b), [Message Toll Service] charges varied by both time and distance. Reading "and" conjunctively therefore makes the statute mirror the [Message Toll Service] system, precisely what Congress intended.  To be sure, Congress does sometimes use the word "and" disjunctively. Indeed, it did so in this very statute: No one would contend that a service must satisfy both subsection (b)(1) and subsection (b)(2) to constitute "toll telephone service," as a conjunctive reading of the "and" separating the two sections would require. Because the two subsections describe separate types of services, not criteria for a single service, ***such a reading would be absurd.*** In contrast, reading the "and" that separates "distance" from "elapsed

transmission time" conjunctively produces just the result Congress intended, i.e., a tax on [Message Toll] service.

\*    \*    \*    \*

We have considered the I.R.S.'s remaining arguments and found them to lack merit. Because the district court's well-reasoned opinion properly ascertains the statute's meaning, we affirm the grant of summary judgment to Amtrak. True, this interpretation limits the effectiveness of the tax on long-distance calls, but because *section 4252(b)(1) is unambiguous*, the IRS must take its case to Congress, not this court. [emphasis added; internal citation omitted].

*Nat'l Railroad Passenger Corp..*, 431 F.3d at 376 and 379.

**I.R.S. Notice 2005-79.**

36. Despite these adverse rulings, the Government continues to "collect and assess" this illegal excise tax. On October 20, 2005, the I.R.S. issued Notice 2005-79, which essentially advises that:

  a. The I.R.S. will continue to assess and collect the Communications Excise Tax on *all* communications services it deems taxable.

  b. Notwithstanding the decisions of the courts, the I.R.S. will adhere to its prior interpretation and application of § 4251;

  c. The I.R.S. will continue to litigate the application of § 4251 in the courts in the face of mounting adverse rulings;

  d. The I.R.S. will require service providers to continue to collect the Communications Excise Tax in accordance with the I.R.S.'s interpretation of § 4251; and

  e. The I.R.S. will suspend the administrative refund process – refund applications "will not be processed while there are pending cases in other [unspecified] United States Courts of Appeals." I.R.S. appeals of adverse District Court decisions are currently pending in the Second, Third and Ninth Circuit Courts of Appeal, and (in two separate cases) before the

Federal Circuit Court of Appeals.

37.     On information and belief, Plaintiffs and all members of the class are and will be unaware that the taxes that have been and/or will be collected from them have been declared illegal.  Nothing in the long distance carriers' phone bills discloses that these taxes have been found to be illegal or offers the payer any information on how to challenge the tax or seek a refund.

38.     Traditional methods of requiring taxpayers to file individual administrative requests for a tax refund using Internal Revenue Service Form 8849 are entirely ineffectual in the present circumstances and do not afford individual taxpayers a viable or adequate remedy to redress this constitutionally prohibited taking of the money of the Plaintiffs under the guise of the taxing power.  The relatively small amount of money that is collected from a particular individual on a monthly and/or annual basis, the time required to complete the refund form and the cost of postage effectively prevent even those consumers who might be aware of the Government's illegal conduct from utilizing these traditional methods. For example, if an individual's monthly long distance charge is $15, the tax collected is 45¢ per month or $5.40 per year.  Yet, because of the number of customers using long distance services, the Government illegally collects billions of dollars.  Presumably, the reason the Government persists in collecting a tax that at least since 1979 it has known is not specifically authorized is that in the end, if taxpayers must submit individual claim forms, the United States will be permitted to keep the vast majority of the illegally collected money, in clear violation of the United States Constitution.

39.     Even more remarkable is the fact that the I.R.S. has publicly stated that refund demands "will not be processed while there are pending cases in other United States Courts of Appeals".  I.R.S. Notice 2005-79.  The law and regulations specifically relating to toll telephone service tax anticipate that credits or refunds for such taxes will be sought by the long distance carriers which have been, and continue to be, required to collect the tax.  26 C.F.R. 49.4291-1,

301.6415-1. The aforementioned I.R.S. Form 8849 is for refunds of excise taxes reported on Form 720, Quarterly Federal Excise Tax Return, but individual telephone callers do not file Form 720, only carriers do. In the wake of I.R.S. Notice 2005-79, carriers facing 26 C.F.R. 49.4291-1 and 301.6415-1 continue to collect the tax from individuals, and will not seek refunds or credits for individuals. Thus, through I.R.S. Notice 2005-79 the Government has decided that individual callers shall have no effective means for "a claim for refund or credit [to be] duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422.

40.    Because of the small amount collected from each taxpayer, the obscure and complex nature of the collection apparatus, and the Defendant's refusal to institute a procedure consistent with the repeated judicial rulings against the validity of the exaction at issue, there is no practical or effective procedure for obtaining either an individual or a class-wide refund of illegally collected tax.

41.    Similarly, continued collection will cause irreparable injury to Plaintiffs and Class members. The Defendant does not maintain a recordkeeping and processing system which would allow the Plaintiffs to recover what is collected from them without expending more than individual Plaintiffs could possibly be entitled to receive. Moreover, the issue is not like those that arise in the course of collection of other taxes, where Defendant's recordkeeping and processing systems reflect the collection of tax from each consumer so that refund of a particular tax is practical. The excise tax at issue is not separately collected or recorded by the Government, so individual payments are obscured in the aggregate taxes on telephone service collected and remitted by telecommunications service providers. There is no adequate remedy at law, and collection of this tax is thus an irreparable injury.

**Objections to and Disparate Collection of the Improper Excise Tax by Communications Services Providers.**

42.    Consistent with the uniform decisions by the Federal courts, members of Congress and telecommunications service providers have voiced objections to the I.R.S.'s bizarre and unlawful interpretation of § 4252(b)(1).

43.    By way of example, on June 29, 2005, twenty (20) members of Congress sent a joint letter to Treasury Secretary John Snow urging the I.R.S. to acknowledge that the Communications Excise Tax does not apply to postalized communications services, and to discontinue the improper collection of this tax.  A true and correct copy of this letter is attached as Exhibit 15, and is incorporated by reference herein.

44.    This letter states, in pertinent part:

> The outdated statutory provision at issue defines toll telephone service as a communication for which the rate varies by both the elapsed transmission time and the distance of each individual call.  The courts have all noted, and the I.R.S. does not dispute, that this definition was intended to describe a long distance service sold by AT&T in 1965, for which the rate varied based on mileage bands.  Today, there are virtually no long-distance services for which the rate varies depending on the distance of the calls.  Incredibly, we think, the I.R.S. has maintained that the word "and" should be read to mean "or."  Fortunately for the taxpayers, the courts have now uniformly rejected that position.

> \*          \*          \*          \*

> We urge you to order the I.R.S. staff to follow the uniform interpretation of the courts and thereby provide relief for the millions of consumers who are paying FET on services that are not statutorily subject to the tax.  Your action in this regard would also underscore the fact that this tax is hopelessly out-of-date and technically flawed…

45.    As stated in the letter, the telecommunications service providers have been placed in "an untenable position": they are, on the one hand, required by the Treasury Regulations to collect the Communications Excise Tax and remit the amounts collected to the I.R.S.  On the other hand, the telecommunications service providers have recognized the importance and merit of the Federal court decisions rejecting the I.R.S.'s interpretation of the statute.  Accordingly, "[i]f [telecommunications providers] abide by the decisions of the court, they will risk liability to

- 13 -

the I.R.S. on audit. If they continue to bill [the excise tax] as instructed by the I.R.S., they risk the possibility of having to defend lawsuits, including class actions, brought against them by their customers."

46.     Upon information and belief, some of the telecommunications service providers have adopted a policy pursuant to which they will refrain from collecting the tax from those customers who affirmatively contact the providers and indicate that they no longer wish to pay the tax.

47.     By way of example, AT&T has adopted a policy of permanently eliminating the Communications Excise Tax on a prospective basis from a customer's monthly bills when asked to do so by the customer in writing. Kerry Hibbs, a national AT&T spokesman, recently stated that "we will exempt customers who do not want to pay the Federal excise tax." (Exhibit 16). Indeed, AT&T has created a special "opt-out" form whereby customers can direct AT&T to refrain from charging the Communications Excise Tax based on a "religious objection," because it is a "war tax," or due to "other" reasons. A true and correct copy of this form is marked as Exhibit 17 and is incorporated by reference herein.

48.     Although AT&T represents that it notifies the Regional Director of the I.R.S. of the names of those customers that have elected not to pay the Communications Excise Tax, upon information and belief, AT&T in fact does not collect the tax from customers that submit one of its opt-out forms.

49.     Upon information and belief, AT&T has not notified all of its customers of this "opt-out" opportunity, and as a result some customers – especially less sophisticated customers or those that otherwise have not tracked the issue closely – are simply unaware of this option.

50.     Upon information and belief, AT&T is not the only communications service provider that permits its customers to elect not to pay the tax. Indeed, one group of war

protesters has set up a website that lists the company-specific procedures required to have the tax removed by many of the large communications service providers.[1]

51.     The consequences of this policy are extraordinary: the Communications Excise Tax has been transformed into a discretionary payment being collected from some toll telephone service customers, but not being collected from other customers using the same services. Because it is not being uniformly imposed, the Communications Excise Tax no longer is a legitimate, uniform tax, but rather the collection of money by the I.R.S. for an unascertainable or nefarious purpose.

52.     Upon information and belief, though aware of the opt-out policy devised and implemented by telecommunications providers, the I.R.S. has not taken any action to deter AT&T or otherwise collect the Communications Excise Tax from taxpayers who have opted out of paying the tax.   Accordingly, customers that continue to pay the Communications Excise Tax have been and continue to be subject to discriminatory, differential collection in violation of the Equal Protection Clause of the United States Constitution.

**The I.R.S.'s Positions Are Not Taken In Good Faith.**

53.     The I.R.S.'s administration and continued collection of the Communications Excise Tax in a manner contrary to the plain meaning of the statute and the rulings of Article I and Article III Federal courts exceeds the statutory authority of the I.R.S., is contrary to law, done in the absence of good faith, and for an unascertainable or nefarious purpose.   The continued collection of the Communications Excise Tax in a manner that is not authorized by Congress is a deprivation of property without due process of law and an uncompensated taking of that property in violation of the Fifth Amendment to the United States Constitution.

54.     By way of example, on February 15, 2006 at the President's Fiscal Year 2007 Budget Hearing before the Committee on Ways and Means, House Representative Jim Ramstad questioned Treasury Secretary John Snow about the I.R.S.'s continued collection of the

---

[1] This website is available at www.hanguponwar.org.

Communications Excise Tax. *After pausing for a moment of laughter*, Secretary Snow suggested

that the I.R.S. would cease collection of the tax if the Sixth Circuit *en banc* rehearing rejected the

I.R.S.'s interpretation of the statute:

> Mr. RAMSTAD. Thank you, Mr. Chairman.
>
> Mr. Secretary, I want to ask you about a thorn in the side of many taxpayers, and I am referring to the telephone excise tax. As you know, this tax was first enacted--well, it was enacted in 1898 as a temporary tax to fund the Spanish-American War. It is imposed by the Federal I.R.S. on long distance phone calls. It seems to me almost an absurdity today that the tax only applies to phone calls for which charges are levied based on the distance and the time of the phone call. But as we all know, most phone companies today don't base their charges on both distance and duration of the call. Rather, they charge a flat rate per minute regardless of the distance the customer happens to be calling.
>
> Now, in the past few years, a number of taxpayers, business taxpayers, have challenged the IRS's collection of this tax in Federal court. In fact, no fewer than three Federal courts and a host of Federal District Courts have all ruled against the IRS. Can you please tell me why in the world does the IRS continue collecting this tax, and can you give us an indication of how long the I.R.S. will keep litigating this issue? Mr. Secretary, why not give it up?
>
> [Laughter.]
>
> Secretary SNOW. Well, I think the courts may require us to do that very soon. You know, this is pending in the Sixth Circuit. The Department of Justice took an appeal from the District Court. We are awaiting that judgment. ***Should the judgment come down in alignment with the prior three Federal Circuit Courts, I think the handwriting is on the wall.***
>
> Mr. RAMSTAD. That will be the end of the temporary tax enacted in 1898 to fund the Spanish-American War?
>
> Secretary SNOW. ***I would think the time to bring that to an end would be upon us.***
>
> Mr. RAMSTAD. That will be good news to taxpayers. Thank you, Mr. Secretary.

*President's Fiscal Year 2007 Budget with U.S. Department of the Treasury Secretary John*

*Snow: Before the House Comm. on Ways and Means*, 2006 Leg., Serial 109-53 (2006)

(statements of House Representative Jim Ramstad and Secretary of the Treasury John Snow)

(emphasis added).

55.    On March 30, 2006, the Sixth Circuit denied the I.R.S.'s petition for an *en banc*

rehearing, "in alignment" with the three prior Circuit Court decisions that also rejected the I.R.S.'s position that "and" means "or." *OfficeMax, Inc. v. U.S.*, 428 F.3d 583 (6th Cir. 2005), *rehearing en banc denied*, ___ F.3d ___ (6th Cir. 2006). In addition, the Second Circuit issued an opinion on April 27, 2006 in favor of the taxpayer and in alignment with the other three Circuit Cases. Upon information and belief, the I.R.S. has not ceased its collection of the Communications Excise Tax or retracted Notice 2005-79, notwithstanding the recent decisions by the Second and Sixth Circuits and the testimony of Secretary Snow.

56.    The I.R.S.'s express and intentional disregard for the rulings of Article I and Article III Federal courts is arbitrary and capricious, contrary to law, and lacking good faith. Moreover, it constitutes a policy of non-acquiescence on the part of the I.R.S. that is repugnant to the separation of powers envisioned by, *inter alia*, the United States Constitution.

57.    Upon information and belief, the I.R.S.'s policy of collecting the Communications Excise Tax despite the decisions of the Federal courts, while requiring that refund claims be pursued through litigation on an individual basis, is calculated to delay and minimize refunds of unlawfully collected taxes by making the refund procedure unfairly adversarial and intimidating, uneconomical, and otherwise burdensome.

58.    By way of illustration, in a recent article U.S. Senator Charles Schumer is reported to have estimated that the average refund amount to which cell-phone customers in New York would be entitled for the past three years combined is approximately $54.00 per phone. A true and correct copy of this article is attached hereto as Exhibit 18 and is incorporated by reference herein. A phone customer seeking the average refund amount of $54.00 could do so only by undertaking an array of costly and time-consuming steps. Assuming that the taxpayer is even aware of his or her entitlement to a refund, the taxpayer must collect data regarding how much tax he or she has been billed for the preceding three years and prove that the bills in question were paid. After collecting this data from invoices or other sources, if available, the taxpayer must figure out the amount of his or her refund and the I.R.S. refund claims procedure

(or hire a tax or legal consultant to advise them); *i.e.* which refund form(s) must be completed, how to properly fill out these forms (which must be filed for *each quarter* for which refunds are sought), and where they are to be filed.  Class members must do this with the knowledge that their refund claims have already been effectively denied (or, at a minimum, indefinitely suspended).  If the taxpayer nonetheless wishes to pursue a refund, he or she must hire an attorney and incur the expense associated with litigating his or her claim in Federal court.  Once the taxpayer has prevailed in District Court or before the Federal Court of Claims, the taxpayer faces the prospect of an appeal (the I.R.S. has pursued appeals in every case it has lost to date).  Only after succeeding at the appellate level will the taxpayer finally receive (presumably) a refund, which at this point will be miniscule in comparison to the costs incurred to pursue  a costly and wholly impractical course of action.  The I.R.S.'s policy of imposing such unfair and improper barriers to refund of an illegal tax is arbitrary and capricious, contrary to law, and without a good faith basis.

59.      The I.R.S.'s suspension of the administrative process denies due process to Class members.  By suspending the administrative process and requiring taxpayers to bring suit in Federal court for a refund, the I.R.S. is delaying or shielding itself from refund obligations to class members that have been improperly subject to the tax, some of whom may have lost and may continue to lose refund rights by operation of the applicable limitations period.   Under the circumstances of this case, requiring class members to follow the I.R.S.'s costly and time consuming procedures amounts to an unconstitutional deprivation of property.

**The I.R.S.'s Actions Exceed The Limits Of Its Administrative Authority.**

60.      The I.R.S.'s interpretation of the Communications Excise Tax extends tax liability to communications services to which Congress did not intend or direct the law to apply; thus, the I.R.S.'s interpretation, if accepted, creates a new law.  Such law-making is improper, exceeds the limits of the I.R.S.'s authority, and unconstitutionally usurps legislative powers reserved for Congress.  Alternatively, the I.R.S.'s interpretation is tantamount to an agency rule-making that

is improper, exceeds the I.R.S.'s authority, and is unlawful and unconstitutional because the I.R.S. failed to observe the requisite notice, hearing and publication requirements.

61.     The I.R.S.'s unilateral suspension of the administrative process is improper, exceeds the limits of the I.R.S.'s authority, and is unconstitutional.

62.     The I.R.S. is bound by the decisions of the Federal courts. The I.R.S.'s election to disregard those decisions as they relate to the impropriety of the Communications Excise Tax being applied to non-distance sensitive toll telecommunications services is improper and far exceeds the I.R.S.'s administrative powers. Indeed, the decision of the I.R.S., an executive agency, to ignore a uniform directive of Article III Federal courts is repugnant to the separation of powers and judicial review principles of the United States Constitution.

63.     The underlying issues with respect to the application of the tax have sufficiently percolated through various district and circuit courts, all of which have ultimately ruled against the I.R.S. Additional toleration of non-acquiesence by the I.R.S. is not warranted, as the I.R.S. has no reasonable basis to believe that other Federal courts will reach a decision that is not adverse to the I.R.S.

64.     The continued collection of money from Plaintiffs and Class members under the guise of a tax that Congress has not authorized is a deprivation of property without due process of law, is done for an unascertainable or nefarious purpose, and is an uncompensated taking in violation of the Fifth Amendment to the United States Constitution. Extraordinary remedies are warranted in this case, as the non-acquiescence practices of the I.R.S. are without a legal basis and are undertaken in the absence of good faith.

## IV. JURISDICTION

65.     This court has subject matter jurisdiction over this action under 28 U.S.C. § 1346; 28 U.S.C. § 1331; 5 U.S.C. § 702; and 28 U.S.C. § 2201.

66.    The Court has personal jurisdiction over all parties in that Plaintiffs are United States citizens or otherwise consent to jurisdiction, and the Defendant is the United States government.

67.    Venue is proper in this Court under 28 U.S.C. §§ 1391, 1396 and 1402.

68.    No adequate remedy for the Plaintiffs' claims is available elsewhere.

69.    The claims for relief stated in this action are not barred by sovereign immunity.

### V. CLASS ACTION ALLEGATIONS

70.    Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following class:

> All taxpayers who have improperly paid money allegedly due on Communications Excise taxes that were not authorized by Congress, but excluding any taxpayer who has received a refund or has submitted a refund claim and chooses to pursue that refund on an individual basis (provided that appropriate administrative procedures for obtaining refunds are properly implemented). Also excluded from this class are all taxpayers who have a claim in excess of $10,000 and any Judge or Judicial officers to whom this case is assigned, and members of his or her immediate family.

71.    The Class includes *all* taxpayers that have been improperly subject to the Communications Excise Tax, whether they be cellular customers, long distance landline customers, or otherwise. If appropriate, the Court can divide the Class into sub-classes based upon the application of the Communications Excise Tax to particular types of telecommunications service.

72.    There are numerous questions of law and fact common to all members of the Class, including, but not limited to:

a.    Whether the Government is authorized to collect excise taxes on long distance and wireless telephone service where the charges for individual calls do not vary with distance;

b.    Whether the Government was and is legally entitled to require collection of this improperly assessed excise tax by long distance carriers;

c.    Whether the Government has repaid any of the excise tax illegally collected to taxpayers;

d.    Whether the Government's imposition of an excise tax without Congressional authorization deprives Plaintiffs and members of the Class of their property without due process of law in violation of the Fifth Amendment to the United States Constitution;

e.    Whether the collection of the illegal tax constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.

f.    Whether the continued collection of unauthorized and illegal excise tax constitutes a violation of the Fifth Amendment of the United States Constitution that should be enjoined as it is clear that under no circumstances will the United States ultimately prevail in its position that the tax is authorized.

g.    Whether the I.R.S. is bound by the decisions of the Article I and Article III Federal courts that have determined that the Communications Excise Tax has been improperly interpreted by the I.R.S.;

h.    Whether the Communications Excise Tax is entitled to be treated as a legitimate tax given:

    i.    the uniform rulings adverse to the I.R.S. declaring its imposition to be inconsistent with and unsupported by its statutory language and, thus, improper, and

    ii.    the fact that its collection has become discretionary inasmuch as Communication Service Providers have given taxpayers an opportunity to opt-out of payment of the Communications Excise Tax;

i.   Whether the I.R.S. has acted in complete disregard of the Tax Code;

j.   Whether Plaintiffs and class members have a right to relief;

k.   Whether the I.R.S. has a clear duty to act with respect to Plaintiffs and the members of the Class;

l.   Whether there is any other adequate remedy available to Plaintiffs and the members of Class;

m.   Whether the I.R.S. should be enjoined from imposing or collecting the Communications Excise Tax on toll service;

n.   Whether the I.R.S. should be required to refund to Plaintiffs and members of the Class all previously improperly collected Communications Excise Taxes, and to facilitate such refunds at no cost to Class members;

o.   Whether Plaintiffs and members of the Class are entitled to injunctive and declaratory relief against the I.R.S.; and

p.   Whether the Defendant's purpose for collecting the tax is unascertainable or nefarious.

73.     Plaintiffs' claims are typical of the claims of the members of the Class, as all Class members are similarly affected by Defendant's wrongful conduct.   Plaintiffs and all members of the Class have been – and continue to be – improperly subject to the Excise Tax, and the costs of pursuing an individual claim for a refund make it economically infeasible for members of the Class to pursue such claims.

74.     Plaintiffs will fairly and adequately protect the interests of the Class.   The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class. Plaintiffs have obtained counsel who are experienced in Federal agency litigation, Federal tax law, telecommunications services and regulation, and national class action practice.

75.     Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress of claims too small to be pursued through traditional methods of seeking and/or obtaining a tax refund.

76.     Class treatment is also appropriate because the Government has acted on grounds uniformly applicable to members of the Class, thereby making appropriate final injunctive and associated equitable relief with respect to the Class as a whole.

77.     Further, the questions of law and fact common to the members of the Class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between Plaintiffs and the Government.  In fact, a class action provides for the *only* practical, fair, and due process method for the resolution of this dispute.  As a class action is the only practical, fair, and due process method for members of the Class to obtain relief under these circumstances, it provides a superior method for the resolution of these claims.

78.     Joinder of all Plaintiffs and Class members, who are geographically dispersed and number in the tens of millions is impractical.  Furthermore, the expense and burden of other methods of seeking redress, including individual litigation makes it impractical and/or virtually impossible to redress the wrong done to Plaintiffs on an individual-by-individual claim basis.

79.     There will be no difficulty in the management of this action as a class action, as there are several practical and feasible methods for granting the requested relief to the Class. Awarding cash payments to members of the Class will not be unduly burdensome, as the identity and addresses of the Class members are maintained by the telephone companies that are required to collect the tax.  Alternatively, this Court could provide Plaintiffs and Class members with money by ordering the I.R.S. to credit taxes improperly collected on future toll service bills and/or income tax forms. In the event that it is not possible to determine the exact amount of restitution due to every member of the Class, there are various mechanisms available to provide reasonable estimates of the amount of money due to each member.  For instance, as there is a

rough correlation between gross income and phone usage, the refundable amounts could be proportionate to gross income of each taxpayer.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DUE PROCESS

80.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

81.     The Fifth Amendment to the United States Constitution prohibits the deprivation of property by the Government without due process of law.

82.     The United States Constitution delegates to the Congress the power to enact and impose taxes in compliance with the requirements of Article I of the Constitution.

83.     26 U.S.C. § 4251 *et. seq.* was enacted by Congress and imposes an excise tax on certain toll telephone service as specifically defined therein.

84.     Neither this provision nor any other act of Congress authorizes the Government to exact the excise tax collected from Plaintiffs that is at issue here.

85.     The Government has deprived Plaintiffs of their property without due process of law by exacting the excise tax at issue here without congressional authorization in violation of the Constitution.

86.     Plaintiffs are therefore entitled to the return and restitution of these monies illegally extracted by Defendant.

## SECOND CAUSE OF ACTION
## UNCONSTITUTIONAL TAKING

87.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

88.    The exaction of the excise "tax" constitutes a taking of the property of Plaintiffs and class members without just compensation in violation of the Fifth Amendment to the United States Constitution.

89.    Plaintiffs are thus entitled to reimbursement of the excise taxes they have paid, along with interest, as just compensation for this taking.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

90.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

91.    The Government has been unjustly enriched by its exaction of the excise tax at issue here without authorization by Congress.

92.    Each individual Plaintiff's claim does not exceed $10,000.

93.    Plaintiffs are thus entitled to reimbursement payment from the Government in the amount the Government has been unjustly enriched at the expense of the Plaintiffs.

## FOURTH CAUSE OF ACTION
## ILLEGAL EXACTION

94.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

95.     Plaintiffs and members of the Class improperly paid money to Defendant in contravention of the Constitution and/or tax code.

96.     Plaintiffs and members of the Class seek the return of the monies that were improperly paid, exacted, or taken by Defendant.

## FIFTH CAUSE OF ACTION
## EQUITABLE RELIEF/INJUNCTION

97.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

98.     The monies which have been, and continue to be collected by the Government from the Plaintiffs under the guise of the excise tax do not constitute a tax authorized by the Congress of the United States.

99.     The Government acknowledged as far back as 1979 that toll telephone service charged on a basis other than time and distance is not within the definition of service subject to tax pursuant to 26 U.S.C. § 4252(b)(1).

100.    In every instance in which the Government has litigated the issue of whether toll telephone service charged on a basis other than time and distance is subject to the tax provided in 26 U.S.C. § 4251, the Government has lost, and courts have uniformly found that there is no valid, authorized tax on toll telephone service that is charged on a basis other than time and distance.

101.    It is now clear that under no circumstances could the Government ultimately prevail in its position and, therefore, the attempted collection of the illegal tax may be enjoined.

102.    Equity dictates that an injunction issue immediately prohibiting the Government from collecting the illegal tax on wireless and long distance telephone service not charged by distance.

103.    The Anti-Injunction Act does not apply under the extraordinary circumstances of this case where the I.R.S. is acting in bad faith, where judicial review is an inadequate remedy, and where, unlike with income taxes, pre-payment review of the assessment of the tax is not available.

104.    In addition, Plaintiffs and members of the Class, who are taxpayers with damages of less than $10,000, will clearly suffer irreparable harm if an injunction does not issue. Due to the nature and expense of the administrative refund procedure relating to I.R.S. Form 8849, the Plaintiffs are highly unlikely to be aware of the procedure or to be willing to follow it given the amounts at issue. Furthermore, the combination of the Government's issuing regulations and forms adapted only to claims for refunds and credits by long distance carriers, not individuals, together with the Government's issuing I.R.S. Notice 2005-79 which bars processing of refund demands and which will keep carriers continuing their collection, further assures that Plaintiffs will forfeit their rights as to this tax. Plaintiffs and class members effectively have no remedy at law to seek the redress of their Constitutional rights. In fact, one can only infer by its actions that the Government is well aware of this fact and has continued to collect the tax knowing that it may be permitted to retain literally billions of dollars that it is currently, illegally, collecting. Certainly, under these circumstances, equity and public policy militate against this Court permitting the Government to reap the illicit windfall of this unauthorized tax without ever having to answer to those from whom it has illegally exacted this money.

105.    Issuance of an injunction prohibiting the continued collection of the "alleged tax" is dictated by the principles of equity.

**SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF**

106.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

107.    An actual controversy has arisen between the Plaintiffs and the Government as to whether the Government has the authority and right to assess a three percent excise tax on toll telephone service charged on a basis other than time and distance.

108.    The controversy does not involve a Federal tax insofar as due to circumstances, it is clear there is no likelihood that the Government will ultimately prevail in its position that the monies collected on toll telephone service charged on a basis other than by time and distance was, in fact, a valid tax.

109.    This Court should declare that the Government lacks the authority to assess an excise tax on toll telephone service charged on a basis other than by time and distance, and that the continued collection of this tax is improper because once this money is turned over to the I.R.S., taxpayers must file a refund which, under the circumstances of this case, does not provide Class members with an adequate remedy.

110.    Neither the Anti-Injunction Act nor the Declaratory Judgment Act prevents this Court from issuing a declaratory judgment under the unique circumstances present here.

**SEVENTH CAUSE OF ACTION**
**ADMINISTRATIVE PROCEDURE ACT:**
**AGENCY ACTION EXCEEDING AUTHORITY**

111.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

112.    The continued exaction and collection of the so-called tax at issue is "agency action" that exceeds the authority of the Government under 5 U.S.C. § 706.

## EIGHTH CAUSE OF ACTION
## ADMINISTRATIVE PROCEDURE ACT:
## AGENCY ACTION UNREASONABLY WITHHELD

113.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

114.    Section 7422 of the Internal Revenue Code provides that no suit for recovery of a tax illegally assessed or collected may be filed until a claim for a refund has been filed with the Secretary of the Treasury.  This provision is not self-executing, but expressly provides that such a claim must be brought according to regulations to be promulgated by the Secretary.

115.    The Secretary has not promulgated any regulations setting out the procedure by which taxpayers may claim a refund for illegal excise taxes collected by seller-distributors.  As previously described, in the wake of I.R.S. Notice 2005-79, carriers facing 26 C.F.R. 49.4291-1 and 301.6415-1 will not stop collecting the illegal tax on toll telephone service from individuals, nor seek refunds or credits for individuals.  The I.R.S. has issued Form 8849 for the general purpose of claiming excise tax refunds, but Form 8849 does not provide a means for refunds to be effectively claimed by or for the millions of affected individual taxpayers, particularly after I.R.S. Notice 2005-79.  Neither Form 8849 nor any other action by the Secretary or the I.R.S. implements Section 7422 of the Internal Revenue Code with respect to refund claims for an illegal toll telephone service tax advanced by a class of taxpayers.  Accordingly, § 7422 of the Internal Revenue Code has not yet been made effective with respect to refund claims for an illegal toll telephone service tax brought by a class of taxpayers due to inaction by the Secretary.

116.    The failure of the Secretary to promulgate regulations or any process by which the millions of aggrieved taxpayers may claim a refund of the aforementioned illegal "tax" constitutes agency action that has been unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706.

## NINTH CAUSE OF ACTION
### REFUNDS OF AMOUNTS IMPROPERLY AND
### ILLEGALLY COLLECTED BY DEFENDANT

117.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

118.    In the event that this Court concludes that Plaintiffs must exhaust an administrative refund process before maintaining this action, Plaintiffs in the alternative claim that they have exhausted such remedies and seek refunds of Communications Excise Taxes improperly collected by Defendant on behalf of the Class.    This Court has jurisdiction over Plaintiffs' refund claims, as Plaintiffs have timely filed a Claim for a Refund as required by 26 U.S.C. § 7422, which was denied prior to the commencement of this suit.    Indeed, the I.R.S. has expressly and implicitly made a decision to deny Plaintiffs' refund claims through its unambiguous pronouncement in Notice 2005-79, which continues to be in effect, by declaring its intention to halt the processing of refund claims for the Communications Excise Tax and to continue to litigate the legality of the tax.    The I.R.S. has also expressly refused to process the refund request filed by Krasney on behalf of himself and all similarly situated taxpayers.    *See* Exhibit 8.    Accordingly, Plaintiffs have satisfied the statutory prerequisites set forth in 26 U.S.C. §§ 6532 and 7422, and this Court has jurisdiction over the refund claims of Plaintiffs and members of the Class.

119.    Requiring any more for purposes of the exhaustion of administrative remedies – such as requiring members of the Class with claims that may be less than the costs associated with such an administrative process to proceed on an individualized basis – is an unconstitutional deprivation of property without due process of the law in violation of the Fifth Amendment to the United States Constitution.    Both Congress, by applying 26 U.S.C. § 6415, and the I.R.S., by applying Form 720 and its associated regulations and administrative manual sections (*Internal Revenue Manual*, section 4.24.8.2 (2003)) to the communications excise tax, have recognized the desirability of recoveries on behalf of taxpayers on an aggregate basis, to persons acting without

individual signed taxpayer authorizations, *i.e.*, carriers operating as collectors. The I.R.S.'s guidelines have declared, in all circumstances other than those of Notice 2005-79, not merely its acceptance, but its preference, for communications tax claims to be handled in the aggregate and without individual signed taxpayer authorizations, explaining "Generally, instead of claiming a refund, claims may be made on Schedule C of Form 720 [*i.e.*, by carriers, not taxpayers] as a credit against excise tax liability." *Internal Revenue Manual*, section 4.24.8.2 (2003). The I.R.S.'s regulations have thus opened the door to satisfying § 7422 on other aggregate bases. Moreover, the I.R.S. has itself recognized in this case the remedial operation of the so-called informal claim doctrine, which deems § 7422 satisfied by otherwise challengeable claims forms so long as the I.R.S. has adequate notice, the excise taxpayer Plaintiffs have paid their taxes and had valid returns filed (here, Form 720s), and a request has been filed (Krasney's request on his' and others' behalf) relating to those forms (*see* Exhibit 8, the I.R.S. response to the Krasney request, citing *Nucorp, Inc. v. United States*, 23 Cl. Ct. 234 (1991)).

120.    A denial of due process has occurred and will continue to occur, absent this Court's intervention, in the following ways:

   a.   The I.R.S. continues to collect the Communications Excise Tax despite the uniform judicial rulings declaring the tax to be improper;

   b.   The I.R.S.'s collection of the tax is an unlawful taking of property of Class members;

   c.   The I.R.S.'s administrative program for seeking and obtaining a refund does not alter the conclusion that collection of the tax is an unlawful taking of property without due process of law because:

      i.   the I.R.S. has suspended indefinitely the processing of refund claims and, indeed, has forced taxpayers to litigate refund claims; and

      ii.   the I.R.S.'s administrative refund procedure is too costly to implement for some Class members; thus, even if the refund procedure was

operational and timely administered it would effectively leave some Class members with no remedy to correct or recover their improperly taken property.

121.    Alternatively, and at a minimum, this Court should require the I.R.S. to notify all members of the Class that they are entitled to file for a refund (at the expense of the I.R.S.), and to provide these class members with a meaningful method by which to obtain refunds.

## TENTH CAUSE OF ACTION
## WRIT OF MANDAMUS

122.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

123.    Plaintiffs and all members of the Class have been improperly subject to the Communications Excise Tax and have a clear right to relief.  These taxpayers are collectively entitled to refunds of the excise tax improperly collected by the I.R.S.  They have a clear right to be free from the imposition of taxes that are not authorized by the statute and that have been consistently held to be inapplicable under the circumstances.

124.    Additionally, Plaintiffs and all members of the Class have a clear right to a meaningful administrative process whereby refund applications are promptly and meaningfully considered, and appropriate refunds expeditiously paid.

125.    The I.R.S. has a clear duty to act.  The I.R.S. is bound by the rulings of Article III Federal courts, and has a duty to act in conformity with those rulings.  The I.R.S. has a duty to properly administer the Federal tax laws.  The I.R.S. has a duty to refrain from abusing the tax laws or its administrative authority relative to the tax laws.  The I.R.S. has breached these duties and thus has a clear duty to refund the improperly collected excise tax and to promptly re-instate an administrative process to meaningfully facilitate those refunds.

126.    Plaintiffs and all members of the Class lack an adequate alternative remedy. Individual refund suits would not provide class members with adequate relief under the

circumstances of this case because:

     a.      the administrative process has been suspended;

     b.      the I.R.S.'s position has been predetermined (meaning that unless also directed to act in accordance with the opinions of the Federal courts, reinstatement of the administrative process would be futile);

     c.      individual suits in the Federal courts are grossly inefficient and cost-prohibitive to most taxpayers;

     d.      individual suits in the Federal courts are wasteful and unnecessarily burdensome and expensive even to taxpayers that can afford them;

     e.      millions of individual refund suits would be outrageously burdensome to the I.R.S. and to the Federal court system, resulting in a tremendous waste of private, agency, and judicial resources.

     f.      the I.R.S. has acted and continues to act in complete disregard of the Tax Code and the rulings of the Federal courts, and requiring a taxpayer to file a refund claim that the I.R.S. is "certain to lose" is an inadequate remedy as a matter of law; and

     g.      requiring individual suits for the requested relief under the circumstances here would be inequitable.

127.    A writ of mandamus requiring Defendant to (a) comply with the decisions of the Federal courts, in particular, their interpretation of relevant provisions of the Tax Code, (b) promptly reinstate the administrative refund process, (c) promptly process pending refund applications in accordance with that process, and (d) immediately develop and implement a Court-supervised program that will effect a refund to all persons who have paid the Communications Excise Tax, at no cost to such taxpayers and without the necessity of submission of a refund application. This is the only practical and efficient method by which

taxpayers can preserve their property and can defend themselves from the unreasonable position of the I.R.S.

128.    A writ of mandamus is warranted under the extraordinary and unique circumstances of this case.  A tremendous amount of judicial and administrative resources will be wasted unless the I.R.S. is finally ordered to stop its improper collection of the Communication Excise Tax prospectively.  By way of example, the taxpayer that successfully challenged the misapplication of § 4251 in the Eleventh Circuit was recently required to *re-file another refund action* to recover the taxes that have been improperly collected by the I.R.S. following that decision.  Requiring taxpayers – including those that have already been awarded refunds – to continuously file and re-file refund lawsuits against the I.R.S. where the I.R.S. is certain to lose in every instance warrants the issuance of a writ of mandamus to stop this reckless behavior.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a.    Certify the Class as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

b.    Adjudge and decree that Government's conduct as described herein, violated the Fifth Amendment of the United States Constitution.

c.    Order the return to members of the Class of any and all monies in the possession of the I.R.S. that were illegally collected as an alleged tax on toll telephone service charged on a basis other than by time and distance, plus interest.

d.    Order the Government to provide an accounting by taxpayer of all monies illegally collected from March 15, 2000 to present.

e.    Reimburse Plaintiffs in amounts to be determined at trial or, where applicable, to the full extent allowed by law.

f.    Award pre-judgment interest to Plaintiffs and class members to the fullest extent allowed by law.

g.    Award Plaintiffs the costs of bringing this action, including the payment of reasonable attorneys' fees;

h.    Declare that the Government lacks the authority to collect or retain monies as a percentage of bills for toll telephone service charged on a basis other than time and distance;

i.    Order the Secretary of the Treasury to promulgate regulations providing a procedure by which a class of taxpayers may seek a refund of wrongfully exacted excise taxes;

j.    Issue a temporary restraining order followed by a permanent injunction prohibiting the Government from collecting monies under the guise of a tax as a percentage of bills for toll telephone service charged on a basis other than time and distance;

k.    Impose a constructive trust for the benefit of the Plaintiffs on all monies currently held or collected after the date of this Complaint as a result of the Government's collection of monies as a percentage of bills for toll telephone service charged on the basis other than time and distance; and

l.    Award members of the Class with refunds of the amounts of past Communications Excise Taxes improperly collected by the I.R.S., along with statutory interest.

m.    Issue a writ of mandamus on behalf of the Class compelling the I.R.S. to:

    i.    comply with the decisions of the Federal courts, in particular, their interpretation of relevant provisions of the Tax Code;

    ii.    cease the collection of the Communications Excise Tax;

      iii.     reinstate the administrative refund process and promptly process refund applications in accordance with that process; and

      iv.     promptly adopt and implement a refund procedure having the objective of repaying to members of the Class all amounts paid to the I.R.S. as a Communications Excise Tax, without cost to the taxpayer or the necessity of filing a refund application.

n.     If and to the extent that relief is granted on a class-wide basis, award the payment of reasonable attorneys' fees on behalf of the Class. Alternatively, Plaintiffs seek to be awarded reasonable administrative and litigation costs (including attorney's fees) at a premium over the statutory rate, as the position of the I.R.S. is not "substantially justified" for purposes of 26 U.S.C. § 7430(c)(4)(B).

o.     Issue a declaratory judgment with respect to the Class that:

      i.     the I.R.S. is bound by the decisions of the Federal courts, in particular, their interpretation of relevant provisions of the Tax Code;

      ii.     the I.R.S. has exceeded its authority by improperly collecting the Communications Excise Tax from Class members; and

      iii.     the continued collection of the Communications Excise Tax from members of the Class is improper because the I.R.S.'s refund procedure is unfeasible for Class members;

p.     Grant such other relief as the Court deems just and proper.

(Signature on next page)

CUNEO GILBERT & LADUCA, LLP

Dated: _May 2, 2006_     By: _Jonathan W. Cuneo_

Jonathan W. Cuneo, Esquire (DC Bar# 939389)
Charles J. LaDuca, Esquire  (DC Bar# 476134)
Steven N. Berk, Esquire (DC Bar# 432870)
William H. Anderson, Esquire
507 C Street, NE
Washington, DC 20002
(202) 789-3960

Christopher Weld, Jr., Esquire
TODD & WELD LLP
28 State Street
Boston, MA  02109
(617) 720-2626

Robert J. Cynkar, Esquire  (DC Bar# 957845)
EGAN, FITZPATRICK, MALSCH & CYNKAR, PLLC
8300 Boone Boulevard, Suite 340
Vienna, VA  22182
(703) 891-4050

Professor Charles Tiefer  (DC Bar# 330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, MD  20815
(301) 951-4239

Henry D. Levine, Esquire (DC Bar # 952770)
Stephen J. Rosen, Esquire (DC Bar # 441942)
LEVINE, BLASZAK, BLOCK AND BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, D.C.  20036

Nicholas E. Chimicles, Esquire
Benjamin F. Johns, Esquire
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
(610) 642-8500

R. Montgomery Donaldson, Esquire
Stephen A. Madva, Esquire
MONTGOMERY, McCRACKEN, WALKER
& RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware  19801
(302) 504-7800