# EXHIBIT 13



**CHIMICLES & TIKELLIS LLP** has law offices in Haverford, PA and Wilmington, DE. and concentrates in the area of complex litigation, with an emphasis on securities, antitrust, consumer, ERISA and environmental litigation. As a group, the Partners in Chimicles & Tikellis have significant substantive experience in the prosecution of class action and derivative litigation in state and federal trial and appellate courts across the country, including the United States Supreme Court and the highest courts of more than 20 states. The Firm is comprised of seven Partners, four Of Counsel and eleven Associates. The Firm also works closely with a number of experts and consultants in the financial, forensic accounting and investigative fields. The Firm's e-mail is MAIL@CHIMICLES.COM and its website is WWW.CHIMICLES.COM

**NICHOLAS E. CHIMICLES** is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors. Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments. While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law. Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in United States v. Pfizer, Inc., (Antibiotics Antitrust Litigation), Civil Action No. 78-1155 (E.D. Pa.); Penn Galvanizing Co. v. Lukens Steel Co., Civil Action No. 71-1777 (E.D. Pa.); Wolgin v. State Mutual Investors, 265 Pa. Super. 525, 402 A.2d 669 (1979); Beta Consultants & Administrators v. Centennial Life Ins. Co., unreported opinion by Judge Newcomer (E.D. Pa. 1980); and R. & M. Musselman, Inc., et al. v. Line Lexington Lumber & Millwork, Inc., C.A. 727458-02-1 (Bucks Co. 1981).

As a name partner in his own firm since 1981, Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. In re Real Estate Associates Limited Partner-

ships Litigation, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury, after hearing testimony from more than 25 witnesses and viewing in excess of 500 exhibits, returned an unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10" Verdicts of 2002, as reported by the National Law Journal (verdictsearch.com), and stands as the largest jury verdict in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. Mr. Chimicles was assisted at trial by Partner Kimberly Donaldson. Other Firm professional staff members who provided invaluable assistance to the result in this landmark decision were Kathleen P. Chimicles, the Firm's financial specialist, who worked with and assisted plaintiffs' expert witnesses and consultants; and associates Candice L.H. Hegedus and M. Katherine Meermans. Following post-trial motions, the Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in prejudgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, approximately $90 million on Count II and $30 million on Count I. The Real Estate Associates judgment was settled by an agreement approved by the Court in November 2003, providing for the payment of a total of $83 million, of which $48 million was paid immediately and the balance of $35 million will be paid in 5 equal annual installments of $7 million per year between 2004 and 2008.

In other federal securities fraud cases, Mr. Chimicles served as a Lead Counsel in the Hercules Securities Litigation, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); Scott Paper Securities Litigation, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); Sunrise Savings & Loan Securities Litigation, MDL No. 655 (E.D. Pa.) ($15 million recovery); Storage Technology Corp. Securities Litigation, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); In re: Fiddler's Woods Bondholders Litigation, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial

development bond issue (recovery of more than $7 million for the class); and Charter Securities Litigation, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million). He served as a Lead Counsel for the shareholder class in the Continental Illinois Securities Litigation, Civil Action No. 82 C 4712 (N.D. Ill.), one aspect of which involved a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the class ultimately recovered nearly $40 million).

By virtue of the Fiddler's Woods litigation (in which Mr. Chimicles also represented the court-appointed Receiver), his representation of the Bondholders' Protection Committee for the Baptist Estates Life Care Facility (Doylestown, PA), a $15 million tax-exempt bond issue which defaulted, and his representation of bond-holders in other litigation in Atlanta, Orlando and New Jersey arising from defaulted bond issues aggregating over $135 million, Mr. Chimicles established a national reputation for representing the interests of bondholders in default situations.

In another specialized area of securities litigation, involving the recovery of losses incurred by purchasers and holders of units in public limited partnerships, Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for class members, in addition to the Real Estate Associates Limited Partnership Litigation, discussed above, Mr. Chimicles was a member of the Executive Committee in the Prudential Limited Partnerships Litigation, MDL 1005 (S.D.N.Y.), where the class recovered $130 million in settlement from Prudential and other defendants in a settlement approved by Judge Milton Pollack in November 1995. Mr. Chimicles was lead counsel in the PaineWebber Limited Partnerships Litigation, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. Distributions to class members in the PaineWebber case were made in 1998 and supplemental distributions under the settlement were made in 2003. Final distributions to class members are expected in the future. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Federal District Court in Delaware, Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. Those settlements were approved by the district court in July 1998. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provides both monetary ($6.6 million) and equitable (extension of the partnerships' lives) relief for the limited partners. In

February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates. (In Re Phoenix Leasing Incorporated Limited Partnership Litigation, Superior Court of the State of California, County of Marin, Case No. 173739). The settlement resulted in the payment of more than $21 million in cash (part of which is to be collected from assets of the defunct insurer, Reliance Insurance Company) in settlement of breach of fiduciary duty claims.

Mr. Chimicles has represented limited partners who successfully have sought and secured the liquidation of their partnerships' assets or the reorganization of the partnership. For example, in In re the Mendik Real Estate Limited Partnership, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. The settlement was approved in late 1998 and the limited partners have received their liquidation proceeds. As co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement, approved by the Delaware Chancery Court in 2000, of a suit filed against the general partners of Aetna Real Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in numerous suits brought in courts across the country arising from proposed mergers, acquisitions and hostile takeovers. For example, in Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a Lead Counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King, a device sought to be used by Pillsbury's board to ward off Grand Metropolitan's takeover. In numerous other cases, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in the context of a takeover or going private transaction. Randee L. Shantzer, et al. v. Charter Medical Corp., et al., Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; In Re Interstate Bakeries Corporation Shareholders Litigation, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a Lead and Co-Lead Counsel in numerous class suits.  He was Co-Lead Counsel in the Travel Agency Commission Antitrust Litigation, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts.  The case was settled in late 1996 for more than $80 million.  Mr. Chimicles was also Co-Lead Counsel in the Insurance Antitrust Litigation, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts.  The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court.  In re Insurance Antitrust Litigation, 938 F.2d 919 (9th Cir. 1991); aff'd sub nom.  Hartford Fire Insurance Co. v. California, _ U.S. _, 113 S.Ct. 2891 (1993).

Mr. Chimicles was also lead counsel in Crawford's Auto-Center v. Automatic Data Processing, Inc., C.A. No. 97-CV-2085 (E.D. Pa.), an antitrust class action that was settled for more than $5 million in cash and other valuable consideration.  The settlement, which was approved by the court in March 1999, provides among other items of relief that an auto parts interchange license agreement (that was negotiated as part of the settlement) would be made available to class members.

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings.  In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, In re Standard Metals Corp., 817 F.2d 625 (10th Cir.), rev'd in part on rehearing, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, In re the Charter Company, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants.  He was Lead Counsel in the Philadelphia Electric Company Securities Litigation, Master File No. 85-1878 (E.D. Pa.) and a Lead Counsel in the Consumers Power Company Derivative Litigation, Master File No. 84-CV-3788 AA (E.D. Mich.).  Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach

Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. In re Philadelphia Electric Company Derivative Litigation, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a Co-Lead Counsel in a major environmental litigation, Ashland Oil Spill Litigation, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm is involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as Special Counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. City of Philadelphia, et al. v. Lead Industries Ass'n, et al., Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School - Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is the author of numerous articles including an article co-

authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the <u>New York Law Journal</u>, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and <u>The Securities Case: The Plaintiff's Perspective</u>, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).

Mr. Chimicles is the past President of the National Association of Securities and Commercial Law Attorneys (1999-2001) based in Washington, D.C., the Chairman of the Public Affairs Committee of the American Hellenic Institute, also based in Washington, D.C., and is a member of the board of directors of the Opera Company of Philadelphia and Pennsylvanians for Modern Courts. He received the prestigious Ellis Island Medal of Honor in May 2004, in recognition of his professional achievements and history of charitable contributions to educational, cultural and religious organizations.

***PAMELA S. TIKELLIS*** is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as Liaison Counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as Lead Counsel in <u>Home Shopping Network Shareholders and Securities Litigation</u>, (Civil Action No. 93-406; Court of Chancery Consolidated Civil Action No. 12868; Delaware

District Court Civil Action No. 93-336 (MMS) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as Lead Counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of a proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (In re Cyprus Amax Shareholders Litigation, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of Lead Counsel representing a class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (First Interstate Bancorp Shareholders Litigation, Consolidated Civil Action No. 14623).

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and their stockholders. Sanders v. Wang, No. 16640 (Delaware Court of Chancery), was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001).

In the limited partnership arena, Ms. Tikellis along with partner Mr. Chimicles has actively and successfully prosecuted several cases including ML Lee Acquisition Fund L.P. and ML-Lee Acquisition Fund II L.P. and ML-Lee Acquisition Fund (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with Mr. Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (Aetna Real Estate Associates, L.P., Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the year of 2002 and 2003, Ms. Tikellis argued successfully three appeals in the Delaware Supreme Court. She argued *en banc* to the Delaware Supreme Court in <u>Saito v. McKesson Corporation</u>, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by Plaintiff. Importantly, the documents ultimately received in the books and records *Saito* case have resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors and discovery is ongoing in that derivative suit. <u>Saito v. McCall</u> pending in the Court of Chancery, Civil Action No. 17132. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlements provide for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

Most recently, in a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. <u>Krasner v. Moffett</u>, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the class was approved by the Court of Chancery on April 20, 2006.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware. In addition, Ms. Tikellis is President of the Delaware chapter of the International Network of Boutique Law Firms.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practicing Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics.   She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights.

**JAMES R. MALONE, JR.** is a partner in the law firm of Chimicles & Tikellis.  Mr. Malone is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeal for the First, Third, Fifth, Sixth, Seventh, Ninth and D.C. Circuits and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California, and the Eastern District of Michigan.  Mr. Malone is a 1984 *cum laude* graduate of the Villanova University School of Law where he was a staff member on the Villanova Law Review and was elected to the Order of the Coif.   Upon graduation from law school, Mr. Malone was associated with a major Philadelphia law firm where he concentrated in bankruptcy and commercial litigation.

Mr. Malone has substantial experience in the securities field.  With his former partner, Oliver Burt, he served as co-lead counsel in Hoexter v. Simmons, Civ. No. 89-1069-PHX-RCB (D. Ariz.) in which a $10.8 million settlement was achieved.  In Serabian v. Amoskeag Bank, 24 F.3d 357 (1st Cir. 1994), Mr. Malone successfully argued for the reversal of a district court order dismissing a securities complaint in a case involving deceptive financial reporting by a New Hampshire bank holding company.   Mr. Malone served as co-lead counsel in Winsor v. Holgerson, No. 89-2507 (PBS) (D. Mass.), a case involving the accounting practices of a failed savings bank, in which a $12.5 million settlement was reached.  Mr. Malone has been active in cases involving public offerings of limited partnerships; he served as lead counsel in In re Jiffy Lube Insured Income Partners Securities Litigation. Civil Action No. 10828 (Del. Ch.).   The settlement resulted in limited partnership investors receiving the full amount of their initial investment.  He has also been active in transactional cases, such as limited partnership roll-ups, and in shareholder derivative actions.   Currently, he is active in DeBenedictis v. Merrill Lynch & Co., Inc., No. 04-404 (JLL)(D.N.J.), a class action challenging the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

In the area of consumer litigation, Mr. Malone was a member of the Executive Committee in In re Advanta Credit Card Terms Litigation, MDL Docket No. 1233, a consumer case brought on behalf of credit card holders. The case resulted in a settlement of $ 7.25 million dollars that also provided for substantial reductions in rates for credit card holders. Along with his partner, Michael Gottsch, Mr. Malone was active in Flannick v. First Union Home Equity Bank, N.A., No. 98-6080, an action brought under the National Bank Act against a home equity lender, which resulted in a substantial recovery.

In the field of ERISA litigation, Mr. Malone served as co-lead counsel in In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996), in which he successfully argued for the reversal of a district court order granting summary judgment in an ERISA class action arising out of the failure of the Executive Life Insurance Company. The case was the first appellate decision addressing Section 404(c) of ERISA and the liability of fiduciaries in certain individual account plans. Mr. Malone served as counsel in Corcoran v. Bell Atlantic Corporation, 97-cv-510 (E.D. Pa.) an ERISA class action challenging the conversion of a defined benefit pension plan into a cash balance plan. The case involved issues relating to the calculation of accrued benefits under ERISA's vesting standards and the elimination of early retirement benefits. He is currently active in In re Lucent Death Benefits Litigation, No. 2:03-5017(WGB)(D.N.J.), which challenges Lucent's elimination of spousal death benefits for retirees that were funded as part of a defined benefit pension plan, and in Charles v. Pepco Holdings, Inc., No. 05-702-SLR (D. Del.), a class action challenging the conversion of a traditional pension plan to a cash balance plan.

Mr. Malone has been involved in a variety of different antitrust actions in both state and federal court. He was active in indirect purchaser actions arising out of price-fixing in the market for sorbates pending in Tennessee and Wisconsin; the resolution of these cases resulted in substantial recoveries by indirect purchasers. Mr. Malone was also active in In re Microsoft Antitrust Litig., MDL No. 1332, and in In re Buspirone Antitrust Litigation, MDL No. 1413, where he served in a variety of roles. Mr. Malone is currently active in In re Plavix Indirect Purchaser Antitrust Litigation, No. 06-226 (S.D. Ohio), and in In re Intel Corp. Microprocessor Litigation, MDL No. 1717 (D. Del.).

Mr. Malone served as co-lead counsel in Gersenson v. Pennsylvania Life & Health Insurance Guaranty Association, April Term 1994, No. 3468, an insurance insolvency class action brought under the Pennsylvania Life & Health Insurance Guaranty Association Act. In June 1998, the Philadelphia Court of

Common Pleas granted summary judgment in favor of the plaintiff class in the amount of $16.5 million dollars. Mr. Malone successfully argued the resulting appeal and successfully opposed the defendant's petition for allocatur before the Supreme Court of Pennsylvania.

Mr. Malone is a member of The Philadelphia Bar Association, and is active on its cy pres committee, which works to assure that unclaimed class settlement funds are put to appropriate charitable uses.

***MICHAEL D. GOTTSCH***, is a partner in the Firm's Haverford office. Mr. Gottsch is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Courts of Appeals for the Third and Ninth Circuits. He is a graduate of Temple University School of Law (J.D. 1983) and Marquette University (B.S. 1977). From 1986 to 1987 he served as a Law Clerk to the Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey.

***ROBERT J. KRINER, JR.*** is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of The Delaware Journal of Corporate Law. From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner's practice focuses primarily on business litigation on behalf of investors. Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Mr. Kriner prosecuted the Home Shopping Network, McKesson and Moffett matters along with Ms. Tikellis. In addition, Mr. Kriner represented holders of Series B stock of Litton Industries in Myers and Koehler v. Litton Industries, Inc., et al., C.A. No. 18947-NC in connection with the short form merger cash out of the Series B stock in 2001. The short form merger price was $35 per share. Mr.

Kriner negotiated a settlement of the claims which provided an additional $1.84 per share to the Series B holders.

Mr. Kriner also was on the trial team in <u>Gelfman, et al. v. Weeden Investors, L.P.</u>, et al., C.A. No. 18519-NC, which was tried in the Delaware Court of Chancery and resulted in a judgment in favor of the limited partners represented by Mr. Kriner. In <u>Weeden</u>, the limited partners represented by Mr. Kriner asserted that dilution and a cash out of their interests at a book value of $4.20 per Unit was unfair and in violation of the Partnership Agreement and the General Partner's fiduciary duties. After trial, the Court agreed, concluding the value of the interests was $20.92 per Unit, 4.98 times that paid on the cash out plan, and awarded damages to the limited partners.

Mr. Kriner represented the public limited partners in <u>I.G. Holdings, Inc., et al. v. Hallwood Realty LLC, et al.</u>, C.A. No. 20283-NC, in an action challenging the defensive response of the General Partner of Hallwood Partners LP to a premium tender offer by an affiliate of Carl Icahn in 2003. Mr. Kriner led the litigation on behalf of the public limited partners through expedited injunction proceedings and an expedited trial which led to the General Partner's agreement to auction and sell the Partnership. The sale of the Partnership resulted in a per unit price of $136.70 to the limited partners, as compared to the trading range for the Units of $60 - $80 prior to the litigation.

Recently, Mr. Kriner was one of the co-lead counsel in actions brought on behalf of the public stockholders of Chiron Corporation challenging the buyout of Chiron by its 42% parent, Novartis AG. Novartis initially proposed a buyout at $40 per share and thereafter entered into a merger agreement to acquire Chiron for $45 per share. Mr. Kriner and his co-counsel moved preliminarily to enjoin the merger pending a proper process to maximize value and full disclosure to the stockholders. After completion of briefing on the injunction motion, an agreement in principle was reached for a settlement of this litigation which includes, among other things, an increase in the merger price to $48 per share, or an aggregate increase of over $330 million for the public stockholders.

Mr. Kriner is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

***STEVEN A. SCHWARTZ***, a Partner in the Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts

of Pennsylvania and the Eastern District of Michigan, and the United States Court of Appeals for the Third Circuit. He is a graduate of the Duke University School of Law (J.D. 1987) where he served as a senior editor of Law & Contemporary Problems. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader, Harrison, Segal & Lewis, LLP, a major Philadelphia firm, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Most recently, he served as Co-Lead Counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the class members' recovery.

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represents various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In In Re Coin Fund Litigation, (Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs Co-Lead Counsel in In re Veritas Software Corp. Derivative

Litigation (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5-1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' Co-Lead Counsel in the Pennexx Securities Litigation, (E.D. Pa.) and Liaison Counsel in In Re DVI Securities Litigation, (E.D. Pa.).

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in Wolens, et al. v. American Airlines, Inc. In that class action, plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $ 141.6 million. Mr. Schwartz also represented a national class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %.

In the environmental field, Mr. Schwartz played a significant role as part of a large team of plaintiffs' counsel who prosecuted the claims of fisherman, property owners, and Native Americans who were injured as a result of the Exxon Valdez oil spill. The trial of that case resulted in a jury verdict in excess of $5.3 billion. Appellate proceedings in the 9th Circuit Court of Appeals are still ongoing.

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/physical medicine services provided to its insureds. Nationwide agreed to pay class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking

interest for overdue bills for treatment provided to insureds of SEPTA and Progressive Insurance Company.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in In re Pennsylvania Diet Drugs Litigation, (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination.

**KIMBERLY M. DONALDSON**, a Partner in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, and the United States District Courts for the Eastern District of Pennsylvania and District of New Jersey. Ms. Donaldson is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau, Consumer Protection Division.   Ms. Donaldson's practice includes the representation of investors (shareholders and limited partners) and consumers in major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Ms. Donaldson was the principal trial assistant to Mr. Chimicles during the trial of the Real Estate Associates Limited Partnership Litigation, which resulted in a jury verdict totaling $185 million in November 2002, following a six week trial.  (For more details see Mr. Chimicles' biography at page 1-2).

**MORRIS M. SHUSTER**, Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954).

Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions

against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider reappointment of a U.S. Magistrate.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Chairperson of the Judicial Commission, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, and Committee on Civil Judicial Procedure (state courts). He is listed in Who's Who in American Law.

*DENISE DAVIS SCHWARTZMAN*, Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in In re Charter Company, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in Ashland Oil Spill Litigation, Master file M-14670 (W.D. Pa), In re Sunrise Securities Litigation, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation

Committee in <u>Prudential Securities Incorporated Limited Partnership Litigation</u>, MDL 1005 (S.D.N.Y.). Ms. Schwartzman represented the firm on the plaintiffs' Co-Lead Counsel Committee in <u>Spitzer v. Abdelhak</u>, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in <u>In re Mutual Funds Investment Litigation</u>, MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families. Prior to relocating in Philadelphia, she was associated with a major law firm in San Antonio, Texas.

***ANTHONY ALLEN GEYELIN***, Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the <u>Villanova Law Review</u>, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

***CANDICE L.H. HEGEDUS***, Of Counsel, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College *cum laude* (B.A. 1974). Prior to joining the Firm, she practiced with major Philadelphia litigation firms. The focus of her practice is complex

litigation, including securities fraud and limited partnership cases behalf of shareholders and antitrust matters. Ms. Hegedus was a member of the team who litigated <u>In Re Real Estate Associates Limited Partnership Litigation</u>, No. CV-98-7035 (Federal District Court, Los Angeles), a case brought for violation of federal securities laws. Following a six-week trial in November 2002, the jury returned a $185 million plaintiffs' verdict, the first verdict awarding substantial monetary damages since the passage of the Private Securities Litigation Act of 1995.

**TIMOTHY P. BRIGGS**, an associate in the Haverford office, is admitted to practice before the Supreme Court of Pennsylvania. He is a graduate of the Temple University Beasley School of Law (J.D. 2005) and received his undergraduate degree in Political Science from West Chester University (B.A., 1992). Prior to joining the firm, Mr. Briggs enjoyed a long and distinguished career in the political arena. Mr. Briggs had served in senior positions with U.S. Congressmen Joseph Hoeffel (PA) and Bill Pascrell (NJ) as well as Pennsylvania State Senator Connie Williams.

**DANIEL J. BROWN**, an associate in the Wilmington Office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. Mr. Brown received his J.D., *magna cum laude,* in 2005 from Widener University School of Law, where he served as an Articles Editor for the *Delaware Journal of Corporate Law.* While in law school, Mr. Brown was a recipient of the prestigious Wolcott Fellowship, in which he served as a law clerk for the Honorable Myron T. Steele, Chief Justice, of the Delaware Supreme Court. Mr. Brown received his B.A. in psychology from Villanova University in 2001.

**FATEMA E.F. BURKEY,** an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the Washington University Law Quarterly and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).

**ROBERT R. DAVIS,** a former associate in the Wilmington office, is admitted to practice before the Supreme Court of Delaware and the Supreme Court of Pennsylvania. He is a 2003 graduate of William and Mary, where he received his J.D. and Master's in Public Policy. Mr. Davis received his undergraduate

degree from Appalachian State University in 1999. Prior to joining the firm, Mr. Davis served as a law clerk for the Honorable Joseph J. Farnan, Jr. of the United States District Court for the District of Delaware.

**BENJAMIN F. JOHNS**, an associate in the Haverford office, is admitted to practice before the United States Court of Appeals for the Third Circuit, the District Court for the Eastern District of Pennsylvania, the District Court for the District of New Jersey, as well as the Supreme Courts of Pennsylvania and New Jersey. He is a graduate of the Penn State Dickinson School of Law (J.D. 2005), the Penn State Harrisburg School of Business Administration (M.B.A. 2004, Beta Gamma Sigma), and Washington and Lee University (B.S. 2002, *cum laude*). While attending law school, Mr. Johns was a member of the Woolsack Honor Society and Irving R. Kaufman Securities Moot Court Team. He is a member of the Philadelphia Bar Association and the Association of Trial Lawyers of America.

**KIMBERLY M. LITMAN**, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She is a graduate of the Temple University Beasley School of Law (J.D. 2003) and received her undergraduate degree in Psychology from the University of Maryland at College Park (B.A. 2000). While in law school, she served as Executive Editor of the Temple Political & Civil Rights Law Review and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Litman's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program, a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal problems in Philadelphia.

**TIMOTHY N. MATHEWS**, an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. *magna cum laude* 2003) and Rutgers University-Camden (B.A. *summa cum laude* 2000). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the Rutgers Journal of Law & Religion and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition. Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, and shareholder derivative litigation. He is an active member of the Firm's litigation team in In re Mutual Funds Investment Litigation (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in

eighteen mutual fund families and involving hundreds of parties. Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and the United States District Court for the Eastern District of Pennsylvania.

*MARY KATHERINE MEERMANS*, an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.

*A. ZACHARY NAYLOR*, an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication. Mr. Naylor is admitted to practice before the Supreme Court of the State of Delaware, the United States Court of Appeals for the Third Circuit and United States District Court for the District of Delaware.

*JOSEPH G. SAUDER,* an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of New Jersey. Mr. Sauder received his B.S., *magna cum laude* in Finance from Temple University in 1995 and his J.D. from Temple University School of Law in 1998, where he was a member of *Temple Law Review*. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies. His pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

*DANIEL B. SCOTT*, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit and the United States District Courts

for the District of New Jersey, Eastern District of Pennsylvania and Eastern District of Michigan. He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow, Order of Barristers, Order of Emory Advocates) and Pennsylvania State University (B.S. Economics 1991, *with Distinction*, University Scholar). His practice includes the representation of companies, investors and consumers in complex antitrust, securities and consumer protection litigation. In <u>In re Pennsylvania Baycol Third Party Payor Litigation</u>, a class action in Philadelphia Court of Common Pleas for which Chimicles & Tikellis serves as co-lead counsel, Mr. Scott was instrumental in helping obtain partial summary judgment on liability in favor of one of the firm's clients. This is the first and only judgment to be entered against Bayer in the United States in connection with the withdrawal of Baycol. Mr. Scott also materially assisted in briefing a motion for class certification in that case, resulting in the certification of one of the few national class actions involving third party payors to be certified in a state court. Shortly before trial, the firm reached a settlement with Bayer in which Bayer agreed to pay class members a net recovery that approximates their maximum damages. His *pro bono* activities include the representation of a political asylum applicant in the Third Circuit.


      ***KATHLEEN P. CHIMICLES, ASA***, the Firm's Financial Specialist between 1992 and 2005, and currently a consultant to the Firm, is a graduate of Drexel University (B.S. Finance 1983) and Villanova University (Master of Taxation 1992). Ms. Chimicles is a Senior Member of the American Society of Appraisers. Before leaving the Firm to pursue other business interests, Ms. Chimicles played a significant role in some of the Firm's landmark cases, including <u>Real Estate Associates Limited Partnerships Litigation</u>, <u>PaineWebber Limited Partnerships Litigation</u> and <u>Prudential Limited Partnerships Litigation</u>. In each of these cases, Ms. Chimicles coordinated the efforts of plaintiffs' experts' witnesses including assisting in the preparation of expert reports in connection with depositions and trial. Prior to joining the Firm, Ms. Chimicles was a Vice President of the investment bank, Howard, Lawson & Co., where she had responsibility for a broad range of corporate finance assignments. Ms. Chimicles nee Balon has co-authored several articles, including "Giving the Company Away (While Keeping the Benefits)," <u>Lawyer's Digest</u>, March 1987, "Leveraged ESOPs - Buyers of Companies," <u>Lawyer's Digest</u>, May 1988, and together with Mr. Chimicles, "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform," the <u>New York Law Journal</u>, August 26, 1993. Ms. Chimicles has also served as a panelist at various seminars and conventions regarding financing and valuation issues.

II

109TH CONGRESS
1ST SESSION

# S. 908

To allow Congress, State legislatures, and regulatory agencies to determine appropriate laws, rules, and regulations to address the problems of weight gain, obesity, and health conditions associated with weight gain or obesity.

---

## IN THE SENATE OF THE UNITED STATES

APRIL 26, 2005

Mr. McCONNELL introduced the following bill; which was read twice and referred to the Committee on the Judiciary

---

# A BILL

To allow Congress, State legislatures, and regulatory agencies to determine appropriate laws, rules, and regulations to address the problems of weight gain, obesity, and health conditions associated with weight gain or obesity.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4        This Act may be cited as the "Commonsense Con-

5    sumption Act of 2005".

6    **SEC. 2. FINDINGS; PURPOSE.**

7        (a) FINDINGS.—Congress finds that—

2

1        (1) the food and beverage industries are a sig-
2    nificant part of our national economy;

3        (2) the activities of manufacturers and sellers
4    of foods and beverages substantially affect interstate
5    and foreign commerce;

6        (3) a person's weight gain, obesity, or a health
7    condition associated with a person's weight gain or
8    obesity is based on a multitude of factors, including
9    genetic factors and the lifestyle and physical fitness
10    decisions of individuals, such that a person's weight
11    gain, obesity, or a health condition associated with
12    a person's weight gain or obesity cannot be attrib-
13    uted solely to the consumption of any specific food
14    or beverage; and

15        (4) because fostering a culture of acceptance of
16    personal responsibility is one of the most important
17    ways to promote a healthier society, lawsuits seeking
18    to blame individual food and beverage providers for
19    a person's weight gain, obesity, or a health condition
20    associated with a person's weight gain or obesity are
21    not only legally frivolous and economically dam-
22    aging, but also harmful to a healthy America.

23    (b) PURPOSE.—The purpose of this Act is to allow
24 Congress, State legislatures, and regulatory agencies to
25 determine appropriate laws, rules, and regulations to ad-

3

1  dress the problems of weight gain, obesity, and health con-

2  ditions associated with weight gain or obesity.

**3  SEC. 3. PRESERVATION OF SEPARATION OF POWERS.**

4      (a) IN GENERAL.—A qualified civil liability action

5  may not be brought in any Federal or State court.

6      (b) DISMISSAL OF PENDING ACTIONS.—A qualified

7  civil liability action that is pending on the date of the en-

8  actment of this Act shall be dismissed immediately by the

9  court in which the action was brought or is currently pend-

10  ing.

11      (c) DISCOVERY.—

12          (1) STAY.—In any action that is allegedly of

13      the type described in section 4(5)(B) seeking to im-

14      pose liability of any kind based on accumulative acts

15      of consumption of a qualified product, the obligation

16      of any party or non-party to make disclosures of any

17      kind under any applicable rule or order, or to re-

18      spond to discovery requests of any kind, as well as

19      all proceedings unrelated to a motion to dismiss,

20      shall be stayed prior to the time for filing a motion

21      to dismiss and during the pendency of any such mo-

22      tion, unless the court finds upon motion of any

23      party that a response to a particularized discovery

24      request is necessary to preserve evidence or to pre-

25      vent undue prejudice to that party.

4

1    (2) RESPONSIBILITY OF PARTIES.—During the
2    pendency of any stay of discovery under paragraph
3    (1), the responsibilities of the parties with regard to
4    the treatment of all documents, data compilations
5    (including electronically recorded or stored data),
6    and tangible objects shall be governed by applicable
7    Federal or State rules of civil procedure. A party ag-
8    grieved by the failure of an opposing party to comply
9    with this paragraph shall have the applicable rem-
10    edies made available by such applicable rules, pro-
11    vided that no remedy shall be afforded that conflicts
12    with the terms of paragraph (1).

13    (d) PLEADINGS.—In any action that is allegedly of
14    the type described in section 4(5)(B) seeking to impose
15    liability of any kind based on accumulative acts of con-
16    sumption of a qualified product, the complaint initiating
17    such action shall state with particularity—

18            (1) each element of the cause of action;

19            (2) the Federal and State statutes or other laws
20    that were allegedly violated;

21            (3) the specific facts alleged to constitute the
22    claimed violation of law; and

23            (4) the specific facts alleged to have caused the
24    claimed injury.

5

1 (c) RULE OF CONSTRUCTION.—No provision of this

2 Act shall be construed to create a public or private cause

3 of action or remedy.

4 **SEC. 4. DEFINITIONS.**

5 In this Act:

6 (1) ENGAGED IN THE BUSINESS.—The term

7 "engaged in the business" means a person who man-

8 ufactures, markets, distributes, advertises, or sells a

9 qualified product in the person's regular course of

10 trade or business.

11 (2) MANUFACTURER.—The term "manufac-

12 turer" means, with respect to a qualified product, a

13 person who is lawfully engaged in the business of

14 manufacturing the product.

15 (3) PERSON.—The term "person" means any

16 individual, corporation, company, association, firm,

17 partnership, society, joint stock company, or any

18 other entity, including any governmental entity.

19 (4) QUALIFIED PRODUCT.—The term "qualified

20 product" means a food (as defined in section 201(f)

21 of the Federal Food, Drug, and Cosmetic Act (21

22 U.S.C. 321(f))).

23 (5) QUALIFIED CIVIL LIABILITY ACTION.—

24 (A) IN GENERAL.—Subject to subpara-

25 graph (B), the term "qualified civil liability ac-

6

1      tion'' means a civil action brought by any per-

2      son against a manufacturer, marketer, dis-

3      tributor, advertiser, or seller of a qualified

4      product, or a trade association, for damages,

5      penalties, declaratory judgment, injunctive or

6      declaratory relief, restitution, or other relief

7      arising out of, or related to a person's accumu-

8      lated acts of consumption of a qualified product

9      and weight gain, obesity, or a health condition

10     that is associated with a person's weight gain or

11     obesity, including an action brought by a person

12     other than the person on whose weight gain,

13     obesity, or health condition the action is based,

14     and any derivative action brought by or on be-

15     half of any person or any representative,

16     spouse, parent, child, or other relative of that

17     person.

18         (B) EXCEPTION.—A qualified civil liability

19     action shall not include—

20             (i) an action based on allegations of

21         breach of express contract or express war-

22         ranty, provided that the grounds for recov-

23         ery being alleged in such action are unre-

24         lated to a person's weight gain, obesity, or

7

1    a health condition associated with a per-

2    son's weight gain or obesity;

3         (ii)    an action based on allegations

4    that—

5              (I) a manufacturer or seller of a

6              qualified product knowingly violated a

7              Federal or State statute applicable to

8              the marketing, advertisement, or la-

9              beling of the qualified product with in-

10             tent for a person to rely on that viola-

11             tion;

12             (II) such person individually and

13             justifiably relied on that violation; and

14             (III) such reliance was the proxi-

15             mate cause of injury related to that

16             person's weight gain, obesity, or a

17             health condition associated with that

18             person's weight gain or obesity; or

19         (iii) an action brought by the Federal

20    Trade    Commission    under    the    Federal

21    Trade Commission Act (15 U.S.C. 41 et

22    seq.) or by the Federal Food and Drug

23    Administration under the Federal Food,

24    Drug, and Cosmetic Act (21 U.S.C. 301 et

25    seq.).

8

1   (6) SELLER.—The term "seller" means, with
2  respect to a qualified product, a person lawfully en-
3  gaged in the business of marketing, distributing, ad-
4  vertising, or selling a qualified product.

5   (7) STATE.—The term "State" includes each of
6  the several States of the United States, the District
7  of Columbia, the Commonwealth of Puerto Rico, the
8  Virgin Islands, Guam, American Samoa, and the
9  Commonwealth of the Northern Mariana Islands,
10  and any other territory or possession of the United
11  States, and any political subdivision of any such
12  place.

13   (8) TRADE ASSOCIATION.—The term "trade as-
14  sociation" means any association or business organi-
15  zation (whether or not incorporated under Federal
16  or State law) that is not operated for profit, and 2
17  or more members of which are manufacturers, mar-
18  keters, distributors, advertisers, or sellers of a quali-
19  fied product.

○