# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VIRGINIA SLOAN,            )
2808 Battery Place, NW   )
Washington, DC 20016,   )
                        )
GARY M. SABLE,       )
2 Fox Place, Newton Centre )
Newton, Massachusetts 02459, )
                        )        Case No.: 1:06cv00483
ROBERT McGRANAHAN,  )
1604 Chandler Road      )        Judge: Ricardo M. Urbina
Ann Arbor, Michigan 48105, )
                        )
SHARI PERLOWITZ,    )
23317 Treeline Drive     )
Boca Raton, Florida 33428,  )
                        )
REGINALD A. KRASNEY,  )
8 Hickory Lane         )
Chester Springs, Pennsylvania 19425, )
                        )
MARION SACHUK,     )
1067 Weikel Road       )       **CLASS ACTION -**
Lansdale, Pennsylvania 19446, )   **SECOND AMENDED**
                        )       **CONSOLIDATED**
CAROLYN HRUSOVSKY,  )      **COMPLAINT**
1067 Weikel Road       )
Lansdale, Pennsylvania 19446, )
                        )
STACY MARKOWITZ,    )
200 Campbell Circle, Apt. 14 )
Downingtown, Pennsylvania 19335, )
                        )
JOAN DENENBERG,    )
518 Sussex Road        )
Wynnewood, Pennsylvania 19096, )
                        )
CATERING BY DESIGN, INC., a )
Pennsylvania Corporation,   )
110 East Hector Street     )
Conshohocken, Pennsylvania 19428, )

JAMES GILLINS                                    )
1320 North Broad Street                          )
Jacksonville, Florida  32202, and                )
                                                 )
NCS COMPANIES,                                   )
520 Lancaster Avenue                             )
Frazer, Pennsylvania  19355                      )
                                                 )
on behalf of themselves and                      )
all other similarly situated taxpayers;          )
                                                 )
                        Plaintiffs,              )
                                                 )
vs.                                              )
                                                 )
THE UNITED STATES                                )
OF AMERICA,                                      )
                        Defendant.               )

## TABLE OF CONTENTS

I. NATURE OF THE ACTION....................................................................................1

II. IDENTIFICATION OF THE PARTIES.............................................................…..3

    The Plaintiffs.............................................................................................3

    The Defendant.........................................................…...............................6

III. SUBSTANTIVE ALLEGATIONS...................................................…...............6

    Notice 2006-50.......................................................................…...…...8

IV. JURISDICTION...................................................................................…...11

V. CLASS ACTION ALLEGATIONS.................................................................11

    The Class Definition.....................................................................…...11

VI. CAUSES OF ACTION................................................................................15

    First Cause of Action – Violation of Due Process in the Exaction of the Excise
    "Tax"..................................................................................................15

    Second Cause of Action – Violation of Due Process through the Absence of Post-
    Deprivation Relief...........................................................…...................15

    Third Cause of Action – Unconstitutional Taking in the Exaction of the
    Excise "Tax"......................................................................................16

    Fourth Cause of Action – Violation of Substantive Due Process
    In the Exaction and of and Refusal to Return the Excise Tax............................17

    Fifth Cause of Action – The Administrative Procedure Act:
    Notice 2006-50 Exceeds Agency Authority.....................................…...18

    Sixth Cause of Action – Review of Agency Action under the Administrative
    Procedure Act: Notice 2006-50 Was Illegally Promulgated Without Rulemaking...19

**TABLE OF CONTENTS** *(continued)*

Seventh Cause of Action – Review of Agency Action under the Administrative Procedure Act: Improper Collection and Retention of the Excise Taxes.............20

Eighth Cause of Action – Unjust Enrichment................................................21

Ninth Cause of Action – Illegal Exaction.....................................................21

Tenth Cause of Action – Refunds of Amounts Improperly and Illegally Collected by Defendant.........................................................................21

Eleventh Cause of Action – Injunction to Stop the Implementation of the Refund Provisions of Notice 2006-50....................................................23

Twelfth Cause of Action – Declaratory Relief...............................................23

VII.  PRAYER FOR RELIEF.................................................................24

## SECOND AMENDED CONSOLIDATED COMPLAINT FOR DECLARATORY, INJUNCTIVE, MONETARY AND OTHER RELIEF

The following allegations are made by Plaintiffs Virginia Sloan, Gary M. Sable, Robert McGranahan, Shari Perlowitz, Reginald A. Krasney, Marion Sachuk, Carolyn Hrusovsky, Stacy Markowitz, Joan Denenberg, NCS Companies, James Gillins, and Catering By Design, Inc. (collectively "Plaintiffs") upon information and belief after investigation by their Counsel.

### I.  NATURE OF THE ACTION

1.  This action is brought on behalf of individual and small business consumers of telephone services to secure restitution, with interest, of money in possession of the Government (the "Government," "I.R.S.," and/or "Defendant").  The fund of money in the Government's coffers has accumulated for over eight years through the illegal collection of a purported excise "tax" of three percent on long distance and wireless telephone charges that has been added to consumers' monthly phone bills by telephone companies acting as agents of the I.R.S.

2.  Facing this class action and a motion for a preliminary injunction to prevent further collection of this "tax," the I.R.S. reversed itself and sought to "remedy" its past illegal actions through a partial "refund" program detailed in I.R.S. Notice 2006-50 (Exhibit 1).  The I.R.S.'s program is unlawful because it fails to compensate consumers for anything approaching the full amount of the money illegally taken, is without a basis in law, is arbitrary in the extreme, and was promulgated without any of the procedures that are required to accompany agency rulemakings.

3.  The I.R.S.'s policy reversal admits Plaintiffs' contentions that (1) the I.R.S. imposed an illegal exaction that cost American consumers and small businesses billions, (2) the individual refund procedure that the Government had previously argued was the "exclusive" remedy for taxpayers was inadequate, and (3) the only practical remedy is to afford relief to taxpayers on a class-wide basis.

4.  Notice 2006-50 is unlawful in several ways.  First, the I.R.S. has declared that it will return at most only three years and two months worth of the money that it illegally collected, retaining approximately five years - over half - of its illegal collections.

5.  Additionally, the three-year and two month refund limitation, and the process prescribed by the I.R.S. to obtain a refund even within that period, are arbitrary and capricious, inadequate, tantamount to improper agency rule-making, otherwise exceed the limits of the I.R.S.'s authority, and do not provide a constitutional clear and certain remedy.

6.  The mechanism in Notice 2006-50 is also unlawful because it does not provide a constitutional, clear and certain remedy, nor provide an accounting of the total fund now in the Government's hands, arrogates to the Government the unilateral right to determine what amount of this undisclosed fund each consumer who paid into it may receive, effectively forecloses any post-deprivation hearing, and, in other ways described in further detail below, infringes the rights of those to whom the monies in this fund are owed.

7.  The unlawful refund mechanism in Notice 2006-50 is tantamount to agency rulemaking, but was implemented without satisfying the notice, comment, and other procedural prerequisites for agency rulemaking.  As such, the Government has exceeded the limits of its authority in unilaterally implementing the refund mechanism in Notice 2006-50.

8.  Notice 2006-50 sets up a series of barriers that, in the guise of giving out rights, arbitrarily denies the return of money to which several large and worthy groups are clearly entitled.  The Notice explicitly requires those Americans that would not otherwise file a federal income tax return to "nevertheless file a return to obtain the credit or refund." I.R.S. Notice, Section 5(a)(2).  As a consequence, the refund scheme proposed by the I.R.S. will adversely impact the millions of elderly Americans and/or low-income households that earn less than the amount required to file a tax return, or who otherwise do not file a tax return.  The framework proposed by Notice 2006-50 leaves these households – which could use the extra money perhaps

more than any other segment of the population – with *nothing* unless they affirmatively fill out and file a tax return to obtain the return of money to which they are undisputedly entitled.

9.  Similarly, small businesses (which do not have the option to elect a "safe harbor" refund amount from the I.R.S.) that do not have the time or means to prove the precise amount of taxes that have been improperly collected by the I.R.S. are left with nothing under this scheme.  The disparate and irrational treatment of these groups is arbitrary and capricious, a denial of due process, and unconstitutional.

## II.  IDENTIFICATION OF THE PARTIES

10. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3) on behalf of themselves and all other persons similarly situated.  The Plaintiffs seek on behalf of themselves and the Class, as defined herein, injunctive and declaratory relief, including restitution of monies that the I.R.S. now acknowledges that it improperly and illegally collected through a "tax" that was not, in fact, authorized by Congress.

**The Plaintiffs.**

11. Plaintiff Virginia Sloan ("Sloan") resides at 2808 Battery Place, NW, Washington, DC 20016.  Sloan has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of her telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

12. Plaintiff Gary M. Sable ("Sable") resides at 2 Fox Place, Newton Centre, Newton, Massachusetts 02459.  Sable has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of his telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

13. Plaintiff Robert McGranahan ("McGranahan") resides at 1604 Chandler Road, Ann Arbor, MI 48105.  McGranahan has paid the Federal Excise tax that the I.R.S. has now found to

be nontaxable for well over three years as part of his telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

14. Plaintiff Shari Perlowitz ("Perlowitz") resides at 23317 Treeline Drive, Boca Raton, Florida 33428. Perlowitz has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of her telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

15. Plaintiff James Gillins ("Gillins") resides at 1320 North Broad Street, Jacksonville, Florida 32202. Gillins is a retiree who has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of his telephone bills, and therefore will be affected by Notice 2006-50. Gillins is not otherwise required to file an income tax return because his income does not meet the threshold amounts.

16. Plaintiff Reginald A. Krasney ("Krasney") resides at 8 Hickory Lane, Chester Springs, Pennsylvania 19425. Krasney has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of his telephone bills, and therefore will be affected by Notice 2006-50.

17. Plaintiff Marion Sachuk ("Sachuk") resides at 1067 Weikel Road, Lansdale, Pennsylvania 19446. Sachuk has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of her telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

18. Plaintiff Carolyn Hrusovsky ("Hrusovsky") resides at 1067 Weikel Road, Lansdale, Pennsylvania 19446. Hrusovsky has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of her telephone bills for landline, cellular, and pre-paid calling cards service and therefore will be affected by Notice 2006-50.

19. Plaintiff Stacy Markowitz ("Markowitz") resides at 200 Campbell Circle, Apt. 14, Downingtown, Pennsylvania 19335. Markowitz has paid the Federal Excise tax that the I.R.S.

has now found to be nontaxable for well over three years as part of her telephone bills for landline and cellular service, and therefore will be affected by Notice 2006-50.

20.  Plaintiff Joan H. Denenberg ("Denenberg") resides at 518 Sussex Road, Wynnewood, Pennsylvania 19096.  Denenberg has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of her telephone bills for landline service, and therefore will be affected by Notice 2006-50.

21. Plaintiff Catering By Design, Inc. ("Catering By Design") is a Pennsylvania Corporation with a principal place of business at 110 East Hector Street, Conshohocken, Pennsylvania 19428.  Catering By Design has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of its telephone bills for landline service and therefore will be affected by Notice 2006-50.

22. Plaintiff NCS Companies ("NCS")[1] is a Delaware Corporation with a principal place of business at 520 Lancaster Avenue, Frazer, Pennsylvania 19355.  NCS has paid the Federal Excise tax that the I.R.S. has now found to be nontaxable for well over three years as part of its telephone bills for landline service, and therefore will be affected by Notice 2006-50.

23. Prior to the filing of this Complaint, Plaintiffs Krasney, Sachuk, Hrusovsky, Markowitz, Denenberg, and Catering By Design filed with the I.R.S. a Form 8849 and an accompanying Schedule 6, requesting a refund of the Communications Excise Tax on behalf of themselves and as fiduciaries on behalf of all similarly situated taxpayers whose refund claims are so small that the filing of an individual refund claim is not economically feasible.  Copies of these refund claims, mailed to the I.R.S. between February 9 and April 3, 2006, are attached hereto as Exhibits 2 through 7, and are incorporated by reference herein.  On or around April 10, 2006, the I.R.S. sent a letter to Krasney refusing to process the class refund claim.  A copy of the I.R.S.

---

[1] NCS previously filed a class action complaint in this Court on May 5, 2006 challenging the I.R.S.'s administration of the Communications Excise Tax. *NCS Companies v. United States, et. al.*, Docket No. 06-00831 ("NCS Case"). The parties in the NCS Case and the parties in this case are taking steps to consolidate the two cases into this action.

letter refusing to process Krasney's class refund claim is attached hereto as Exhibit 8 and is incorporated by reference herein.

24. Also prior to the filing of this Complaint, Plaintiff NCS filed with the I.R.S. a Form 8849 and an accompanying Schedule 6 requesting a refund of the Communications Excise Tax. Copies of this refund claim, mailed to the I.R.S. on or around April 10, 2006, is attached hereto as Exhibit 9. (Exhibit 9 includes the claim form and a breakdown of taxes but excludes the over 400 pages of phone bill documentation provided to the I.R.S., however, Plaintiffs are happy to furnish the Court with a copy of these documents upon request). On or around May 8, 2006, the I.R.S. sent a letter to NCS refusing to process its refund claim and requesting additional information from NCS, including evidence of the exact amounts and dates that each tax payment was made to the telephone companies, a breakdown of the requested refunds by quarter, and "specific IRS Code sections, revenue rulings, and/or court cases" that support the refund claim. A copy of this letter from the I.R.S. refusing to process NCS's refund claim is attached hereto as Exhibit 10.

25. The individual claim of each of the Plaintiffs is less than $10,000.

26. Members of the Class include all other similarly situated taxpayers.

**The Defendant.**

27. The Defendant is the United States of America acting by and through the Department of the Treasury and the Internal Revenue Service ("Government," "I.R.S.," and/or "Defendant").

### III. SUBSTANTIVE ALLEGATIONS

28. It is axiomatic that the federal taxing power resides exclusively with the Congress. Unless and until Congress enacts a tax, neither the Government nor any of its constituent departments, agencies, or commissions may levy, impose, exact, or in any way collect that tax from the people.

29. Plaintiffs and Class members, as defined herein, are purchasers of telephone services who have been charged and have paid, as part of their telephone bills, an excise "tax" that, as the I.R.S. has now conceded, was unauthorized by Congress and whose collection was therefore illegal and unconstitutional.

30.  The Internal Revenue Code imposes certain excise taxes, including an excise tax of three percent on "toll telephone service." The communications excise tax was designed to serve as a luxury tax on the upper class, who, at the time that the tax was enacted in 1898, was the only group that could afford a telephone.  Consistent with the state of telephony at that time, § 4252(b) defines "toll telephone service" to encompass traditional "Message Telephone Service" ("MTS"), a service for which there is "a toll charge which varies in amount with distance _and_ elapsed time of each individual communication."  26 U.S.C. § 4252(b)(1) (emphasis added).

31. Since 1965, there has been a revolution in telecommunications, and, consequently, the an extraordinary expansion of the consumer segment that uses them.  With the break-up of the Bell telephone monopoly and the introduction and growing popularity of wireless technology came a proliferation of long distance telephone services and service providers.

32. Currently, consumers purchase non-taxable toll services from a host of long distance telephone providers.  The gross revenues generated from interstate long distance service in the United States totaled $53 billion in 2000, and Communications Excise Tax receipts on long distance or toll service exceeded $1.5 billion.

33. For over 25 years the Government has been aware that the charges for long distance service based only on elapsed time do not fall within the definition of "toll telephone service" in 26 U.S.C. § 4252, and that a tax on such service is therefore unauthorized.  See Rev. Rul. 79-404, 1979-2 C.B. 382 ("literally, the service provided in this case does not come within the definition of . . . 'toll telephone service' . . . because the charge for such service does not vary with distance and, therefore, does not meet the requirements § 4252(b)(1).").

34. Nonetheless, pursuant to Treasury Regulation § 49.4351(c), the Government required long distance carriers to collect and remit to the United States a tax on toll telephone calls that the Government knew was not authorized by the Internal Revenue Code. Pursuant to Notice 2006-50, this exaction will halt as of July 31, 2006. By that date, the Government will have illegally collected a fund of billions of dollars from scores of millions of taxpayers.

35. On information and belief, virtually all putative Class members have been and continue to be unaware that the taxes that have been and/or will be collected from them have been declared illegal. Nothing in the long distance carriers' phone bills discloses that these taxes have been found to be illegal or offers the payer any information on how to challenge the tax or seek a refund.

36. Traditional administrative methods, which require taxpayers to file refund claims on Internal Revenue Service Form 8849 are entirely ineffectual in the present circumstances and do not afford individual taxpayers a constitutional, viable or adequate remedy to redress this constitutionally prohibited taking and retention of money under the guise of the taxing power. The relatively small amount of money that is collected from a particular household on a monthly basis, the time required to complete the refund form and the cost of postage effectively prevent even those consumers who might be aware of the Government's illegal conduct from utilizing these traditional methods. But because of the number of consumers using long distance services, the Government illegally collects billions of dollars.

**Notice 2006-50.**

37. On May 25, 2006, over two months after this action was filed, the I.R.S. published Notice 2006-50, in which the Government finally conceded liability for the illegal exaction that had been enforced under the guise of the Communications Excise Tax since 1997, when fundamental changes in long distance phone service began to remove most such services from the scope of the excise tax as authorized by Congress.  In announcing this decision, former

Secretary of the Treasury John Snow acknowledged that repeal of the tax was long overdue: "[t]oday is a good day for American taxpayers; it marks the beginning of the end of an outdated, antiquated tax that has survived a century beyond its original purpose, and by now should have been ancient history." Accordingly, the I.R.S. announced in its Notice that it would no longer improperly collect the tax, and would refund a portion of the illegally exacted monies to taxpayers. The Notice arbitrarily and unlawfully limits the refund to money exacted between February 28, 2003 and July 31, 2006.

38. In addition to unconstitutionally shortening the time period of illegally exacted monies that are subject to refund, the I.R.S. has designed an arbitrary and capricious procedure by which the refund amounts are to be determined. Indeed, Notice 2006-50 arbitrarily compels Plaintiffs and Class members to accept a "one size fits all" solution. Individual (non-entity) taxpayers are provided with two options under this scheme: affirmatively accept a "safe harbor" amount,[2] or demonstrate to the government the actual amount of taxes that were improperly paid. "Entities"[3] do not have the option to elect a "safe harbor" amount, but must bear the burden of proving the actual amount of "taxes" that were illegally collected by the Defendant over the past three years. Entities that do not or cannot do this will be left with *nothing* under the Government's scheme. This is likely to have a disproportionately adverse effect on small businesses.

39. Notice 2006-50 sets up a series of barriers that, in the guise of giving out rights, arbitrarily denies the return of money to which several large and worthy groups are clearly

---

[2] The "safe harbor" amount will be designed by the I.R.S. to approximate how much the "typical taxpayer" paid over the past three years. According to the I.R.S., the actual "safe harbor" amount is "still under consideration and will be announced in later guidance." Notice 2006-50 at Section 5(c).

[3] The Notice's remedy provision is unclear and uncertain as to what (or who) constitutes an "entity" for purposes of electing the "safe harbor" amount. *See* Notice 2006-50 at Section 5(d)(2) ("Taxpayers other than individual taxpayers (entities) may request only the actual amount of tax paid on nontaxable service billed during the relevant period.").

entitled.  Notice 2006-50 requires taxpayers to request the refund on their 2006 income tax return, arbitrarily ignoring the rights of the millions of Americans who are not obliged to (or who otherwise do not) file a federal income tax return.[4] This includes millions of low-income seniors who are excused from filing income tax returns because they depend heavily upon Social Security.  It is arbitrary and capricious to require these seniors to tackle the complexity of filling out and filing an otherwise unnecessary income tax return just to obtain what they never should have paid in the first place.  Moreover, in contrast to those who already pay for assistance (preparers or software), these low-income seniors will be forced either to pay for assistance, or to attempt to tackle the mysteries of the federal income tax return filing system, solely because of the arbitrary and capricious procedures required by Notice 2006-50 to obtain a refund of the excise tax.  The groups being mistreated also include millions of the low-income working poor, who do not file income tax returns and who likewise cannot afford to hire someone to assist them in preparing a return. Because of the way that the I.R.S. devised the Notice, however, both of these groups never had an opportunity, in court or before the I.R.S. itself, to protest the I.R.S.'s arbitrarily and capricious denial of their rights.

40. The procedures in Notice 2006-50 are legally inadequate for both individual and entity taxpayers.  The I.R.S. has implicitly acknowledged that it is impractical for individual taxpayers to spend the time and effort to sort through their old phone bills to attempt to determine the actual amount that was illegally exacted.  Requiring taxpayers to adhere to impractical and oppressive administrative procedures (to which, in many if not most instances, taxpayers *cannot* adhere) in order to obtain return of the money that even the Government now acknowledges has been illegally collected is an unconstitutional taking and denial of due process.

---

[4] Ironically, the I.R.S. has responded to the difficulty of the previous methods of obtaining refunds by taking them away altogether.  *See* I.R.S. Notice, Section 5(a)(2) ("[a] request for this credit or refund on any other form (such as a Form 720, 843, or 8849) will not be processed by the Service.").

41. The continued retention of money from Plaintiffs and Class members under the guise of a tax that Congress has not authorized and without a meaningful procedure that provides a clear and certain remedy whereby taxpayers can recover their improper payments is a deprivation of property without due process of law, is done for an unascertainable or nefarious purpose, and is an uncompensated taking in violation of the Fifth Amendment to the United States Constitution.

## IV. JURISDICTION

42. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1346; 28 U.S.C. § 1331; 5 U.S.C. § 702; and 28 U.S.C. § 2201. Additionally, Defendant has through Notice 2006-50 acknowledged that broad-based relief is appropriate in this case.

43. The Court has personal jurisdiction over all parties in that Plaintiffs are United States taxpayers or otherwise consent to jurisdiction, and the Defendant is the United States government.

44. Venue is proper in this Court under 28 U.S.C. §§ 1391, 1396 and 1402.

45. No adequate remedy for the claims of Plaintiffs and Class members is available elsewhere.

46. This action was timely filed.

47. The claims for relief stated in this action are not barred by sovereign immunity.

## V. CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All taxpayers who have improperly paid money allegedly due on Communications Excise taxes that were not authorized by Congress, excluding any taxpayer who has received a refund or has submitted a refund claim and chooses to pursue that refund on an individual basis. Also excluded from this Class are all taxpayers who have a claim in excess of $10,000 and any Judge or Judicial officers to whom this case is assigned, along with members of his or her immediate family.

49. The Class includes cellular customers, long distance landline customers, and customers of so-called "bundled" services (as to which the Government has also agreed to halt collection of the Communications Excise Tax), and includes only those taxpayers with respect to whom the Government conceded liability in Notice 2006-50.

50. The concession of liability in Notice 2006-50 vis-à-vis this Class confirms that there can be no dispute between the parties concerning class certification for purposes of liability. Similarly, the class-wide mechanism proposed by the Defendant in its attempt to resolve the dispute over the remedy for the illegally collected fund set out in Notice 2006-50 confirms that class certification is appropriate for purposes of the remedy – a lawful and fair (if not perfect) mechanism for effecting the specific relief of returning the illegally collected fund can be fashioned.

51. The remaining questions of law and fact are likewise common to all members of the Class, including, but not limited to:

  a.  Whether Notice 2006-50 provides a clear and certain remedy for Class members to be made whole.

  b.  Whether the continued refusal of the Government to return more than half of the fund that it has acknowledged was collected without Congressional authorization deprives Plaintiffs and the members of the Class of their property without due process of law in violation of the Fifth Amendment to the United States Constitution.

  c.  Whether the continued refusal of the Government to return more than half of the fund that it has acknowledged was illegally exacted from Plaintiffs and the members of the Class constitutes a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.

d.  Whether there is any lawful basis for the refusal of the Government to return all of the fund illegally exacted from Plaintiffs and the members of the Class.

e.  Whether, if this action was timely filed, any applicable statute of limitations could operate so as to limit the recovery to which Plaintiffs and the members of the Class are entitled.

f.  Whether, if this action was timely filed and an applicable statute of limitations *does* operate to limit the recovery to which Plaintiffs and the members of the Class are entitled, that statute of limitations unconstitutionally limits the relief to which Plaintiffs and the members of the Class are entitled under the Fifth Amendment to the United States Constitution.

g.  Whether the Government's concession that it is liable for having illegally taken money from the Plaintiffs and the members of the Class, and its proposal for a class-wide refund mechanism, waives or defeats any claim that the administrative procedures by which a tax refund is normally processed still must be followed by each Plaintiff and each member of the Class.

h.  Whether the unlawful actions taken in Notice 2006-50 give this Court an additional and independent basis for jurisdiction over this case.

i.  Whether Notice 2006-50 constitutes unauthorized rule making in violation of the Administrative Procedures Act.

j.  Whether the Government's concession that it is liable for having illegally taken money from the Plaintiffs and members of the Class waives or defeats any claim that a full refund, with interest, is not due and owing to Plaintiffs and Class members.

52. Plaintiffs' claims are typical of the claims of the members of the Class, as all Class members are similarly affected by Defendant's wrongful conduct. Plaintiffs and all members of

the Class have been improperly subject to the Excise Tax, and the costs of being made whole on an individual basis (as required by Notice 2006-50) make it economically infeasible for members of the Class to pursue such claims, and does not provide a clear and certain remedy for them.

53. Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class. Plaintiffs have obtained counsel who are experienced in federal agency litigation, federal tax law, telecommunications services and regulation, and national class action practice.

54. Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress of claims too small to be pursued through traditional methods of seeking and/or obtaining a tax refund.

55. Class treatment is also appropriate because the Government has acted and refused to act on grounds uniformly applicable to all members of the Class, thereby making appropriate final injunctive and associated equitable relief with respect to the Class as a whole.

56. Further, as Notice 2006-50 confirms, the questions of law and fact common to the members of the Class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between Plaintiffs and the Government. In fact, a class action provides the *only* practical and fair method, consistent with due process, for the resolution of this dispute. As a class action is the only practical, fair, and constitutional method for members of the Class to obtain relief under these circumstances, it provides a superior method for the resolution of these claims.

57. Joinder of all Plaintiffs and Class members, who are geographically dispersed and number in the tens of millions, is impractical. Furthermore, the expense and burden of other methods of seeking redress, including individual litigation makes it impractical (indeed, virtually impossible) to redress the wrong done to Plaintiffs on an individual basis.

58. There will be no difficulty in the management of this action as a class action, as there are several practical and feasible methods for granting the requested relief to the Class.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF DUE PROCESS IN THE EXACTION OF THE EXCISE "TAX"

59. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

60. The Fifth Amendment to the United States Constitution prohibits the deprivation of property by the Government without due process of law.

61. The United States Constitution delegates to the Congress the power to enact and impose taxes in compliance with the requirements of Article I of the Constitution.

62. The only process by which money may be exacted from citizens as a tax is pursuant to an act of Congress that specifically authorizes the tax.

63. 26 U.S.C. § 4251 *et seq.,* which was enacted by Congress, imposes an excise "tax" on certain toll telephone service as specifically defined therein.

64. In Notice 2006-50, the Government conceded that neither this provision nor any other act of Congress authorizes the Government to exact the "tax" collected from Plaintiffs and members of the proposed Class that is at issue here.

65. Defendant has deprived Plaintiffs and members of the proposed Class of their property without due process of law by exacting the excise tax without Congressional authorization.

### SECOND CAUSE OF ACTION
### VIOLATION OF DUE PROCESS THROUGH THE
### ABSENCE OF POST-DEPRIVATION RELIEF

66. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

67. The Fifth Amendment to the United States Constitution prohibits the deprivation of property by the Government without due process of law.

68. "In a long line of cases, [the United States Supreme] Court has established that due process requires a 'clear and certain' remedy for taxes collected in violation of federal law." *Reich v. Collins*, 513 U.S. 106, 108 (1994) (citations omitted).  Accordingly, Plaintiffs and Class members are entitled to a constitutional, clear and certain post-deprivation remedy of full restitution of all monies illegally exacted by the Defendant, plus interest.

69. Both before and after the concession of liability in Notice 2006-50, the Defendant has failed to provide Plaintiffs and Class members with a constitutional, clear and certain post-deprivation remedy.

70. The Government has deprived Plaintiffs and members of the proposed Class of their property without due process of law by failing to provide them with a constitutional, clear and certain remedy to secure full restitution of all monies illegally exacted by Defendant, plus interest.

**THIRD CAUSE OF ACTION**
**UNCONSTITUTIONAL TAKING IN THE EXACTION OF THE EXCISE "TAX"**

71. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

72. In Notice 2006-50, the Government conceded that the exaction of money from Plaintiffs and the members of the proposed Class purportedly pursuant to the Communications Excise Tax was unauthorized by Congress.

73. The exaction of the excise "tax" constitutes a taking of the property of Plaintiffs and Class members without just compensation in violation of the Fifth Amendment to the United States Constitution.

74. Both before and after the concession of liability in Notice 2006-50, the Defendant has failed to provide Plaintiffs and Class members with just compensation.

75. Defendant has unconstitutionally taken the money of the Plaintiffs and Class members by failing to provide them with just compensation of the full amount of the purported excise "taxes" they have paid, plus interest.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
**IN THE EXACTION OF AND REFUSAL TO RETURN THE EXCISE "TAX"**

76. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

77. The Fifth Amendment to the United States Constitution prohibits the deprivation of property by the Government without due process of law.  The Due Process Clause of the Fifth Amendment guarantees more than fair process; it accords substantive protection to the rights it guarantees.

78. The right not to have money illegally exacted from citizens under the guise of an unlawful "tax" is deeply rooted in this Nation's history and tradition.  The principle that one's property, including one's money, cannot be taken by the unilateral action of an Executive agency without authorization by Congress is implicit in the concept of ordered liberty at the foundation of our Constitution.  Thus, the right of citizens not to have their property illegally taken from them is a fundamental right to which the Due Process Clause accords substantive protection.

79. In Notice 2006-50, the Government conceded that it has violated this right of the Plaintiffs and the members of the proposed Class through the illegal exaction of their money under the guise of the Communications Excise Tax.

80. The right of those who have suffered an illegal exaction to be made whole – that is, to have their money returned in full, plus interest – is an inherent component of the right not to

have suffered the illegal exaction in the first place, and is likewise a fundamental right to which the Due Process Clause accords substantive protection.

81. By conceding the illegal exaction of the property of the Plaintiffs and the members of the proposed Class, yet refusing to provide a return of all the money illegally taken, plus interest, Notice 2006-50 violates the substantive due process rights of the Plaintiffs and the members of the proposed Class.

**FIFTH CAUSE OF ACTION**
**THE ADMINISTRATIVE PROCEDURE ACT:**
**NOTICE 2006-50 EXCEEDS AGENCY AUTHORITY**

82. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

83. Notice 2006-50 constitutes final agency action subject to the review of this Court.

84. Notice 2006-50, if implemented, would continue to deprive Plaintiffs and Class members, and create further barriers, to their full recovery of the money that the Government concedes in Notice 2006-50 it illegally exacted from them.

85. Notice 2006-50 reinterprets existing statutes and administrative rules, and imposes procedures for securing no more than a partial return of illegally exacted monies, in a manner that denies a clear and certain remedy by which Plaintiffs and Class members may reasonably be made whole.

86. The reinterpretations, procedures, and modifications made by the Notice mean that the Government is using the occasion of conceding the wrongfulness of its collection of these payments from Plaintiffs and Class members to create barriers to a full recovery by Plaintiffs and Class members.

87. The return of only a portion of the illegally exacted monies provided for by Notice 2006-50 is contrary to the intention of Congress (expressed in the plain language of Section 4252) and to the decisions of numerous Article III federal courts.

88. The actions and determinations set forth in Notice 2006-50 are unconstitutional, arbitrary and capricious, contrary to law, exceed the limits of the Government's statutory and constitutional authority, and constitute an ongoing policy of non-acquiescence repugnant to the separation of powers and judicial review principles of the United States Constitution.

**SIXTH CAUSE OF ACTION**
**REVIEW OF AGENCY ACTION UNDER**
**THE ADMINISTRATIVE PROCEDURE ACT:**
**NOTICE 2006-50 WAS ILLEGALLY PROMULGATED WITHOUT RULEMAKING**

89. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

90. The unlawful refund mechanism established by Notice 2006-50 constitutes a rule within the meaning of the Administrative Procedure Act, which was established on an arbitrary and capricious basis. It has particularly strong adverse effects because it requires individual taxpayers to request and obtain the refund on an end of the year federal income tax return. The Notice further prohibits taxpayers from obtaining refunds on Forms 720, 843, or 8849. By requiring refunds to be claimed on an individual income tax return, millions of Americans who are not obliged to file one will be left with *nothing*. This includes millions of senior citizens on social security whose taxable income falls below the minimum level required to trigger the tax return filing requirement. Another group subject to this arbitrary mistreatment consists of the millions of low-income working Americans. Because the I.R.S. did not initiate this arbitrary and capricious Notice with a statement of basis or an opportunity to comment, these groups never had an opportunity, in court or before the I.R.S. itself, to protest how they were wrongfully denied their rights.

91. Notice 2006-50 implicitly modifies 26 C.F.R. § 49.4251-2 and the interpretations placed upon it by I.R.S. Manual sections, Revenue Rulings, and Form 720, as to payments collected by

the aggregate mode of a collected excise tax, that an aggregate, effective mode of relief should be available.

92. Notice 2006-50, and in particular the unlawful refund mechanism established by Notice 2006-50, constitutes a Regulation promulgated by the Secretary of the Treasury pursuant to 26 U.S.C. § 7433(a) to govern the process of returning the fund illegally collected under the guise of the Communications Excise Tax.  The Notice is a rule within the meaning of the Administrative Procedure Act in that it had a substantive effect upon the rights of Plaintiffs and members of the Class, and changed previous positions of the Treasury Department concerning both statutes and administrative rules.

93. By withholding prior notice and hearing, denying any opportunity to comment or otherwise contribute to deliberative procedures, and failing to make available either the factual bases or reasoning for the choices made in Notice 2006-50, the Government deprived Plaintiffs and members of the Class of their opportunity to protest the adverse effect of that Notice on their obtaining a full recovery.

94. Notice 2006-50 is therefore unlawful because it was enacted without the requisite notice, hearing, and deliberative procedures required by the Administrative Procedure Act.


### SEVENTH CAUSE OF ACTION
### REVIEW OF AGENCY ACTION UNDER
### THE ADMINISTRATIVE PROCEDURE ACT: IMPROPER COLLECTION AND
### RETENTION OF EXCISE TAXES

95. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

96. The Government's interpretation and collection of the excise tax was contrary to the intention of Congress as expressed in the plain language of Section 4252 and contrary to the decisions of numerous Article III federal courts.

97. The Government has conceded that it has illegally exacted money from Plaintiffs and members of the Class under the guise of an excise "tax" not authorized by Congress.

98. This illegal exaction, and the retention of any portion of this illegal exaction, was and is unconstitutional, arbitrary and capricious, beyond the limits of the Government's authority, and repugnant to the separation of powers and judicial review principles of the United States Constitution.

## EIGHTH CAUSE OF ACTION
## UNJUST ENRICHMENT

99. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

100. The Government has been unjustly enriched by what it concedes in Notice 2006-50 was an illegal exaction of money from Plaintiffs and Class members.

101. Each individual Plaintiff's claim does not exceed $10,000.

102. Plaintiffs and Class members are entitled to full reimbursement from the Government in the actual amount by which the Government has been unjustly enriched at the expense of the Plaintiffs and Class members.

## NINTH CAUSE OF ACTION
## ILLEGAL EXACTION

103. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

104. The Government has conceded that it has illegally exacted money from Plaintiffs and members of the Class under the guise of an excise "tax" not authorized by Congress.

105. Plaintiffs and members of the Class are entitled to a return of the monies so illegally exacted from them, plus interest.

## TENTH CAUSE OF ACTION
## REFUNDS OF AMOUNTS IMPROPERLY AND
## ILLEGALLY COLLECTED BY DEFENDANT

106.         Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

107.         This Court's jurisdiction is determined as of the time that the First Amended Complaint was filed.

108.         Notice 2006-50 issued on May 25, 2006, issued after the filing of the First Amended Complaint, does not eliminate this Court's jurisdiction.  It confirms it, as Notice 2006-50 continues to deny Plaintiffs' claim for restitution by failing to provide a constitutional, clear and certain remedy, as set forth herein.

109.         In the event that this Court concludes that Plaintiffs must exhaust an administrative refund process before maintaining this action, Plaintiffs in the alternative claim that Krasney, Sachuk, Hrusovsky, Markowitz, Denenberg, and Catering By Design have exhausted such remedies and seek refunds of Communications Excise Taxes unconstitutionally collected by Defendant on behalf of the Class, and for which a constitutional, clear and certain remedy, or just compensation, has not been provided to Plaintiffs and members of the Class. This Court has jurisdiction over Plaintiffs' refund claims, as Plaintiffs have timely filed a claim for a Refund as required by 26 U.S.C. § 7422, which was denied prior to the commencement of this suit.

110.         Additionally, it is appropriate to treat the class-wide claims filed by Krasney and other Plaintiffs as satisfying section 7422 for this particular excise tax, which is treated in an aggregate manner by the statutes and Treasury "Regulations."

111.         Accordingly, Plaintiffs and Class members have satisfied the jurisdictional prerequisites for bringing suit in this Court, and are entitled to the full recovery of the fund of money that the Government now concedes that it improperly collected from Plaintiffs and Class members.

## ELEVENTH CAUSE OF ACTION
## INJUNCTION TO STOP THE IMPLEMENTATION OF THE REFUND
## PROVISIONS OF NOTICE 2006-50

112.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

113.     Plaintiffs and members of the Class – particularly small businesses – will suffer irreparable injury if an injunction is not issued to prevent the I.R.S. from implementing its refund scheme proposed in Notice 2006-50.

114.     Plaintiffs and members of the Class lack an adequate legal remedy.

115.     Plaintiffs and Class members are likely to succeed on the merits.

116.     The harm to Plaintiffs and Class members would exceed the harm to the Defendant from the imposition of an injunction.

117.     The public interest would not be adversely affected by the issuance an injunction.

## TWELFTH CAUSE OF ACTION
## DECLARATORY RELIEF

118.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

119.     An actual controversy has arisen between the Plaintiffs and the Government as to whether the scheme proposed by the Government in Notice 2006-50 provides a constitutional, clear and certain remedy for the I.R.S.'s now acknowledged improper collection of the excise tax.

120.     A controversy also exists between the Government and Class members over whether the implementation of Notice 2006-50 violates the Administrative Procedures Act.

121.     The controversies between the Government and Class members do not involve enjoining the I.R.S. from collecting a federal tax; indeed, there is no dispute over the impropriety

of the I.R.S.'s collection of the Communications Excise Tax, as the I.R.S. has conceded the impropriety of the tax and has declared its intention to stop collecting the tax.

122.    This Court should declare that the Government lacks the authority to assess a tax that was not authorized by Congress, unconstitutionally and illegally shorten the period provided for which Plaintiffs and Class members can obtain restitution, and fail to provide a clear and certain remedy by which Plaintiffs and Class members can be made whole.

123.    Neither the Anti-Injunction Act nor the Declaratory Judgment Act prevents this Court from issuing a declaratory judgment under the unique circumstances present here.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a.    Certify the Class as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

b.    Adjudge and decree that Government's conduct as described herein, violated the Fifth Amendment of the United States Constitution.

c.    Order the Government to provide an accounting of the total amount of the fund illegally collected under the guise of the Communications Excise Tax.

d.    Order the prompt return to members of the Class of the full amount of the fund in the possession of the Government that was illegally collected as an alleged tax on toll telephone service, plus interest.

e.    Reimburse Plaintiffs and members of the Class in amounts to be determined at trial or, where applicable, to the full extent allowed by law.

f.    Award pre-judgment interest to Plaintiffs and Class members to the fullest extent allowed by law.

g.    Award Plaintiffs the costs of bringing this action, including the payment of reasonable attorneys' fees.

- 24 -

h.    Award Plaintiffs reasonable administrative and litigation costs (including attorneys' fees) at a premium over the statutory rate, as the position of the I.R.S. is not "substantially justified" for purposes of 26 U.S.C. § 7430(c)(4)(B).

i.    Issue an injunction that prevents the I.R.S. from implementing the illegal and unconstitutional procedures set forth in Notice 2006-50.

j.    Issue a declaratory judgment that:

    i.    the fund collected by the Government under the guise of a tax on toll telephone service was an illegal exaction that deprived Plaintiffs of their property without due process of law;

    ii.    the provision in Notice 2006-50 that limits the return of this illegal exaction to monies collected within the last three years and two months is unconstitutional, unlawful and so exceeds agency authority; and

    iii.    the mechanism set out in Notice 2006-50 for the partial return of the fund illegal exacted from Plaintiffs is arbitrary, capricious and exceeds agency authority, and does not provide a clear and certain remedy.

k.    Grant such other relief as the Court deems just and proper.


DATED: _July 6, 2006_                   CUNEO GILBERT & LADUCA, LLP


By: _Jonathan W. Cuneo_
Jonathan W. Cuneo, Esquire (DC Bar# 939389)
Charles J. LaDuca, Esquire  (DC Bar# 476134)
William H. Anderson, Esquire
507 C Street, NE
Washington, DC 20002
(202) 789-3960

Nicholas E. Chimicles, Esquire
(admitted pro hac vice)
Benjamin F. Johns, Esquire
(admitted pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
(610) 642-8500

Robert J. Cynkar, Esquire  (DC Bar# 957845)
EGAN, FITZPATRICK, MALSCH & CYNKAR,
PLLC
8300 Boone Boulevard, Suite 340
Vienna, VA  22182
(703) 891-4050

Henry D. Levine, Esquire (DC Bar # 952770)
Stephen J. Rosen, Esquire (DC Bar # 441942)
LEVINE, BLASZAK, BLOCK AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, D.C.  20036

R. Montgomery Donaldson, Esquire
MONTGOMERY, McCRACKEN, WALKER
& RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware  19801
(302) 504-7800

Stephen A. Madva, Esquire
Clifford Scott Meyer, Esquire
MONTGOMERY, McCRACKEN, WALKER
& RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109-1030
(215) 772-1500

Christopher Weld, Jr., Esquire
(admitted pro hac vice)
Kevin T. Peters, Esquire
(admitted pro hac vice)
TODD & WELD LLP
28 State Street
Boston, MA  02109
(617) 720-2626

- 26 -

Professor Charles Tiefer  (DC Bar#  330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, MD  20815
(301) 951-4239

Andrew N. Friedman, Esquire (D.C. Bar No.
375595)
Victoria S. Nugent, Esquire (D.C. Bar No.
470800)
COHEN, MILSTEIN,
HAUSFELD & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
(202) 408-4600

David L. Wales, Esquire (Bar No. 417440)
Mark C. Rifkin, Esquire
Martin Restituyo, Esquire
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600