DOCKETED ON CM
JUN 28 2006
BY ___ 026

FILED
CLERK, U.S. DISTRICT COURT
JUN 26 2006
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GURROLA and ROSALVA GURROLA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; AT&T; VERIZON COMMUNICATIONS, INC.; CINGULAR WIRELESS, LLC; and CELLCO PARTNERSHIP, dba VERIZON WIRELESS, <br><br> Defendants. | CV 06-3425-SVW (Ex) <br><br> ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER |

### I.   INTRODUCTION

Before the Court is an application for a temporary restraining order to enjoin the United States and various telephone companies from collecting telecommunications excise taxes ("TET") on telephone service that is billed on the basis of call duration. That the tax is invalid is undisputed. Under 26 U.S.C. § 4252(b), "toll telephone service" is subject to taxation if "there is a toll charge which varies in amount with the distance *and* elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b) (emphasis added). In spite of the plain statutory language that required the toll charge to vary with both time and distance, the Internal Revenue

Service ("IRS") had previously maintained that telephone service is subject to the TET even if the toll charge was assessed solely on the basis of time. Telephone companies have for years billed consumers for TET on time-only service on behalf of the IRS. However, a string of recent federal court decisions have held that the TET is inapplicable to time-only service.[1] Accordingly, the IRS issued Notice 2006-50 on May 25, 2006, announcing that it will no longer collect the TET on time-only service. The Notice provided that taxpayers no longer have to pay the TET, and directed telephone companies to cease collection of any sums billed after July 31, 2006. I.R.S. Notice 2006-50 § 4(a), (c). The IRS also established a procedure whereby taxpayers may apply, on their 2006 tax returns, for refunds of TET paid in the last three years. Id. at § 5.

Plaintiffs Oscar and Rosalva Gurrola brought the present action on June 5, 2006, to enjoin ongoing collection of the TET and to obtain refund of sums already paid. The suit is brought purportedly on behalf of a class of California residents. Plaintiffs seek "declaratory relief, injunctive relief, money damages, and a refund of federal communication excise taxes against" the United States, AT&T, Verizon Communications, Inc., Cingular Wireless LLC, and Cellco Partnership, which is better known as Verizon Wireless. (Complaint

---

[1] See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328 (11th Cir. 2005) (holding that time-only service is not subject to taxation under 26 U.S.C. § 4252(b)); OfficeMax, Inc. v. United States, 428 F.3d 583 (6th Cir. 2005) (same); Nat'l R.R. Passenger Corp. v. United States, 431 F.3d 374 (D.C. Cir. 2005) (same); Reese Bros. Inc. v. United States, 447 F.3d 229 (3d Cir. 2006) (same); Fortis v. United States, 447 F.3d 190 (2d Cir. 2006) (same). Reese Brothers, the most recent of these decisions, was issued on May 9, 2006.

1-2.) The complaint stated eleven claims for relief: (1) Fifth Amendment takings; (2) non-uniform collection under Article I, section 8 of the United States Constitution; (3) "illegal exaction" in violation of the Internal Revenue Code; (4) refund of sums already paid to the IRS; (5) injunctive relief against continuing collection; (6) unjust enrichment; (7) restitution; (8) refund from the telephone companies; (9) unfair competition; (10) conversion; (11) violations of 47 U.S.C. § 201(b) and Truth-In-Billing Regulations, 47 C.F.R. § 64.201(b).

On June 6, 2006, Plaintiffs filed an ex parte application for a temporary restraining order. Initially, Plaintiffs sought to immediately enjoin both the telephone companies from collecting and the IRS from receiving the TET. However, after the telephone companies responded that it would be logistically impossible to modify their billing systems with such short notice, Plaintiffs now seek only to enjoin the IRS from receiving any sums that the telephone companies may collect between now and July 31, 2006. (Pls. Reply at 1.)[2] Plaintiffs ask that the telephone companies hold those sums in trust for the benefit of the purported class.

For reasons explained below, Plaintiff's application for a temporary restraining order is DENIED.

II. DISCUSSION

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment and collection of any tax shall be

---

[2] Plaintiffs' counsel reiterated this position at oral argument on June 19, 2006.

maintained in any court by any person, whether or not such person is the person against whom the tax was assessed." 26 U.S.C. § 7421(a). To overcome this bar, Plaintiffs must avail themselves of the narrow judicial exception to the Act set forth by the Supreme Court in Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1 (1962). As the Supreme Court stated, "if it is clear that under no circumstances could the Government ultimately prevail . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists." Id. at 7. In the Ninth Circuit's formulation, this exception "requires the taxpayer to demonstrate that: (1) under no circumstances can the government ultimately prevail on the merits; and (2) the taxpayer will suffer irreparable injury without injunctive relief." Elias v. Connet, 908 F.2d 521, 525 (9th Cir. 1990). Of course, in addition to meeting their burden under the Enochs exception, Plaintiffs must also satisfy the general test for a preliminary injunction. "[T]he moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." Barahona-Gomez v. Reno, 167 F.3d 1228, 1234 (9th Cir. 1999) (internal quotation marks and citation omitted).

### A. The Enochs Exception Does Not Apply

The Court is confronted with the unusual situation where the IRS already agrees that the "tax" is not authorized by the Internal Revenue Code, has announced that taxpayers are no longer required to pay it, and established a procedure for taxpayers to obtain refunds.

The telephone companies have been given just over a month to reconfigure their billing systems to cease collection of the sums in issue.[3] Notably, Plaintiffs seek not an injunction to stop the phone companies from continuing to collect the TET pending modification of their systems. Instead, Plaintiffs seek only to enjoin the IRS from receiving sums collected between now and July 31, 2006. Put differently, the requested injunction would not stop the collection of taxes, but only require that the collectors hold the sums in trust for taxpayers, pending a direct refund from the phone companies to taxpayers through established telephone billing systems.

The Ninth Circuit has already rejected the application of the Enochs exception to parallel circumstances. Brennan v. Southwest Airlines Co., 134 F.3d 1405 (9th Cir. 1998), involved an excise tax on domestic air travel that airlines had collected on behalf of the IRS. Although the tax was set to expire at the start of 1996, airlines continued to collect the tax on the expectation that Congress would renew the tax. However, Congress did not reenact the tax until August 1996. Consequently, many passengers who traveled between January and August 1996 paid over sums that were never authorized as taxes by Congress. Litigation ensued. The plaintiffs argued that the suit could proceed as a Enochs action rather than a refund suit under 26 U.S.C. § 7422(a), because the government had no possibility of establishing the legality of taxes levied between January and August 1996. The Ninth Circuit rejected that attempt to

---

[3] Contrary to Plaintiffs' contention, Notice 2006-50 does not require telephone companies to collect the TET until July 31, 2006. Rather, the telephone companies may immediately stop collection of the TET. Collection must cease by July 31, 2006. IRS Notice 2006-50 § 4(c).

1  "extend Enochs to the situation where a collection agent already has
2  collected an illegal tax." Id. at 1413.  The court explained,
3       The Enochs exception has . . . never been applied to
4       allow a taxpayer to sue a private tax collector for the
5       refund of erroneously collected taxes, and with good
6       reason.  Enjoining clearly illegal tax collection allows
7       taxpayers to hold onto their money, thereby saving
8       taxpayers and the government the hassle and expense of
9       refund claims that the taxpayers invariably would win
10      anyway.  However, when the government already has collected
11      the tax, this rationale does not apply.  The taxpayers
12      already have given up the money, and then must attempt to
13      get it back.
14  Id. (internal quotation marks and citations omitted).
15       Just as in Brennan, Plaintiffs in the instant case seek to
16  invoke Enochs to obtain refund of taxes that would have already left
17  the hands of taxpayers.  It is immaterial that Plaintiffs seek to
18  restrain private collectors from turning over the funds to the IRS,
19  rather than to enjoin collection directly; the fact remains that the
20  funds would already in the hands of collectors acting as agents of
21  the Government.  Thus, the suit is now nothing more than a refund
22  action.  The Enochs exception does not apply.
23
24       B.   **Plaintiffs Have Not Demonstrated Possibility of Irreparable
25            Injury**
26       Plaintiffs contend that irreparable harm will result if the
27
28

telephone companies continue to pay over collected sums to the IRS, because many taxpayers will, through ignorance or oversight, fail to apply for refunds under the procedure the IRS has established. The argument is without merit. The IRS has already announced that taxpayers are not required to pay the TET. **Plaintiffs** can avoid any continuing financial injury simply by refusing to pay the TET billed on their telephone service statements. Moreover, the IRS has established an administrative procedure for taxpayers to obtain refunds. The IRS will also provide a "safe harbor" refund to taxpayers who are unable to provide documentation to demonstrate the amount of unauthorized taxes actually paid. **Nothing stops any aggrieved taxpayer from utilizing those procedures.** It is hard to see how there is risk of irreparable harm in these circumstances.

Plaintiffs contend that they need not show the possibility of irreparable harm because they have alleged constitutional injury, in the sense that funds have been allegedly collected from them without lawful authority and in violation of the Takings and Due Process Clauses of the Fifth Amendment, as well as the Uniform Excise Tax Clause of Article I, Section 8. See Goldie's Bookstore v. Superior Ct., 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional infringement will often alone constitute irreparable harm.") However, the presumption of irreparable harm for constitutional violations is usually applied in the context of intangible rights such as free speech, privacy, and freedom from unreasonable search and seizure. See 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.1 (1995) (collecting cases). Plaintiffs have cited no authority that applies the presumption to financial

injury. Under their theory, where the validity of a government exaction is in dispute, litigants can make an end-run around the irreparable injury requirement simply by putting a constitutional gloss on financial injury that is otherwise plainly reparable. The Court rejects that contention.

### C. Plaintiffs Have Not Demonstrated Likelihood of Success On the Merits

Plaintiffs' action is essentially a tax refund suit, and is therefore subject to the procedures Congress has enacted to govern such actions. 26 U.S.C. § 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . or any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund has been duly filed with the [Treasury Secretary], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Plaintiffs have conceded that they have yet to file an administrative claim for a refund. (Complaint at 17.) Their failure to exhaust administrative remedies compels the Court to find that they have not established a likelihood of success on the merits.

Plaintiffs contend that section 7422(a) applies only to funds in the possession of the IRS, and not to funds in the possession of collectors before remittance to the IRS. However, the telephone companies have collected the disputed sums solely as agents of the

8

1  IRS, and will continue to turn over to the IRS any funds collected
2  going forward, so that the funds can be returned through the IRS's
3  refund scheme. (See Shashack Decl.; Mahida Decl.) As the Seventh
4  Circuit has explained in holding that a lawsuit against a private
5  collector constituted a federal refund action, "a suit for refund of
6  the taxes that [a private firm] collected - a suit necessarily based
7  on a claim that the taxes were collected in violation of law - is as
8  much a suit for the refund of federal taxes as if it had been brought
9  against the Commissioner of Internal Revenue." Kaucky v. Southwest
10 Airlines Co., 109 F.3d 349, 351 (7th Cir. 1997). "It makes no
11 difference whether the firm is still holding the money it erroneously
12 collected or has passed it on to the IRS." Id. at 352.
13      Plaintiffs' reliance on In re Air Transp. Excise Tax Litigation,
14 37 F. Supp. 2d 1133 (D. Minn. 1999), is unavailing. There, the
15 defendant airline collected funds from customers purportedly as
16 taxes, yet never turned over the funds to the IRS. Id. at 1136.
17 Thus, the court ruled that the suit could not be characterized as a
18 federal tax refund action. In contrast, in the present case
19 Plaintiffs have not contended that the telephone companies will
20 pocket collected sums for their benefit.

22      D.   The Balance Of Hardships Favor Denial of Plaintiffs'
23           Application
24      A temporary restraining order would impose significant hardships
25 on the telephone companies. The IRS is already in the process of
26 establishing a uniform refund system for tax payers. If the
27 telephone companies are ordered not to remit funds to the IRS, then

9

1 | they would have to create their own refund systems at great cost.
2 | (Shashack Decl.)  The costs would stem from information retrieval,
3 | identification of individual customers and the amounts they paid,
4 | creation of associated computer programs, tracking records, issuing
5 | checks, and maintenance of refund records.

6 | It is hard to see how Plaintiffs would benefit from a temporary
7 | restraining order.  Issuance of the order would create a separate
8 | refund system for taxes collected during a roughly one-month period
9 | in mid-2006, running parallel to the IRS's own refund system for
10 | three years of wrongfully collected taxes.  **Each company would crea**te
11 | a different system, such that a typical customer with both wireless
12 | and landline service would have to obtain refunds from three separate
13 | sources - the landline provider, the wireless providers, and the IRS.
14 | The result would simply be unnecessary confusion and inconvenience
15 | for taxpayers.

16 | Moreover, there is evidence that compliance with a temporary
17 | restraining order would disrupt legitimate revenue collection.  The
18 | Verizon Defendants[4] claim that, in their current systems, excise taxes
19 | on time-only service are commingled with other excise taxes that they
20 | are obligated to continue to collect.  (See Dentico Decl.)  There is
21 | no practical way to segregate the funds affected by Notice 2006-50
22 | from funds that are not.  Thus, until reprogramming of their systems
23 | are complete, the Verizon Defendants must remit the all of the
24 | commingled funds to the IRS, or none.  For the Verizon Defendants to
25 | comply with the an injunction to not remit funds to the IRS, they

---

[4] The Verizon Defendants include Verizon Communications, Inc., and Cellco Partnership.

would have to stop the transfer of all collected taxes to the IRS, including taxes unaffected by Notice 2006-50. That, of course, would be an impermissible result.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' application for a temporary restraining order is DENIED.

During oral argument on June 19, 2006, counsel for Plaintiffs indicated an intention to move for a preliminary injunction if the Court declines to issue a temporary restraining order. Plaintiffs are entitled to file their motion; however, the Court cautions that, for reasons stated above, a motion for a preliminary injunction is unlikely to succeed.

IT SO ORDERED.

DATED: 6/26/06

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE