IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VIRGINIA SLOAN, et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:06-cv-00483 RMU** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

**Table of Contents**

INTRODUCTION................................................................................................1

ARGUMENT ON REPLY....................................................................................3

    I. THE GOVERNMENT HAS MISCHARACTERIZED PLAINTIFFS'
       MOTION, NOTICE 2006-50, AND NUMEROUS OTHER FACTS
       UPON WHICH THE GOVERNMENT'S ARGUMENTS ARE BASED..........3

        A.  The Motion Described in the Government's Brief is Not the
            Motion Pending Before the Court...........................................................3

        B.  The Government Has Misstated Other Pertinent Facts Upon
            Which Its Arguments Are Based.............................................................4

        C.  The Government Characterizes Notice 2006-50 in a Manner
            Contrary to the Terms of the Notice......................................................6

    II. THE DEFENDANT HAS FAILED TO REFUTE PLAINTIFFS'
       DEMONSTRATION OF SUBSTANTIAL LIKELIHOOD OF
       PREVAILING ON THE MERITS....................................................................7

        A.  This Court has Jurisdiction Under the APA and the
            Little Tucker Act...................................................................................8

        B.  Notice 2006-50 is "Agency Action" and Plaintiffs are
            Aggrieved Parties within the Purview of the APA...............................10

        C.  The AIA has no Application to this Case.............................................13

           1.  This motion will not interfere with the "assessment
               or collection" of taxes.............................................................13

           2.  Even if the Plaintiffs did seek to enjoin the assessment or
               collection of the FET, it would, under the circumstances
               of this case, fall within the *Williams Packing* exception to
               the AIA....................................................................................15

        D.  The I.R.S. Has Not Addressed, Much Less Refuted, Plaintiffs'
            Demonstration that the Limited Recovery Announced by
            Notice 2006-50 is Unconstitutional as an Improper Taking and
            in Failing to Provide a Clear and Certain Post Deprivation Remedy..16

III. THE GOVERNMENT HAS FAILED TO REFUTE PLAINTIFFS'
DEMONSTRATION OF IRREPARABLE INJURY....................................17

    A. Plaintiffs' Rights Under the APA Will be Lost Without Prompt
Injunctive Relief..............................................................................17

    B. Costly Litigation is no Alternative.......................................................18

    C. The Notice Itself is Insufficient to Preclude Irreparable Harm............19

IV. DEFENDANTS HAVE NOT DEMONSTRATED THAT THE
NARROW INJUNCTIVE RELIEF SOUGHT WILL HARM THE
I.R.S. OR OTHER TAXPAYERS, AND THAT THE PUBLIC
INTEREST WILL NOT BE SERVED BY THE RELIEF SOUGHT.............23

**CONCLUSION**............................................................................................24

## Table of Authorities

**Cases**

*America's Community Bankers v. FDIC*, 200 F.3d 822 (D.C.Cir. 2000) .......................... 8

*American Bioscience v. Thompson*, 243 F.3d 579 (D.C. Cir. 2001) ................................ 23

*Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974) ........................................................ 14, 15

*\*Boddie v. Connecticut*, 401 U.S. 371 (1971) ................................................................ 20

*Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989) ........................................................ 20

*\*Center for Auto Safety v. National Highway Traffic Safety Admin.*, 453 F.3d 798 (D.C.
    Cir. 2006) ....................................................................................................................... 8

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ................................. 8, 9

*Christensen v. Harris County*, 529 U.S. 576 (2000) ...................................................... 11

*C.I.R. v. Shapiro*, 424 U.S. 614 (1976) .......................................................................... 15

*Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994) .................................................. 12

*Coughlin v. Regan*, 584 F. Supp. 697 (D. Me. 1984) .................................................... 14

*\*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962) ....................... 15, 16

*Fostvedt v. United States*, 978 F.2d 1201 (10th Cir. 1992) ............................................. 9

*\*Goldberg v. Kelly*, 397 U.S. 254 (1970) ...................................................................... 20

*Gurolla v. United States*, Civ. No. 06-3425-SVW (C.D. Cal. Jun 26, 2006) ................. 20

*Henrietta D. v. Giuliani*, 119 F. Supp.2d 181 (E.D.N.Y. 2000) ..................................... 20

*\*Hibbs v. Winn*, 542 U.S. 88 (2004) .......................................................................... 13, 14

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992) ................................................... 9

*Jahn v. Regan*, 584 F. Supp. 399 (E.D. Mich. 1984) ..................................................... 14

*Lampert v. United States*, 884 F.2d 1395 (9th Cir. 1989) ........................................ 15, 16

*McGlotten v. Connally*, 338 F. Supp. 448 (D.D.C. 1972) .............................................. 14

*Mova Pharm. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ............................................. 1

*\*Murphy v. I.R.S.*, 362 F.Supp.2d 206 (D.D.C. 2005) ..................................................... 9

*\*Nat'l R.R. Passenger Corp. v. United States*, 338 F. Supp. 22 (D.D.C. 2004) .............. 15

*Nelson v. Regan*, 731 F.2d 105 (2d Cir. 1984) ......................................................... 14, 15

*O'Hagan v. United States*, 86 F.3d 776 (8th Cir. 1996) ................................................. 15

*O'Shaughnessy v. C.I.R.*, 332 F.3d 1125 (8th Cir. 2003) ............................................... 12

*Olson v. Wing*, 281 F. Supp.2d 476 (E.D.N.Y. 2003) ..................................................... 20

*Ponchik v. Commissioner*, 854 F.2d 1127 (8th Cir. 1988) ............................................. 16

*Serono Labs, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1977) ........................................ 1

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1975) ..................................... 12

*Sorenson v. Sec'y of Treasury*, 752 F.2d 1433 (9th Cir. 1985) ....................................... 14

*Sugar Cane Growers Coop. v. Veneman*, 289 F.3d 89 (D.C. Cir. 2004) ......................... 12

*Tax Analysts v. I.R.S.*, 416 F.Supp.2d 119 (D.D.C. 2006) ............................................. 11

*Tax Analysts and Advocates v. Shultz*, 376 F. Supp. 889 (D.D.C. 1974) ....................... 14

*Threlkeld v. C.I.R.*, 848 F.2d 81 (6th Cir. 1988) ........................................................... 12

*Transohio Sav. Bank v. OTS*, 967 F.2d 598 (D.C. Cir. 1993) .......................................... 9

Trinity United Methodist Church v. United States, 1975 WL 613, * 2 (N.D. Ala. Jan. 16,
    1975) .............................................................................................................................. 21

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.
    Cir. 1977) ......................................................................................................................... 1

**Statutes**

26 U.S.C. § 7421 .................................................................................................. 13, 21

5 U.S.C. § 702 ................................................................................................... 1, 8, 9

**Other Authorities**

INTERNAL REVENUE MANUAL ("IRM"), § 32.2.2.3.3 ...................................................... 11

INTERNAL REVENUE MANUAL ("IRM"), § 32.2.2.5.3.......................................................... 11

*Policy and Procedures to Ensure Consideration of Potential Impacts of Regulations on Small Businesses and Entities*, IRM, § 32.1.5 ............................................................... 21

R. Greenstein, et al., *Repaying an Invalid Excise Tax to Low-Income Households That Do Not File Income Tax Returns* (August 3, 2006)............................................. 2, 5, 18, 20

Robert Guy Matthews, *Companies Discover It Isn't Easy to Claim Phone-Tax Refunds*, WALL ST. J., Aug. 1, 2006, at B1 ........................................................................ 2, 22

**Treatises**

Joshua E. Husbands, Comment, *The Elusive Meaning of "Small Business,"* 2 J. Small & Emerging Bus. L. 355, 362 (1998) ............................................................................ 22

## INTRODUCTION

Plaintiffs submit this reply memorandum in further support of their Motion for Preliminary Injunction (Docket No. 25, July 6, 2006) and in response to Defendant's Memorandum in Opposition to Second Motion for Preliminary Injunction ("Opposition Brief," or "Opp. Br.").

In their opening memorandum, Plaintiffs met each of the four prerequisites for preliminary injunctive relief[1] by showing:

(1)     that they are likely to succeed on the merits because the refund-constraining scheme of Notice 2006-50 – which effectively denies a remedy to millions of low-income Americans (particularly low-income senior citizens), small businesses, individual proprietors and nonprofit entities – violates the procedural and substantive provisions of the APA,[2] constitutes an unconstitutional taking by failing to provide full restitution, and fails to provide a clear and certain post deprivation remedy as required by the Constitution;

(2)     that they need not demonstrate irreparable injury where an APA claim has been made out, but that irreparable injury nonetheless is threatened because the Notice's inherent procedural and substantive flaws coupled with the agency's failure to follow mandatory notice-and-comment procedures not only effectively disenfranchises millions of the most vulnerable taxpayers, but has denied them an opportunity to raise objections to the promulgation of the rule that sealed their fate;

(3)     that the injunctive relief sought will not harm the Government or other taxpayers, since the Government already has acknowledged that the FET has been illegally collected, must be returned, and now seeks through Notice 2006-50 to effect that return. The relief sought is calculated to supplement and otherwise facilitate the relief envisioned by the Notice, not prevent it; and

(4)     that the public interest strongly favors injunctive relief because the only government action that is less in the public interest than the imposition of an illegal regressive tax is the secret formulation and 11th-hour announcement of a refund program that is structured (by design or happenstance) to deny refunds to

---

[1]   *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("Pl. Opening Br.") at 14-15 (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977) and Opp. Br. at 3 (citing *Serono Labs, Inc. v. Shalala,* 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)). *See also Mova Pharm. v. Shalala,* 140 F.3d 1060, 1066 (D.C. Cir. 1998))..

[2]   This memorandum uses the same nomenclature used in Plaintiffs' opening memorandum. Thus, "APA" refers to the Administrative Procedure Act, 5 U.S.C. § 702, the "I.R.S.," "Defendant" and "Government" all refer to the defendant in this action, and so on.

the least affluent, most vulnerable victims.  Otherwise, an I.R.S. spokesman admits, "the IRS and Treasury officials are talking with phone companies and business taxpayers," not with the millions of low-income non-filers or their representatives.  Robert Guy Matthews, *Companies Discover It Isn't Easy to Claim Phone-Tax Refunds*, WALL ST. J., Aug. 1, 2006, at B1.

Accordingly, the relief requested by Plaintiffs is narrowly-tailored and seeks only to have the agency (a) comply with the APA's notice-and-comment procedures for agency rule-making; and (b) consider the benefits, disadvantages and alternatives to the remedy spelled out in the Notice to determine whether (and, if so, how) to treat fairly the groups that will be denied refunds by the Notice and to create a record for judicial review if the agency elects not to fix the remedy process.

As described below, the Government's Opposition Brief fails to meaningfully refute – and in some cases, fails to address altogether – the Plaintiffs' showing as to *any* of these elements.  Worse, the Government's arguments are based on faulty assertions of fact and mischaracterizations of the scope of relief sought by this motion and of Notice 2006-50 itself.  In particular, the Government's speculation (Opp. Br. 12-13) that the refund mechanism contemplated by Notice 2006-50 would be less burdensome for filers and non-filers alike than the effective remedy sought in this action compels the Plaintiffs to respond.  Accordingly, they offer the attached expert report estimating that 10 million or more non-filers would fail to obtain a return of the illegal exaction under Government's plan requiring the filing of an income tax return.  *See* R. Greenstein, et al., *Repaying an Invalid Excise Tax to Low-Income Households That Do Not File Income Tax Returns* (August 3, 2006) (appended as Ex. A).

**ARGUMENT ON REPLY**

**I.    THE GOVERNMENT HAS MISCHARACTERIZED PLAINTIFFS' MOTION, NOTICE 2006-50, AND NUMEROUS OTHER FACTS UPON WHICH THE GOVERNMENT'S ARGUMENTS ARE BASED.**

The Government's opposition to preliminary injunctive relief is legally flawed, and underlying its flawed legal arguments are erroneous allegations of fact. These misstatements are important because, among other things, they are the sole basis for the Government's contention that the relief sought by Plaintiffs does not satisfy the third and fourth prongs of the preliminary injunction test, i.e., that an injunction would not substantially injure other interested parties, and would further the public interest.

**A.    The Motion Described in the Government's Brief is Not the Motion Pending Before the Court.**

The Government opens with the contention that "[t]his is an action for, *inter alia*, an order enjoining the implementation of a procedure for refund of communications excise taxes, as proposed in IRS Notice 2006-50 . . . ." Opp. Mem., 1. This could not be further from the truth.

In fact, the preliminary injunctive relief sought is *not* intended to halt the incremental (albeit seriously flawed) step forward taken by Notice 2006-50. Rather, Plaintiffs have emphasized that this motion is a surgical strike, seeking only to "require the agency to revisit the Notice, which was secretly drafted behind closed doors, to obtain public comment and give the prejudiced groups the refunds to which they are legally entitled . . . ." Pl. Opening Br., 4. Thus, "[t]he proposed order that accompanies th[e] motion does *not* seek to block the refund program in the Notice, which includes core relief that Plaintiffs sought from the I.R.S. for months before it was issued." *Id.* (emphasis in original). The Plaintiffs seek only to compel the agency to:

- comply with the APA's notice-and-comment procedures; and

- critically evaluate the remedy spelled out in the Notice to either correct its

  procedural and substantive defects or create a record that will permit meaningful

  judicial review if the agency elects not to fix the remedy program.

Simply put, the Government's characterization of the motion and the relief it seeks is

irreconcilable with what Plaintiffs have filed with the Court.

### B.    The Government Has Misstated Other Pertinent Facts Upon Which Its Arguments Are Based.

A host of other incorrect factual statements flow from the government's

mischaracterization of Plaintiffs' motion.

Some simply are untrue, like the Government's contention that "plaintiffs plainly

seek to interfere with the collection of federal taxes and refund of overpayments outside

the procedure set forth by Congress." Opp. Br., 8.  First, the collection of federal taxes is

in no way implicated by this action generally, nor by this motion in particular, because

the Government already has acknowledged (at long last) that the FET was illegal, should

not have been collected in the first place, and no longer will be collected.  Second, what

this action seeks above all else is a refund mechanism that *complies* with the procedures

set forth by Congress – including the procedures mandated by the APA – and the

procedural and substantive mandates of the United States Constitution.

Other factual contentions made by the Government are misleading because they

proceed from the (false) premise that Plaintiffs seek to block – rather than supplement –

the procedures established in the Notice.  Thus, the Government contends that "[i]f the

guidance contained in the Notice is invalidated, the statute-of-limitations suspended in

the Notice . . . may cause some otherwise valid claims to expire." Opp. Br., 13.  But

Plaintiffs have not asked that the relevant guidance be "invalidated." With respect to the statute-of-limitations, Plaintiffs seek in effect to require the agency to issue notice and solicit comment with a view to *extending* the limited scope of recovery envisioned by the Notice, not to narrow it further.

In a similar vein, the Government contends that "many taxpayers may have relied upon the Notice, which was announced in various media outlets, to decide not to file a claim-for-refund but instead to elect to claim the credit on their 2006 tax return." *Id.* That may be true, but nothing proposed by Plaintiffs will interfere with or frustrate that reliance. The pending motion seeks for those individuals a larger credit, and to get *something* for the millions of people and entities that will not be able to claim the credit on their 2006 tax returns either because they do not file tax returns or because they would have to spend many hours, dollars or both to obtain a very modest refund. *See* Ex. A at 2-3, 12-13.

The Government concludes its opposition with an attack on the class action mechanism and the Plaintiffs' reluctance to detail equitable remedies in the initial stages of a complicated lawsuit. The attack has two contradictory components. First, the Government argues that

> Requiring taxpayers to submit to [an alternative], more cumbersome process, such as [a] class action in which the individual excise tax claims of an entire telephone-using nation are scrutinized on a case-by-case basis, or calculated on an 'averaged' basis to deny the full amount of overpayment to those who are not aware of the 'opt-out' provision proposed by the plaintiffs, could operate to the detriment of many, and is not in the public interest.

Opp. Br., 13. This argument rings hollow coming, as it does, from an agency that has itself proposed a class-wide process that combines the promise of billions of dollars in refunds with the reality of a procedure that will deny that promise to the millions of

citizens and small businesses who are least able to defend their interests. But the central

flaw of the argument is that Plaintiffs have proposed no such process.

   The Government admits this in the second prong of its attack – that "Plaintiffs

have not proposed a viable alternative" to the procedures set forth in Notice 2006-50. *Id.*

This argument is both false and premature. It is false because Plaintiffs *have* proposed a

viable interim alternative – a notice and comment procedure that will give the I.R.S. an

opportunity to consider (as it apparently never has) and correct the unlawful lacunae of

the Notice, and in the process to build a record that can be reviewed by this Court. It is

premature because the Plaintiffs are not required under the applicable preliminary

injunction test or otherwise to lay out at this preliminary stage of the case the tools that a

Court may equitably consider if and as it seeks to remedy the failings of Notice 2006-50

so that the fund in the Government's possession can go to those to whom it belongs.

### C.    The Government Characterizes Notice 2006-50 in a Manner Contrary to the Terms of the Notice.

   Noteworthy also is the gaping disconnect between the Government's

characterization of Notice 2006-50 and its actual terms.

   The re-invention of the Notice by the Government in its briefing to avoid scrutiny

under the provisions of the APA make more confusing that which was confusing to begin

with.[3] The mandatory terms of the Notice (*e.g.*, "Request *must* follow this Notice" (§

5(a)), "Collectors are *directed* to cease collecting and paying over tax . . ." (§ 4(c)), etc.)

and the permissive characterization in the IRS' submission ("Nor does Notice 2006-50

purport to bind any taxpayer to its terms, or to restrict or otherwise modify existing

---

[3] Plaintiffs in their Second Amended Consolidated Complaint (¶¶ 38-40) and other submissions have identified key aspects of the remedy explained in Notice 2006-50 that are *unclear* and *uncertain*: (1) the "safe harbor" amount is not identified; (2) what constitutes an "entity" for purposes of preclusion from the safe harbor amount is not spelled out, and so on.

rights." (Opp. Br., 5)) are *directly contradictory*. Put another way, nowhere does the Notice tell taxpayers what the Government is now telling the Court: that taxpayers may, contrary to the mandatory language in the Notice's exclusive remedy provision, pursue alternative remedies.[5]

Similarly, and as explained more fully below, Notice 2006-50 was when issued heralded as, purports to be by its terms, and is in substance a once-and-done attempt to remedy a significant problem; however, the Government now seeks to re-characterize the Notice as a mere "policy statement" that is neither mandatory, exclusive nor substantive. The government has done this, again, to avoid scrutiny under the APA, but the effect is to dilute and undercut what was done by the Notice (even though that remedy is incomplete). As demonstrated in Plaintiffs' opening brief, having conceded that the tax was illegal and thus void *ab initio*, refunds no longer are "discretionary" nor optional nor a matter for partial resolution through the promulgation of mere policy statements. A clear and certain remedy is constitutionally required for all persons (not just the most affluent) and entities (not just large, resource-rich corporations) wrongfully assessed, and the relief sought by this motion is calculated to facilitate, ultimately, just that.

## II.    THE DEFENDANT HAS FAILED TO REFUTE PLAINTIFFS' DEMONSTRATION OF SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THE MERITS.

The Government challenges the likelihood of success on the merits on jurisdictional grounds, arguing that:  (1) there has been no waiver of the Government's

---

[4]  Opp. Br., 5.
[5]  If the Government's re-characterization of Notice 2006-50 in footnote 4 (Opp. Br., 6) stands, then the Notice contemplates a hybridized, multi-tracked remedy scenario (*i.e.*, administrative refund applications *plus* litigation in the federal courts), which underscores why a uniform and orderly class-wide remedy is appropriate. Such a fractured and chaotic approach is *precisely* what a class-wide remedy under the capable oversight of the Court would avoid.

sovereign immunity under the APA and (2) that this Court is denied jurisdiction under the

Anti-Injunction Act.  Neither argument has merit.

**A.    This Court has Jurisdiction Under the APA and the
        Little Tucker Act.**

The Government's contention that there has been no waiver of sovereign

immunity is legally insupportable, and inconsistent with positions taken elsewhere in the

Government's filings.  *See* Opp. Br., 4-7.  The Plaintiffs address waiver of immunity

under both the APA and the Little Tucker Act in their Memorandum of Points and

Authorities in Opposition to the United States' Motion to Dismiss, at sections I.B and I.C,

and in the interest of brevity, those arguments will not be repeated here.

With particular respect to the relief sought in Plaintiffs' preliminary injunction

motion, Section 702 of the APA, as amended in 1973, states that an action "shall not be

dismissed nor relief therein be denied on the ground that it is against the United States."

5 U.S.C. § 702.  The decisions of this Circuit recognize and have applied this waiver in

appropriate cases.[6]  And consistent with those cases, the Government has conceded in

other filings in this case that "section 702, the APA's judicial-review provision, *waives*

*the Government's sovereign immunity*, and thus permits the exercise of jurisdiction, in

suits seeking non-monetary relief with respect to certain agency actions."  Mem. in

Support of United States' Mot. to Dismiss Second Am. Complaint, 27 (Docket No. 29)

---

[6]  *See Center for Auto Safety v. National Highway Traffic Safety Admin.*, 453 F.3d 798, 2006 WL 1715358, *7 (D.C. Cir. 2006) (APA reviewability of final agency action); *America's Community Bankers v. FDIC*, 200 F.3d 822, 828 (D.C.Cir. 2000) ("Congress has promulgated statutes like the APA to waive sovereign immunity and authorize parties aggrieved by agency actions to seek relief against the offending agencies in court."); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("Nor does sovereign immunity appear to bar appellants' suit.").

("Gov't Mot. to Dismiss") (emphasis added).[7]  Of course, this motion seeks only non-monetary relief, and therefore falls squarely within the APA's waiver provision.

Nevertheless, the Government cites without analysis cases from two other circuits for the remarkably broad proposition "that the APA, as a matter of law, does not provide relief in cases with respect to federal taxes." Opp. Br. at 7.  Those cases, however, hold no such thing.  Rather, they stand for the unremarkable proposition that the APA preserves, as an exception to injunctive relief, the Anti-Injunction Act's limitations.[8]

Eliminating any question on the issue, Judge Lamberth's recent decision in *Murphy v. I.R.S.*, 362 F.Supp.2d 206 (D.D.C. 2005)(cited in Gov't Mot. to Dismiss at 17), meets the Government's argument head-on.  There, as here, the Government sought dismissal based on its contention that the I.R.S. is not subject to the APA's 1973 waiver amendment.  The Court rejected this argument, holding that "the IRS is a proper party to the suit [u]nder 5 U.S.C. sec. 702(a)," because the plaintiff sought "injunctive and declaratory relief, thus satisfying 5 U.S.C. sec. 702(a)." *Murphy*, 362 F.Supp.2d at 212.

Unquestionably, *Chamber of Commerce*, *Transohio* and *Murphy* make clear that the APA provides a waiver of the I.R.S.'s sovereign immunity where, as in this case, Plaintiffs seek relief other than monetary damages.

---

[7]  The Government also acknowledges the leading precedent in this Circuit on the broad availability of the APA sovereign immunity waiver.  *Id.* (citing *Transohio Sav. Bank v. OTS*, 967 F.2d 598, 607 (D.C. Cir. 1993)).  In *Transohio*, the Court underscored the legislative history of section 702: "In 1976, Congress amended the APA to waive sovereign immunity for suits seeking relief other than money damages from federal agencies or officials."  967 F.2d at 607.

[8] *See Hughes v. United States*, 953 F.2d 531, 537 (9th Cir. 1992) (explaining how "the Anti-Injunction Act is therefore a jurisdictional bar"); *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (typical tax protester case in which the court explained that "[a]ctions in the nature of Petitioner's suit are prohibited by the Anti-Injunction Act").

**B.**    **Notice 2006-50 is "Agency Action" and Plaintiffs are Aggrieved Parties within the Purview of the APA.**

The Government contends that because Notice 2006-50 "does not carry the force of law" but "is merely a statement of policy," plaintiffs "are therefore not 'aggrieved' by the IRS Notice" and there is no reviewable agency action. Opp. Br., 5-7. The Government is wrong on both counts.

The Notice says what it says and is what it is. Indisputably, the profound and controversial measures it articulates have teeth:

> The Notice does far more than merely acquiesce in a series of adverse appellate decisions. The agency seeks to impose entirely unprecedented, detailed, and (to millions of taxpayers) burdensome requirements by which it proposes to refund what it now admits were illegally collected taxes. If allowed to stand, the I.R.S.'s action will deprive a substantial portion of the public of refunds that the I.R.S. concedes are due, and allow the Government to keep billions of dollars it has acknowledged it illegally exacted. The I.R.S.'s violations of the APA thus do not merely offend some abstract notion of proper administrative process; they concretely deny the procedural rights of millions of taxpayers, with important and detrimental consequences.

Pl. Opening Br., 22. In other words, Notice 2006-50 establishes what the I.R.S. will return and will not return of the illegally collected FET, and thereby aggrieves all who will not receive a complete recovery, and in particular those who will not receive anything at all.

To the extent the Government contends that the Notice has no substantive content by virtue of its form, this is flatly contradicted by the I.R.S. manual, which provides:

> Notice Defined
>
> 1.    A notice is a public pronouncement by the Service that may contain guidance that involves *substantive*

10

> *interpretations* of the Internal Revenue Code or other
> provisions of the law . . . .

INTERNAL REVENUE MANUAL ("IRM"), § 32.2.2.3.3 (emphasis supplied).[9]  The Manual

similarly describes the use of Notices, referencing the definition cited above:

> Notices
>
> 1.      Notices are used to publicly announce guidance that
> may involve *substantive interpretations* of the Internal
> Revenue Code or other provisions of the law.  *See* CCDM
> 32.2.2.3.3.

IRM, § 32.2.3.5.3 (emphasis supplied).  This is not to suggest that *every* Notice

"aggrieves;" rather, Plaintiffs argue only that the substance and impact of Notice 2006-50

does so by, *inter alia*, effectively denying a remedy to millions of payers of the FET.

At the same time (and especially given the apparent lack of formal consideration

given to Notice 2006-50 by the I.R.S.), the Notice is *not* entitled to the same judicial

deference as a legislative rule.  *See* Pl. Opening Br., 16-23.  The decision in *Tax Analysts

v. I.R.S.*, 416 F.Supp.2d 119, 126 (D.D.C. 2006), which the Government cites in its

opposition (Opp. Br., 5-6), simply confirms that the courts do not accord *Chevron*

deference to an I.R.S. policy or action announced in a Notice,[10] a proposition with which

the Plaintiffs heartily agree.

---

[9] IRM Section 32.2, "to be referred to as the Chief Counsel Publications Handbook, is the authoritative
source for procedures and instructions pertaining to preparing, reviewing, and processing publications."  It
is also referred to as the Chief Counsel Directives Manual ("CCDM"). IRM, § 32.2.1.2.

[10] *Tax Analysis* says, 416 F.Supp.2d at 126, about the I.R.S.'s Notice in that case, Notice CC-2004-012:
the interpretation is contained in a notice to Office of Chief Counsel attorneys issued over the
signature of Associate Chief Counsel Deborah Butler and later incorporated into the agency's
Chief Counsel Directives Manual. (*See* Butler Decl. Ex. 12 and Ex. 14 at 42-50.) The IRS
therefore correctly concedes that these notices do not carry the force of law. (*See* Def.'s Opp'n at 3-
4.) *See also Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621
(2000) ("Interpretations such as those in opinion letters--like interpretations contained in policy
statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do
not warrant *Chevron*-style deference.")

But to argue, as the Government appears to do, that the lack of deference generally accorded to an I.R.S. notice means that it cannot aggrieve anyone, or is not agency action, is utterly without precedent. Many cases have reviewed and declined to uphold non-legislative I.R.S. "policy" actions, and these actions have included Notices and analogous Revenue Rulings.[11]

The Defendant's reliance on *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1975), is unavailing. Opp. Br., 7. This case does not involve a third-party challenge like *Simon*.[12] Plaintiffs do not challenge Notice 2006-50 because it will reduce some form of charity provided by third parties by which the Plaintiffs ultimately may benefit; rather, Plaintiffs challenge the Notice because it creates a direct obstacle to the *Plaintiffs'* recovery of money wrongfully taken from their own pockets.

And finally, the Government's suggestion that Plaintiffs are not aggrieved because they are free to file a statutory refund application (which will not be processed), wait six months, and then embark on costly litigation is circular reasoning at its worst. *See* Opp. Br., 5-6 & n.2. The inadequacy of a remedy through costly individual litigation is what prompted suit seeking a class-wide remedy in the first place, and has been detailed at length in prior submissions. Telling the individual non-filers, small businesses and non-profits effectively precluded from recovery under Notice 2006-50 that they are

---

[11] *See, e.g., O'Shaughnessy v. C.I.R.*, 332 F.3d 1125, 1130-1131 (8th Cir. 2003)(reviewing Revenue Ruling 75-491); *Costantino v. TRW, Inc.*, 13 F.3d 969, 981 (6th Cir. 1994)(reviewing IRS Notice 87-20); *Threlkeld v. C.I.R.*, 848 F.2d 81, 84 (6th Cir. 1988) (reviewing Revenue Ruling 85-143). Plaintiffs have referred the Court to the most recent D.C. Circuit decision rejecting an agency's attempt to evade review on the ground that the agency action was a "policy" rather than a "rule." Pl. Opening Br., 20-21 (analyzing *Sugar Cane Growers Coop. v. Veneman*, 289 F.2d 89, 95-97 (D.C. Cir. 2004)). The Government has made no attempt to distinguish *Sugar Cane Growers* from this case.

[12] *Simon* rejected a challenge by indigents to an I.R.S. ruling about hospitals denying services and thereby losing their charitable exemption. *Id.* at 42. But that holding turned on the determination that the plaintiffs lacked standing because they were seeking redress for "injury that result[ed] from the independent action of some third party not before the court" (*i.e.*, the charitable hospitals). *Id.*

free to pursue their modest refunds through expensive litigation is reminiscent of Marie Antoinette's consolation to the poor of Paris who could not afford bread: "Let them eat cake."

### C.    The AIA has no Application to this Case.

#### 1.    This motion will not interfere with the "assessment or collection" of taxes.

The Government contends that "plaintiffs plainly seek to interfere with the collection of federal taxes . . . outside the procedure set forth by Congress, and therefore run afoul of the Anti-Injunction Act." Opp. Br., 8. This is simply untrue.

The Anti-Injunction Act ("AIA") blocks injunctive relief only when suit is filed "for the purpose of restraining the assessment or collection of any tax . . . ." 26 U.S.C. § 7421 (a). The assessment and collection of federal taxes are in no way implicated by this action generally, nor by this motion in particular, because the Government already has acknowledged in Notice 2006-50 what it concedes it should have acknowledged long ago: that the FET was illegal, should not have been assessed or collected in the first place, *and no longer will be assessed or collected.* To-wit, the "tax" is dead and buried.

The Government cites no cases applying the AIA to relief not implicating "assessment and collection," and the courts have taken pains to confine the AIA's application, literally, to claims "for the purpose of restraining the assessment or collection." In the recent case of *Hibbs v. Winn*, 542 U.S. 88 (2004), the Court found no threshold barrier to injunctive relief even where the claims involved an active tax program, because plaintiffs' challenge to allegedly invalid tax credits would *increase*

revenues. 542 U.S. at 103 & n.5.[13]  The Court cited with approval the decisions in this

District holding that equitable suits could proceed against the I.R.S. as to tax matters as

long as they did not literally restrain "assessment and collection."  *See also Bob Jones*

*Univ. v. Simon*, 416 U.S. 725, 748 n.22 (1974) (suggesting that the APA does not bar

injunctive relief ancillary to a suit for monetary relief).

　　　Because this case involves neither the assessment nor collection of taxes, but

rather involves a post-collection refund scheme (indeed, for a tax program that no longer

is viable), it falls squarely within the line of precedent holding that the AIA was

inapplicable to challenges to I.R.S. refund procedures vis-à-vis child support obligations

(*i.e.*, state interception of "deadbeat dad" refunds).  *See Sorenson v. Sec'y of Treasury*,

752 F.2d 1433, 1438 (9th Cir. 1985) (noting that "a tax refund suit would not provide an

adequate remedy for a class of plaintiffs who have virtually no means of discovering that

they are entitled to such a refund."), aff'd, 475 U.S. 851 (1986); *Nelson v. Regan*, 731

F.2d 105, 109-110 (2d Cir. 1984); *Jahn v. Regan*, 584 F. Supp. 399, 407 (E.D. Mich.

1984); *Coughlin v. Regan,* 584 F. Supp. 697 (D. Me. 1984).   In those cases, as in this

case, the I.R.S. invoked the AIA as a bar to injunctive relief for refund procedures,

contending that such relief would restrain "assessment and collection."  The courts

---

[13] *Hibbs* itself concerns an Arizona state tax credit program, not a federal one, so that the statutory barrier to equitable suits is technically the Tax Injunction Act (as to states) rather than the AIA (as to federal programs).  However, the Court's discussion, which weaves together TIA and AIA precedents, makes clear that it is espousing a principle applicable to both.  And, it cites with approval cases in this District upholding equitable suits against I.R.S. tax programs, so long as these were not suits for the purpose of restraining assessment or collection.  *See*, 542 U.S. at 103 (*citing McGlotten v. Connally,* 338 F. Supp. 448, 453-454 (D.D.C. 1972) (three judge court) (can enjoin tax exemption for discriminators); *Tax Analysis and Advocates v. Shultz*, 376 F. Supp. 889, 892 (D.D.C. 1974) (can require tax collection from campaign contributors)).

uniformly rejected this argument, since the refund procedures were post- assessment or collection.[14]

> **2.** **Even if the Plaintiffs did seek to enjoin the assessment or collection of the FET, it would, under the circumstances of this case, fall within the *Williams Packing* exception to the AIA.**

Even if, *arguendo*, this motion did seek to enjoin the assessment or collection of the FET, it would fall within the judicially-created exception to the AIA in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962). The *Williams Packing* exception involves a two-prong test: (1) "if it is clear that under no circumstance could the Government ultimately prevail"; and (2) "equity jurisdiction otherwise exists." *Id.* at 7.[15]

The test is met here. This Circuit already has decided against the United States, and thereby bound this Court, as to the unlawfulness of the FET. *Nat'l R.R. Passenger Corp. v. United States*, 338 F. Supp. 22 (D.D.C. 2004), *aff'd*, 431 F.3d 374 (D.C. Cir. 2005).[16] Though far from clear, the Government nonetheless appears to argue that for the *Williams Packing* exception to apply, Plaintiffs must do more than demonstrate that the illegitimacy of the FET already has been decided, but must demonstrate that the Government likewise cannot prevail on *any* issue implicated by the suit, including, by

---

[14] Notably, in *Nelson v. Regan*, a taxpayer class sought to enjoin the I.R.S. from permitting the State of Connecticut to deduct child support from refund payments without due process. 731 F.2d at 108. The I.R.S. raised its usual array of jurisdictional objections, including the Declaratory Judgment Act's injunction prohibition that is similar to the AIA. *Id.* at 109. The Second Circuit rejected this argument, holding that "the Declaratory Judgment's prohibition against relief 'with respect to Federal taxes,' like the Anti-Injunction Act, is designed to protect the 'Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference.' *[Bob Jones Univ.* 416 U.S. at 736.]* This need is not involved here, since the intercept program takes place only *after the assessment and collection of taxes.*" *Id.* (emphasis added).

[15] This second prong requires simply that the test for injunctive relief be met. *See, e.g., C.I.R. v. Shapiro*, 424 U.S. 614, 627 (1976); *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996).

[16] As the Ninth Circuit held in a similar situation, once the Circuit has ruled that the government's position is erroneous, a taxpayer may seek an injunction: "We are bound by *Bond* and therefore conclude that 'under no circumstances could the Government ultimately prevail' on the merits. *See Williams Packing*, 370 U.S. at 7." *Lampert v. United States*, 884 F.2d 1395 (Table), 1989 WL 104459, *3 (9th Cir. 1989) (emphasis added).

way of example, the inappropriateness of the yet-to-be announced safe harbor refund. See Opp. Br., 9-10. But this novel formulation finds no support in the cases, and is not how *Williams Packing* works. A case can (and typically does) present numerous issues and possible outcomes, but all that is necessary to satisfy *Williams Packing* is that the invalidity of the tax be established. For example, in *Ponchik v. Commissioner*, 854 F.2d 1127 (8th Cir. 1988), a taxpayer sought to enjoin the collection of an incorrectly-calculated assessment. The Eighth Circuit observed: "We do not undertake here and now to say how much the taxpayer owes the IRS. It may well be true that the entire gain on the sale of [the taxpayer's] residence is taxable to [him]." *Id.* at 1132. But the Eighth Circuit nonetheless held that the taxpayer had satisfied *Williams Packing* by showing "that he ha[d] been assessed on the basis of a gain that cannot be supported." *Id.* at 1130, 1132.[17]

The validity of the FET in this case already has been adjudicated. The Plaintiffs now seek to compel the I.R.S. to critically re-examine its proposed refund program in compliance with the APA. Clearly, the *Williams Packing* exception applies.

**D.    The I.R.S. Has Not Addressed, Much Less Refuted, Plaintiffs' Demonstration that the Limited Recovery Announced by Notice 2006-50 is Unconstitutional as an Improper Taking and in Failing to Provide a Clear and Certain Post Deprivation Remedy.**

Plaintiffs established in their opening submission that, because Notice 2006-50 purports to return (at most) only three years and four months worth of illegally exacted FET, it gives rise to a deprivation of property without due process of law or just

---

[17] Similarly, in *Lampert*, taxpayers sued for declaratory and injunctive relief as to penalties assessed against them for wrongful promotion of tax shelters. While the Ninth Circuit did not find that the taxpayers could prevail as to the appropriate amount of the penalty, it determined that *Williams Packing* nonetheless applied because "the government cannot prevail on the merits" as to the method used to calculate the disputed penalty. 884 F.2d 1395, 1989 WL 104459 at *3.

compensation in violation of the Fifth Amendment to the United States Constitution.  Pl.

Opening Br., 25-26.  Plaintiffs likewise established that the Notice fails to provide a

"clear and certain" post deprivation remedy as required by the Fifth Amendment.  *Id.* at

26.

      The Government's opposition simply ignores these arguments.

**III.**      <u>**THE GOVERNMENT HAS FAILED TO REFUTE PLAINTIFFS'**</u>
<u>**DEMONSTRATION OF IRREPARABLE INJURY.**</u>

      The Plaintiffs have demonstrated that they and millions of other class members

will suffer irreparable harm if the requested injunctive relief is not granted.  Pl. Opening

Br., 26-28.  This is so because the Notice's inherent procedural and substantive flaws

coupled with the agency's failure to follow mandatory notice-and-comment procedures

not only effectively disenfranchises millions of the most vulnerable taxpayers, but has

denied them an opportunity to raise objections to the promulgation of the rule that sealed

their fate.  The Government's opposition amplifies, rather than refutes, this showing.

      **A.**      <u>**Plaintiffs' Rights Under the APA Will be Lost Without Prompt**</u>
<u>**Injunctive Relief.**</u>

      The Government has offered nothing to the Court by way of an administrative

record, nor has the Government even attempted to describe – much less defend – the

administrative process giving rise to Notice 2006-50.  In fact, the Government does not

deny that it failed to issue public notice and solicit comment in connection with its

formulating process.

      That the interests of millions of disadvantaged taxpayers were overlooked by the

agency in devising the Notice's refund scheme is self-evident.  The status quo is

particularly threatening to the disadvantaged taxpayers whose interests are at stake in this

motion because, if they do as they have done in the past (*i.e.*, not file tax returns), their remedy under Notice 2006-50 (which would require these taxpayers to file where they have not filed before) will be lost.[18] *See* Ex. A at 6, 11 (more than half, and as many as two-thirds, of non-filers historically have failed to file returns for refundable tax credits far larger than the proposed FET refund). This underscores the urgency of the current situation.

Time is ticking. The individual income tax year ends in only five months (on December 31), leaving little more than three months after that before the filing deadline of April 16, 2007. This means that the Government promptly must draft what it will publish, must allow time for public comment and to develop a record, and then must undertake a meaningful deliberative process. Time also must be set aside for judicial review, which of course will involve briefing and consideration by the Court. Absent these steps, time will run out for Plaintiffs and millions of other class members who will be disenfranchised by the Notice, and those who would speak on their behalf in a meaningful APA notice-and-comment procedure will be prevented from doing so.

**B.      Costly Litigation is no Alternative.**

As it did in arguing that Plaintiffs are not aggrieved parties, the Government contends that no irreparable harm is threatened because dissatisfied taxpayers may file a refund claim, wait six months and then commence litigation. Opp. Br., 10-11. But the Plaintiffs whose interests are at stake in *this* particular motion do not include large

---

[18]  When ordinary income tax filers face a current-year adverse I.R.S. position promulgated by Notice or other method, their position is more or less preserved merely by their doing what they do in the ordinary course, *i.e.*, file, and then proceed from there. But under Notice 2006-50, if low-income taxpayers proceed as usual (*i.e.*, do not file), they will lose every penny of their FET refund. So, the impact of Notice 2006-50 starts with the unexpected and new obligations it imposes on non-filers. This differs significantly from how the Notice impacts ordinary filers.

corporate entities like OfficeMax, Reese Brothers, or Amtrak. *See Id.* ("Contradicting plaintiffs' contention that the claim-for-refund procedures are not an 'adequate remedy' is the fact that, in every case cited for the proposition that the communications excise tax does not apply to plaintiffs' long-distance calls, the taxpayer successfully filed a claim for refund."). Litigation against the I.R.S. is no alternative at all, for reasons that have been discussed at length elsewhere and will not be repeated here.

### C.    The Notice Itself is Insufficient to Preclude Irreparable Harm.

The gravamen of this lawsuit, and certainly the driving force behind this motion, is that Notice 2006-50 is substantively and procedurally defective in many ways. Nonetheless, the Government contends that the Notice itself was designed to and therefore does prevent irreparable harm. Opp. Br., 12. This argument must be rejected.

The Government's implicit assumption is that what is good for some taxpayers is good for all. Not so. The millions of low-income non-filers are not situated like ordinary to wealthy taxpayers, the latter having a variety of ways – tax preparation services, software, unpaid assistance regularly obtained, their own reading of instructions or other sources – to understand and deal with a new line on the income tax return that they fill out year after year. Non-filers have access to few if any of these resources, and may never learn that they now, under Notice 2006-50, must for this one year only become filers.

The Government points out that "[e]very year, tens of millions of Americans file claims for refund of income taxes, sometimes for nominal amounts . . . ." Gov't Mot. to Dismiss, 14. However, the "tens of millions" of Americans filing for refunds to which

the Government refers, and the typical *Gurrola* taxpayers,[19] are the quintessential, average to above-average (in terms of wealth) filers. They are not, for example, low-income senior citizen non-filers. The typical average to above-average filers can readily obtain their safe harbor refund pursuant to Notice 2006-50, whereas low-income senior citizen non-filers likely will not. *See* Ex. A at 3, 12.

The courts have recognized in a variety of contexts that the denial of government funds hits those with low income very differently, and much harder, than the well-off. A "safe harbor" amount of $20-$50 might be roughly equivalent to the price of one or two meals out for a family of average wealth, but to a low-income senior citizen non-filer with a modest Social Security check, perhaps supplemented by food stamps, $20-$50 may be the equivalent of several dozen meals. Thus, for indigents, denial of relatively small amounts may implicate the "very means by which to live." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). *See also Boddie v. Connecticut*, 401 U.S. 371, 372, 381 (1971) (striking down $60 fee for·indigents to obtain divorces) (discussed in Pl. Opening Br., 27). In such cases, irreparable injury has been found and injunctive relief in favor of plaintiff classes granted.[20]

The same holds true for small businesses and nonprofits. Notice 2006-50 imposes requirements that may seem bearable for large corporations, but they are onerous for small businesses and nonprofits. By way of illustration, Notice 2006-50 requires the 1.65

---

[19] Defendant argues that, for ordinary taxpayers, having to fill out the extra lines on their regular tax return was not considered sufficient irreparable injury to warrant a temporary restraining order in the recent unpublished case of *Gurrola v. United States*, Civ. No. 06-3425-SVW (C.D.Cal. Jun. 26, 2006)(Ex. 1 to Opp. Br. at 7).

[20] *See, e.g., Briggs v. Sullivan*, 886 F.2d 1132, 1146 (9th Cir. 1989)( preliminary injunction granted); *Olson v. Wing*, 281 F. Supp.2d 476, 486 (E.D.N.Y. 2003)(quoting prior cases: "to indigent persons, the loss of even a portion of subsistence benefits constitutes irreparable injury")(preliminary injunction granted); *Henrietta D. v. Giuliani*, 119 F. Supp.2d 181, 209 (E.D.N.Y. 2000)(same).

million FET-paying nonprofit entities to file a Form 990-T to make a refund claim. So

onerous is Form 990-T that only 35,0000 of them currently file it, and the I.R.S. estimates

that it takes 142 hours to prepare one. Pl. Opening Br., 12-13. Even assuming a low

professional fee rate of $40, that would cost $7,000. Meanwhile, the average refund

would be under $100. *Id.* at 13.[21]

As with low-income non-filers, the courts have acknowledged that federal excise

tax burdens can amount to irreparable injury to small, nonprofit entities. In *Trinity*

*United Methodist Church v. United States*, 1975 WL 613, * 2 (N.D. Ala. Jan. 16, 1975),

the plaintiff, a small nonprofit, bought a school bus for use in connection with its

program for disabled children, its kindergarten, its Sunday School and similar purposes.

On a technicality, the I.R.S. denied it an exemption from the applicable excise tax.[22] The

district court found that this was irreparable harm, and granted a preliminary injunction

permitting registration of the bus without paying the tax.

As to small businesses, the Internal Revenue Manual notes that the Small

Business Regulatory Enforcement Fairness Act of 1996 (SBREFA) applies to notices like

Notice 2006-50.[23] Notice 2006-50 presents an extreme example of the disproportionate

---

[21] What the I.R.S. has done, as to small nonprofits, is no different than if Notice 2006-50 ordered: "to challenge this notice as adopted in violation of the APA, you must undertake a procedure which will put you out of business." For a small nonprofit, an effort on that scale, for a refund under $100, would be ruinous. Notice 2006-50 amounts to an irreparable injury for a small nonprofit, which sacrifices either its APA and other rights, or its very existence – or quite possibly both.

[22] The plaintiff could have been told to follow the advice of the defendant (the same defendant and the same advice in that case and this one) and filed suit for refund, and the district court took full note of "the provisions of section 7421 [the Anti-Injunction Act] . . . ." *Id.* But, the plaintiff argued that a refund request would be "unduly and unreasonably burdensome" since it would be "with respect to what would otherwise be considered negligible amounts of tax, because of the great expense involved . . . ." *Id.*

[23] "SBREFA applies to most revenue rulings and revenue procedures . . . and may apply to notices and announcements, which are evaluated on a case-by-case basis." IRM, § 32.2.2.5. SBREFA is simply a handle to a more general set of strictures; the Internal Revenue Manual has an entire elaborate set of procedures expected to protect small businesses. *Policy and Procedures to Ensure Consideration of Potential Impacts of Regulations on Small Businesses and Entities*, IRM, § 32.1.5 (Exhibit 32.1.5-4).

impact of government rules on small businesses.[24]  By way of illustration, a small

business run by a sole proprietor using a business phone at her office (there are 3.4

million businesses with four or fewer employees) might be entitled to a refund of $150,

exclusive of interest.  However, by the terms of Notice 2006-50, it has no opportunity to

obtain the "safe harbor" refund.  Rather, to receive *any* refund, the business must have

maintained and now must retrieve, organize and present records detailing forty months of

telephone charges.  The disparity between the impact on this hypothetical small business

and a large corporation is palpable.  As the Wall Street Journal reported, "[c]alculating

the refund is especially daunting for small businesses that might not have archives of old

phone records going back several years."  Matthews, *supra*.[25]

    Thus, small business, like small nonprofits and low-income taxpayers, have but

one, immediate avenue of recourse, and that is the APA.  Absent preliminary injunctive

relief, small businesses do not between now and the filing deadline have an adequate

remedy at law.

---

[24]  As one commentator discussed:

> One of the most prominent of these problems has been referred to as the "diseconomies" of
> regulatory scale. Every U.S. business must comply with certain regulations and compile
> information necessary to calculate and pay its fair share of taxes. The cost of complying with the
> tax code and other governmental regulatory schemes is fixed regardless of the size of a company;
> therefore, small businesses bear a disproportionate burden.  For example, because a small business
> presumably has fewer units of output than a larger business, the small business's cost of
> compliance is spread out over fewer units and its cost per unit is higher. These diseconomies of
> regulatory scale penalize a business for being small.  Because small business advocates consider
> this unfair, they push for simplification of the system or special consideration for small businesses.

Joshua E. Husbands, Comment, *The Elusive Meaning of "Small Business,"* 2 J. Small & Emerging Bus. L.
355, 362 (1998)(footnotes omitted).

[25]  Prior to Notice 2006-50, and throughout the forty months for which the business now may claim a
refund, the I.R.S. maintained the legality of the FET; thus, during that time the small business had no notice
that it would need to retain specific telephone records to later receive a refund.  Larger corporations, of
course, would be more likely to retain such records in the usual course.

**IV.    DEFENDANTS HAVE NOT DEMONSTRATED THAT THE NARROW
INJUNCTIVE RELIEF SOUGHT WILL HARM THE I.R.S. OR OTHER
TAXPAYERS, AND THAT THE PUBLIC INTEREST WILL NOT BE
SERVED BY THE RELIEF SOUGHT.**

Having conceded the illegality of a tax which until May 25 this year it vigorously
sought to uphold, the I.R.S. is now before the Court with no administrative record to
support its actions vis-à-vis Notice 2006-50.[26] If the I.R.S. means what it says, and
wishes to refund the illegal FET, then this motion – which seeks only to have the I.R.S.
support its actions with meaningful deliberations based on a complete record – should
come as good news.  Far from being harmed, the I.R.S. will only benefit from the public
comment and informed deliberations it was supposed to undertake but apparently did not.

Nor has the Government identified any basis to conclude that the relief sought
will harm other tax payers.  The Government alludes to "the self-evident notion that that
[sic] many taxpayers may prefer to elect to claim their refund through the procedure
announced in Notice 2006-50, rather than by filing an ordinary claim for refund."  Opp.
Br., 12-13.  That is correct, but says nothing about (a) the millions of taxpayers at the
core of this action who would not "prefer" to elect to claim their refund through the
procedure announced in the Notice because that procedure excludes them and/or their
refunds are too small to justify the burdensome data collection, analysis, and filing
requirements that the Government would impose upon them, or (b) the very high
likelihood that even the taxpayers who like the procedure announced in the Notice will
not "prefer" refunds that are, on average, less than half of the money illegally exacted
from them by the Government.  Again, Plaintiffs do not seek to interfere with the

---

[26]    The agency's briefing in this litigation is not an administrative record for purposes of APA review.  *See,
e.g., American Bioscience v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001)(refusing to rely upon what
attorneys for the FDA said, as a basis for denying a preliminary injunction against an informal FDA action;
"[f]or all we know the attorneys [representing the FDA] were merely speculating").

expectations, preferences or plans of those who are content with the procedure set forth in the Notice. What they seek is to supplement the Government's plan to ensure that all taxpayers get back all of the dollars that were wrongfully extracted from their pockets. That requires an extension of the period of the credit/refund, and additional mechanisms to get refunds to the millions of people and entities who will effectively be denied relief under the Notice.

## CONCLUSION

For these reasons and those described in their Opening Brief, Plaintiffs respectfully request that their motion for preliminary injunctive relief be granted.

DATED: August 3, 2006.                    CUNEO GILBERT & LADUCA, LLP

By: _Jonathan W. Cuneo_

Jonathan W. Cuneo, Esq. (DC Bar# 939389)
David Stanley, Esq. (DC Bar# 174318)
Charles J. LaDuca, Esq. (DC Bar# 476134)
Steven N. Berk, Esq. (DC Bar# 432870)
William Anderson, Esq.
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960
Fax: 202-789-1813

Nicholas E. Chimicles, Esq. (pro hac vice)
Benjamin F. Johns, Esq. (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Henry D. Levine, Esq. (DC Bar# 952770)
Stephen J. Rosen, Esq. (DC Bar# 441942)
LEVINE, BLASZAK, BLOCK AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, DC 20036

Robert J. Cynkar, Esq. (DC Bar# 957845)
EGAN, FITZPATRICK, MALSCH &
CYNKAR, PLLC
8300 Boone Boulevard, Suite 340
Vienna, VA 22182

Christopher Weld, Jr., Esq. (pro hac vice)
Kevin Peters, Esq. (pro hac vice)
TODD & WELD, LLP
28 State Street
Boston, MA 02109

Professor Charles Tiefer (DC Bar# 330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, MD 20815
R. Montgomery Donaldson
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware 19801

Stephen A. Madva
Clifford Scott Meyer
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109-1030

Andrew N. Friedman (DC Bar# 375595)
Victoria S. Nugent (DC Bar# 470800)
COHEN, MILSTEIN, HAUSFELD &
TOLL, PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

David L. Wales
Mark C. Rifkin
Martin Restituyo
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016