# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VIRGINIA SLOAN, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| **v.** ) | **Civil Action No.: 1:06-cv-00483 RMU** |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS

Nicholas E. Chimicles (pro hac vice)
Benjamin F. Johns (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
(610) 642-8500

Henry D. Levine (DC Bar # 952770)
Stephen J. Rosen (DC Bar # 441942)
LEVINE, BLASZAK, BLOCK &
    BOOTHBY, LLC
2001 L Street, N.W., Suite 900
Washington, D.C. 20036
(202) 857-2540

Christopher Weld, Jr. (pro hac vice)
Kevin T. Peters (pro hac vice)
TODD & WELD LLP
28 State Street
Boston, Massachusetts 02109
(617) 720-2626

Jonathan W. Cuneo (DC Bar # 939389)
Charles J. LaDuca (DC Bar # 476134)
William Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960

Robert J. Cynkar (DC Bar # 957845)
EGAN, FITZPATRICK, MALSCH &
    CYNKAR, PLLC
8330 Boone Boulevard, Suite 340
Vienna, Virginia 22182
(703) 891-4066

Prof. Charles Tiefer (DC Bar # 330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, Maryland 20815
(301) 951-4239

Andrew N. Friedman (DC Bar # 375595)
Victoria S. Nugent (DC Bar # 470800)
COHEN, MILSTEIN, HAUSFELD &
    TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
(202) 408-4600

David L. Wales (DC Bar # 417440)
Mark C. Rifkin
Martin Restituyo
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

R. Montgomery Donaldson
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware 19801
(302) 504-7800

Stephen A. Madva
Clifford Scott Meyer
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500

# TABLE OF CONTENTS

**BACKGROUND** ................................................................................................... 1

The Illegal Exaction of the Excise Tax on Telephone Service ............................... 1

The Collection of the Excise Tax .......................................................................... 3

Notice 2006-50 ..................................................................................................... 6

**ARGUMENT** ...................................................................................................... 7

I.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS
     THAT NOTICE 2006-50 UNLAWFULLY LIMITS THE GOVERNMENT'S
     DUTY TO RETURN THE FUND IT HAS ILLEGALLY EXACTED ................. 7

     A.   A Legal Challenge to the Agency Action Embodied in
          Notice 2006-50 Does Not Constitute a Tax Refund Action ...................... 7

     B.   The Administrative Procedure Act Waives Sovereign Immunity
          and 28 U.S.C. § 1331 Confers Jurisdiction on This Court ..................... 13

     C.   Alternatively, the "Little Tucker Act" Waives Sovereign Immunity
          and Confers Jurisdiction on This Court ................................................. 19

          1.   This Court Has Jurisdiction Under the Little Tucker Act
               Over Plaintiffs' Illegal Exaction Claim ........................................... 20

          2.   This Court Has Jurisdiction Under the Little Tucker Act
               Over the Implied Contract Created by Notice 2006-50 ..................... 21

          3.   This Court Has Jurisdiction Under the Little Tucker Act
               Over Plaintiffs' Takings Claim ....................................................... 24

II.  THE ANTI-INJUNCTION ACT DOES NOT BAR THIS CASE ..................... 27

III. THE DECLARATORY JUDGMENT ACT DOES NOT BAR THIS CASE ..... 29

IV.  THE PROCEDURAL STATUTES GOVERNING TAX REFUNDS DO NOT
     BAR THIS CASE ........................................................................................... 31

     A.  The Administrative Claims Procedure of § 7422 Has Never Been
         Implemented With Respect to Plaintiffs ................................................. 31

B. The Limitation Period in 26 U.S.C. § 6511(a) Cannot be Effective Until a Claim Procedure for Plaintiffs is Implemented Pursuant to § 7422 ................................................................................................. 34

C. Assuming § 7422 Applies, Plaintiffs Have Satisfied § 7422 In This Context ................................................................................................. 35

D. To Require Any More Rigorous Application of § 7422 In This Context Would Render That Statute Unconstitutional As Applied ............................ 39

**CONCLUSION** ......................................................................................................... 42

## TABLE OF AUTHORITIES

**CASES**

*Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed.Cir. 1996) ........................... 21

*\*Aetna Casualty & Surety Co. v. United States*, 71 F.3d. 475 (2d Cir. 1995)............ 18, 19

*\*Alabama Power Co. v. Federal Energy Reg. Comm'n,
160 F.3d 7 (D.C.Cir. 1998) )* ............................................................................. 31

*AMA v. United States*, 887 F2d.760 (7th Cir. 1989) ......................................................... 17

*Am. Online, Inc. v. United States*, 64 Fed. Cl. 571 (Fed. Cl. 2005)................................. 2, 3

*Am. Bankers Ins. Group v. United States*, 308 F. Supp. 2d 1360 (S.D. Fl. 2004).............. 2

*Am. Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) .................... 2, 3

*Am. Standard, Inc. v. United States*, 602 F.2d. 256 (Ct. Cl. 1979).................................. 17

*\*America's Community Bankers v. FDIC*, 200 F.3d 822 (D.C. Cir. 2000)............... 13, 18

*\*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ........................... 14, 15

*Anniston Mfg. Co. v. Davis, 301 U.S. 337 (1937)*................................................................ 40

*Atchafalaya Land Co. v. F.B. Williams Cypress Co., 258 U.S. 190 (1922)* ................... 41

*Bankers Life & Casualty Co. v. United States*, 142 F.3d 973 (7th Cir. 1998)................. 13

*Baumgard v. United States*, 42 Fed.Cl. 301 (1998) ........................................................ 23

*Bob Jones University v. Simon*, 416 U.S. at 736) ........................................................... 29

*Bonwit Teller & Co. v. United States*, 283 U.S. 258 (1931)............................................. 23

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)................................................................ 18

*California Bankers Assoc. v. Schultz, 416 U.S. 21 (1974)*................................................ 31

*Carpenter v. Shaw*, 280 U.S. 363 (1930)........................................................................ 27

*Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d. 1356
(Fed.Cir. 2002).......................................................................................... 20, 21

*Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.,*
    452 F.3d 798 (D.C. Cir. 2006) ............................................................................ 13

*\*Chicago Milwaukee Corp. v. United States, 40 F.3d 373 (Fed.Cir. 1994) )* ............ 38, 39

*Church of Scientology v. Egger*, 539 F.Supp. 491 (D.D.C. 1982) ............................. 29, 30

*Collins v. New York Central System*, 327 F.2d 880 (D.C. Cir. 1963) ............................ 27

*Computervision Corp. v. United States, 445 F.3d 1355 (Fed. Cir. 2006)* ...................... 36

*Coughlin v. Regan*, 584 F. Supp. 697 (D. Me. 1984) ................................................. 29, 30

*Clapp v. United States*, 127 Ct.Cl. 505 (1954) ............................................................. 21

*Crocker v. United States*, 37 Fed.Cl. 191 (1997) ........................................................... 21

*Del-Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998).......... 25

*DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004) ................................................... 25

*Dorrance v. Phillips*, 85 F.2d 660 (3d Cir. 1936) .......................................................... 23

*\*Eastern Kentucky Welfare Rights Org. v. Simon*, 506 F.2d 1278 (D.C.Cir. 1974)... 29, 30

*El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346
(Fed. Cir. 2004) .............................................................................................................. 25

*Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962) ................................ 29

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997) ................ 1

*Fireman v. United States*, 44 Fed.Cl. 528 (1999) ............................................................ 21

*\*First English Evangelical Lutheran Church of Glendale v.*
    *County of Los Angeles*, 482 U.S. 304 (1987) .......................................................... 24, 25

*Fortis, Inc. v. United States*, 430 F.Supp.2d. 166 (S.D.N.Y. 2004) ................................. 2

*Fortis, Inc. v. United States*, 447 F.3d 190 (2d Cir. 2006) ............................................ 2,3

*Foster v. United States*, 98 F. Supp. 349 (Ct.Cl. 1951) ............................................. 24, 25

*Fostvedt v. United States*, 978 F.2d 1201 (10th Cir. 1992) ............................................ 17

*Gholston v. Housing Auth. of the City of Montgomery*, 818 F.2d 776
 (11th Cir. 1987).............................................................................................31

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .........................................................

*Gold Medal Foods v. Landy*, 12 F.Supp. 406 (D.Minn. 1935).........................40

*Granse v. United States*, 892 F. Supp. 219 (D.Minn. 1995)............................31

*Harper v. Virginia Dept. of Taxation*, 509 U.S. 86  (1993)..............................27

*Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192 (D.C. Cir. 1992)...........27

*Her Majesty the Queen ex rel. Ontario v. EPA*, 912 F.2d 1525 (D.C. Cir. 1990)...........16

*Hewlett-Packard Co. v. United States*, 2005 U.S. Dist. LEXIS 19972
 (N.D. Cal. Aug. 5, 2005)..................................................................................2

*Hibbs v. Winn*, 542 U.S. 88 (2004) ...............................................................28

*Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Fed. Cl. 2005) .......................2, 3

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992)...................................17

*Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844 (7th Cir. 2004) ...............1

*IBM v. United States*, 343 F.2d 914 (Ct. Cl. 1965) .........................................38

*Independent Petroleum Ass'n v. Babbitt*, 92 F.3d 1248 (D.C. Cir. 1996) .......................16

*Investment Annuity, Inc. v. Blumenthal*, 609 F.2d 1 (D.C.Cir. 1979)..............................29

*Jacobs v. United States*, 290 U.S. 13 (1933) .................................................24

*Jahn v. Regan*, 584 F. Supp. 399 (E.D. Mich. 1984).......................................29

*Kirkendall v. United States*, 31 F. Supp. 766 (Ct. Cl. 1940).......................................8, 22

*Krause v. United States*, 1996 U.S. Dist. LEXIS 19933
 (W.D. Mich. Sept. 18, 1996)...........................................................................35

*Land v. Dollar*, 330 U.S. 731 (1947) .............................................................27

*Larson v. Domestic & Foreign Corp.*, 337 U.S. 682 (1949) ............................25

*Littlewolf v. Hodel*, 681 F.Supp. 929 (D.D.C. 1988) ......................................41

*Malone v. Bowdoin*, 369 U.S. 643 (1962).................................................................25

*\*Maryland Dep't of Human Res. v. Dep't of Health & Human Services,*
 763 F.2d 1441 (D.C.Cir. 1985) ..............................................................13, 18

*\*McCreery v. United States*, 161 Ct.Cl. 484 (1963) ..........................................25

*McGahey v. Virginia*, 135 U.S. 662 (1890) .......................................................41

*McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*
 496 U.S. 18, 31 (1990)...........................................................................27

*Monongahela Navigation Co. v. United States*, 148 U.S. 312 (1893)..........24, 25

*Moses v. United States*, 61 F.2d 791 (2d Cir. 1932) .........................................23

*Nat'l R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22 (D.D.C. 2004) .............2

*\*Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) ........2, 3, 29

*Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332 (Fed. Cir. 2001).................27

*Nelson v. Regan*, 731 F.2d 105 (2d Cir. 1984) ................................................29

*Nichols v. Coolidge*, 274 U.S. 531 (1927) ........................................................27

*NRDC v. EPA*, 22 F.3d 1125 (D.C.Cir. 1994) ..................................................16

*\*OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005) ...........................1, 2, 3, 7

*OfficeMax, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) .........................2

*Oropallo v. United States, 994 F.2d 25 (1st Cir. 1993)*.........................................42

*Reese Bros. Inc. v. United States*, 2004 Westlaw 2901579 (W.D. Pa., Nov. 30, 2004) .....2

*Reese Bros. Inc. v. United States*, 2005 Westlaw 776173 (W.D. Pa., Feb. 11, 2005).........2

*Reese Bros. Inc. v. United States*, 447 F.3d 229 (3d. Cir. 2006) ...........................2, 3

*Reich v. Collins*, 513 U.S. 106 (1994) ...........................................................25, 27

*Richardson v. Morris*, 409 U.S. 464 (1973) ....................................................21

*Robinette v. Commissioner*, 436 F.3d 461 (8th Cir. 2006) ..................................13

*In re Romagnolo*, 269 B.R. 63 (M.D.Fla. 2001) ................................................ 17

*Saranac Land & Timber Co. v. Comptroller of New York*, 177 U.S. 318 (1900)............. 41

*Sartori v. United States*, 58 Fed.Cl. 358 (2003)........................................... 21

*Seaboard Air Line Ry.Co. v. United States*, 261 U.S. 299 (1923) .......................... 24, 25

*Shelter Island & Greenport Ferry Co. v. United States*, 246 F. Supp. 488
    (E.D.N.Y. 1965)........................................................................ 10, 11, 22

*Societe Internationale, etc. v. Rogers*, 357 U.S. 197 (1958) ............................. 40

*Sorenson v. Secretary of Treasury*, 752 F.2d 1433 (9th Cir. 1985)......................... 29

*Sullivan v. United States*, 395 U.S. 169 (1969) .......................................... 3

*Tax Analysts v. IRS*, 416 F.Supp.2d 119 (D.D.C. 2006) .................................... 14

*Tax Analysts and Advocates v. Schultz*, 376 F.Supp. 889 (D.D.C. 1974)..................... 30

*Texaco v. Short*, 454 U.S. 516 (1982).....................................................

*Thorpe v. Thorpe*, 364 F.2d 692  (D.C.Cir. 1966).......................................... 40

*United States v. Aetna Sur. Co.*, 338 U.S. 366 (1949) .................................... 20

*United States v. Clarke*, 445 U.S. 253 (1980)............................................. 24

*United States v. Dalm*, 494 U.S. 596 (1990)............................................... 10

*United States v. Mitchell*, 463 U.S. 206 (1983) .......................................... 20

*United States v. Sherwood*, 312 U.S. 584 (1941)........................................... 21

*United States v. State Nat. Bank*, 96 U.S. 30 (1877)...................................... 10

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) ...................... 19, 20

*Ward v. Commissioner*, 784 F.2d 1424 (9th Cir. 1986)...................................... 17

*Weathersby v. Lincoln Elec. Co.*, 2003 WL 21088119 (E.D.La. May 9, 2003) ................ 1

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980)........................ 26

vii

*West Pub. Co. Employees' Preferred Stock Ass'n v. United States,
   198 Ct.Cl. 668, 1972 WL 208000 ................................................................... 9, 22

Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457 (2001) ........................................... 14

Wilderness Soc. v. Griles, 824 F.2d 4 (D.C. Cir. 1987).................................................... 27

Wilson v. Iseminger, 185 U.S. 55 (1902) .......................................................................... 41

Williamson v. Tucker, 645 F.2d 404 (D.C. Cir. 1981)....................................................... 27

Zellous v. Broadhead Associates, 906 F.2d 94 (3d Cir. 1990) ......................................... 18

## STATUTES, RULES, AND REGULATIONS

ADMINISTRATIVE PROCEDURE ACT
*5 U.S.C. § 702.................................................................................................... 13, 18
5.U.S.C. § 703............................................................................................................. 19
5.U.S.C. § 704............................................................................................................. 14
*5 U.S.C. § 551(4) .................................................................................................. 13, 26

INTERNAL REVENUE CODE
*26 U.S.C. § 4251 .......................................................................................... 1,3, 23, 35
26 U.S.C. § 4252 ..................................................................................................... 1, 2
26 U.S.C. § 6407 ................................................................................................... 23, 24
26 U.S.C. § 6511 .................................................................................... 34, 39, 41, 42
26 U.S.C. § 6532 .......................................................................................................... 36
26 U.S.C. § 7421 .......................................................................................................... 28
*26 U.S.C. § 7422............................................................ 17, 31, 34, 35, 37, 39, 40, 41

LITTLE TUCKER ACT
*28 U.S.C. § 1346(a)(2)............................................................................ 19, 21, 24, 25

JURISDICTIONAL STATUTES
28 U.S.C. § 1331 .................................................................................................. 13, 19
28 U.S.C. § 1391(e) ..................................................................................................... 19

R.Proc. J.P.M.L. 1.5, 199 F.R.D. 425 ............................................................................ 1

## INTERNAL REVENUE SERVICE DOCUMENTS

REGULATIONS
*26 C.F.R. § 301.6401-2 (c) ......................................................................................... 31

REVENUE RULINGS
60-58, 1960 WL 12819 .................................................................... 4, 5
70-13, 1970 WL 21152 ....................................................................... 38
79-404, 1979-2 C.B. 382 ................................................................... 1, 2

Rev. Proc. 76-45, 1976 WL 36099 ...................................................... 4
Private Letter Ruling 1999-23002 ........................................................ 2

INTERNAL REVENUE MANUAL
§ 3.17.41.9................................................................................................ 5
§ 4.24.8.2................................................................................................. 5
§ 25.6.5.5.3.5.B ....................................................................................... 4

IRS NOTICES
2005-79 ................................................................................................... 3
2006-50, § 1(a) ................................................................................... 3, 6
2006-50, § 1(b) ................................................................................. 6, 23
2006-50, § 4(a) ............................................................................ 6, 23, 28
2006-50, § 4(c) ..................................................................................... 28
2006-50, § 5(a) .................................................................................. 9, 11
2006-50, § 5(a)(2) .................................................................................. 5
2006-50, § 5(g) ...................................................................................... 9
2006-50, § 5(g)(1) .................................................................................. 9
2006-50, § 5(g)(2) .................................................................................. 9

IRS FORMS AND PUBLICATIONS
Form 720 ...............................................4, 5, 6, 9, 31-34, 37, 38
Form 720X ........................................... 32, 33, 34, 37, 38
Form 843 ............................................... 4, 31, 33, 34
Form 8849 ............................................. 5, 6, 32, 34, 36
Publication 510 ..................................................... 33, 34

## OTHER MATERIALS

APPEALS COORDINATED ISSUE SETTLEMENT GUIDELINE ........................ 2, 3

ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT
(1947)........................................................................................ 14

HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM
379 (4th ed. 1996)................................................................... 25

R.G. Matthews, *Companies Discover It Isn't Easy to Claim
Phone-Tax Refunds*, WALL ST. J., B1 (Aug. 1, 2006) ............... 5, 12, 39

# BACKGROUND[1]

## THE ILLEGAL EXACTION OF THE EXCISE TAX ON TELEPHONE SERVICE

The Internal Revenue Code imposes a three percent federal excise tax ( "FET") on amounts paid for toll telephone service. *See* 26 U.S.C. §§ 4251, 4252. Such service is "a telephonic quality communication for which . . . there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). To be taxable, the charge must vary with both the distance *and* the time of each individual communication.

Fourteen years after § 4252(b)(1) was enacted in 1965, the Internal Revenue Service ("IRS") expanded the reach of the tax by simply declaring that ship-to-shore service, a service for which the charges did *not* vary by distance, was taxable under § 4252(b)(1). *See* Rev. Rul. 79-404, 1979-2 C.B. 382 ("The intent of the statute would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute.").[2]

By the late 1990s, the billing practices of cellular and landline long distance carriers began to mirror the ship-to-shore provider at issue in Revenue Ruling 79-404; they had become non-distance sensitive. *See OfficeMax, Inc. v. United States*, 428 F.3d 583, 586 (6th

---

[1] Plaintiffs note that on July 27, 2006, a motion was filed with the Judicial Panel on Multidistrict Litigation requesting that this case and four (4) others be transferred to a single district court for consolidated or coordinated pretrial proceedings. *In re: Class Action Litig. Over Federal Long-Distance Telephone Service Excise Tax Refunds.* The filing of this motion should not impact this Court's ruling on the pending motions in this case. *See* R.Proc. J.P.M.L. 1.5, 199 F.R.D. 425 ("The pendency of a motion ... before the Panel concerning transfer ...of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."). *See also Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004) (under Rule 1.5, authority of potential transferor court not limited in any way prior to actual MDL transfer); *Weathersby v. Lincoln Elec. Co.*, 2003 WL 21088119, *3 (E.D.La. May 9, 2003) ("This Court has jurisdiction to decide any issues presented to it, even pending an MDL ruling transferring the case.").
[2] The Court may consider public records subject to judicial notice in ruling on a motion to dismiss. *See EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624-625 (D.C. Cir. 1997)

Cir. 2005).    The per-minute charge for a long distance call from Washington, D.C. to Delaware was the same as the charge for a call from Washington to Texas.

Publicly, the IRS insisted, based on Revenue Ruling 79-404, that non-distance sensitive services were taxable, and customers should continue to pay this tax.  *See, e.g.,* Private Letter Ruling 1999-23002, 1999 PLR LEXIS 389 ("Accordingly, [Rev. Rul. 79-404] holds that the above-described service is toll telephone service within the meaning of section 4252(b)(1) notwithstanding that the charge for the service did not vary by distance."). Privately, the IRS settled refund claims filed by corporate taxpayers for a percentage of their face value.  *See* Appeals Coordinated Issue Settlement Guideline, 9 (appended as Ex. A); *OfficeMax*, 428 F.3d at 598 ("The taxpayer in this case argues that the IRS has settled many of these claims for well less than 100 cents on the dollar but claims it has been stymied in its attempts to obtain access to IRS records to establish whether that is true.").    Because these settlements were not public, individual taxpayers—including Plaintiffs—continued to pay this tax.

By 2003, corporate taxpayers with large refund claims challenged the IRS in court. Eight corporate taxpayers filed refund suits in either the Court of Federal Claims or federal district courts, and all prevailed.[3]  But the IRS continued to insist that its understanding of the

---

[3] *See Reese Bros., Inc. v. United States*, 2004 Westlaw 2901579 (W.D. Pa., Nov. 30, 2004) and 2005 WL 776173 (Feb. 11, 2005), *aff'd*, 447 F.3d 229 (3d Cir. 2006) ($335,213 refund); *Hewlett-Packard Co. v. United States*, 2005 U.S. Dist. LEXIS 19972 (N.D. Cal. Aug. 5, 2005) ($6,385,672 refund); *Fortis, Inc. v. United States*, 420 F.Supp.2d 166 (S.D.N.Y. 2004), *aff'd* 447 F.3d 190 (2d Cir. 2006) ($439,385 refund); *America Online, Inc. v. United States*, 64 Fed. Cl. 571, 576-81 (2005) ($201,141 refund); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188, 198-203 (2005) ($1,251,650 refund); *Nat'l R.R. Passenger Corp. v. United States*, 338 F.Supp. 2d 22 (D.D.C. 2004), *aff'd*, 431 F.3d 374 (D.C. Cir. 2005) ($86,103 refund); *OfficeMax, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004), *aff'd*, 428 F.3d 583 (6th Cir. 2005)($380,297 refund); *Am. Bankers Ins. Group v. United States*, 308 F.Supp.F.Supp.2d 1360 (S.D. Fl. 2004), *rev'd*, 408 F.3d 1328 (11th Cir. 2005) ($361,763 refund).

FET, which "set aside" the "literal interpretation of the statute," Ex. A at 9, should determine which long distance services were taxable.[4]

Only when the Government lost in four more courts of appeals,[5] was on the verge of losing two more cases in the Federal Circuit,[6] and this class action was filed—on May 25, 2006—did it concede that the FET had been misapplied all along. *See* Notice 2006-50, § 1(a) ("amounts paid for time-only service are not subject to the tax imposed by § 4251") (Second Am. Consol. Compl. ("Complaint"), Ex. 1).

## THE COLLECTION OF THE EXCISE TAX

An excise tax is a form of taxation significantly different from the income tax. Income taxation intrudes on our lives more apparently than does other taxes. During the year, we must keep track of our income and expenses. Come "tax time," we use those records to determine our tax liability and file tax returns (or we hire someone to do this job). We keep those records longer than otherwise necessary in case the IRS wants to check our calculations in an audit.

Excise taxes are collected far more frequently than the income tax. Excise taxes include all forms of sales taxes and "use" taxes, which are "tax[es] upon the privilege of using, storing or consuming property." *Sullivan v. United States,* 395 U.S. 169, 177 n.28 (1969). Consider the experience of buying gasoline at a filling station. An excise tax on

---

[4] For example, on May 10, 2005, the Eleventh Circuit held that the non-distance sensitive long distance services purchased by a customer from AT&T were not taxable under § 4252(b)(1), and ordered the IRS to refund the taxpayer's money. *See American Bankers Ins. Group.* The IRS was not impressed. On October 20, 2005, it declared, "[t]his notice confirms that the Service will continue to assess and collect the tax under § 4251 on all taxable communications services, including communications services similar to those at issue in the cases. Collectors should continue to collect the tax, *including from taxpayers within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit.*" IRS Notice 2005-79 (emphasis added).

[5] *See Reese Bros.,* 447 F.3d 229; *Fortis,* 447 F.3d 190; *Nat'l R.R. Passenger Corp.,* 431 F.3d 374; *OfficeMax,* 428 F.3d 583.

[6] *See Am. Online, Inc.,* 64 Fed. Cl. 571 (Government appeal dismissed); *Honeywell Int'l,* 64 Fed. Cl. 188 (Government appeal dismissed).

gasoline is included in the price. As buyers pay, they become taxpayers: they paid the excise tax on the gas, but without doing any calculations and without having filed a tax return. The IRS assigns to those selling gasoline the task of collecting the tax from individual customers and filing the return that memorializes the aggregate excise tax fund collected. The individual excise taxpayer fulfills his responsibility to pay the tax, but commonly without any awareness of having done so. The taxpayer relies on the IRS and its agent, the gas station, to get it right. Not having any practical way to check the tax laws while filling his car, the taxpayer certainly relies on these taxing authorities to collect only the tax that the law requires.

Similarly, the individual taxpayer does not calculate the FET, make payments directly to the IRS, or preserve records to confirm that he has faithfully satisfied his tax liability.[7] The three percent tax is typically buried in the small print of monthly phone bills. *See* Complaint, ¶¶ 29-35. "In the case of collected excise taxes, the taxpayer is not the person required to file the return." INTERNAL REVENUE MANUAL ("IRM") § 25.6.5.5.3.5.B. The basic excise tax return is the quarterly Form 720, a general form that may be filed in relation to millions of individual taxpayers by the single aggregating filer, the telephone carrier. *See* Rev. Proc. 76-45, 1976 WL 36099 (IRS RPR) (coordinating the telephone carriers' aggregate Form 720 reporting with their aggregate Uniform System of Accounts prescribed by the Federal Communications Commission, and tracing similar aggregate procedures in previous decades). While "with respect to the 'collected' excise taxes, the taxpayer has a duty to pay the tax," it is by this aggregating procedure that the filer proceeds "to collect the tax, to file a return, and to remit to the Government the tax thus collected from

---

[7] Of course large corporations do keep useful telephone records, which in effect memorialize large business expenses that are important for tax and other business purposes.

the taxpayer." Rev. Rul. 60-58, 1960 WL 12819 (IRS RRU). The taxpayer plays his part among an aggregation of taxpayers that creates a fund of all the excise tax collected by his phone company.

The difficulty for the excise taxpayer comes in getting the money paid back when an excise tax is wrongly collected. The IRS has expressly tasked Schedule C of Form 720 as the basic device to address refund issues, *see* IRM, §§ 4.24.8.2, 3.17.41.9, but that form is exclusively prepared by and in the control of the telephone carriers. Reflecting the aggregate nature of the excise tax, it normally results in a "credit against excise tax liability." *See id.,* § 4.24.8.2.

Form 720 is of no help to the individual excise taxpayer. In the bureaucratic edifice of tax paperwork before Notice 2006-50 (and currently in operation), there is only one form for an individual taxpayer to seek a refund of excise taxes – Form 8849. *See* Notice 2006-50, § 5(a)(2); Complaint ¶ 36. But Form 8849, which requires documentation to prove an entitlement to a refund that an individual FET taxpayer would not have, is designed more with the taxpayer who submits a return and so has such records, like the income taxpayer, in mind. *See* R.G. Matthews, *Companies Discover It Isn't Easy to Claim Phone-Tax Refunds,* WALL ST. J., B1 (Aug. 1, 2006) (appended as Ex. B) ("WSJ Article").

Neither the IRS's regulations nor its less formal guidance ever contemplated that Form 8849 should be used to secure a refund of the FET. *See* IRM, §§ 4.24.8.2 (*"Generally,* instead of claiming a refund on Form 8849, claims may be made on schedule C of Form 720"); 20.1.4.8 ("Form 720, Schedule C, is used to report adjustments to previously-reported liabilities and claims unrelated to liabilities *in lieu of filing a Form 8849,* Claim for Refund of Excise Taxes.") (emphasis added). Form 8849 itself carries this message: "**Caution:** *Do*

***not*** *use Form 8849 to make adjustments to liability reported on Forms 720 for prior quarters*

*or to claim any amounts that were or will be claimed on **Schedule C (Form 720)**, Claims . . .*

*. "* Form 8849 (Feb. 2005) (Complaint, Ex. 2) (bolding and italics in original).

     The Government's actions have placed individual taxpayers in an incredibly inequitable position. Individuals did not have the knowledge or resources to halt nearly ten years of illegal conduct by the Government. The conduct stopped and the illegality confessed, those victims do not have the records or the resources to pursue refund claims with the IRS, support those claims on IRS audit, file a refund lawsuit in federal court, and then pursue the claim through the appropriate appellate court. This class action was designed to provide an avenue of relief for those citizens.

## NOTICE 2006-50

     Notice 2006-50 took two steps. First, the Government conceded the basic claim of this lawsuit – collection of the FET had been illegal. *See* Notice 2006-50, §§ 1(a), 1(b), 4(a). Second, the Government addressed its obligation to return the money taken, with interest. The Notice purports to put in place a global mechanism by which the illegally exacted fund may be returned to those who paid it. Unfortunately, the IRS's proposed mechanism for the return of this fund will not return anything approaching the money illegally exacted, leaving an illegal fund of billions of dollars in place.

     As we have described more fully in our Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("P.I. Motion"), 1-14, this failure to return all the money illegally exacted is a function of the unlawful attributes of the regime created by the Notice. *See also* Complaint ¶¶ 37-41. The IRS unlawfully refuses to return more than the most recent three years and four months worth of illegal collections of the

FET, when the exaction of this money became illegal more than six years ago. (The IRS broadly denies that it must return all of this fund irrespective of any mechanism created by the Notice.) In addition, it creates a "safe harbor" amount that will be refunded without the need for documentation, but that refund will only be available through income tax returns. Tying excise tax refunds to income tax returns effectively – and arbitrarily – denies these refunds to individuals and entities that do not file income tax returns, a group comprised primarily of low-income individuals (more than 12 million of them senior citizens)[8] and approximately one million small nonprofit organizations – charities, churches, research institutes, clinics, veterans' organizations, and the like.

It is these unlawful attributes of Notice 2006-50 concerning the remedy for the Government's illegal exaction that remain the focus of this case. The Government now claims that this Court cannot adjudicate these matters. (Strikingly, the thrust of its arguments is that no court will be able to adjudicate these matters.) The Government's arguments are without merit, and its motion to dismiss should be denied.

## ARGUMENT

I. **THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS THAT NOTICE 2006-50 UNLAWFULLY LIMITS THE GOVERNMENT'S DUTY TO RETURN THE FUND IT HAS ILLEGALLY EXACTED.**

### A. A Legal Challenge to the Agency Action Embodied in Notice 2006-50 Does Not Constitute a Tax Refund Action.

Notice 2006-50 concedes that the IRS exacted money as an excise tax on telephone service that, since the late 1990s, *see OfficeMax*, 428 F.3d at 586, was not taxable. *See also* Memorandum in Support of United States' Motion to Dismiss Second Amended Complaint

---

[8] The likelihood that 10 million or more non-filing taxpayers will not file for the proposed refund is discussed in the Plaintiff's Reply Memorandum in support of their Motion for Preliminary Injunction, and the expert report appended thereto.

("Govt. Mem.") at 5 ("As a result [of Notice 2006-50], the parties no longer dispute that long distance service and bundled service are not subject to the communications excise tax."). The Government therefore admits it is holding a fund of illegally exacted "taxes." There can be no question that it must be returned:

> The Government has taken the money of the plaintiff and . . . it is only common honesty that it should be returned. The United States is required to be honest with its citizens just as much as its citizens are required to exercise common honesty with their Government.

*Kirkendall v. United States,* 31 F.Supp. 766, 770 (Ct.Cl. 1940).[9]

The Government's Motion to Dismiss fudges the consequences of its concession. It would defeat this Court's jurisdiction by arguing that plaintiffs have not satisfied the statutorily mandated procedures by which unresolved tax refund claims are to be presented to the IRS, considered by that agency, and only at that point, if still unresolved, addressed by a court. *See* Govt. Mem. at 10-16. It says that "Notice 2006-50 . . . is a statement of the Service's policy which offers an *alternate means* of resolving *potential claims* for refund in light of recent court decisions." Govt. Opp. at 3 (emphasis added).

"*Potential claims*"? Notice 2006-50 reflects the judgment of the IRS concerning the legality of the FET as applied to the services at issue here. No aspect of the legal claims in this case are new to the IRS. No further administrative churning by the IRS could add to or change its admission that the FET as it has been applied is unlawful – that line has been crossed. The "Government has already had the chance to pass on the plaintiff's claim and has made a definite decision in his favor; this previous opportunity for the [Internal Revenue] Service to correct its error – an opportunity which it has used – makes a refund claim

---

[9] This principle is in stark contrast to the Government's claim, extraordinary in this context, that it "has no statutory duty to process refund claims." Mem. in Opp. to Second Mot. for Prelim. Inj. ("Govt Opp.") at 6 n.2.

meaningless, and accordingly the courts have dispensed with it." *West Pub. Co. Employees' Preferred Stock Ass'n v. United States,* 198 Ct.Cl. 668, 1972 WL 208000, *5. Any claim that the entitlement of Plaintiffs, or of any class member, to a return of the FET remains an open matter for adjudication is false.

"*Alternate means*"?   Notice 2006-50 is the *exclusive* means by which the Government has agreed to remedy the liability it supposedly has accepted. *See* Notice 2006-50, §§ 5(a), (g). If a citizen had this money taken within the last three years, that citizen *must* follow the procedures of the Notice. *Id.*, § 5(g)(1). Any effort to secure reimbursement of such money exacted before that three-year window must follow the normal administrative process. *Id.*, § 5(g)(2). This second avenue "offered" by the Notice is illusory, for the Notice's three-year window is premised – erroneously – on the notion that the Government's duty to return this money is limited by a three-year statute of limitations. *See* Govt. Opp., 1. The idea is that claims for the return of money illegally exacted before the three-year window "[w]ill be processed normally," Notice 2006-50, § 5(g)(2), so they can simply be rejected on some statute-of-limitations grounds. What a farce.

The Government notes that the income tax refund procedures are regularly used by "millions" of Americans. Govt. Mem. 14-15. Yet the Government knows that the collection of this excise "tax" is profoundly different from the common experience of paying one's income tax. As was explained above, unlike the income tax, those who pay this excise tax do not calculate the amount due, file returns, deal with the IRS, or keep records of the excise tax.

In addition, unlike most income tax refund claims, no dispute over how an individual taxpayer calculated some complicated requirement of the tax laws is at issue here.

The collection of the FET was unlawful because it was imposed on nontaxable services. The wrong is categorical – and sums certain were illegally taken.

The Government itself acknowledges the passive role of excise taxpayers when it points out that the "telecommunications carriers report excise tax collected on Form 720, which states only the amount of tax collected in the aggregate." *Id.* at 15. The Government would force individual citizens to unscramble the aggregate egg – that is, the fund that now must be returned to those from whom it was illegally taken. *Id.* Forcing the victims of the Government's illegal exactions to shoulder the burden of a remedy is neither just, lawful, nor likely to achieve the return of most of this fund.

Established precedent recognizes that in this "narrow class of case," *Shelter Island & Greenport Ferry Co. v. United States,* 246 F.Supp. 488, 494 (E.D.N.Y. 1965), in which the Government acknowledges it has no right to "tax" monies it has exacted, the Government is "obliged by natural justice and equity," *United States v. State Nat. Bank*, 96 U.S. 30, 35 (1877), to return those monies. An action to return such monies is not a tax refund action, but an action to compel performance of an implied promise of repayment.[10]  *Id.* at 36. As the court in *Shelter Island* explained:

> [T]he general right to relief does exist in the narrow class of case in which there is no intimation of a Government belief, even a mistaken belief, that it was entitled to the funds, no hint of a substantive right to retain the funds, and the claim to them rests on an undenied claim of ownership and of a right to receive back the money because paid by mistake, or obtained by a faithless officer's fraud, or through a mistaken exercise of Governmental coercion. Implicitly, the undenied ownership and the absence of a claim of right to retain must be taken to raise a promise of repayment.

---

[10] Characterizing this case after Notice 2006-50 as no longer a tax refund action is not simply a manipulation of words, as was criticized in *United States v. Dalm*, 494 U.S. 596, 609 n.6 (1990).  In *Dalm*, the Government had not conceded any liability to refund the gift tax because the Government had provided a clear and certain legal remedy which the taxpayer did not pursue.  Additionally, in *Dalm*, the refund claim was not premised on the illegality of the tax itself.

246 F.Supp. at 494.

Here, the entitlement to a refund arose from an exaction that was not legally authorized by Congress, a context in which it can rightly be argued there never was a "tax" at all. For example, the plaintiff in *Shelter Island* sought return of money mistakenly paid to satisfy an excise tax that had been repealed. In rejecting the application of the tax statute of limitations in that context, the court observed:

> It is simply exact to say that the payments had nothing to do with taxes or the policies that require that the revenues and claims about them be quickly determined. Here there were no revenues and no possibility of a controversy over the interpretation or application of the revenue laws.

246 F.Supp. at 494. The same observation could be made about the fund that is the subject of this case.

The Government does not claim it has the right to retain the illegally exacted FET, but the Notice's refund regime falls severely and unlawfully short of fulfilling the Government's "promise of repayment." Through Notice 2006-50, the IRS has taken a distinct, overarching agency action that purports to establish a regime of general applicability as the exclusive mechanism by which the IRS "agrees" to return this illegally exacted fund. *See* Notice 2006-50, §5(a). The Notice creates a very narrow gate to the fund illegally collected under the guise of the FET, and so deprives taxpayers of the full reimbursement to which they are now entitled.

This regime is unlawful in several critical respects. The Notice "unconstitutionally shorten[s] the time period of illegally exacted monies that are subject to refund." Complaint ¶ 38. It creates a "safe harbor" payment that excludes "entities," and so has a "disproportionately adverse effect" on small "entities" – such as small businesses and nonprofits – that do not have the means to pursue the complicated normal refund process.

*See id.* at ¶¶ 9, 38; WSJ Article.  The Notice will leave such small entities with nothing (while the Government will retain its ill-gotten fund), an arbitrary, irrational, and unconstitutional result.

The Notice relies on the income tax return as its central mechanism for seeking a refund, thereby excluding millions of low-income American seniors who do not file returns. *Id.* at ¶ 39.  Notice 2006-50 amounts to an impractical, discriminatory, and oppressive administrative apparatus that would only serve to keep most of the illegally gotten fund in the Government's hands.  The refusal of the Government to return this fund except on such inequitable terms is a blatant violation of elementary constitutional protections for the property of citizens.  *Id.* at ¶¶ 40-41.

With Notice 2006-50, we are beyond any argument that the administrative procedures that normally apply to a tax refund claim – giving the Government notice of the refund claimed and an opportunity to resolve that claim short of litigation – form any jurisdictional prerequisite to adjudication of the remedy issues now in dispute in this case. The Government has conceded that it has unlawfully collected a fund of money under the guise of the FET from everyone who paid into it.  Liability conceded (and so repayment promised), the question now is the remedy – how best to return as much of this fund as possible to those from whom it was taken.  Notice 2006-50 puts in place a global mechanism – effectively structured on a class basis – that purports to effect a remedy.  In publishing Notice 2006-50, the IRS undertook a distinct agency action that is no more governed by statutes relating to individual tax refund claims – and that is no more insulated from review by this Court – than is any other agency statement of general applicability designed to implement policy or otherwise interpret and comply with the agency's legal duties to a class

of citizens.  Congress has provided at least two avenues by which sovereign immunity has

been waived and the doors of this Court opened for the adjudication of our claims.

> **B.    The Administrative Procedure Act Waives Sovereign Immunity and 28 U.S.C. § 1331 Confers Jurisdiction on This Court.**

The Administrative Procedure Act ("APA") waives sovereign immunity by

allowing a "person suffering legal wrong because of agency action" to seek judicial review of

that action, *see* 5 U.S.C. § 702, what the D.C. Circuit has called "a generic cause of action in

favor of persons aggrieved by agency action."  *Maryland Dep't of Human Res. v. Dep't of

Health & Human Serv.,* 763 F.2d 1441, 1445 n.1 (D.C. Cir 1985).  *See also America's

Community Bankers v. FDIC,* 200 F.3d 822, 828 (D.C. Cir 2000) ("Congress has

promulgated . . . the APA to waive sovereign immunity . . . .").

Notice 2006-50 is agency action, that is, a "statement of general . . . applicability

and future effect designed to implement, interpret, or prescribe law or policy" of the IRS

concerning a remedy for its illegal exaction of plaintiffs' money.  5 U.S.C. § 551(4).

Plaintiffs claim to be suffering legal wrongs because of that action.  There is nothing that

exempts this action from review under the APA.  *See, e.g., Robinette v. Commissioner,* 439

F.3d 455, 461 n.5 (8th Cir. 2006) ("The Internal Revenue Service, of course, is an agency of

the government, and review of its decisions may be governed by the APA."); *Bankers Life &

Cas. Co. v. United States,* 142 F.3d 973, 978 (7th Cir. 1998) (noting that the IRS issues rules

pursuant to the APA's procedures and examining the proper treatment of revenue rulings in

the APA scheme).  Sovereign immunity is waived by the APA, and jurisdiction over this

action arises under 28 U.S.C. § 1331.  *Center for Auto Safety v. Nat'l Highway Traffic Safety

Admin.,* 452 F.3d 798, 805 (D.C. Cir. 2006).

The Government's argument that there is no APA claim proceeds in two steps. First, the Government asserts, without any support, that Notice 2006-50 is not "agency action." *See* Govt. Opp. 5. Yet the IRS is undeniably an "agency" within the scope of the APA. The Notice is an "action" of that agency as a matter of common sense and of the APA's judicial review provisions. *See* 5 U.S.C. § 704; *Whitman v. Am. Trucking Ass'ns, Inc.,* 531 U.S. 457, 478 (2001) ("[T]he word 'action' [in § 704] . . . is meant to cover comprehensively every manner in which an agency may exercise its power.").

Second, the Government also claims that no one is "aggrieved" by the Notice in a way that triggers judicial review under the APA. *See* Govt. Opp. 5.[11] The Government contends the Notice is "merely a statement of policy" that does not affect "existing rights," *id.,* citing *Tax Analysts v. IRS,* 416 F.Supp.2d 119 (D.D.C. 2006). *Tax Analysts* – a Freedom of Information Act case seeking disclosure of IRS documents – centered on the IRS's definition of "Chief Counsel Advice," which excluded some material. *Id.* at 126. This definition was circulated by "notice" to Office of Chief Counsel attorneys and incorporated in the IRS Chief Counsel Directives Manual. *Id.* The Court concluded that this notice did not have the force of law, but that, as a result, the definition was entitled to deference only if the Court found it "persuasive," which it did not. *Id.* The Court rejected the IRS definition and ordered the documents that it had excluded disclosed to the plaintiffs. *Id.* at 129. The

---

[11] The Government made these arguments in its opposition to our motion for a preliminary injunction, and so the arguments understandably focus on the notice-and-comment procedures required for rules under the APA, the relief sought in that motion. For purposes of the availability of APA judicial review in the context of the Government's Motion to Dismiss, it is immaterial what type of rule Notice 2006-50 may be or whether or not rulemaking procedures are required. *See Appalachian Power Co. v. EPA,* 208 F.3d 1015, 1021-22, and n.13 (D.C. Cir 2000) (holding an EPA Guidance document reviewable under the APA whether or not it is considered a rule); ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT, 93 (1947) ("Section 10 [the APA's judicial review provision] is applicable irrespective of whether the agency action for which review is sought was governed by the procedural provisions of [the APA].").

internal notice in *Tax Analysts* was fundamentally unlike Notice 2006-50, and, in any case, it did not shield that notice from judicial scrutiny.

Though the Government's posture before this Court is that Notice 2006-50 is "merely a statement of policy," the Notice announces clear governmental choices concerning how to remedy the Government's illegal exaction – choices with real-world consequences that "aggrieve" the Plaintiffs and the proposed class. The Notice's three-year limitation on the money it will return and the "safe-harbor" procedure it establishes will wrongly deprive all those who suffered this exaction from complete restitution and will deprive certain groups of citizens – totaling tens of millions – from getting any refund at all. *See* Complaint at ¶¶ 38-40, 90; P.I. Motion, 5-14. Nowhere does the Government dispute that these results will flow from the Notice.

Agency statements like Notice 2006-50 have long been understood to be reviewable under the APA. In *Appalachian Power*, for example, the EPA claimed that a "guidance" document, which purported to set out that agency's approach to reviewing State-issued permits under the Clean Air Act, was a non-binding policy statement. 208 F.3d at 1020-23. The D.C. Circuit disagreed in terms not far-removed from the IRS Notice at issue here:

> [W]hatever EPA may think of its Guidance generally, the elements of the Guidance petitioners challenge consist of the agency's settled position, a position it plans to follow in reviewing State-issued permits, a position it will insist State and local authorities comply with in setting the terms and conditions of permits issued to petitioners, a position EPA officials in the field are bound to apply.

*Id.* at 1022. The Court discounted as insignificant "boilerplate" an express disclaimer to the effect that it was "intended solely as guidance, do[es] not represent final Agency action, and cannot be relied upon to create any rights enforceable by any party." *Id.* at 1022-23. The Court concluded: "The short of the matter is that the Guidance . . . is final agency action,

reflecting a settled agency position which has legal consequences both for State agencies administering their permit programs and for companies . . . who must obtain . . . permits in order to continue operating." *Id.* at 1023.

At issue in *Independent Petroleum Ass'n v. Babbitt,* 92 F.3d 1248 (D.C. Cir. 1996), was a Department of the Interior ("DOI") letter setting out the "interpretation and policy" concerning the collection of royalties from the settlement of liabilities of gas pipelines. *Id.* at 1250-53. Uncannily like Notice 2006-50, the DOI policy letter was expressly issued to acquiesce in a Fifth Circuit decision on the topic. *Id.* at 1253. While finding that the DOI letter was not a rule binding on the agency, the Court held that it was subject to review under the APA's arbitrary and capricious standard of review. *Id.* at 1256-58.

The Court went on to agree with plaintiffs that "the agency is bound by its own hand -- . . . its own acquiescence in [the Fifth Circuit decision]." *Id.* at 1257. "DOI's interpretation," the Court concluded, "is held only to a standard of reasonableness, but the interpretation must be reasonable *in light of DOI's adoption of* [the Fifth Circuit's decision]." *Id.* at 1258 (emphasis in original). Under that standard, the Court held that DOI's "policy" was arbitrary and capricious. *Id.* at 1260.

A final example is *NRDC v. EPA,* 22 F.3d 1125 (D.C. Cir 1994), which involved an EPA memorandum and letter, articulating a policy of conditionally approving state plans implementing the Clean Air Act. *Id.* at 1129-32. Noting that "[a]n agency may not . . . avoid judicial review 'merely by choosing the form of a letter to express its definitive position on a general question of statutory interpretation,'" *id.* at 1132-33 (quoting *Her Majesty the Queen ex rel. Ontario v. EPA,* 912 F.2d 1525, 1531 (D.C. Cir. 1990)), the Court held that these policy statements were final agency action subject to APA review. *Id.* at 1133-35.

We have discovered no case in which an agency statement like Notice 2006-50 was immune from judicial scrutiny under the APA.[12]  Nor, apparently, has the Government, for it simply cites two decisions concerning the tax problems of individuals, litigation far removed from the broad issues of general applicability raised by Notice 2006-50.[13]

The text of the federal tax refund statute itself, 26 U.S.C. § 7422(a), contradicts the Government's claim that it defeats the APA's waiver of sovereign immunity:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

That an "internal revenue tax" was "erroneously or illegally assessed or collected" has been resolved in Notice 2006-50.  This case does not concern an individual's quarrel with the IRS over his taxes that is susceptible of resolution by a claim "duly filed with the Secretary." Plaintiffs challenge the general regime the IRS has put in place through Notice 2006-50. Agency policies of general applicability can be adjudicated in a tax refund case filed by an individual taxpayer, but agency pronouncements of such policies to be applied to all or a class of taxpayers can be reviewed directly.  Logically, § 7422 applies to the former case, while the APA applies to the latter.

---

[12] In *American Standard, Inc. v. United States*, 602 F.2d 256 (Ct.Cl. 1979), the court invalidated an IRS rule governing an aspect of corporate taxation on the ground that it violated the notice requirements of the APA. Similarly, the court in *AMA v. United States,* 887 F2d.760 (7th Cir. 1989) evaluated a challenged IRS rule and concluded it passed muster under the APA's notice requirements. *See also Ward v. Commissioner,* 784 F.2d 1424, 1430 (9th Cir. 1986) (evaluating APA challenge to amendment to Treasury rule); *In re Romagnolo,* 269 B.R. 63, 66-67 (M.D.Fla. 2001) (recognizing that an IRS rule that affects the rights of individuals would have to be promulgated under APA rulemaking procedures, but finding rule at issue to be only agency "internal operating instructions").

[13] *See* Govt. Mem. at 28-29 (citing *Fostvedt v. United States,* 978 F.2d 1201 (10th Cir. 1992) (complaining of failure of the IRS. to respond to taxpayer's request for technical advice and denying him an appeal conference with respect to his three years of unpaid taxes) and *Hughes v. United States,* 953 F.2d 531 (9th Cir. 1992) (action by a couple seeking to forestall IRS efforts to collect back taxes)).

To be sure, the APA is limited to actions "seeking relief other than money damages." 5 U.S.C. § 702. Yet it is hornbook law that specific monetary relief can be awarded in an APA action. As the D.C. Circuit has explained:

> The pivotal analysis in distinguishing specific relief available under the APA from unavailable money damages comes from our opinion in *Maryland Dep't of Human Res. v. Department of Health and Human Servs.,* 763 F.2d 1441 (D.C. Cir 1985), which the Supreme Court adopted in *Bowen v. Massachusetts,* 487 U.S. 879 . . . (1988). Not all forms of monetary relief are money damages. *See Maryland Dep't of Human Res.,* 763 F.2d at 1447. Rather, money damages represent compensatory relief, an award given to a plaintiff as a substitute for that which has been lost; specific relief in contrast represents an attempt to restore to the plaintiff that to which it was entitled from the beginning.

*America's Community Bankers,* 200 F.3d at 829.

The fund Plaintiffs seek is "not [a] substitute remed[y] at all, but . . . the very thing to which [they are] entitled." *Bowen,* 487 U.S. at 895 (quoting *Maryland Dep't of Human Res.,* 763 F.2d at 1446). This case fits comfortably within the body of precedents applying *Bowen.* In *America's Community Bankers,* the plaintiff claimed that the FDIC's assessment for a federal insurance fund was illegally high, and the D.C. Circuit found that a claim for the return of the "improperly collected money" to be a claim for specific relief within the scope of the APA. 200 F.3d at 829-31. When the Department of Housing and Urban Development failed to make a timely adjustment in the utilities allowance for tenants in subsidized housing, the Third Circuit found that the tenants' claim for reimbursement of the excess rent they were forced to pay as a result was not a claim for money damages, but for specific relief under the APA. *See Zellous v. Broadhead Assoc.,* 906 F.2d 94, 96-99 (3d Cir. 1990).

Similarly, in *Aetna Casualty & Surety Co. v. United States,* 71 F.3d 475 (2d Cir. 1995), Aetna had issued a surety bond to the Government guaranteeing the Black Lung payments of LTV Steel Company, which then went into bankruptcy, forcing the Department

of Labor to make the payments on LTV's behalf, and Aetna paid the bond. Aetna sought

reimbursement from LTV's tax refunds, held by the Government. The Second Circuit held

that Aetna's claim to the tax refund, when pleaded as an APA claim, was within the district

court's jurisdiction:

> [Aetna's] suit is not for damages to compensate for the government's failure
> to perform a duty. Rather it seeks to require the government to perform its
> duty – that is, to pay Aetna funds held by the government for Aetna's benefit.
> . . . Aetna's claim under the APA seeks to compel the government to do its
> duty by paying over the funds owed to Aetna. . . . Because Aetna seeks
> injunctive relief to force the government to perform a legal obligation, the
> action is not forbidden by the APA's bar on money damages.

*Id.* at 478-79.

After the concession of Notice 2006-50, the Government holds a fund of Plaintiffs'

money, and the Notice attempts to limit the Government's duty to return that fund in full.

Our challenge to that regime seeks specific relief – the Government reasonably satisfying its

duty to return all of that fund. Such a claim is squarely within this Court's jurisdiction under

the APA and 28 U.S.C. § 1331.[14]

### C.    Alternatively, the "Little Tucker Act" Waives Sovereign Immunity and Confers Jurisdiction on This Court.

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), waives sovereign immunity and

grants the Federal District Court concurrent jurisdiction with the Court of Federal Claims

over "any claim against the United States founded either upon the Constitution, or any Act of

Congress or any regulation of an executive department, or upon any express or implied

contract with the United States," as long as the claim does not exceed $10,000. This

language provides a waiver of the Government's sovereign immunity, and does so for all

claims based on any Act of Congress, executive regulations, implied contracts, and

---

[14] Venue is proper in this Court for APA claims. *See* 5 U.S.C. § 703; 28 U.S.C. § 1391(e).

constitutional claims that can "fairly be interpreted as mandating compensation" for the

damage sustained. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

> This "fair interpretation" rule demands a showing demonstrably lower than the
> standard for the initial waiver of sovereign immunity. "Because the Tucker Act
> supplies a waiver of immunity for claims of this nature, the separate statutes and
> regulations need not provide a second waiver of sovereign immunity, nor need
> they be construed in the manner appropriate to waivers of sovereign immunity."
> It is enough, then, that a statute creating a Tucker Act right be reasonably
> amenable to the reading that it mandates a right of recovery in damages. While
> the premise to a Tucker Act claim will not be "lightly inferred," . . . a fair
> inference will do.

*Id.* at 472-73 (internal citations omitted). Furthermore, courts do *not* strictly construe statutes

and substantive rights against finding a particular right is reasonably amenable to providing

damages.[15]

### 1. This Court Has Jurisdiction Under the Little Tucker Act Over Plaintiffs' Illegal Exaction Claim.

Notice 2006-50 concedes that the Government illegally exacted the FET from

Plaintiffs and the proposed class, but the Notice it has refuses to return more than three years

worth of that exaction and has raised effective barriers to the ability of millions of citizens to

recover their money.  Plaintiffs contend that this continued unlawful retention of money the

Government admits it has no right to have itself constitutes an additional illegal exaction over

which this Court has jurisdiction. *See* Complaint ¶¶ 76-81, 103-105.

The illegal exaction cause of action has the special characteristic of being the

unique money-mandating cause of action that arises under the Due Process Clause.  As the

Federal Circuit has noted, "[T]here is no jurisdiction under the Tucker Act over a Due

---

[15] To the contrary, the Supreme Court explained in *United States v. Mitchell*, "[t]he exemption of the sovereign from suit involves hardship enough where consent has been withheld.  We are not to add to its rigor by refinement of construction where consent has been announced."  463 U.S. 206, 219 (1983) (quoting *United States v. Aetna Sur. Co.*, 338 U.S. 366, 383 (1949)). *See also White Mountain Apache Tribe*, 537 U.S. at 477 (rejecting strict requirements in favor of "the less demanding requirements of fair inference that the law was meant to provide a damages remedy for breach of a duty").

Process claim unless it constitutes an illegal exaction." *Casa de Cambio Comdiv S.A., de C.V. v. United States,* 291 F.3d. 1356, 1363 (Fed.Cir. 2002).[16] "An illegal exaction under the Fifth Amendment only occurs where the Government has retained or improperly exacted money from the claimant." *Sartori v. United States,* 58 Fed.Cl. 358, 362 (2003). *See also Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1573 (Fed.Cir. 1996) ("[A]n illegal exaction has occurred when the Government has the citizen's money in its pocket.") (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 513 (1954)); *Fireman v. United States,* 44 Fed.Cl. 528, 534 (1999) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law."). *Cf. Reich v. Collins,* 513 U.S. 106, 108-109 (1994) ("In a long line of cases, this Court has established that due process requires a 'clear and certain' remedy for taxes collected in violation of federal law. . . . [E]ven if [a state] tax refund statute does not require a refund, federal due process does.").

Having before it a well-plead illegal exaction claim, that is, a claim against the United States founded upon the Due Process Clause of the Constitution, and that claim not exceeding $10,000, this Court has jurisdiction over that claim under § 1346(a)(2).

## 2. This Court Has Jurisdiction Under the Little Tucker Act Over the Implied Contract Created by Notice 2006-50.

At bottom, Notice 2006-50 constitutes a global concession to Plaintiffs and the proposed class that the Government had no right to take their money as "taxes." Under our law (and basic notions of justice), this representation carries with it an implied promise of

---

[16] Many of the illegal exaction precedents arise from Tucker Act cases being prosecuted in what is now the Court of Federal Claims. As a matter of law, those precedents are equally applicable to the Little Tucker Act. "[O]ther than the dollar limit on district court jurisdiction, there is no difference between the 'little' and the 'big' Tucker Act. There was only one Tucker Act. Over time it has been split through separate codification, but the grounds for exercising power are the same in both courts." *Crocker v. United States,* 37 Fed.Cl. 191, 200 (1997) (internal citation omitted). "[T]he Tucker Act did no more than authorize the District Court to sit as a court of claims." *Richardson v. Morris,* 409 U.S. 464, 466 (1973) (quoting *United States v. Sherwood,* 312 U.S. 584, 591 (1941)).

repayment; that is, it constitutes an implied contract that can be adjudicated under this Court's Little Tucker Act jurisdiction.

> When the Government has illegally received money which is the property of an innocent citizen and when this money has gone into the Treasury of the United States, there arises an implied contract on the part of the Government to make restitution to the rightful owner under the Tucker Act, . . . and this court has jurisdiction to entertain the suit.

*Kirkendall,* 31 F.Supp. at 769. *See also State Nat. Bank,* 96 U.S. at 35-36 (holding that the United States is liable under "an implied contract" when it has without right obtained the money of a citizen, and "the mode in which it was incurred is immaterial."); *Shelter Island,* 246 F.Supp. at 494 ("Implicitly, the undenied ownership [by the citizen] and the absence of a claim of right to retain [by the Government] must be taken to raise a promise of repayment.").

This principle of an implied promise by the Government to repay money it has admitted it illegally exacted is reflected in the analogous body of caselaw concerning the "account stated":

> The major qualification of the normal refund prerequisites is the so-called suit on an "account stated", which does not require a refund claim and can be brought within the over-all six-year limitations span. To constitute such an account the Government must have agreed with the taxpayer that he has overpaid his taxes in a definite amount, and must have communicated to him its intention to repay. The action is based on the common law concept that an implied contract arises when a debtor (the Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account.

*West Publishing Co. Employees' Preferred Stock Ass'n,* 1972 WL 208000 at *5.

The account stated cause of action technically arises when the IRS Commissioner determines that a taxpayer is entitled to a refund and evidences that determination by issuing

a "certificate" to the taxpayer to that effect.[17]  To be sure, Notice 2006-50 does not perform all the technical functions of the account stated cause of action.  Although the IRS did concede the taxpayers' entitlement to a refund, it did not issue an individual certificate to each of the citizens from whom the FET money was illegally exacted.  Yet the model of the account stated does support the proposition that, in the unique posture of this case, the United States has made an implied promise to repay the money illegally exacted from the Plaintiffs under the guise of the FET.  The key element in the account stated context is the determination by the IRS that an overassessment has occurred.  The certificate involved is the formal evidence documenting the taxpayer being told of that determination.  Here, Notice 2006-50 provides that "taxpayers may request a refund of tax paid under § 4251 on nontaxable service that was billed to the taxpayers during the period after February 28, 2003, and before August 1, 2006."[18]  Notice 2006-50, § 4(a).

Even more directly, the Notice advises that "the Commissioner will authorize the scheduling of an overassessment under § 6407 to keep the period of limitations open for [refund] requests.  This overassessment will apply to all taxpayers and to all taxes paid for the services covered by this notice beginning with the tax paid on services that were billed to customers after February 28, 2003."  *Id.* at § 1(b).  Section 6407 itself provides, "The date on which the Secretary first authorizes the scheduling of an overassessment in respect of any

---

[17] *See Bonwit Teller & Co. v. United States,* 283 U.S. 258, 265 (1931) (The claim for "an account stated ... is not for the overpayment of the tax ... but is evidenced by the certificate issued by the Commissioner [showing an entitlement to a refund].  Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought."); *Dorrance v. Phillips,* 85 F.2d 660, 661 (3d Cir. 1936) ("[U]pon delivery by the government of certificates of overpayment a cause of action arises and the taxpayer has the right to sue the government on its implied promise to pay.") (internal citation omitted); *Moses v. United States,* 61 F.2d 791, 793 (2d Cir. 1932) ("[T]he cause of action is grounded upon the Commissioner's determination evidenced by his certificate of overassessment.  The liability of the United States rests upon an implied promise to pay the allowed refund.") (internal citation omitted); *Baumgard v. United States,* 42 Fed.Cl. 301, 303 (1998) ("Account stated recovery is premised on implied contract theory.").

[18] Again, the three-year and four month limitation the Government tries to place on its duty to return plaintiffs' money is unlawful.

internal revenue tax shall be considered as the date of *allowance of refund or credit in respect of such tax.*" 26 U.S.C. § 6407 (emphasis added).

No fair reading of Notice 2006-50, even with its unlawful limitations, would lead a reasonable taxpayer to conclude anything less than that the collection of the FET was unlawful, and that those who paid it are entitled to their money back. Certainly, because this was an illegal *excise* tax, the money illegally exacted is now one fund that cannot now be allocated to specific taxpayers. Indeed, the global refund mechanism set out in the Notice reflects that fact. Yet the distinct attributes of excise tax collection, and the challenge of returning that fund, should not undermine the basic proposition that those who were illegally compelled to pay into that fund are entitled to their money back, and that Notice 2006-50 is an acknowledgment of that fact. With that express acknowledgment comes at the very least an implied promise to repay. The Little Tucker Act confers jurisdiction on this Court to adjudicate the dispute over the legal contours of that duty to repay.

### 3. This Court Has Jurisdiction Under the Little Tucker Act Over Plaintiffs' Takings Claim.

The Government's arguments to dismiss this case are most inapt concerning our claims under the Takings Clause of the Fifth Amendment. The Government forgets that Plaintiffs' "claims for just compensation are grounded in the Constitution itself." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987). In this respect, the Takings Clause has a "self-executing character." *Id.* (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)). As a result, "[s]tatutory recognition [is] not necessary." *Id.* (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)). At bottom, "it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." *Id.* at 316 n.9. "Just compensation is provided for by the Constitution and the

right to it cannot be taken away by statute. Its ascertainment is a judicial function." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 304 (1923) (citing *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327 (1893)). From these fundamental constitutional principles, it follows that the Government's reliance on sovereign immunity is misplaced. "*First English* makes clear that the Fifth Amendment Takings Clause is a self-executing remedy, notwithstanding sovereign immunity." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 527 (6th Cir. 2004).[19]

The Court need not go so far as to rely on constitutional first principles, as the Tucker Act/Little Tucker Act provides a ready source of jurisdiction for this Court to adjudicate our Takings claim.

> [W]here the action involves . . . recovery . . . of money wrongfully collected by the Government under a statute or regulation . . . [and] where the Government had actual possession of money or property of the plaintiff, the court has jurisdiction under the Tucker Act even though tortious overtones exist, since the suit is founded on the Constitution, an Act of Congress, or a departmental regulation.

*McCreery v. United States,* 161 Ct.Cl. 484, 1963 WL 8499, *1 n.6 (1963).[20]

Nothing about the fact that the property at issue here is money removes this case from the scope of the Takings Clause. As the Court of Claims unequivocally has stated:

> [I]f the plaintiff can show that money, to which he had a better title than the United States is being kept from him by the United States for its own use, this

---

[19] *See also Malone v. Bowdoin*, 369 U.S. 643, 647-48 (1962) (noting "the constitutional exception to the doctrine of sovereign immunity ... 'where there is a claim that the holding [of plaintiff's property] constitutes an unconstitutional taking of property'") (quoting *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 696, 697 (1949)); Richard Fallon, *et al.,* HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM, 379 (4th ed. 1996) ("[T]he Constitution mandates the availability of effective remedies for 'takings' and for the coercive collection of taxes, and accordingly requires courts to provide those remedies, 'the sovereign immunity States traditionally enjoy in their own courts notwithstanding.'") (quoting *Reich*, 513 U.S. at 110).
[20] *See also El-Shifa Pharm. Indus. Co. v. United States,* 378 F.3d 1346, 1353 (Fed.Cir. 2004) ("If the government appropriates property without paying just compensation, a plaintiff may sue in the Court of Federal Claims on a takings claim regardless of whether the government's conduct leading to the taking was wrongful, and regardless of whether the plaintiff could have challenged the government's conduct as wrongful in another forum.") (quoting *Del-Rio Drilling Programs Inc. v. United States,* 146 F.3d 1358, 1363 (Fed.Cir. 1998)).

> court has jurisdiction, because the plaintiff's claim is founded upon the Fifth
> Amendment of the Constitution, it being a taking of private property for
> public use without just compensation.

*Foster v. United States,* 98 F.Supp. 349, 351-52 (Ct.Cl. 1951).  *See also Webb's Fabulous*

*Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1980) (holding that a statute allowing a state to

retain interest accruing on an interpleader fund deposited in the registry of a county court

amounted to a taking of a property interest).

The Government claims that the Takings Clause cannot apply here because this is a

suit for "recovery of taxes."  Govt. Mem. at 17.  Again, the Government's effort to fall back

into this refuge is misplaced.  As we have argued above, Notice 2006-50 constitutes a

declaration by the IRS of a global position.  Through the Notice, the IRS has adopted certain

legal positions vis-à-vis the entire fund it has illegally collected under the FET.  These

include a rigid limit on the amount the IRS believes it is required to return (the three-year-

and-four-month window of collections it has putatively agreed to return) and refund

procedures that effectively exclude millions of claimants.  These justifications for retaining

the lion's share of this fund are unlawful and the continued retention of the fund on these

terms constitutes a taking of the monies not returned.  This case is nothing like an individual

income taxpayer's suit for a refund.[21]

Even beyond the fact that this case can no longer be characterized as one for the

recovery of taxes, the Government far overstates the governing law that a normal tax refund

claim, premised on some miscalculation or any of the other myriad bases for tax errors that

can arise in the daily world of "taxable events," is not properly considered a taking.  By

---

[21] To characterize it as such would be to excuse from judicial scrutiny a vast array of IRS actions.  After all, the business of that agency is taxes.  Any statement of general applicability designed to implement or interpret law or policy (otherwise known as a "rule," *see* 5 U.S.C. § 551(4)) issued by the IRS is likely to affect taxes, and simply on that basis cannot be immune from review except in a tax refund action.

contrast, the Fifth Amendment is very much implicated when money is illegally exacted and then retained under the guise of a "tax." Fifth Amendment takings principles are often implicated where, as here, the claimed wrong arises from the manner or process by which the exaction occurs or is imposed. For example, "[a] retroactive tax can constitute a taking under the Fifth Amendment of the Constitution if the retroactive feature makes it 'so arbitrary and capricious as to amount to confiscation.'" *Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332, 1336 (Fed.Cir. 2001) (quoting *Nichols v. Coolidge*, 274 U.S. 531, 542-43 (1927)). The continued retention of the illegally collected FET under the terms set out in Notice 2006-50 does amount to an unlawful confiscation of Plaintiffs' money to which the Takings Clause provides a remedy.[22]

## II.    THE ANTI-INJUNCTION ACT DOES NOT BAR THIS CASE.

The Government claims that this "action is plainly barred by the Anti-Injunction Act," Govt. Mem. 19, and argues that the exceptions to the Anti-Injunction Act ("AIA") do not apply. *Id.* 19-23. But it offers nothing – neither argument nor authority – to show how the AIA could possibly apply here. By its own terms, the AIA blocks injunctive relief only

---

[22] For the many reasons stated in this opposition, the Court plainly has jurisdiction over this matter and the Government's motion may properly be denied on the present record. The reciprocal is not, however, true. Plaintiffs submit that the Court may not properly *allow* the Government's motion to dismiss on the present record because the Government's jurisdictional arguments (*see, e.g.*, Govt. Mem. 14-15, 20) are predicated on a key disputed factual premise: that the administrative refund procedures of § 7422 or of Notice 2006-50 provide workable remedies for Plaintiffs' claims. It is axiomatic that a refund procedure must be real, not illusory and must be adequate. *Reich*, 513 U.S. at 111. (the "backward-looking relief" must be "meaningful"); *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 101 (1993); *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 31 (1990); *Carpenter v. Shaw*, 280 U.S. 363 (1930). As such, because the disputed jurisdictional facts "are inextricably intertwined with the merits of the case, [the Court] should defer its jurisdictional decision until the merits are heard." *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 198 (D.C. Cir. 1992) (citing *Land v. Dollar*, 330 U.S. 731, 731 (1947)). The *Herbert* Court cautioned that, "ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Id.* (citing *Collins v. New York Cent. Sys.*, 327 F.2d 880 (D.C. Cir. 1963)). *See also Wilderness Soc. v. Griles*, 824 F.2d 4, 17 (D.C. Cir. 1987) (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("The district court must give the plaintiff an opportunity for discovery and for a hearing [on factual matters underlying jurisdiction] that is appropriate to the nature of the motion to dismiss.") Although the Court can and should deny the motion to dismiss, it may not allow the motion until the Plaintiffs are given an opportunity to contest the Government's central jurisdictional contentions following discovery.

when suit is filed "for the purpose of restraining the *assessment* or *collection* of any tax." 26 U.S.C. § 7421(a) (emphasis added). Having conceded the illegality of the "assessment or collection" of the FET at issue here, the Government itself has halted its "assessment or collection." *See* Notice 2006-50, §§ 4(a), (c). This case is now concerned with finding the legally appropriate ways to clean up the mess left over by the IRS now that its illegal "assessment or collection" is ended, not "for the purpose of restraining the assessment or collection."

The Government does not cite any case holding that the AIA applies after the end of "assessment and collection." The Supreme Court has found the AIA confined, literally, to suits "for the purpose of restraining the assessment or collection." In *Hibbs v. Winn*, 542 U.S. 88 (2004), the Court found no barrier to a suit for injunctive relief against a still-active tax program, in which tax "assessment and collection" had not been invalidated or ended, as the FET has here.[23] Because the plaintiffs' challenge to allegedly invalid tax credits would increase revenues, their case fell outside the literal and decisive words of the AIA. *Id.* at 103 & n.5. Far from triggering the AIA bar, whenever the relief sought bears a family resemblance to an injunction, the *Hibbs* court took a more exact approach, closely scrutinizing the challenged relief to determine whether it would in fact restrain collection or assessment of taxes, as opposed to affecting some other aspect of the tax system.

Precedents involving analogous circumstances confirm that the AIA does not apply to this case. When taxpayers sought to enjoin IRS's procedures for taxpayers with child support obligations, courts rejected the IRS's attempt to block such suits on AIA grounds,

---

[23] *Hibbs* itself concerns an Arizona state tax credit program, not a federal one, so that the statutory barrier to equitable suits is technically the Tax Injunction Act (as to states) rather than the AIA (as to federal programs). However, the Court's discussion, which weaves together TIA and AIA precedents, makes clear that it is espousing a principle applicable to both. *See* 542 U.S. at 104 ("Just as the AIA shields federal tax collections from federal-court injunctions, so the TIA shields state tax collections from federal-court restraints.").

holding that the AIA did not immunize the IRS's refund procedure – which, after all, occurred after assessment and collection of taxes – from equitable relief. *See Sorenson v. Sec'y of Treasury*, 752 F.2d 1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986); *Nelson v. Regan*, 731 F.2d 105 (2d Cir. 1984); *Jahn v. Regan*, 584 F.Supp. 399 (E.D. Mich. 1984); *Coughlin v. Regan,* 584 F.Supp. 697 (D. Me. 1984). The court in *Nelson* explained that the AIA "is designed to protect 'the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference.' . . . This need is not involved here, since the intercept program takes place only *after the assessment and collection of taxes.*" 732 F.2d at 109 (quoting *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736 (1974)) (emphasis added).

So, too, the "program" of Notice 2006-50 by definition is occurring after the assessment and collection of the illegal FET, and neither the text nor the goals of the AIA are implicated by this case.[24]

### III.    THE DECLARATORY JUDGMENT ACT DOES NOT BAR THIS CASE.

Despite its broad wording, the Declaratory Judgment Act's ("DJA") purported bar against declaratory relief "with respect to Federal taxes" is applied as narrowly as the AIA in this Circuit. *Eastern Kentucky Welfare Rights Org. v. Simon*, 506 F.2d 1278, 1283 (D.C. Cir 1974), *rev'd on other grounds*, 426 U.S. 26 (1976). *See Investment Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir 1979) ("the reach of the two Acts is coterminous"). The DJA bars only declaratory relief "for the purpose of restraining the assessment or collection

---

[24] Even if this was a suit for the purpose of restraining "assessment or collection," this case would fall within a well-recognized judicially-created exception to the AIA, for, (1) on the merits, "it is clear that under no circumstance could the Government ultimately prevail"; and (2) "equity jurisdiction otherwise exists." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). This Circuit has already decided against the United States, and thereby bound this Court, as to the unlawfulness of the FET, so the government has no arguments left to make that it will not pay a refund to FET taxpayers. *See Nat'l R.R. Passenger Corp.*, 431 F.3d 374. And equity jurisdiction does exist. We address the *Williams Packing* exception to the AIA in detail in our reply in support of our motion for a preliminary injunction. *See* P.I. Motion at 15-16.

of any tax." 26 U.S.C. § 7421; *Church of Scientology v. Egger*, 539 F.Supp. 491, 494 (D.D.C. 1982).

The DJA and AIA "did not contemplate barring actions . . . where the litigation did not threaten to deny *anticipated tax revenues* to the Government." *Eastern Kentucky Welfare Rights Org.*, 506 F.2d at 1284 (emphasis supplied). In this case, the unlawful "tax" has been assessed and collected and the Government has conceded that it lacked legal authority to do so and will not seek to assess or collect the tax in the future. There are no "anticipated tax revenues" to be denied, so this case is outside the scope of the federal tax exception to the DJA. *See Coughlin,* 584 F.Supp. at 706.[25] Likewise, in this case the FET has been collected. Invalidating the procedure by which the Government intends to give back a portion of the fund collected would not enjoin the assessment or collection of a tax.

Similarly, in *Tax Analysts and Advocates v. Schultz*, 376 F.Supp. 889 (D.D.C. 1974), this Court found that the DJA did not bar an action seeking to invalidate a revenue ruling that permitted certain political contributions to escape the gift tax. The Court rejected the IRS's argument that plaintiffs "sought to restrain the government from collecting a tax" and were also "fully able to raise their claims in a refund suit." *Id.* at 894. The Plaintiffs in this case are neither seeking to restrain the collection of a tax nor are "fully able" to utilize the refund suit remedy because it is wholly inadequate and denies relief to millions of taxpayers.

---

[25] In *Coughlin*, the plaintiff challenged the constitutionality of the IRS procedure by which refunds of taxpayers with delinquent child support obligations were intercepted and transferred to state governments. Rejecting the Government's claim that the suit sought to enjoin the collection or assessment of taxes, the court noted that the procedures at issue "do not come into play until *after* taxes have been *collected* and all existing tax liabilities have been satisfied," and thus were not within the reach of the DJA or AIA. *Id.* (noting that rationales for DJA and AIA "are inapposite in the context of an offset of tax *overpayments*") (italics in original).

IV.    **THE PROCEDURAL STATUTES GOVERNING TAX REFUNDS DO NOT BAR THIS CASE.**

A.    **The Administrative Claims Procedure Authorized by § 7422(a) Has Never Been Implemented With Respect to Plaintiffs.**

The central "jurisdictional prerequisite" relied upon by the Government in its effort to defeat this Court's jurisdiction is 26 U.S.C. § 7422(a), *see* Govt. Mem. 10-14, which provides that, before a tax refund lawsuit is filed, "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." It is not self-executing; it requires the Secretary of the Treasury to promulgate regulations so taxpayers can claim a refund.[26]

The only such regulation cited by the Government is codified at 26 C.F.R. § 301.6401-2 (c), which provides that "all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843." If the excise taxpayer turns to Form 843, nearly the first thing he reads is: "***Do not** use Form 843 if your claim is for . . . An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*" IRS Form 843 (2005) (emphasis in original) (appended as Ex. C). Seeking more guidance, our taxpayer turns to the Form's Instructions, which echoes the Form's direction with more, but not more helpful, words.[27]

---

[26] *See Alabama Power Co. v. Federal Energy Reg. Comm'n*, 160 F.3d 7, 12 (D.C. Cir 1998) (holding statute permitting agency to regulate depreciation accounting by utilities "in accordance with such rules, regulations, and forms of account as the Commission may prescribe" was not self-executing because statute did not establish requirements for utilities to follow). *See also California Bankers Assoc. v. Schultz*, 416 U.S. 21, 64 (1974) (Bank Secrecy Act not self-executing where Congress left to Treasury Secretary to prescribe recordkeeping and reporting requirements); *Gholston v. Housing Auth. of the City of Montgomery*, 818 F.2d 776, 786 (11th Cir. 1987) (statute requiring local housing authorities to grant specific preferences in compliance "with such procedures and requirements as the Secretary may prescribe" was not self-executing). Only "if the Congressional mandate is sufficiently clear" is the Internal Revenue Code self-executing and interpretive regulations not required. *Granse v. United States*, 892 F.Supp. 219, 225 (D. Minn. 1995).

[27] *See* IRS Instructions for Form 843, 1 (2005) ("**Do not use Form 843 when you should use a different tax form.** For example, do not file Form 843 to request: . . . A refund relating to excise taxes reported on Forms 11-C, 720, 730, or 2290.") ("Form 843 Instructions") (emphasis in original) (appended as Ex D).

Reading on, our unenlightened taxpayer spies a potentially helpful reference: "See . . . Form 8849, Claim for Refund of Excise Taxes." *Id.* His hopes are dashed when examining Form 8849, which warns him *not* to use it where Form 720 has been used.[28] Not knowing what to make of this, our taxpayer turns to the Instructions for Form 8849, which further confuses matters. First, the taxpayer is advised, "Use Schedule 6 for claims not reportable on Schedules 1, 2, 3, and 5, including refunds of excise taxes reported on: **Form 720**, Quarterly Federal Excise Tax Return." IRS Form 8849, at 2. But, the ubiquitous Form 720 rears its head again in a contrary direction, "**Do not** use Form 8849: To make adjustments to liability reported on Forms 720 filed for prior quarters. Use Form 720X." *Id.* (emphasis in original).

By this time, our moderately intelligent taxpayer is clued into the fact that Form 720 seems to be the return for excise taxes, and seems to play a central role in any refund of his illegally exacted money. (Indeed, since the premise of this taxpayer's refund is that he had no liability for the FET on phone service, yet his money was taken from him nonetheless, his refund may actually be an "adjustment to liability.") When he examines Form 720 itself, he is met with a maze of detail for reporting excise tax liability for an array of excise taxes, including the phone tax, but he spots nothing for a person in his shoes, a taxpayer who simply wants to get his money back. *See* IRS Form 720 (2005) (appended as Ex. F).

Schedule C of Form 720 is entitled "Claims," but the phone excise tax is not to be

---

[28] IRS Form 8849 (with Instructions), 1 (2005) ("**Caution: *Do not*** *use Form 843 to make adjustments to liability reported on Forms 720 for prior quarters or to claim any amounts that were or will be claimed on* **Schedule C (Form 720), Claims.**") (emphasis in original) (appended as Ex. E).

found among the 13 excise taxes it does address. *Id.,* 4-5. However, one catch-all line item, "Other Claims," directs him to the instructions for the Form. *Id.,* 5.[29]

Form 720's Instructions clear up one thing for the increasingly discouraged taxpayer. The reason he has never seen Form 720 is because, though the excise tax payments came from *his* pocket, it is his phone company who completes the return for the tax information and the tax collected. *See* Form 720 Instructions, 3 ("The person receiving the payment for communications . . . services must collect and pay over the tax and file the return.").[30]

About ready to throw in the towel, in flipping back through these instructions he notices another reference that rekindles some hope: "To make adjustments to liability reported on Forms 720 filed for prior quarters, use Form 720X." *Id.,* 10. But that hope is short-lived, for Form 720X states, "Use Form 720X to make adjustments to liability reported on Forms 720 you have filed for previous quarters." IRS Form 720X, 2 (2005) (appended as Ex. H). Since the taxpayer has never filed a Form 720 (and is not supposed to), clearly Form 720X is not the form he is supposed to use to get his money back.

One last step – our taxpayer remembers a reference to "Pub. 510, Excise Taxes," in the paperwork he has reviewed. *See* Form 843 Instructions, 1; Form 720 Instructions, 14. But Publication 510 administers the coup de grace to our taxpayer's refund efforts:

> **Taxpayers.** Credits or refunds for nontaxable service that was billed after February 28, 2003, and before August 1, 2006, can be claimed by taxpayers only on their 2006 federal income tax returns. Forms and instructions to make

---

[29] Moving through page after page of detailed discussion of excise taxes other than the one he is interested in, our taxpayer finally comes to the discussion of "Other Claims," which advises, "Use line 14f for claims relating to taxes listed in the table below." IRS Instructions for Form 720, 14 (2005) ("Form 720 Instructions") (appended as Ex. G). But the phone excise tax is not listed in "the table below." *Id.*

[30] The Instructions helpfully advise the phone companies, "[k]eep copies of your tax return, records, and accounts of all transactions to show that the correct tax has been paid. Keep records to support all claims and all exemptions [for] at least 4 years . . . ." Form 720 Instructions, 1.

> the claim will be included with the 2006 income tax returns. Do not use Form
> 8849, Form 720, or Form 843 to make claims for nontaxable service; the IRS
> will not process these claims.

IRS Publication 510, 28 (2006) (pertinent pages appended as Ex. I). So none of the forms

visited on our taxpayer's trek from 26 U.S.C. § 7422(a) and the Secretary's regulation

provide the manner, in the words of Congress, "according to" which "a claim for refund"

must be "duly filed."

All this would be a sad Dickensian caricature if did not accurately describe what

confronts any taxpayer. For the excise taxpayer in the shoes of the Plaintiffs and the

proposed class, no effective method for claiming a refund under § 7422(a) has *ever* been

established. Section 7422(a) simply has never been implemented vis-à-vis such taxpayers,

for the FET system rested upon the phone carriers, with Forms 720 and 720X, to handle the

overwhelming volume of tax reporting, collecting, and adjusting for refunds. And the

revised IRS Publication 510 announces that a method *will* be established via the income tax

return, but that method is not available to the literally millions within the proposed class who

do not file income tax returns.

As discussed above, there are well-established jurisdictional avenues to this Court

outside that provided by § 7422(a). Plaintiffs here do not need § 7422(a), and, because it

never has been implemented with respect to them, it certainly cannot block adjudication of

this case by this Court.

**B.      The Limitation Period in 26 U.S.C. § 6511(a) Cannot be Effective Until
         a Claim Procedure for Plaintiffs is Implemented Pursuant to § 7422.**

Under § 7422(a), a filing of claim for refund is conditioned upon two factors: (1)

"according to the provisions of law in that regard," which includes § 6511, and (2) "the

regulations of the Secretary established in pursuance thereof." Section 6511(a) requires the

claim referenced in § 7422(a) to be filed, *inter alia*, "within 3 years from the time the time the return was filed." As shown in Section IV, A, *supra*, the IRS has not implemented the first condition of § 7422(a) so that the Plaintiffs do not have a process to file a claim for a refund. As such, the application of the three year limitation period in §6511(a) cannot be effective as to Plaintiffs' entitlement to refunds until the administrative procedure authorized by § 7422 has been implemented. Otherwise, Plaintiffs will be deprived of their property without due process. *See* § IV, D, *infra*.

**C.    Assuming § 7422 Applies, Plaintiffs Have Satisfied § 7422 in This Context.**

Out of an abundance of caution and with the aid of counsel, some Plaintiffs did make an administrative filing to protect their rights, and those of similarly situated taxpayers. Between February 6 and April 3, 2006 (before filing a lawsuit), Plaintiffs Krasney, Sachuk, Hrusovsky, Markowitz, Denenberg, and Catering By Design, Inc. filed for refunds on Form 8849 with an accompanying Schedule 6. *See* Complaint, ¶ 23. Each of these filings was expressly made on behalf of the claimant and all similarly situated taxpayers.[31] *See id.*, Ex. 2-7 (copies of each submission). Each stated "even if a refund procedure were available…the imposition of the tax would still amount to the deprivation of property without due process of law because for all but a small number of taxpayers the refunds are smaller than the cost to file an individual claim for a refund." Each claim also explicitly quoted and referenced § 4251 and federal case law which held that the application of the tax to telephone

---

[31] The Government asserts, based on *Krause v. United States*, 1996 U.S. Dist. LEXIS 19933 (W.D. Mich. Sept. 18, 1996) that Mr. Krasney does not have standing to make a claim on behalf of other taxpayers. Defendant's reliance on *Krause* is misplaced, as in that case, the Western District of Michigan held that an individual taxpayer lacked standing to seek a refund of federal employment withholding taxes that were paid by the taxpayer, but that were incurred by a third party. *Id.* at *2-3. The taxpayer in that case asserted that he was personally entitled to the refund, and the opinion does not suggest that the taxpayer filed a refund claim on behalf of himself and on behalf of the third party. *Id.* at *3. The court also pointed out that the individual taxpayer calculated the precise refund amount to which he claimed to be entitled. *Id.* at *2.

charges based solely on elapsed time was illegal. On April 10, 2006, the IRS sent Mr. Krasney a letter refusing to process the class refund claim. *See id.,* Ex. 8 (IRS letter).

Similarly, Plaintiff NCS Companies filed Form 8849 on April 6, 2006 which included a comprehensive breakdown of the FET paid and over 400 pages of phone bill documentation. *See id.,* ¶ 24 and Ex. 9 (NCS submission, excluding the 400 pages of phone bills). Interestingly, NCS did not cite the cases the other plaintiffs had in their submissions, and, when the IRS refused to process NCS's refund claim on or around May 8, 2006, the IRS also requested additional information, including evidence of the exact amounts and dates that each tax payment was made to the phone companies, a breakdown of the requested refunds by quarter, and the "specific IRS Code sections, revenue rulings, and/or court cases" that supported the refund claim. *See id.,* ¶ 24 and Ex. 10 (IRS letter).

These efforts by any reasonable measure must be taken as fulfilling any duty the Plaintiffs had to exhaust some administrative refund process.[32] After all, "[t]he requirement for filing a proper refund claim 'is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination.'" *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed.Cir. 2006) (quotation and citation omitted). The material that Plaintiffs submitted met this standard. What more the Plaintiffs could have done is not explained by the Government. Even after submitting voluminous documentation, the IRS wanted yet more information from Plaintiff NCS. And the documentation that NCS did submit was far in excess of anything the other individual Plaintiffs even had.

---

[32] Certainly, this Court has jurisdiction to decide this question after the IRS' denials. *See* 26 U.S.C. § 6532(a)(1).

The real issue here is not the IRS's ostensible demand for more detail, but, rather, the IRS's attempt to create, under the guise of § 7422(a), a jurisdictional obstacle to this case proceeding on behalf of "all other similarly situated taxpayers," since a class claim will include neither an extreme detailed level of information about those "similarly situated taxpayers" nor their individually signified consents provided in advance.

In refusing to process the claim Mr. Krasney submitted, the IRS objected to his claim for a return of the illegally exacted fund in the aggregate, on behalf of the class of similarly situated taxpayers. *See,* "Attachment to Letter," Complaint, Ex. 8. The IRS contended that Mr. Krasney had to submit a power of attorney (IRS Form 2848) for, and signed by, each taxpayer whose money he was trying to recover, *and* a separate claim still had to be submitted for each of those taxpayers. *Id.* But from such paperwork requirements the Government cannot derive a jurisdictional bar to this case via § 7422(a), for such paperwork makes no sense in the special context of the FET as a "collected excise" tax operated and recorded at every level only in the aggregate. The Government cites no authority that purports to preclude aggregate claims for FET as contemplated by the class here. On the contrary, the FET has traditionally proceeded by aggregate assessment (carriers calculating taxes), aggregate collection (carriers billing and collecting), aggregate information reporting (Form 720 covering large numbers of individuals), aggregate adjustment thereafter (Form 720X), aggregate record maintenance (carrier computers), and aggregate accounting. The aggregate system under which the FET has been assessed, collected, reported, adjusted, and so on, has not required individualized expressions such as the Government would demand now. For example, if one of the phone carriers belatedly realized that it had over-billed some service, it has never been the case that the IRS would

contend that § 7422 requires one million individual consents to adjust this, nor that § 7422 precludes aggregate adjustment – let alone that each of those one million people must become an income tax filer, their low income notwithstanding, for refunds. Rather, an aggregate claim would be filed on a Form 720X, and the IRS would deem this fully compliant with § 7422. *See* Rev. Rul. 70-13, 1970 WL 21152 (IRS RRU).

The aggregate nature of parallel excise taxes has defeated the IRS's past efforts to bar meaningful redress by construing statutory requirements meant to benefit individuals as erecting an individualized consent barrier. In *IBM v. United States*, 343 F.2d 914 (Ct.Cl. 1965), *cert. denied*, 382 U.S. 1028 (1966), IBM's suit for a sales tax refund met the argument for dismissal that it had not provided individual customer consents as part of its pre-filing administrative claim. The IRS lost. "There is no hint in the phrasing of the statute that Congress wished the assurance [of individualized customer consent] to be firmly established before suit was or could be brought; and there are good reasons why that requirement should not be superimposed." *Id.* at 918. "[T]here are upwards of 3,000 separate customers," so, it was not "sensible to demand that [the plaintiff] undertake the burden of gathering all the consents before the tribunal has even had a chance to decide" the merits. *Id.*

Certainly an aggregated refund claim in the context of this excise tax does not offend the requirements of § 7422(a).

> The purpose of jurisdictional requirements imposed by regulation under section 7422(a) is "to prevent surprise and to give adequate notice" to the IRS. . . . If a claim fairly apprises the [IRS] of the ground on which recovery is sought, then the claim is adequate for the purposes of bringing suit under section 7422(a).

*Chicago Milwaukee Corp. v. United States,* 40 F.3d 373, 375 (Fed.Cir. 1994) (internal citations omitted). In *Chicago Milwaukee Corp.,* a railroad sued for refunds of employment

excise tax overpayments paid by 8,000 ex-employees. The Government moved to dismiss for the company's failure to submit individual consents for each former employee to its suit on their behalf (or a certification that the company had already repaid the former employees), which the Government asserted was a jurisdictional prerequisite under § 7422(a). The Federal Circuit rejected the Government's argument, observing that "certification of repayment or consent plays no part in 'fairly appris[ing] the [IRS] of the ground on which recovery is sought." *Id.* The Court went on, "[r]equiring certification of repayment or consent when a taxpayer files [an aggregate] refund claim would impose a heavy burden, discouraging pursuit of an uncertain refund. This court detects no justification for imposing such a burden." *Id.* at 376.

Plaintiffs' submissions gave the IRS more than adequate notice of the "ground on which recovery is sought," and the Government's insistence that § 7422(a) is any bar to this action at this stage is not credible. The Government not only knows the "ground on which recovery is sought," with Notice 2006-50, the IRS has conceded it. The FET was for years illegally collected and now the fund of those collections must be returned. Given the aggregate basis on which the FET is collected and information concerning those collections is recorded, an aggregated, class-wide remedy for returning that fund is not only appropriate, it is probably the most workable and fair approach available.

**D.    To Require Any More Rigorous Application of § 7422 in This Context Would Render That Statute Unconstitutional as Applied.**

If § 7422(a) and § 6511(a) are held to apply to this case, and § 7422 is held to require more than what have Plaintiffs have done for their claims and on behalf of the proposed class, this Court would be imposing an impossible burden on Plaintiffs and effectively guaranteeing that the Government will never have to return most of the illegally

exacted fund.  Millions of individual taxpayers and small entities simply have neither the documentation nor the resources to do more.  *See* W.S.J. Article, *supra*.  Together, the telecommunications carriers and the IRS have the records to reasonably return at least four years of collections that are in that fund, and, with such records, can devise methods to approximate the refunds required for the earlier period.  This can be done with a minimum burden on those who are entitled to this money.

By defeating the right of so many to a return of their money in this way, such an application of § 7422(a) would be unconstitutional.  As the Supreme Court underscored when confronting a different condition imposed on the return of an invalid tax:

> When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled.

*Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 352 (1937).  *See also Gold Medal Foods v. Landy,* 12 F.Supp. 406, 412 (D.Minn. 1935) ("If defendant's argument is sound that Congress . . . intended to withhold equity jurisdiction, and if Congress has failed to afford the taxpayer an adequate remedy at law, then such taxpayer is deprived of any and all right to come into any court in order to obtain redress from the exaction of an alleged unconstitutional tax.  This would be an intolerable situation and contrary to the rights secured to the citizen by the Constitution.").[33]

---

[33] In *Thorpe v. Thorpe,* 364 F.2d 692, 695 (D.C. Cir 1966), the D.C. Circuit has echoed this principle in a different context:

> If appellant's claim that he simply is unable to comply with the condition imposed is true, serious questions are raised, questions having an aura of denial of due process of law.  *See Societe Internationale, etc. v. Rogers*, 357 U.S. 197, 209-210 . . . (1958), where the Supreme Court stated, in another context, that imposition of an 'impossible' condition of a litigant's right to a trial on the merits raises constitutional difficulties.

At bottom, if § 7422 even applies to this case – which it does not – the jurisdictional prerequisites of that statute must be construed as having been satisfied by the claims submitted by Plaintiffs. The Government cannot hide behind the statute of limitations defense in § 6511(a) because the procedures set forth in § 7422(a) did not provide Plaintiffs with a mechanism to duly file a claim for a refund in the first place. It would compound the due process violation to permit the Government not only to retain this fund without providing Plaintiffs with a legally adequate mechanism to have it returned, but to claim that, by not following these deficient procedures, Plaintiffs are time barred from having these monies returned.

Moreover, given the limited role of individual taxpayers in the aggregated excise tax system, they can hardly be held to have been aware of the wrong inflicted by the Government's illegal FET exaction (or have the means to assemble essential records) within the tight time constraints of § 6511(a). As this Court pointed out in *Littlewolf v. Hodel*, 681 F.Supp. 929, 939 n.5 (D.D.C. 1988), "[S]tatutes of limitations that are unreasonably short and 'designed to defeat the remedy' are unconstitutional." The discretion of the legislature to set such limitations ends when "'the time allowed is manifestly so insufficient that the statute becomes a denial of justice.'" *Id.* at 939 (quoting *Wilson v. Iseminger*, 185 U.S. 55, 63 (1902)). The context is key: "As long as the statute is reasonable under all the circumstances – and, particularly, in light of the situation … that impelled enactment of the law – the time bar comports with concepts of due process." *Id.*[34] Thus, when the First Circuit upheld the

---

[34] In support of that proposition, the *Littlewolf* Court cited *Texaco v. Short*, 454 U.S. 516, 528 (1982); *Atchafalaya Land Co. v. F.B. Williams Cypress Co.*, 258 U.S. 190, 197 (1922); *Wilson*, 185 U.S. at 62-63; *Saranac Land & Timber Co. v. Comptroller of New York*, 177 U.S. 318, 323-24 (1900); *McGahey v. Virginia*, 135 U.S. 662, 706-07 (1890).

limitations of § 6511 and declined to apply equitable tolling, it justified that ruling in these terms:

> A ... state of knowledge respecting the right to a refund can be attributed to individual calendar year taxpayers who file income tax returns. The return contains all the information necessary to verify that there has been an overpayment of taxes and that a refund is due. Accordingly, the three-year period in section 6511(a) gives the taxpayer ample time to file a refund claim, and there is no need to toll that period.

*Oropallo v. United States,* 994 F.2d 25, 30 (1st Cir. 1993). *Excise* taxpayers, in contrast, do not have such knowledge, and applying § 6511 to them would violate due process.[35]

## CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss should be denied.

DATED: August 3, 2006                    Respectfully submitted,


Jonathan W. Cuneo, Esquire (DC Bar# 939389)
Charles J. LaDuca, Esquire  (DC Bar# 476134)
William H. Anderson, Esquire
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960

---

[35] The normal six-year statute of limitations, 28 U.S.C. § 2401, under which the action accrues when the plaintiff knew or reasonably should have discovered the wrong at issue, should apply here.

Nicholas E. Chimicles (pro hac vice)
Benjamin F. Johns (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
(610) 642-8500

Henry D. Levine (DC Bar # 952770)
Stephen J. Rosen (DC Bar # 441942)
LEVINE, BLASZAK, BLOCK &
    BOOTHBY, LLC
2001 L Street, N.W., Suite 900
Washington, D.C. 20036
(202) 857-2540

Christopher Weld, Jr. (pro hac vice)
Kevin T. Peters (pro hac vice)
TODD & WELD LLP
28 State Street
Boston, Massachusetts 02109
(617) 720-2626

Andrew N. Friedman (DC Bar # 375595)
Victoria S. Nugent (DC Bar # 470800)
COHEN, MILSTEIN, HAUSFELD &
    TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
(202) 408-4600

David L. Wales (DC Bar # 417440)
Mark C. Rifkin
Martin Restituyo
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

Robert J. Cynkar (DC Bar # 957845)
EGAN, FITZPATRICK, MALSCH &
    CYNKAR, PLLC
8330 Boone Boulevard, Suite 340
Vienna, Virginia 22182
(703) 891-4066

Prof. Charles Tiefer (DC Bar # 330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, Maryland 20815
(301) 951-4239

R. Montgomery Donaldson
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware 19801
(302) 504-7800

Stephen A. Madva
Clifford Scott Meyer
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-1500