# EXHIBIT A



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

Stephen J. Rosen
c/o Levine, Blaszak, Block & Boothby, LLP
2001 L Street NW, Suite 900
Washington, DC 20036

Case No: 2002-0108
Contact Person: Mr. J. Cardonick
Badge No: 50-01108
Telephone No: 202-622-3668
Date: NOV 1 3 2001

Dear Mr. Rosen:

This is in response to your Freedom of Information Act (FOIA) request dated October 9, 2001, for the Appeals Settlement Guideline "Excise tax on long distance telephone service provided by virtual private networks..."

Please accept my sincere apology for the inadvertent delay in reviewing and responding to your request and for any inconvenience it may have caused.

Mr. Rosen, I have enclosed a copy of the Appeals Settlement Guideline you requested.

I hope this information will prove to be of assistance to you.

Sincerely,

Stephen Webb
Acting Headquarters Disclosure Manager
CL:GLD:A2:HQD
Badge No: 84-00721

Enclosure
    As stated

# APPEALS COORDINATED ISSUE SETTLEMENT GUIDELINE
## EXCISE TAX SPECIALTY AREA

### EXCISE TAX ON VIRTUAL PRIVATE NETWORKS

**STATEMENT OF ISSUES**

1. Whether amounts paid for virtual private network (VPN) service are exempt from the communications excise tax imposed by §4251 of the Internal Revenue Code because VPN service is private communication service within the meaning of §4252(d).

2. Whether amounts paid for long distance service for which the charge is based on a flat per-minute rate that does not vary by distance are subject to the tax imposed by §4251 as toll telephone service defined in §4252(b)(1).

**EXAMINATION DIVISION POSITION**

Under the plain meaning of the statute and the legislative history and intent, VPN service is not considered private communication service, but rather constitutes toll telephone service subject to the excise tax under §4251. The National Office agrees with this position and has issued several Technical Advice Memoranda (TAMs) and private letter rulings (LTRs) to this effect. See TAMs 9543002 and 9524004, and LTRs 9108002 and 8419087.

When toll telephone service is charged based on duration only and not distance, the overall design of the system is for the delivery of long distance telephone service and should be taxed as such. The above-cited TAMs and LTRs, Rev. Rul. 79-404, 1979-2 C.B. 382, and the legislative history and intent behind the statute support this result. In addition, there is ample precedent to look beyond the words of the enabling statute where the congressional intent would be set aside or frustrated by a literal application of the statute. See United States v. American Trucking Association, Inc., 310 U.S. 534, 543-44 (1940); and Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 51-52 (1955). Thus, VPN service that is charged based on duration only, should be treated as toll telephone service, subject to the §4251 excise tax.

**INDUSTRY/TAXPAYER POSITION**

The taxpayer concludes that - 1) VPN service is private communication service under §4252(d), and 2) since VPN service is private communication service and the private communication service exemption is a stand-alone exemption, VPN service is tax exempt even if it is toll telephone service within the meaning of §4252(b). In support of these assertions, taxpayer argues that VPN service is the technological successor to PBX exchanges, which have long been held to constitute private communication under §4252(d). In addition, Rev. Rul. 79-405, 1977-2 C.B. 383, is authority for the proposition that long distance service that constitutes

-1-

private communication service is exempt from the excise tax. Further, based on the wording of the statute, the private communication service exemption was designed to be a stand-alone exemption. Therefore, irrespective of whether VPN service constitutes toll or local service, it is exempt as private communication service.

With regard to the second issue, taxpayer argues that since at least some charges are based solely on duration without regard to distance, the statute is inapplicable as it defines toll telephone service as communication which is charged based on duration and distance. Thus, the excise tax is not applicable as the strict terms of the taxing statute are not met.

## DISCUSSION

### Facts

Numerous VPN service subscribers have filed claims for refund of the §4251 tax that long distance providers collected from them and remitted to the IRS as required by §4291. VPN service subscribers are typically large corporations; however, the second issue also applies to most non-VPN service subscribers.

The claims often contain unsubstantiated estimates of tax paid that bundle several different services in a single claim. For example, some taxpayers have filed claims that lump together all §4251 taxes paid including amounts paid for local telephone service, long distance service charged by duration and distance, and long distance service charged by duration only. Taxpayers must substantiate the amount of the claim for each type of service separately. These break-downs are important since the hazards on a particular issue will vary based on the type of service and how the service is charged by the carrier, as discussed below.

VPN service furnishes subscribers with long distance telephone service by use of a long distance carrier's publicly switched network in conjunction with special (dedicated) access that connects to the carrier's long distance lines; switched access is used when dedicated lines are unavailable. VPN service typically uses software that provides alternate call routing patterns to and from a subscriber's premises and specialized routing functions. Generally, the rate for VPN service varies with whether a call uses dedicated or switched access.

During the past 15 years most carriers have placed less emphasis on distance as a factor in charging for long distance telephone calls generally, including for VPN service. Whereas at the time §4252(b)(1) was enacted, the charge for most long distance calls depended on the distance of the call, with a higher charge for more distant calls, most carriers now offer a single per-minute rate for interstate calls within the 48 contiguous states and different per-minute rates for intrastate, Alaska/Hawaii, and/or international calls. These rates are offered to all long distance subscribers.

### Issue 1- Law & Analysis

-2-

ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY

Section 4251(a)(1) imposes an excise tax on amounts paid for certain communications services. Section 4251(a)(2) provides that the tax shall be paid by the person paying for taxable communications services. Section 4251(b)(1) provides that the term communications services means (A) local telephone service, (B) toll telephone service, and (C) teletypewriter exchange service.

Section 4252(a) defines "local telephone service" as (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and (2) any facility or service provided in connection with such service. The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service."

Section 4252(b) defines "toll telephone service" as (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid in the United States, and (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with the service is located.

Section 4252(d) defines "private communication service" as (1) a service that entitles the subscriber to exclusive or priority use to any communications channel or group of channels, or the use of an intercommunications system for the subscriber's stations, regardless of whether such channel, groups of channels, or intercommunication system may be connected through switching with a local or toll telephone service or a teletypewriter exchange service, (2) switching capacity, extension lines, and stations, or other associated services which are provided in connection with, and are necessary or unique to the use of, channels or systems described in (1), and (3) the channel mileage that connects a telephone station located outside a local telephone system area with a central office in such telephone system. Private communication service does not include any communications service unless a <u>separate charge</u> is made for such service.

In Rev. Rul. 79-405, 1977-2 C.B. 383, the IRS considered the applicability of the §4251 tax to three types of long-distance service, each of which provided customized service among 15 cities. The carrier owned a network of microwave towers and terminals in each of the 15 cities. In long-distance service type (1), the carrier provided a customer having business locations in two cities with an exclusive, private communication channel between those two locations. The service was provided by means of a microwave channel that was dedicated to the customer's exclusive use.

The ruling holds that when service (1) connects two individual telephones in different cities that it does not come within the definition of local telephone service, as the service does not provide

-3-

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**

local telephone service. However, the ruling holds that when Service (1) is used to connect with a switchboard in a second city, the customer is provided with local telephone service, but that since Service (1) consists of a private line that joins two stations belonging to a single customer, the service provides the customer with the use of an intercommunication system within the meaning of §4252(d)(1)(B), and, as private communication service, is excluded from the definition of local telephone service because of the private communication service exception provided in §4252(a).

The ruling further holds that service (1) is not within the scope of §4252(b)(1) because the charge for the service is a flat monthly rate that does not vary with the elapsed transmission time of each call, and is not within the scope of §4252(b)(2) because the service does not by itself provide the customer with the privilege of an unlimited number of telephonic communications to or from a substantial portion of the persons having telephone stations in a specified area that is outside the local telephone system area in which the customer's station is located.

In long-distance service type (2), the carrier provided a customer that had stations in each of two cities with a direct connection between those stations using the carrier's facilities, with no switchboard involved. However, the customer did not have a channel dedicated to its exclusive use.

The ruling holds that the service is not local telephone service because it does not provide a customer with access to a local telephone system. It further holds that because the distance of each individual communication using the service did not vary because the service only connected a customer's stations located in the two cities, the service did not vary in amount with the distance of each individual communication as is required by §4252(b)(1). The ruling further holds that as the service did not provide the customer's stations with telephonic communications to or from all or a substantial portion of the telephones stations in an area outside the local calling area of the customer's station, it is not described in §4252(b)(2).

In long-distance service type (3), the carrier provided a customer with long distance access between the cities served by the provider. The customer, upon dialing a local access number would hear a dial tone and could then dial a long distance number using the long distance provider's microwave channels. The customer would pay the local telephone company for the local call in the sending city to gain access to the long distance provider's facilities, and paid the carrier a monthly access charge, plus a charge that varies with the length, distance, and number of calls made. A minimum usage charge applied against which calls were credited.

The ruling holds that the service is toll telephone service within the meaning of §4252(b)(1) because the service is a long distance service for which the charge varies with the distance and time of each individual communication.

The taxpayer concludes that- 1) VPN service is private communication under §4252(d), and 2) since VPN service is private communication and the private communication exemption is a

-4-

stand-alone exemption, VPN service is tax exempt even if it qualifies as toll telephone service within the meaning of §4252(b).

The following arguments are advanced in support of these conclusions: Section 4252 defines four services, local telephone service, toll telephone service, teletypewriter exchange service, and private communication service. Section 4251 provides that only the first three of these services are taxed. Accordingly, the taxpayer argues that if VPN service falls within the definition of private communication service provided in §4252(d), it is exempt from taxation under §4251, even if the service is also described in §4252(b) as toll telephone service.

In support of its argument that VPN service is described in §4252(d) the taxpayer emphasizes that VPN service is the technological successor to a PBX, and that characteristics set out in the facts above make VPN service a private communication service that gives subscribers priority use to several channels, and the use of an intercommunication system for its stations.

In support of its argument that toll telephone service that is described in §4252(d) is exempt notwithstanding that it is also described in §4252(b), the taxpayer emphasizes that the holding in services (1) and (2) in Rev. Rul. 79-405 exempted from taxation personalized, private communication service that was long distance telephone service, and that VPN service is the technological successor to the microwave systems found to be exempt in Rev. Rul. 79-405.

The taxpayer further argues that §4252(a) references private communication service to make explicit that private communication service is not taxable as local telephone, but that §4252(b) does not provide an exclusion for private communication service because at the time the communications excise laws were enacted, private communication service was limited to local areas. Thus, §4252(d) contemplates an interrelationship between private communication service and toll telephone service.

Finally, taxpayer argues that the absence of language in §4251 explicitly including private communication in the scope of the tax means that it is excluded.

The IRS finds the above arguments without merit. The argument that private communication is always tax exempt based on the absence of that term in §4251 is valid only to the extent the definitions of local and toll telephone service standing alone do not include private communication service. The definition of local telephone service in §4252(a) is broad enough to include any "intercom" or PBX system that has access to a local telephone system, but for the specific exclusion for private communication service explicitly contained therein. Also, the definition of toll telephone service includes any telephonic quality communication for which there is a toll charge that varies with time and distance. This would include communications limited to a subscriber's own stations. Thus, the lack of any mention of private communication service in §4251 does not, in and of itself, preclude taxation. Only the specific exclusion of private communication service from the definition of local telephone service provides any relief from taxation of amounts paid for such service.

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**

If we analyze the statute itself, the last sentence in §4252(a), which section defines "local telephone service", is not present in §4252(b), which section defines "toll telephone service." The last sentence provides that "local telephone service" is not "private communication service" even if the private communication system has access to a local telephone system (like the use of switches, lines, stations, etc. of the local telephone system). Put another way, local telephone service for private communication service is exempt as long as there are separate charges for it.

Furthermore, it should be emphasized that "private communication service" is not even set out as a concept in §4251, the taxing section. This shows again that its application is peculiar to "local telephone service."

Thus, based on the clear wording of the statute, a strong argument can be presented that Congress did intend "toll telephone service" to include "private communication service" even though a private communication service may have the right of access to the system of a long distance company. Consequently, all "toll telephone service", private or otherwise, is subject to the excise tax.

Further, the plain language of the statute is buttressed by the legislative history, which indicates that the exclusion for private communication service was intended to equalize tax treatment of different types of intrapremise or single subscriber communications services. Prior to 1966, private communication systems such as private lines and intercommunication systems set up for single business subscribers were within the definition of "general telephone service" if the lines had access to the local exchange system under former §4252(a)(1), and therefore were subject to the communications tax. However, where the same private communication services were obtained with privately owned equipment, such services escaped taxation, thus putting the telephone companies at a severe competitive disadvantage.

The legislative history indicates that the purpose of the statutory amendment creating §4252(d) was to remedy the inequality in the taxation of local telephone service. See H.R. Rep. No. 433, 89th Cong., 1st Sess. 30-31 (1965), 1965-2 C.B. 643, 666; S. Rep. No. 324, 89th Cong. 1st Sess. 36 (1965), 1965-2 C.B. 676, 704. Thus, the private communication service definition enacted by the 1965 amendment to the communications tax that created §4252(d) serves as an adjunct to the definition of local telephone service. Moreover, the taxpayer's suggestion that the four definitions contained in §4252 are mutually exclusive belies the fact that but for the last sentence of §4252(a)(1), local telephone service could include both toll telephone service and private communication service.

It is also noteworthy that the legislative history goes on to describe the tax exemption under §4252(d) as an exemption from the "tax on local telephone service for private communication service." See S. Rep. No. 324, 89th Cong. 1st Sess. 36 (1965), supra. Thus, private communication service was viewed as part of the local telephone service and the statutory definition for private communication service under §4252(d) only relates to local telephone service. The exemption for private communication is therefore not a stand-alone exemption, but must be viewed in the context of the local telephone service definition.

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**

Finally, it should be noted that VPN service is substantially different from Service (1) described in Rev. Rul. 79-405, 1979-2 C.B. 383. First, the charge for Service (1) did not vary with the elapsed transmission time of each call as is required by §4252(b)(1). The charge for the VPN service varies with the elapsed transmission time of each call. Second, Service (1) did not, by itself, emerge into the public network, as does the VPN service. Third, the customers in Service (1) were provided an exclusive, private communication channel between the customers' locations, which the VPN service does not provide. Moreover, VPN service is different from Service (2) in Rev. Rul. 79-405 because Service (2) only provided access between two fixed points and did not emerge into the public telephone network as does the VPN service. Thus, the argument that Rev. Rul. 79-405 is authority for the conclusion that VPN service is private communication under §4252(d), or that VPN service is tax exempt notwithstanding that it is described within §4252(b) as toll telephone service, is erroneous.

### Issue 2- Law & Analysis

Section 4252(b) defines toll telephone service as a service for which there is a charge based on the distance and duration of the telephone call. Therefore, taxpayer argues that since at least a portion of the charge for VPN service is made solely on the basis of the duration of the telephone call without regard to the distance, the service cannot be toll telephone service according to the literal wording of the statute. Thus, the excise tax is inapplicable.

The legislative history of §4252(b) indicates that, in enacting the Excise Tax Reduction Act of 1965, Congress intended to update and modify the definitions of local telephone service, toll telephone service, and teletypewriter exchange service, to "make it clear that it is the service as such which is being taxed..." H.R. Rep. No. 433, 89th Cong., 1st Sess. 30, 1965-2 C.B. 643, 665; and S. Rep. No. 324, 89th Cong., 1st Sess. 35, 1965-2 C.B. 676, 703.

It is a well-established rule of statutory construction that a statute may be given an interpretation other than that which follows from its literal language if such interpretation is required in order to comport with the legislative intent. It has often been stated that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute.

The Supreme Court has stated: "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole, this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which

ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY

forbids its use, however clear the words may appear on superficial examination." United States v. American Trucking Association, Inc., 310 U.S. 534, 543-44 (1940).

See also Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 51-52 (1955), a tax case in which the Supreme Court departed from the literal wording of a statute. The Court did so because to hold otherwise would have been "to defeat rather than further the purpose of Congress." 350 U.S. at 51, 52.

Rev. Rul. 79-404, 1979-2 C.B. 382, holds that a communication service the charge for which varies only by elapsed transmission time constitutes toll telephone service within the meaning of § 4252(b)(1) notwithstanding that the charge for the service does not vary by distance. In that ruling the IRS considered the application of the tax to telephone messages that are relayed by satellite between offshore radio telephone stations outside the United States and landline stations in the United States. The charge for the service varies only with elapsed transmission time. The ruling states that prior to the amendment of § 4252 by § 302 of the Excise Tax Reduction Act of 1965 one of the services taxed was "toll telephone service," which was defined, in part, as a telephone or radio telephone message or conversation for which (1) there was a toll charge, and (2) the charge was paid within the United States. Further, the legislative history of the act indicates that in amending § 4252 the Congress intended to exempt certain private communication services from the tax on local telephone service and repeal the tax on telegraph service and wire and equipment service, but there is no indication that the Congress intended to make changes in the types of toll telephone service subject to tax. See H.R. Rep. No. 89-433, at 30-31 (1965), 1965-2 C.B. 643, 666; S. Rep. No. 89-324, at 36 (1965), 1965-2 C.B. 676, 704.

When the National Office considered Rev. Rul. 79-404 prior to its publication, in G.C.M. 37273 (Sept. 27, 1977), it was stated as follows: "It is believed that the statutory description of toll charges merely reflects Congress' understanding of how long distance calls were charged for at the time the statute was enacted. It would be a plain frustration of legislative intent to treat the description of the toll charge as a condition for application of the tax, and thus allow a new type of telephone service, developed after enactment of the statute, to escape tax merely because of a new system of charging for the service."

Furthermore, precedent exists for the specific proposition that where a new type of communications service is developed subsequent to the latest amendment of the communications tax Code provisions, the service will not be regarded as non-taxable but rather will be taxed under the Code provision which it most closely resembles. When WATS telephone service was developed it was held taxable in G.C.M. 32799 (March 2, 1964), as general telephone service under the law then in effect. The statute was later amended, in 1965, to specifically impose tax on WATS service.

Thus, it can be argued that if one looks to the purpose and intent of the statute, VPN service should be classified as toll telephone service subject to the excise tax. On the other hand, it is noted that the viewpoints of the IRS have yet to be challenged in a court. A court could hold that

-8-

ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY

the literal interpretation of the statute should be adopted. See Fisher Flouring Mills Co. v. United States, 270 F.2d 27 (9th Cir. 1959), in which the court held, as to the transportation excise tax, that it was the responsibility of the Congress rather than the courts to remedy statutory loopholes, so that taxpayers were entitled to arrange the situs of payment for transportation so as to avoid tax. Based on this reasoning, a court could rule against the IRS since the literal wording of the statute favors the taxpayer and only Congress has the power to change the statute.

In the final analysis, based on the reasoning of Rev. Rul. 79-404 and the TAMs and LTRs discussed above, the issue hinges on congressional intent behind the 1965 amendments to §4252.
However, in the present case, the stronger argument is that the literal interpretation of the statute should be set aside if the intent of the statute would be frustrated under such interpretation. Especially here, where using the reasoning of the taxpayers, a new type of communication service that is otherwise within such taxable intent will be held to be nontaxable merely because the service itself is not within the literal language of the statute.

As noted above, the underlying intent of the statute amendment is to "tax the service." S. Rept. No. 324, 89th Cong., 1st Sess. 35, 1965-2 CB 676, 703. Furthermore, this intent is evidenced by a long line of legislative history, which evidences the conclusion that Congress has historically taxed long distance telephone service in whatever form.

It also is noteworthy that long distance carriers that charge a flat per minute rate based on duration usually limit the flat rate to domestic calling within the contiguous 48 states, with different rates for intrastate, Hawaii/Alaska and international calls. Arguably, it would appear that these services are in fact distance sensitive. Taxpayer contends that with regard to intrastate calls, the rates are higher than domestic interstate calls due to additional charges imposed by the local telephone carriers which are used to access intrastate systems. Thus, the distance factor is irrelevant since intrastate calls are, on average, of shorter distance than interstate calls and therefore should be priced at a lower rate if distance was the determinative factor in rate setting. Nevertheless, it is arguable that distance plays a role in rate determination.

Finally, regarding the tax treatment of prepaid telephone cards, Congress intended that the long distance telephone communication billed on these prepaid telephone cards would be subject to the excise tax, judging from the legislative history. See §4251(d) and its legislative history. The government argues that since the charges on these prepaid telephone cards are usually billed on a flat rate based on the minutes used without regard to distance, this is support for the finding that long distance telephone charges based on duration without regard to distance be subject to the excise tax. This implication is valid. However, the statute does not deal with the definition of toll telephone service. That definition remains unchanged and therefore the issue of whether VPN service meets that definition is still present.

**SETTLEMENT GUIDELINES**

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**

**Issue 1**

Based on the above authorities, taxpayers' argument that toll telephone service that meets the definition of private communication service is tax exempt under §4252(d) must fail. Since §4252(d) does not provide an exemption from tax, if VPN service qualifies as toll telephone service, the private communication service definition is irrelevant. Further, as noted above, VPN service is substantially different from the services described in Rev. Rul. 79-405. Therefore, VPN service should be considered taxable toll telephone service.

#
#
#
#
#
#
#

**Issue 2**

It is arguable that service for which a flat per-minute rate is charged does not meet the literal statutory definition of any taxable communication service. While it may come closest to fitting the definition of a toll telephone service, the fact that certain services are charged solely on the basis of duration of the call without regard to the distance lends support for taxpayer's position.

However, based on the legislative history, the purpose of the statute to tax long distance communication, that the service functions as long distance telephone service, and the rationale of the TAMs and LTRs issued by the IRS, service for which a flat per-minute rate is charged should be taxed as toll telephone service. There is ample authority to look beyond the specific wording of the statute to the intent of the drafters and purpose of the statute. If one looks to the purpose and intent of the statute, this service should be classified as toll telephone service subject to the excise tax.

It is clear in this situation that the intent of the current statute is to tax long distance service and this intent would be frustrated if service for which a flat per-minute rate is charged were allowed to circumvent the excise tax. VPN service is solely concerned with the delivery of an enhanced long distance service. To define this service as other than toll telephone service is inconsistent with statutory intent as expressed in the legislative history.

#
#
#
#
#

-10-

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**

#
#
#
#
#
#
#
#

#
#
#
#
#
#
#
#
#
#
#

Finally, as noted above, many of these claims are based on estimates and are not fully developed factually prior to arriving in Appeals. Therefore, the appeals officer should initially insure that the amounts claimed are actual amounts and have been fully verified. Undeveloped cases, including claims based on estimates, may have to be returned to Examination for further development. Secondly, the amounts claimed should have been broken down by type of service provided in accordance with this settlement guideline. For example, whether the telephone calls reflecting the amounts claimed represent local telephone service, long distance charged by duration and distance, or long distance charged by duration only. If the amounts claimed are properly detailed in this fashion, the factual basis for settlement or trial preparation will be established. In addition, the rate agreement should be obtained to verify whether the telephone charges are, in fact, based solely on the duration of the call, or duration and distance.

-11-

**ANY LINE MARKED WITH A # IS FOR OFFICIAL USE ONLY**