IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGINIA SLOAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 1:06-cv-00483 RMU |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN IMMEDIATE INITIAL STATUS CONFERENCE AND THE
SCHEDULING OF ORAL ARGUMENT AND/OR EVIDENTIARY HEARING**

**I. INTRODUCTION**

On August 25, 2006, Plaintiffs filed a Motion for an Immediate Initial Status Conference and the Scheduling of Oral Argument and/or Evidentiary Hearing (Entry No. 39) following the completion of briefing on the pending motions to dismiss (Entry No. 29), preliminary injunction (Entry No. 25), and for class certification (Entry No. 24) in this case.

Six days later, on August 31, the Internal Revenue Service ("IRS") issued an official "news release" (IR-2006-137) that addresses facts pertinent to this case and, critically, to the pending motions. In particular, the IRS finally has announced its proposed "safe harbor" default damages figures for individual taxpayers, but the figures and the process by which they are derived not only fail to cure but amplify substantive and procedural concerns raised in Plaintiffs motion papers.

The Plaintiffs also have become aware of a filing made on August 21 by the Government in a Federal Excise Tax case pending before the Honorable Lawrence J. Block in The United States Court of Federal Claims.[1] That filing also is pertinent to the motions pending in this case because in it, the Government takes positions with respect to the binding nature and applicability of Notice 2006-50 that are *directly contrary* to positions it has taken in its briefing before this Court. The Plaintiffs believe that the Government's jockeying implicates, among other things, the doctrine of judicial estoppel.

As discussed below, both of these developments further support and indeed underscore the importance of Plaintiffs' request for an immediate conference with the Court.

## II. RECENT DEVELOPMENTS

### A. The "Safe Harbor" Amounts Announced in IR-2006-137 Further Underscore the Need for an Immediate Hearing in the Instant Case.

On August 31, the IRS announced the so-called "safe harbor" amounts that individual taxpayers may use to claim a return of the improperly collected Federal Excise Tax on toll telephone service. IR-2006-137 (Exhibit A). As stated in Notice 2006-50 and reiterated in IR-2006-137 (but directly contrary to the IRS's recharacterization of the Notice in its briefing in this case), the IRS intends to make the 2006 Federal Income Tax Return the exclusive remedy for return of the illegal excise tax. *See* IRS Notice 2006-50 § 5(a)(2); IR-2006-137.

IR-2006-137 is yet another attempt on the part of the IRS to unilaterally dictate the scheme for return of this illegally collected fund without any transparency or accountability. The August 31 news release states that the "safe harbor" amount will be

---

[1] *Sitel Corporation v. United States*, Docket No. 1:06-cv-00021-LB.

between $30 and $60, to be determined exclusively by the number of exemptions that a household claims. *Id.* The announcement provides no supporting information regarding how the range and the facially arbitrary allocation criterion were derived. With respect to the range, the "safe harbor" amounts appear to stand on IRS Commissioner Mark W. Everson's view that, "[w]e believe the standard amounts are both reasonable and fair."

No less confounding is the use of *income* tax exemptions as the sole basis for determining the specific amount within the stated range a given taxpayer may claim for return of the illegal *excise* tax. Continuing past practice, IR-2006-137 offers no explanation for why or how exemptions correlate with phone usage. No data is offered to show that income tax exemptions are related to long distance phone usage. Should low-income senior citizens who live alone and rely upon the telephone as their sole means of keeping in touch with far away family and friends be penalized and shortchanged? Why not determine the "safe harbor" amount based on the number of phone lines in a given household, or whether a family has cellular phone service (a variable that, according to FCC figures, *does* correlate with toll usage)? In fact, the maximum "safe harbor" amount of $60 is *less* than the refund to which the average household would be entitled according to the latest data made available by the FCC, even before taking interest into account.[2]

The IRS plan regarding the return of this illegal fund was (again) designed behind closed doors and has been presented without explanation, evidence, or opportunity for

---

[2] In 2003, the last year for which data is available, the average (Wireline) long distance spend for all households was $10 per month, and the average wireless spend was $41. This corresponds to an average *wireline* long distance refund of $12, but an average *wireless* refund of $49, for a total average refund of $61. In other words, the primary factor affecting the accuracy of the "safe harbor" is not family size, but whether a household has a cellular phone. *See* Federal Communication Commission Industry Analysis and Technology Division Wireline Competition Bureau, *Trends in Telephone Service* Table 3.2 (2005).

comment from affected parties.[3] As underscored in Plaintiffs' motion for preliminary injunction, time is of the essence because implementation of the Government's damages allocation plan is imminent, and the Government has by design or by happenstance presented a moving target as it announces, changes, contradicts and re-articulates positions in response to this litigation.

Moreover, this plan continues to unlawfully limit the amount of the illegally exacted fund in the hands of the Government that will be returned, and to irrationally discriminate in favor of some taxpayers and against others. These developments illustrate that the Government is continuing to deliberately follow its unlawful course and is compounding the harmful impact of that course in an attempt to "create facts" that may limit the options of this Court. Paradoxically, the "safe harbor" amounts set out in IR-2006-137, though fundamentally flawed and unlawfully excluding whole classes of victims of the unlawful excise tax, also illustrate that methods can be devised to reasonably, though not perfectly, return the illegally exacted fund to the maximum number of people entitled to the return of their money, plus interest. Instead of recklessly and unilaterally pursuing such unlawful and unfair strategies to limit their duty to make amends, the Government should be working with Plaintiffs to use this case as the logical vehicle to establish such reasonable methods and definitively resolve the Government's admitted liability. At bottom, it is urgent that the Court initiate the proceedings we have requested. Providing Plaintiffs with a hearing would bring accountability and transparency to a process that has heretofore conspicuously lacked either, and would

---

[3] Implicitly acknowledging this, the IRS is now privately accepting comments through an e-mail address regarding how to simplify the refund process for businesses and non-profits. But individual taxpayers had no opportunity to provide any input in the process of determining the "safe harbor" amounts.

provide a venue in which an efficient approach to the Government's highly mutable position could be determined.

### B. The Department of Justice Has Recently Taken Contradictory Positions Regarding the Nature of the Remedy Contemplated by Notice 2006-50.

The Government has taken positions in an Excise Tax case pending before the Court of Federal Claims (the "*Sitel*" case) that are diametrically opposed to positions it has taken in this case. The disconnect is critical, as it concerns the very nature of the remedy envisioned by Notice 2006-50, which of course sits at the heart of the dispute in this case.

In its July 20, 2006, Memorandum in Opposition to Plaintiffs' Second Motion for Preliminary Injunction in *Sloan* (Entry No. 27-1), the Government – seeking to avoid scrutiny under applicable provisions of the Administrative Procedures Act – characterizes the Notice as a mere, non-binding policy statement:

> Notice 2006-50 does not purport to carry the force of law. Instead, it is a statement of the Service's policy which offers an alternate means of resolving potential claims for refund in light of recent court decisions. A taxpayer's rights and remedies are not restricted by this Notice.

*Id.* at 3. Similarly, in its Memorandum in Support of the Motion to Dismiss the Second Amended Complaint (Entry No. 29-2), the Government insists that the Notice merely "provided guidance regarding requests for credit or refund of excise taxes paid for services contained therein." *Id.* at 4. Thus, the Government's characterization of the Notice in this case suggests an optional, "alternative" method for resolving claims, that may be supplemented with the outrageously burdensome administrative refund pirouette and litigation that prompted this suit in the first place.

One month later, on August 21, in a brief filed in the Court of Federal Claims case, the Government took precisely the opposite position. *Sitel Corporation v. United States*, Docket No. 1:06-cv-00021-LB (Entry No. 20) (Exhibit B). In *Sitel*, the Government does an about-face and acknowledges that, consistent with its terms, Notice 2006-50 is an "administrative remedy" that makes "litigation unnecessary." *Id.* at 1. Thus, in *Sitel*, the Government acknowledges that the Notice is not merely a policy articulation that carries no force of law, but rather is a final administrative action that "establishes procedures for taxpayers to receive excise tax refunds for services billed after February 28, 2003 and before August 1, 2006." *Id.* at 2.

In light of the critical inconsistencies in the positions taken by the Government in two Federal courts of record, an immediate status conference is necessary so that the Government can clarify its position with respect to the nature of Notice 2006-50 to the parties, the Court, and taxpayers, or the Plaintiffs can benefit from the guidance of the Court as to how best to proceed in the absence of such clarification[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an immediate initial status conference, oral argument, and/or evidentiary hearing.
/
/
/
/
/
/

---

[4] Defendant is equitably barred from presenting such incompatible positions under the doctrine of judicial estoppel. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), *citing* 18 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."); 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

DATED: September 7, 2006.   CUNEO GILBERT & LADUCA, LLP


By: /s/ Jonathan W. Cuneo
Jonathan W. Cuneo, Esq. (DC Bar# 939389)
David Stanley, Esq. (DC Bar# 174318)
Charles J. LaDuca, Esq. (DC Bar# 476134)
William Anderson, Esq.
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960
Fax: 202-789-1813

Nicholas E. Chimicles, Esq. (pro hac vice)
Benjamin F. Johns, Esq. (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Henry D. Levine, Esq. (DC Bar# 952770)
Stephen J. Rosen, Esq. (DC Bar# 441942)
LEVINE, BLASZAK, BLOCK AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, DC 20036

Robert J. Cynkar, Esq. (DC Bar# 957845)
EGAN, FITZPATRICK, MALSCH &
CYNKAR, PLLC
8300 Boone Boulevard, Suite 340
Vienna, VA 22182

Christopher Weld, Jr., Esq. (pro hac vice)
Kevin Peters, Esq. (pro hac vice)
TODD & WELD, LLP
28 State Street
Boston, MA 02109

Professor Charles Tiefer (DC Bar# 330910)
University of Baltimore
3904 Woodbine Street
Chevy Chase, MD 20815

- 8 -

R. Montgomery Donaldson, Esq.
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
300 Delaware Avenue, Suite 750
Wilmington, Delaware 19801

Stephen A. Madva, Esq.
Clifford Scott Meyer, Esq.
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109-1030

Andrew N. Friedman, Esq. (DC Bar# 375595)
Victoria S. Nugent, Esq. (DC Bar# 470800)
COHEN, MILSTEIN, HAUSFELD &
TOLL, PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

David L. Wales, Esq.
Mark C. Rifkin, Esq.
Martin Restituyo, Esq.
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016