# EXHIBIT A

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

December 28, 2006

TO INVOLVED COUNSEL

Re:  MDL-1798 -- In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation

(See Attached Order)

Dear Counsel:

    I am enclosing a copy of a Panel transfer order filed today in the above-captioned matter.

    The Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425 (2001), and specifically, Rules 1.1, 7.4 and 7.5, refer to "tag-along" actions. Please familiarize yourself with these Rules for your future reference.  With regard to Rule 7.5, you need only provide this office with a copy of the complaint which you feel qualifies as a "tag-along" action and informally request that our "tag-along" procedures be utilized to transfer the action to the transferee district.  If you have any questions regarding procedures used by the Panel, please telephone this office.

                              Very truly,

                              Jeffery N. Lüthi
                              Clerk of the Panel

                        By  *Denise Morgan Stone*
                              Deputy Clerk

Enclosure

JPML Form 35

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 2 8 2006

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1798*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION*

> *Oscar Gurrola, et al. v. United States of America, et al.,* C.D. California, C.A. No. 2:06-3425
> *Virginia Sloan, et al. v. United States of America,* D. District of Columbia, C.A. No. 1:06-483
> *Neiland Cohen v. United States of America,* E.D. Wisconsin, C.A. No. 2:05-1237
> *Radioshack Corp. v. United States of America,* Fed. Cl., C.A. No. 1:06-28

*BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,[*] ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL[**]*

*TRANSFER ORDER*

This litigation currently consists of three district court actions pending in the Central District of California, the District of Columbia, and the Eastern District of Wisconsin, and one action pending in the Court of Federal Claims. Pursuant to 28 U.S.C. § 1407, plaintiff in the Eastern District of Wisconsin action has submitted a motion seeking centralization of these four actions in the Eastern District of Wisconsin for coordinated or consolidated pretrial proceedings.[1]  Plaintiffs in the Central District of California action support centralization, but in the District of District of Columbia or, alternatively, the Central District of California.  Opposed to centralization are plaintiffs in the District of District of Columbia and Court of Federal Claims actions, the United States, which is the sole defendant in three of the four actions and a co-defendant in the fourth, and various telecommunication companies that are sued only in the Central District of California action.  In the event the Panel orders transfer over their objections, then plaintiffs in the District of District of

---

[*] Judge Motz took no part in the disposition of this matter.

[**] In light of the fact that Judges Hodges, Jensen, Miller, Vratil, Hansen, and Scirica could be members of the putative class(es) in this litigation, each of them has filed with the Clerk of the Panel a formal renunciation of any claim that he or she might have as a putative class member, thereby removing any basis for disqualification on that ground.  Alternatively, to the extent that their disqualifications should be determined for any reason to survive the renunciations, the Panel invokes the "rule of necessity" in order to provide the forum created by the governing statute, 28 U.S.C. § 1407.  *See In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation,* 170 F.Supp.2d 1356, 1357-58 (J.P.M.L. 2001).

[1] The Section 1407 motion, as originally filed, also pertained to a second Court of Federal Claims action, *Rosenberg v. United States,* C.A. No. 1:05-1272.  Because that action was ordered dismissed without prejudice on August 3, 2006, the issue of its transfer is moot.

- 2 -

Columbia action support selection of that district as transferee district; and the responding telecommunication company defendants request that the claim against them in the Central District of California action be severed and simultaneously remanded under Section 1407 to that district.

On the basis of the papers filed and hearing session held, the Panel finds that the three district court actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the District of District of Columbia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In each of the three district court actions now before the Panel, plaintiffs seek, on behalf of a putative nationwide class, reimbursement of the communications excise tax on long-distance telephone service, where the charge for such service was not based on the distance of the telephone call. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to class certification matters), and conserve the resources of the parties, their counsel and the judiciary. The Panel is persuaded, however, that the single California state law claim brought against the telecommunication provider defendants in the Central District of California action is unique and therefore should not be included in the MDL-1798 proceedings at the present time.

The Panel has never reached the issue of whether Section 1407 authorizes transfer of a Court of Federal Claims action, and the Panel sees no need to resolve that issue here. As the moving plaintiff himself points out, prior experience suggests that voluntary cooperation between the Court of Federal Claims and the transferee court on matters of overlapping concern will result in a prompt and efficient disposition of the entire litigation without transfer of the Court of Federal Claims action. *See In re Western Electric Co., Inc. Semiconductor Patent Litigation*, 415 F.Supp. 378, 380 (J.P.M.L. 1976). We leave the degree and manner of such cooperation to the joint discretion of the respective judges. *See id.*

We conclude that the District of District of Columbia is an appropriate transferee forum in this docket for the following reasons: i) most, if not all, discovery will likely come from the federal Government and documents and witnesses are likely to be in or near the District of Columbia; ii) this vicinity provides an easily accessible location (and, in fact, is favored by the most geographically distant parties – plaintiffs in the Central District of California action); and iii) to the extent that the transferee judge and the Court of Federal Claims judge consider it desirable to coordinate discovery and other pretrial proceedings, such coordination is likely easier if all actions are in the District of Columbia.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the two actions in this litigation pending in the Central District of California and the Eastern District of Wisconsin are transferred to the District of District of Columbia and, with the consent of that court, assigned to the Honorable Ricardo M. Urbina for coordinated or consolidated pretrial proceedings with the action pending in that district.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407(a), the claim against the telecommunication defendants in the Central District of California action, alleging a violation of

- 3 -

California Business & Professions Code § 17200 *et seq.*, is simultaneously separated and remanded to that district.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1407, transfer is denied with respect to the action pending in the Court of Federal Claims.

FOR THE PANEL:

_____
Wm. Terrell Hodges
Chairman

# EXHIBIT B

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

Randy Hart, Esquire
200 Public Square
Suite 3300
Cleveland, OH 44113

Dear Mr. Hart:

We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan*.

Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:    Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT C

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

R. Gaylord Smith, Esquire
Lewis Brisbois Bisgaard & Smith
550 West C Street, Suite 800
San Diego, CA 92101

Dear Mr. Smith:

We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan.*

Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:   Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

   Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT D

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**<u>VIA UPS OVERNIGHT</u>**

Eric Kennedy, Esquire
Weisman, Kennedy & Berris Co., L.P.A.
1600 Midland Building
101 Prospect Avenue, West
Cleveland, OH 44115

Dear Mr. Kennedy:

  We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan*.

  Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

       Sincerely,

Nicholas E. Chimicles        Jonathan W. Cuneo

Enclosure

cc: Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

  Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT E

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

Mark Griffin, Esquire
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, OH 44022

Dear Mr. Griffin:

We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan.*

Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:    Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT F

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

Richard F. Scruggs, Esquire
Scruggs Law Firm
120A Courthouse Square
P O Box 1136
Oxford, MS 38655

Dear Mr. Scruggs:

We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan*.

Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:    Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT G

**Chimicles & Tikellis LLP**          **Cuneo Gilbert & LaDuca LLP**

One Haverford Centre                   507 C Street N.E.
361 West Lancaster Ave                 Washington D.C. 20002
Haverford, PA 19041                    Telephone: (202)789-3960
Telephone: (610) 542-8500              Telecopier: (202)789-1813
Telecopier: (610) 649-3633

January 3, 2007

**VIA UPS OVERNIGHT**

Michael D. Leffel, Esquire
Foley & Lardner LLP
Verex Plaza
150 E Gilman St
PO Box 1497
Madison, WI  53701-1497

Dear Mr. Leffel:

     We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America,*
Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of
Columbia before the Honorable Ricardo M. Urbina.  By order dated December 28, 2006,
the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan*
case.  We are writing to invite you to a meeting on Wednesday, January 10, 2007 at
Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington
D.C., beginning at 2:00 p.m., to discuss case management.  For your information, we
enclose a copy of the Case Management Order that has been previously entered by the
court in *Sloan.*

     Please confirm whether you will attend the meeting by contacting Benjamin Johns
at (610) 642-8500.

                  Sincerely,

Nicholas E. Chimicles          Jonathan W. Cuneo

Enclosure

cc:    Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket
      No. 2:05-cv-01237-RTR (E.D.Wis.)

      Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket
      No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT H

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

Michael Bowen, Esquire
Foley & Lardner LLP
777 E Wisconsin Ave
Milwaukee, WI 53202-5300

Dear Mr. Bowen:

We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan*.

Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:     Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

        Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT I

**Chimicles & Tikellis LLP**
One Haverford Centre
361 West Lancaster Ave
Haverford, PA 19041
Telephone: (610) 542-8500
Telecopier: (610) 649-3633

**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington D.C. 20002
Telephone: (202)789-3960
Telecopier: (202)789-1813

January 3, 2007

**VIA UPS OVERNIGHT**

Isaac J. Morris, Esquire
Foley & Lardner LLP
777 E Wisconsin Ave
Milwaukee, WI 53202-5300

Dear Mr. Morris:

    We are the co-lead counsel in *Virginia Sloan, et al. v. United States of America*, Docket No. 1:06-cv-00483-RMU, pending in the District Court for the District of Columbia before the Honorable Ricardo M. Urbina. By order dated December 28, 2006, the MDL Panel transferred your cases to be coordinated or consolidated with the *Sloan* case. We are writing to invite you to a meeting on Wednesday, January 10, 2007 at Levine, Blaszak, Block & Boothby, LLP at 2001 L. Street, NW, Suite 900 in Washington D.C., beginning at 2:00 p.m., to discuss case management. For your information, we enclose a copy of the Case Management Order that has been previously entered by the court in *Sloan.*

    Please confirm whether you will attend the meeting by contacting Benjamin Johns at (610) 642-8500.

Sincerely,

Nicholas E. Chimicles

Jonathan W. Cuneo

Enclosure

cc:    Counsel of Record for Plaintiff Neiland Cohen in *Cohen v. United States*, Docket No. 2:05-cv-01237-RTR (E.D.Wis.)

       Counsel of Record for Plaintiffs in *Oscar Gurrola, et al. v. United States*, Docket No. 2:06-cv-03425-SVW-E (C.D.Cal.)

# EXHIBIT J

Part III – Administrative, Procedural, and Miscellaneous

Communications Excise Tax; Toll Telephone Service

Notice 2007-11

SECTION 1. PURPOSE

This notice amplifies, clarifies, and modifies Notice 2006-50, 2006-25 I.R.B. 1141. That notice provides that the tax imposed by § 4251 of the Internal Revenue Code (relating to communications excise tax) does not apply to amounts paid for long distance service and bundled service (collectively, nontaxable service) and also provides that taxpayers may request a credit or refund of tax on nontaxable service that was billed to the taxpayer after February 28, 2003, and before August 1, 2006, only on their 2006 federal income tax returns. This notice--

(a) Provides the conditions under which individual taxpayers may use the standard amounts announced in IR-2006-137 (August 31, 2006) on their 2006 federal income tax returns to request a credit or refund of the excise tax paid on nontaxable service;

(b) Provides guidance regarding the Business and Nonprofit Estimation Method, announced in IR-2006-179 (November 16, 2006);

(c) Answers questions that have been raised since the issuance of Notice 2006-50; and

2

(d) Modifies the requirement for claims filed on or before May 25, 2006.

SECTION 2.  BACKGROUND

For the statutory background of the tax imposed by § 4251, see section 2 of Notice 2006-50.  When used in this notice, <u>local-only service</u>, <u>long distance service</u>, and <u>nontaxable service</u> have the meaning given to the terms in section 3 of Notice 2006-50. <u>Bundled service</u> has the meaning given to the term by section 5 of this notice.

SECTION 3.  STANDARD AMOUNT

(a) <u>Conditions to allowance of standard amount</u>.  A request for credit or refund of the standard amount, instead of the actual amount of federal communications excise tax paid for nontaxable service, may be made on a 2006 Form 1040 Series, U.S. Individual Income Tax Return, if any person filing the return, or any dependent listed on the return--

(1) Paid for any nontaxable service (other than for a prepaid telephone card or prepaid cellular telephone) that was billed to the taxpayer after February 28, 2003, and before August 1, 2006;

(2) Paid all federal communications excise taxes billed by their telecommunications provider after February 28, 2003, and before August 1, 2006;

(3) Has not received a credit or refund of these taxes from the telecommunications provider;

(4) Has not requested a credit or refund from the telecommunications provider or, if so requested, has withdrawn any such request; and

(5) Did not file any other claim or request for credit or refund with the IRS for the federal communications excise tax for a period after February 28, 2003.

3

(b) Calculating standard amounts--(1) In general--(i) 2006 Form 1040 Series (other than EZ).  To determine the standard amount, taxpayers must first determine the number of exemptions for which they are entitled on their 2006 Form 1040 Series federal income tax return (other than the 2006 Form 1040 EZ).  The Instructions to the 2006 Form 1040 Series federal income tax return and Publication 501, Exemptions, Standard Deduction, and Filing Information, provide guidance on determining the correct number of exemptions.  Once the individual determines the number of exemptions, the individual can select the appropriate standard amount based upon the number of those exemptions.  However, if a taxpayer's dependent has filed (or plans to file) a separate request for credit or refund of federal communications excise tax, that dependent is not included in the taxpayer's calculation of the number of exemptions for determining that taxpayer's standard amount.  Individuals should refer to the 2006 federal income tax return instructions to ensure that the standard amount is entered on the appropriate part of the return.

(ii) 2006 Form 1040 EZ.  On line 5, a taxpayer that checks the box for "you" is treated as having one exemption.  A taxpayer that checks the boxes for "you" and "spouse" is treated as having two exemptions.

(2) Amounts--(i) For each 2006 Form 1040 Series federal income tax return filed showing one exemption for purposes of determining the standard amount, the standard amount allowed on that return is $30.

(ii) For each 2006 Form 1040 Series federal income tax return filed showing two exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $40.

4

(iii) For each 2006 Form 1040 Series federal income tax return filed showing three exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $50.

(iv) For each 2006 Form 1040 Series federal income tax return filed showing four or more exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $60.

(c) Interest.  The standard amount represents both the overpayment of the federal communications excise tax paid on nontaxable service and the interest on that overpayment.

(d) Actual Amounts.  To request a credit or refund for the actual amount of federal communications excise tax paid, taxpayers must complete Form 8913, Credit for Federal Telephone Excise Tax Paid, and attach that form to their 2006 Form 1040 Series federal income tax return.

(e) Examples.  The following examples illustrate the application of this section.

Example 1.  A, an individual, files a joint return with Z, A's spouse.  A meets the conditions to allowance described in paragraph (a) of this section.  A used the 2006 federal income tax return instructions to determine that their correct number of exemptions is two.  A may request the credit or refund of the federal communications excise tax under § 4251 for $40.

Example 2.  B, an individual, used the 2006 federal income tax return instructions to determine that she had one exemption.  B further used her telephone bills for the period March 1, 2003, through July 31, 2006, to determine that the total amount paid for federal communications excise tax under § 4251 for nontaxable service to all

5

telecommunications providers was $45.  Completing Form 8913 and attaching it to her

2006 Form 1040 Series federal income tax return, B may request a credit or refund of

$45, the actual amount she paid in federal communications excise tax on nontaxable

service under § 4251.  As an alternative, B may request a credit or refund of the

standard amount of $30 without having to complete Form 8913.

SECTION 4.  DISTINCTION BETWEEN LOCAL-ONLY SERVICE AND BUNDLED

SERVICE

(a) Technology for transmitting telephone call.  The method for sending or

receiving a call, such as on a landline telephone, wireless (cellular) telephone or some

other method, does not affect whether a service is local-only or bundled.

(b) Combined local exchanges.  If two or more telecommunications providers

combine their resources to expand the geographic area that each treats as "local"

service and each bills its customers for that service as local-only service, then that

service is local-only service.

(c) Billing method.  Section 3(a) of Notice 2006-50 and section 5 of this notice

provide that bundled service is local and long distance service provided under a plan

that does not separately state the charge for the local telephone service.  Thus, if local

and long distance service is billed to a customer on a single bill but the

telecommunications company separately states the amount paid for local-only service

and the amount paid for long distance service, the amount paid for local-only service is

subject to federal communications excise tax.

(d) Examples.  The following examples illustrate the application of this section.

6

Example 1.  Customer A purchases telecommunications service from B, a

telecommunications provider.  Such service includes both local-only service and long

distance service.  B's bill to A states $X for telecommunications service.  The bill does

not separately state a charge for either local-only service or long distance service.

Since the bill does not separately state the charge for local-only service, the service is a

bundled service.  Thus, the entire amount of A's telecommunications service is bundled

service and thus nontaxable service.

Example 2.  Customer C purchases telecommunications service from D, a

telecommunications provider.  Such service includes both local-only service and long

distance service.  D's bill to C states $X amount for telecommunications service.  The

bill further states $Y amount for local-only service and $Z amount for long distance

service.  Since the charges for local-only service and long distance service are

separately stated, the service is not bundled service.  Accordingly, only the amounts

charged for long distance service are for nontaxable service; tax is imposed on the

amounts paid for the local-only service.

SECTION 5.  CLARIFICATION OF DEFINITION OF BUNDLED SERVICE

(a) Present definition.  Section 3(a) of Notice 2006-50 defines bundled service as

local and long distance service provided under a plan that does not separately
state the charge for the local telephone service.  Bundled service includes, for
example, Voice over Internet Protocol service, prepaid telephone cards, and
plans that provide both local and long distance service for either a flat monthly
fee or a charge that varies with the elapsed transmission time for which the
service is used.  Telecommunications companies provide bundled service for
both landline and wireless (cellular) service.

(b) Reason for clarification.  The example in the second sentence of the definition

of bundled service incorrectly assumes that all Voice over Internet Protocol (VoIP)

7

service would provide both local and long distance service and that the charges for the two services would not be separately stated.  As noted in section 4(a) of this notice, the method of transmitting a call is not a factor in determining whether a service is local-only or bundled.  Accordingly, a VoIP service that provides local-only service is treated as local-only service.

(c) <u>Revised definition</u>.  Accordingly, the definition of bundled service is clarified to read as follows:

> Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service.  Bundled service includes plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used.  Telecommunications companies provide bundled service for both landline and wireless (cellular) service.  If Voice over Internet Protocol service provides both local and long distance service and the charges are not separately stated, such service is bundled service.

SECTION 6.  PREPAID TELEPHONE CARDS (PTC)

(a) <u>In general</u>--(1) <u>Prepaid telephone cards</u>.  Section 4251(d) and § 49.4251-4 of the Facilities and Services Excise Taxes Regulations provide rules for prepaid telephone cards (PTC).  Section 49.4251-4(b) defines PTC as a card or similar arrangement that permits its holder to obtain a fixed amount of communications services by means of a code (such as a personal identification number (PIN)) or other access device provided by the carrier and to pay for those services in advance.  The amount paid for PTCs is determined under the rules of §§ 4251(d)(1) and (2) and § 49.4251-4(c).  Under this notice, the PTC will be treated as nontaxable service unless a PTC expressly states it is for local-only service.

(2) <u>Other cards</u>.  This section does not address cards that permit the holder to purchase various services in addition to telecommunications services.  Such services

include, but are not limited to, ring tone downloads, music downloads, text messaging, picture messaging, web browsing, game downloads, or screen saver downloads.

(b) Application of the tax--(1) Definitions.  Section 49.4251-4(b) provides that--

(i) Carrier means a telecommunications carrier as defined in 47 U.S.C. 153.

(ii) Holder means a person that purchases other than for resale.

(iii) Transferee means the first person that is not a carrier to whom a PTC is transferred by a carrier.

(2) Imposition, liability, and collection.  Section 4251(d) provides that the § 4251 tax is imposed on the transfer of a PTC to a transferee; § 49.4251-4(d)(1) provides that the person liable for the tax is the transferee and that the person responsible for collecting the tax generally is the carrier transferring the PTC to the transferee.  Section 49.4251-4(d)(1) further provides that if a holder purchases a PTC from a transferee reseller, the amount the holder pays for the PTC is not treated as an amount paid for communications services and thus tax is not imposed on that payment.

(c) Person eligible to request credit or refund.  The transferee is the person liable for the tax paid on a PTC and thus generally is the person eligible to request a credit or refund of the tax it paid.  The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006-50.  The holder is not liable for the tax and thus cannot request a credit or refund.

SECTION 7. PREPAID CELLULAR TELEPHONES

(a) In general.  Certain telecommunications providers offer wireless (cellular) telecommunications service on a prepaid service basis (prepaid telephones) whereby a customer purchases the cellular telephone with a set number of minutes available for

telecommunications.  When the customer exhausts the number of minutes on the prepaid telephone, the customer may purchase additional minutes.  The customer does not enter into a contract with the telecommunications provider; there are no service charges after the additional purchase and no monthly bills.  Under this notice, the prepaid telephone will be treated as nontaxable service unless the terms of the prepaid telephone service expressly state it is for local-only service.

(b) <u>Application of the tax</u>.  Rules similar to the rules for PTCs, as described in section 6 of this notice, apply to prepaid telephones.  Thus, the person liable for tax is the person (transferee) that buys the prepaid telephone from the telecommunications provider (carrier) and the carrier is responsible for collecting the tax.  Any holder of a prepaid telephone (that is, a person that buys the prepaid telephone other than for resale) is not liable for tax.

(c) <u>Person eligible to request credit or refund</u>.  The transferee is the person liable for the tax paid on a prepaid telephone and thus generally is the person eligible to request a credit or refund of the tax it paid.  The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006-50.  The holder is not liable for the tax and thus cannot request a credit or refund.

SECTION 8. CHARGES IN CONNECTION WITH LOCAL-ONLY SERVICE

(a) <u>Background</u>.  Section 3(b) of Notice 2006-50 defines local-only service as including certain services and facilities provided in connection with local telephone service, even though these services may also be used in connection with long distance service.  As examples, the notice cites to Rev. Rul. 72-537, 1972-2 C.B. 574 (telephone

amplifier), Rev. Rul. 73-171, 1971-1 C.B. 445 (automatic call distributing equipment),
and Rev. Rul. 73-269, 1973-1 C.B. 444 (special telephone).

(b) Subscriber line charges.  In addition to the examples in paragraph (a) of this
section, amounts paid for subscriber line charges, which are described in Rev. Rul. 87-
108, 1987-2 C.B. 260, are also amounts paid for local telephone service.  This charge
may appear on a bill as "Federal Access Charge," "Customer or Subscriber Line
Charge," or "Interstate Access Charge."

(c) Universal service fees--(1) Background.  All telecommunications companies
that provide interstate telecommunications service contribute to the federal Universal
Service Fund (USF).  Their contributions support four Universal Service programs
established and overseen by the Federal Communications Commission (FCC).  Some
telecommunications companies recover their contribution to the USF directly from their
customers by billing them for this charge.  The FCC does not require companies to pass
on these costs to their customers.  Each company makes a business decision about
whether and how to recover USF costs.  A company that separately states this charge
on a bill may call it a "Federal Universal Service Fee" or "Universal Connectivity Fee."

(2) Application.  If a USF charge is separately stated on a bill on which local-only
service is separately stated, the USF charge is treated as part of the charge for local-
only service as it represents a cost to the telecommunications provider of supplying
local exchange facilities to its customer.  In such a case, amounts paid for the USF are
subject to the tax on local-only service.  If a USF charge is stated on a bill for only
nontaxable service, that amount is not subject to the tax on local-only service.

SECTION 9.  PERSON TO MAKE REQUEST IF TAXPAYER IS NO LONGER IN
BUSINESS OR DECEASED

Neither Notice 2006-50 nor this notice create any special rules regarding the
person to request a credit or refund of tax for a taxpayer that no longer exists or is
deceased.  The same rules that apply to requests for credits or refunds of other federal
taxes also apply to similar requests of the tax imposed under § 4251.  These rules
depend upon the facts and circumstances relating to the reasons that the taxpayer no
longer exists.  The Form 8913 Instructions and Publication 559, Survivors, Executors,
and Administrators, provide general guidance for taxpayers regarding deceased
taxpayers.

SECTION 10.  EFFECT OF NOTICE 2006-50 ON STATE AND LOCAL
TELECOMMUNICATIONS TAXES

Neither Notice 2006-50 nor this notice affect the ability of state or local
governments to impose or collect telecommunication taxes under the respective
statutes of those governments.

SECTION 11.  NO OBLIGATION OF TELECOMMUNICATIONS PROVIDERS TO
SUPPLY RECORDS TO CUSTOMERS

The IRS has been asked to require telecommunications providers to supply their
customers with those customers' telecommunications bills for periods after February 28,
2003, and before August 1, 2006.  Neither Notice 2006-50 nor this notice requires
telecommunications providers to supply billing records to their customers.

12

SECTION 12.  BUSINESS AND NONPROFIT ESTIMATION METHOD

(a) In general.  This section provides rules for the Business and Nonprofit
Estimation Method (EM) that eligible entities may use to determine the amount of their
credit or refund for nontaxable service.  Eligible entities may, but are not required to,
use the EM instead of the actual amount of federal communications excise tax they paid
on nontaxable service to calculate the amount of their credit or refund.

(b) Definitions.  The following definitions apply to this section.

(1) Eligible entity means--

(i) Any--

(A) Business entity (including a corporation or partnership);

(B) Trust or estate;

(C) Tax-exempt organization; and

(D) Individual owner of rental property and any self-employed individual
(including an independent contractor, sole proprietor, or farmer) but only if the individual
(including a married couple filing a joint return) reports gross rental and business
income totaling more than $25,000 on his or her 2006 federal income tax return;

(ii) That was in operation during any time from March 1, 2003 through July 31,
2006; and

(iii) That received and paid for telecommunications service that was reflected on
bills dated in April 2006 and September 2006.

(2) Total telephone expenses means all amounts paid to every
telecommunications provider used by the eligible entity for telecommunications service
that was billed after February 28, 2003, and before August 1, 2006.  These amounts

include, but are not limited to, amounts paid for long distance service, local-only service, bundled service, DSL service, 900 number service, universal service fees, federal, state and local taxes, and leased equipment.  An eligible entity may determine the amount of its total telephone expenses by examining its books and records, including, for example, its general ledger, check register, and canceled checks.

(3) Employee means any person working for the taxpayer full or part time as reported on the eligible entity's Form 941, Employer's Quarterly Federal Tax Return, for the 2nd quarter of 2006, other than any person employed as a household employee, in a non-pay status, on a pension, or an active member of the Armed Forces.

(c) Using the EM to determine the amount of the credit or refund--(1) Determining the federal excise tax as a percentage of the telephone bill--(i) First, determine the amount of federal communications excise tax on all telephone bills dated in April 2006 and all telephone bills dated in September 2006.  The amount is generally separately stated on the bill as "FET" or "federal tax".

(ii) Next, for all the April telephone bills and all the September telephone bills, divide the amount of federal communications excise tax included on the bills by the total telephone expenses on the bills.  The resulting amounts are the April and September percentages, respectively.

(iii) Next, subtract the September percentage from the April percentage.  For purposes of this notice, this amount is the federal excise tax percentage (FETP).

(2) Capping the FETP--(i) Determine the number of employees.

(ii) For taxpayers with 250 or fewer employees, the FETP is capped at 2 percent.

(iii) For taxpayers with more than 250 employees, the FETP is capped at 1 percent.

(d) Calculating the amount of the credit or refund--(1) Records kept on a monthly basis. If the entity has maintained its telephone expense records on a monthly basis, multiply the FETP amount by the taxpayer's monthly total telephone expenses for each month of the 41 month period from March 2003 through July 2006. The product of this calculation is the taxpayer's credit or refund amount.

(2) Records kept on an annual basis. If the entity has maintained its telephone expense records on an annual basis rather than a monthly basis, prorate its annual amount equally to each month of that year. Thus, for example, a taxpayer maintaining annual telephone expense records for 2003 would divide its total telephone expenses by 12. Next, the taxpayer would use that monthly amount to complete the calculations for the credit or refund amount for 2003.

(e) Actual Amounts. Use of the EM is optional. Taxpayers may use the actual amounts paid for federal communications excise tax for nontaxable service to determine the amount of their credit or refund.

(f) Examples. The following examples illustrate the application of this section.

Example 1--(i) Facts. Business A has 250 employees. A's April 2006 telephone bill is $1,700, including federal communications excise tax of $47.60. A's September 2006 telephone bill is $1,600, including federal communications excise tax of $24.00. A's total telephone expenses, for which it does not have monthly records, are as follows:

2003 - $10,800.00

2004 - $16,000.00

2005 - $20,000.00

2006 - $20,571.37.

(ii) <u>Determining the April and September percentages</u>.  A's April percentage is 2.8 percent (47.60 ÷ 1,700).  A's September percentage is 1.5 percent (24 ÷ 1,600).

(iii) <u>Determining the FETP</u>.  The difference between A's April percentage and September percentage is 1.3 percent (2.8 - 1.5).  Thus, the FETP is 1.3 percent.

(iv) <u>Capping the FETP</u>.  Because A's number of employees does not exceed 250, A's FETP is not capped at 1 percent.

(v) <u>Prorating</u>.  Because A did not maintain its total telephone expense records by month, it prorates those amounts equally to each month within the March 2003 – July 2006 period for each particular year.  For 2003, A divides its total telephone expense of $10,800 by 12 and multiplies that result by 10 (the number of months between March and December). ([10,800 ÷ 12] x 10 = 9,000.)  For 2006, A divides its total telephone expense of $20,571.37 by 12 and multiplies that result by 7 (the number of months between January and July).  ([20,571.37 ÷ 12] x 7 =  12,000.)

(vi) <u>Calculating the amount of the credit or refund</u>.  Using the EM, the amount of A's credit or refund is calculated as follows:

2003:   $9,000 x .013 = $117 (117÷10 = 11.7) Monthly amount $11.70

2004: $16,000 x .013 = $208 (208÷12 = 17.33) Monthly amount $17.33

2005: $20,000 x .013 = $260 (260÷12 = 21.67) Monthly amount $21.67

2006: $12,000 x .013 = $156 (156÷7 = 22.29) Monthly amount $22.29

(vii) <u>Reporting the credit or refund amounts on Form 8913</u>--(A) Because the credit or refund period does not align with the calendar quarters, Form 8913 requires taxpayers to report the credit or refund amounts in 13 three-month intervals and one two-month interval.  Thus, A would report credit or refund amounts on Form 8913 as follows:

March, April, May 2003 - $35.10 (11.70 x 3 = 35.10)

June, July, August 2003 - $35.10 (11.70 x 3 = 35.10)

September, October, November 2003 - $35.10 (11.70 x 3 = 35.10)

December 2003, January, February 2004 - $46.36 (11.70 + [17.33 x 2] = 46.36)

March, April, May 2004 - $51.99 (17.33 x 3 = 51.99)

June, July, August 2004 - $51.99 (17.33 x 3 = 51.99)

September, October, November 2004 - $51.99 (17.33 x 3 = 51.99)

December 2004, January, February 2005 - $60.67 (17.33 + [21.67 x 2] = 60.67)

March, April, May 2005 - $65.01 (21.67 x 3 = 65.01)

June, July, August 2005 - $65.01 (21.67 x 3 = 65.01)

September, October, November 2005 - $65.01 (21.67 x 3 = 65.01)

December 2005, January, February 2006 - $66.25 (21.67 + [22.29 x 2] = 66.25)

March, April, May 2006 - $66.87 (22.29 x 3 = 66.87)

June, July 2006 - $44.58 (22.29 x 2 = 44.58)

(B)  After determining the amount of credit or refund using the EM, A reports the amounts on Form 8913, and attaches the Form 8913 to A's 2006 federal income tax return.

17

Example 2.  The same facts as Example 1 except that A has 500 employees.

A's FETP is capped at 1 percent.  Thus, A must make the same calculation as in

Example 1 to determine the proper amount of A's credit or refund of federal

communications excise tax using the FETP of 1 percent, rather than 1.3 percent.

SECTION 13.  FORM 1040EZ-T, REQUEST FOR REFUND OF FEDERAL

TELEPHONE EXCISE TAX

Individuals who do not have to file a federal income tax return and who meet the

conditions for requesting a refund of the federal communications excise tax may file

Form 1040EZ-T to request the refund.  Individuals requesting a refund of actual

amounts of federal communications excise tax paid must complete Form 8913 and

attach that form to the Form 1040EZ-T.

SECTION 14.  MODIFICATION OF PROVISION REGARDING REQUESTS FOR

CREDIT OR REFUND

(a) Present requirement.  Section 5(g) of Notice 2006-50 provides as follows:

Requests that do not follow the provisions of this notice.  Requests that do not
follow the provisions of this notice (whether filed before or after its publication)--
(1)  Will not be processed to the extent they relate to the tax paid on nontaxable
service that was billed after February 28, 2003; and
(2)  Will be processed normally to the extent they relate to the tax paid on
nontaxable service that was billed before March 1, 2003.

(b) Reason for modification.  Many of the pending refund claims that were filed on

or before May 25, 2006, include refund claims for nontaxable service that was billed

before March 1, 2003, and after February 28, 2003.  In the interest of sound tax

administration and efficiency, the IRS will process all claims for credit or refund that

were filed on or before May 25, 2006.

(c)  <u>Revised requirement</u>.  Accordingly, section 5(g) of Notice 2006-50 is modified

to read as follows:

> (1)  Requests that do not follow the provisions of Notice 2006-50 and that were
> filed on or before May 25, 2006, will be processed normally.
> (2)  Requests that were filed on or after May 26, 2006, and do not follow the
> provisions of Notice 2006-50, will not be processed to the extent they relate to
> the tax paid on nontaxable service that was billed after February 28, 2003.

SECTION 15.  EFFECT ON OTHER DOCUMENTS

Notice 2006-50 is amplified, clarified, and modified.

SECTION 16. DRAFTING INFORMATION

The principal author of this notice is Barbara B. Franklin of the Office of the

Associate Chief Counsel (Passthroughs and Special Industries).  For further information

regarding this notice, contact 202-622-3130 (not a toll-free number).