IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | MDL No. 1798<br><br>Judge Ricardo M. Urbina<br><br>Docket No. 1:07-mc-00014-RMU |

### NOTICE AND SUBMISSION OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully submit for the Court's consideration the attached report, just released by the United States Government Accountability Office ("GAO"), TAX ADMINISTRATION: TELEPHONE EXCISE TAX REFUND REQUESTS ARE FEWER THAN PROJECTED AND HAVE HAD MINIMAL IMPACT ON IRS SERVICES, No. GAO-07-695 (April 11, 2007) ("GAO REPORT").[1] This GAO REPORT is directly relevant to the interests of the plaintiffs and the proposed class, from whom the Federal Telephone Excise Tax ("FET") has been illegally exacted. The GAO REPORT is also relevant to the management and posture of this litigation.

Plaintiffs brought this action to halt the illegal exaction of the FET from a class of individuals and small entities, including those who could least afford to pay this tax: the millions of individuals who do not have to file an income tax return. Under well-established principles of law that protect citizens from such illegal exactions, plaintiffs seek the return of the money illegally taken, along with interest. As the Court has been advised, the Government has formally (and now some time ago) conceded that the collection of the FET was illegal. *See* IRS Notice 2006-50, May 25, 2006.

---

[1] This Report is also available at www.gao.gov/cgi-bin/getpt?GAO-07-695.

Plaintiffs have also maintained that the return of this money poses practical difficulties. A perfect remedy is probably beyond reach, but a reasonably just (and legally permissible) remedy can be devised, and we have consistently stated our willingness to work with the Government to achieve such a fair resolution of this case.

Notwithstanding the now-conceded liability of the Government for this illegal exaction, the Government has to date rebuffed plaintiffs' efforts to remedy its wrongdoing. Instead, it has sought to dismiss this case on jurisdictional grounds, and adopted a position that it need return only three years' worth of the money it has exacted (instead of the more than six years' worth of illegal exactions). Neither its jurisdictional claim, nor the Government's limitation on its duty to make its victims whole, has merit.

In addition, the Internal Revenue Service ("IRS") fashioned a mechanism to use the regular income-tax collection process to allow individuals to request a refund of the illegally exacted FET, again limited to the three-year window of exactions. Shortly after this step was announced, plaintiffs pointed out to the Court the serious deficiencies of this mechanism for providing the relief to which plaintiffs and the proposed class are entitled. *See* Plaintiffs' Motion for Preliminary Injunction, filed July 6, 2006, (Dkt. 25); *see also* Robert Greenstein, "Repaying an Invalid Excise Tax to Low-Income Households that Do Not File Income Tax Returns" (August 3, 2006) (Dkt. 32 - Ex. 1). Foremost among plaintiffs' concerns (besides our objection to the unlawful limit on the amount of money to be returned) was the unlikelihood that using the IRS Form 1040 for this refund as the Government planned would be effective, especially with respect to the millions of victims who are not otherwise required to file that Form. The GAO REPORT has now confirmed these concerns.

The GAO found that only 1.7 percent of 10 to 30 million individuals without a tax-filing obligation sought a FET refund. GAO REPORT, Appendix I, at 10. Similarly, only 1.7 percent of 11 million small businesses (C-corporations, S-corporations, and partnerships) sought a refund. *Id.* The performance of this mechanism for tax-exempt entities (such as charitable and non-profit organizations) was even worse – *not one requested a refund. Id.* The GAO provided the following helpful table that summarizes its findings:



**Number of Individuals and Entities Affected by Tax System Changes**

TETR could be the most far-reaching refund in IRS history—a projected 159 to 181 million (M) individuals and entities may request the refund

| | Eligible TETR filers | Projected number of filers | Total number of filers to date | Number of TETR requests | Percentage |
|---|---|---|---|---|---|
| Individuals[b] | Tax return filers[a] | 135 M | 69.1 M | 47.3 M | 68.5 percent of actual filers |
| | Individuals without a tax filing obligation | 10-30 M | 334,054 | 332,963[c] | 1.7 percent[d] of projected filers |
| Entities[e] | Businesses (C-Corporations, S-Corporations, and partnerships) | 11 M | Not available | 189,510 | 1.7 percent of projected filers |
| | Tax-exempt filers | 1.3 M | Not available | 280 | 0.0 percent of projected filers |
| | State, local government, and other non-filers | 2-4 M | Not available | Not available | Not available |
| | Total | 159 – 181 M | Not available | Not available | Not available |

Source: GAO analysis of IRS data.
[a] Includes 1040 series forms: 1040, 1040A, 1040EZ, and 1040NR.
[b] Data for the week ending January 20, 2007 through the week ending March 24, 2007.
[c] About 500 individual filers submitted a form 1040EZ-T but did not request TETR and 591 did not request the actual or standard amount on the respective form.
[d] For the actual as a percentage of estimated calculation, we used the midpoint of the estimated range: 20 M—estimated number of filers.
[e] Data for the week ending January 13, 2007 through the week ending March 24, 2007.

10

*Id.*

Contrary to the most elementary constitutional principles, the Government has consistently maintained that it will not disgorge the full measure of its unlawful exactions. This GAO REPORT now confirms that, even within the unlawfully limited

3

scope of refunds defined by the Government, the unilateral actions of the IRS do not come close to providing a reasonable or legally adequate remedy.

Resolution of the illegal FET exactions cannot begin until this Court adjudicates the Government's motion to dismiss. The Government's liability for these exactions is conceded. Should the Government's motion be denied, the parties hopefully can proceed to responsibly and cooperatively address the issues surrounding the fashioning of an appropriate remedy. Alternatively, plaintiffs believe that granting the Government's motion would unlawfully close the doors of the courthouse to this effort to redress a course of wrongful Government conduct, and, most poignantly, would do so when there is no dispute over the illegality of that conduct. Either way, the case would proceed.

The Government's motion to dismiss the Second Amended Complaint filed in the *Sloan* case has been pending since July 20, 2006. (Dkt. 29). While the intervening MDL proceedings did to some extent disrupt the progress of this matter, all of the necessary parties are now before this Court, and all case management issues have been resolved. Accordingly, Plaintiffs respectfully request the Court to set a hearing on the Government's motion to dismiss as soon as the Court's docket will allow.

DATED: April 16, 2007.

Respectfully Submitted,

By: _/s/_____
Jonathan W. Cuneo, Esq. (DC Bar# 939389)
Robert J. Cynkar, Esq. (DC Bar# 957845)
William Anderson, Esq. (DC Bar# 502380)
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Phone: 202-789-3960
Fax: 202-789-1813

Nicholas E. Chimicles, Esq. (pro hac vice)
Benjamin F. Johns, Esq. (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Henry D. Levine, Esq. (DC Bar# 952770)
Stephen J. Rosen, Esq. (DC Bar# 441942)
LEVINE, BLASZAK, BLOCK AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, DC 20036

Michael Bowen
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

R. Gaylord Smith
LEWIS BRISBOIS BISGAARD & SMITH
550 West C. Street, 8th Floor
San Diego, CA 92101

*On Behalf of Plaintiffs' Executive Committee*