# EXHIBIT A

# TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION



## *Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

**September 26, 2007**

**Reference Number: 2007-30-178**

This report has cleared the Treasury Inspector General for Tax Administration disclosure review process and information determined to be restricted from public release has been redacted from this document.

**Phone Number** | *202-927-7037*
**Email Address** | *Bonnie.Heald@tigta.treas.gov*
**Web Site** | *http://www.tigta.gov*



TREASURY INSPECTOR GENERAL
FOR TAX ADMINISTRATION

**DEPARTMENT OF THE TREASURY**

**WASHINGTON, D.C. 20220**

September 26, 2007

**MEMORANDUM FOR** DEPUTY COMMISSIONER FOR SERVICES AND
ENFORCEMENT

**FROM:**  *(for)* Michael R. Phillips
Deputy Inspector General for Audit

**SUBJECT:**  Final Audit Report – Although Strong Efforts Were Made, a
Significant Amount of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded (Audit # 200630036)

This report presents the results of our review of the Telephone Excise Tax Refund (TETR)
program. The overall objective of this review was to determine whether the Internal Revenue
Service (IRS) took proper steps to facilitate the refunding of the Federal excise tax on toll
telephone services. This audit was conducted based on a request from the Deputy Commissioner
for Services and Enforcement.

## *Impact on the Taxpayer*

After several court decisions held that the excise tax the IRS was collecting on long-distance and
bundled telephone service was inappropriate, the IRS implemented a major program for
taxpayers to receive refunds for the portion of their excise taxes paid on these services. It
estimated between 145 million and 165 million individual taxpayers would be eligible to claim
the TETR. Because the IRS had collected approximately $8 billion in telephone excise tax from
individual taxpayers, it had a goal to return as close to this amount as possible while minimizing
the total refunds made above this amount. However, based on the refund claims processed
through June 9, 2007, we believe a significant amount of the telephone excise tax collected could
go unrefunded, and many taxpayers may still be eligible to file claims.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

## *Synopsis*

With some exceptions, the IRS successfully planned and implemented the TETR program. Its efforts included revising tax forms, developing strategies to educate taxpayers regarding the availability of the refunds, and developing methods and forms for taxpayers to claim either (1) a standard amount for the TETR without having to incur the burden required to obtain substantial documentation from 41 months of telephone bills or (2) actual amounts as documented on their telephone bills. The IRS also developed a new form to enable taxpayers who otherwise would not have to file tax returns to make TETR claims. Despite these efforts, much of the overcollected tax may go unclaimed and unrefunded. As of June 9, 2007, about 87.6 million (71.5 percent) of the approximately 122.6 million taxpayers that had filed their individual income tax returns had made a TETR claim. The refunds associated with these claims totaled only $3.8 billion, or 48 percent of the $8 billion collected.[1]

Although we could not definitively determine why the number of taxpayers claiming the credit and the total amount they claimed did not meet IRS estimations, we believe two important factors contributed to these conditions: (1) the standard amounts developed by the IRS were used by more taxpayers than expected and (2) despite the IRS' significant efforts to communicate the TETR program to taxpayers, many remained uninformed.

Certain processing controls needed to be strengthened to ensure taxpayers claiming amounts greater than one of the standard amounts included the required documentation, Credit For Federal Telephone Excise Tax Paid (Form 8913), to support their claims. Also, performance data used by the IRS and reported to the Treasury Inspector General for Tax Administration and the Government Accountability Office were not always accurate. Upon notification, the IRS took immediate corrective action to strengthen these controls.

Erroneous claims filed were often unchallenged by the IRS. Many taxpayers claimed refunds of the total amounts of their telephone bills rather than just the excise tax portion of those bills. This may have been caused in part by a misunderstanding of Form 8913 (which was not focus tested before implementation). In other cases, the claims may have been intentionally overstated. The IRS did scrutinize some claims but only if the amounts claimed exceeded a certain dollar threshold. The IRS' rationale for looking only at claims above this dollar threshold was its competing priorities for examination resources. Management believed that, to work more TETR cases, they would have to forgo working other more productive cases.

During the audit, we recommended the IRS reexplore all options at its disposal to address significantly more inappropriate TETR claims, including sending notices offering taxpayers the opportunity to self-correct their returns. The IRS made no adjustments to its dollar threshold and chose not to offer taxpayers the opportunity to self-correct. In our opinion, the results of actual

---

[1] We were informed by the IRS on August 6, 2007, that just over one-half of the $8 billion has now been refunded.



### *Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

IRS examinations conducted of TETR claims indicate that notices offering taxpayers the chance to self-correct their claims would have been very effective and should have been pursued by the IRS as we recommended. The IRS has reported that through May 2007 more than 97 percent of the TETR examinations resulted in a change to the amount of credit claimed. On these cases, the amounts were significantly reduced, or were changed to a standard amount, as requested by the taxpayers once they were contacted and asked to provide evidence of the excise taxes paid. Although data on this subject were not collected, IRS tax examiners indicated taxpayers were claiming the entire amounts shown on their telephone bills and most often attributed the mistake to their tax preparers or confusion with the Form 8913.

If the IRS had sent to the more than 52,000 taxpayers included in our analysis notices giving them the opportunity to self-correct their claims before the refunds were issued, and if even 50 percent of these taxpayers had amended their claims (as compared to the 97 percent change rate experienced by IRS employees conducting examinations), the IRS could have avoided paying erroneous refunds totaling $23,377,443.

Also, as a result of filing TETR claims, more than 26,000 taxpayers were to be mailed tax packages for Tax Year 2007, even though they had no income, no deductions, and no credits other than the telephone tax excise credit, and therefore would not be required to file tax returns. We alerted the IRS to this condition, and it requested the details for the taxpayers so the tax packages would not be mailed.

## *Recommendations*

With the TETR, the IRS was attempting to reach virtually every facet of the taxpaying population and is in a unique position to evaluate its communications efforts on different taxpayer demographics. We recommended the Commissioner, Wage and Investment Division, identify demographics that had relatively low rates of TETR claims and provide additional information to these taxpayers on how they might still claim the refund; evaluate outreach methods used to notify taxpayers and determine what was and what was not effective; and use the information gained from the evaluation to develop more effective outreach programs in the future. We also recommended the Commissioner ensure new forms, particularly those of a complex nature, are focus tested on some level before issuance and follow up to ensure tax packages are not mailed to the taxpayers we referred to the IRS.

## *Response*

IRS management did not agree with all of the opinions expressed in the report; however, they did agree with the recommendations. Specifically, the Commissioner, Wage and Investment Division, has already implemented efforts to use demographics as a means to focus on taxpayers who may have been eligible for the TETR but did not claim it. Also, the Commissioner, Wage

3



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

and Investment Division, has identified "lessons learned" based on IRS communications that will be used to develop outreach strategies for future initiatives. In addition, the Commissioner, Wage and Investment Division, agreed to assess on a case-by-case basis the need for new forms to be focus tested and agreed to manually suppress the mailing of unnecessary tax packages to taxpayers. Management's complete response to the draft report is included as Appendix IV.

Copies of this report are also being sent to the IRS managers affected by the report recommendations. Please contact me at (202) 622-6510 if you have questions or Daniel R. Devlin, Assistant Inspector General for Audit (Small Business and Corporate Programs), at (202) 622-5894.



**Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded**

# Table of Contents

Background ...............................................................................................Page  1

Results of Review ....................................................................................Page  3

    With Some Exceptions, the Internal Revenue Service Successfully
Planned and Implemented the Federal Telephone Excise Tax Refund ....... Page  3

    A Significant Amount of the Telephone Excise Tax May Never Be
Refunded ..................................................................................................Page  5

        Recommendation 1:......................................................Page  7

    Many Taxpayers May Have Misunderstood the Form 8913 and Related
Instructions and Claimed Refunds of Their Entire Telephone Bills............Page  7

        Recommendation 2:......................................................Page  8

    A Significant Number of Claims on Forms 8913 That Were Obviously
Either Incorrect or Potentially Abusive Were Processed and Refunded
Without Being Challenged..........................................................................Page  9

    Controls Needed Strengthening to Ensure Taxpayers Claiming More
Than Standard Amounts Had Adequate Documentation to Support
Their Claims...............................................................................................Page 12

    Some Taxpayers Will Be Mailed 2007 Tax Packages Even Though
They Will Not Be Required to File 2007 Tax Returns .................................Page 13

        Recommendation 3:......................................................Page 14

    Performance Data Relating to the Telephone Excise Tax Were Not
Always Accurate.........................................................................................Page 14

**Appendices**

    Appendix I – Detailed Objective, Scope, and Methodology ......................Page 16

    Appendix II – Major Contributors to This Report.......................................Page 20

    Appendix III – Report Distribution List .....................................................Page 21

    Appendix IV – Management's Response to the Draft Report .....................Page 22



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

## *Abbreviations*

| | |
|---|---|
| FY | Fiscal Year |
| IRS | Internal Revenue Service |
| TETR | Telephone Excise Tax Refund |

 ***Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded***

# *Background*

The Telephone Excise Tax has been imposed since 1898, when it was created to fund the Spanish-American War. Originally, the tax applied to all telephone use; later, it was revised to apply to long-distance calls on which call duration and distance were factored into the price. However, many telecommunications companies made changes to their billing models, factoring only call duration and not distance into their billing prices. As a result, these charges no longer met the requirements of the tax code and should not have been subject to tax.[1] Several businesses litigated the taxability of these portions of the Telephone Excise Tax and, after five circuit court losses, the Internal Revenue Service (IRS) conceded the issue. It implemented a major program for taxpayers to receive refunds for the portion of their telephone excise taxes paid on long-distance or bundled service billed after February 28, 2003, and before August 1, 2006, that did not meet the statutory taxability requirements.

The Telephone Excise Tax Refund (TETR) was the most wide-reaching tax refund in the history of the IRS, which estimated this one-time refund would affect between 145 million and 165 million individual taxpayers including many who normally would not need to file tax returns. The IRS developed a process to timely refund these monies and made the request process relatively easy for most taxpayers. At the same time, it wanted to minimize the number of refunds in excess of taxes collected and discourage requests for overstated refunds.

To reduce the number of requests for overstated refunds and to minimize the administrative burden on individual taxpayers, the IRS decided to offer individuals a standard refund amount. Use of the standard amounts could significantly reduce taxpayer burden because no records were needed to support taxpayers' requests and individuals did not have to assemble 41 months' worth of telephone bills to determine their refund requests. Requesting a standard amount required the completion of only one additional line on the U.S. Individual Income Tax Returns (Form 1040 series).

Taxpayers were not required to request a standard refund amount. The IRS developed Credit for Federal Telephone Excise Tax Paid (Form 8913), which taxpayers could use to claim amounts higher than the standard amounts, and required that taxpayers attach a Form 8913 to their Forms 1040 when requesting non-standard TETR amounts. It also developed a compliance strategy to address egregious claims, including identifying tax returns with TETR claims exceeding a certain dollar threshold and freezing the telephone excise tax portion of the refunds associated with those returns until the claims could be audited.

---

[1] Five circuit court cases held that a telephonic communication for which there is a toll charge that varies with elapsed transmission time and not distance (time-only service) is not taxable toll telephone service as defined in Internal Revenue Code Section 4252(b)(1).



**_Although Strong Efforts Were Made, a Significant Amount_**
**_of the Telephone Excise Tax Overcollected From_**
**_Individual Taxpayers May Never Be Refunded_**

This review was performed at the IRS Campus[2] in Ogden, Utah, during the period October 2006 through June 2007 and included review of tax information from returns filed and processed nationwide, as well as evaluation of information provided by the IRS TETR working group headed by the Director, Earned Income and Health Coverage Tax Credits, Wage and Investment Division. The audit was conducted in accordance with *Government Auditing Standards*. Detailed information on our audit objective, scope, and methodology is presented in Appendix I. Major contributors to the report are listed in Appendix II.

---

[2] Campuses are the data processing arm of the IRS. They process paper and electronic submissions, correct errors, and forward data to the Computing Centers for analysis and posting to taxpayer accounts.



**_Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded_**

# *Results of Review*

## *With Some Exceptions, the Internal Revenue Service Successfully Planned and Implemented the Federal Telephone Excise Tax Refund*

### _Major tax forms and instructions were timely and accurately updated to allow taxpayers to claim the TETR_

The IRS added instructions and made appropriate changes to almost all the major income tax forms. This included changes and instructions for all the individual income tax forms (the Form 1040 series); development of Form 8913; and development of the Request for Refund of Federal Telephone Excise Tax (Form 1040EZ-T), so individuals otherwise not required to file income tax returns could submit TETR claims.

We reviewed each of the new and revised forms and their related instructions. With the exception of the issue presented later concerning Form 8913, all of the forms were properly and clearly composed, and instructions were logically and accurately presented.

In preparation for processing these new or revised tax forms, the IRS had to modify processing procedures and instructions and/or computer programming involving (1) the acceptance of electronically filed returns with the claims, (2) data entry of TETR information from paper returns to IRS computers, (3) the resolution of errors on the returns, and (4) filters to identify and inform taxpayers of inappropriate claims. With minor exceptions, the IRS successfully accomplished these tasks.

### _The IRS developed detailed strategies to educate taxpayers regarding the TETR provisions_

The IRS developed an indepth Telephone Excise Tax Communications Subgroup Summary Strategy, which outlined overall communications objectives, audiences, and key messages. Out of this Strategy came an internal communications strategy, a comprehensive media strategy, and the IRS Refund of Telephone Excise Tax Outreach Plan. Each Strategy/Plan had refined objectives, messages, audiences, and steps to communicate those messages to the desired audience. These documents were all consistent with the Summary Strategy and its objectives.

The IRS worked with a large number of external partners to disseminate information about the TETR. Audiences that the IRS hoped to reach through these partners included groups such as tax preparers, the elderly, members of the military, minors, and nonfilers.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

Information regarding the TETR is abundant on the Internet. The public IRS web site (IRS.gov) home page has the information prominently displayed with easy links that provide more information for individuals, businesses, tax-exempt entities, and nonfilers. Detailed questions and answers for each of these groups were very informative. In addition, our examination of various web sites found TETR references on newspaper web sites, tax practitioner sites, and even the "Truth or Fiction" and "Urban Legends" sites (which properly identified the TETR as "Truth").

### *The standard amounts developed by the IRS were reasonable and effective*

As stated in the Background section of this report, the IRS developed methods for individual taxpayers to claim an approximate TETR amount without having to incur the burden required to obtain all their bills from telecommunications companies and compute the exact amounts of qualified TETR for the applicable 41-month period. Through the week ending June 9, 2007, IRS records indicate that 99.5 percent of claims filed were for standard amounts.

We reviewed the methods and information used by the IRS to develop the standard amounts and concluded that these methods were reasonable. The IRS considered many different factors in developing the standard amounts, including actual assessed telephone excise tax as determined by the Department of the Treasury, usage estimates taken from reliable telecommunications industry statistics, and the need to make final estimated amounts or methods easy to use and representative of the probable actual tax paid.

The standard amounts offered to individual taxpayers were linked to the number of exemptions allowed on the individuals' tax returns, as shown in Figure 1.

### *Figure 1: TETR Standard Amounts*

| Exemptions | Standard Amount |
|:---:|:---:|
| 1 | $30 |
| 2 | $40 |
| 3 | $50 |
| 4 or more | $60 |

*Source: 2006 Form 1040 Instructions (page 60).*

Industry figures supported the nexus between telephone use and household size. Based on its analysis, the IRS estimated total TETR amounts claimed by individuals using either a standard amount or a Form 8913 would most likely exceed the actual tax paid by individuals during the applicable period. This overpayment of refunds was acknowledged up front and was deemed

Page 4



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

acceptable by the IRS to increase the use of the standard amounts, which in turn would make the refund claim process less burdensome for taxpayers.

## *A Significant Amount of the Telephone Excise Tax May Never Be Refunded*

The IRS estimated between 145 million and 165 million individual taxpayers would be eligible to claim the TETR. Because the IRS had collected approximately $8 billion in telephone excise tax from individual taxpayers for the applicable period, it had a goal to return as close to this amount as possible while minimizing the total refunds made above this amount. As of June 9, 2007, about 87.6 million (71.5 percent) of the approximately 122.6 million taxpayers that had filed their individual returns had made claims. The refunds associated with these claims totaled only $3.8 billion, or 48 percent of the $8 billion collected.[3]

We believe a significant amount of the telephone excise tax collected by the IRS may never be refunded. Although we could not definitively determine why the number of taxpayers claiming the credit and the total amount they claimed did not meet IRS estimations, we believe two important factors contributed to these conditions.

First was the success of the standard amounts developed by the IRS. In its consideration of various standard amounts, the IRS estimated approximately 74 percent of individual taxpayers overall would choose a standard amount between $30 and $60. However, more than 99 percent of taxpayers opted for a standard amount, which indicates taxpayers preferred to accept potentially lower refunds in exchange for much less paperwork and burden.

Second, our limited data indicate many taxpayers were simply unaware of the TETR or were unaware that they qualified for it. To get some idea why taxpayers were not claiming the credit for a refund, we contacted nine[4] taxpayers that had prepared their own returns and had not claimed the TETR and determined the following:

- Six of the nine taxpayers had no knowledge of it.
- Two taxpayers were aware of it but had mistakenly believed they did not qualify for it.
- One taxpayer had correctly determined that he or she did not qualify for it.

Despite the IRS' significant efforts to advise taxpayers of the TETR program, many were left uninformed. These taxpayers may not have been reached by the methods the IRS used, or the methods used to convey the message may not have captured the taxpayers' attention. For example, the IRS included information regarding the TETR on the front of each Form 1040

---

[3] We were informed by the IRS on August 6, 2007, that just over one-half of the $8 billion has now been refunded.
[4] Nine is the maximum number of people that can be contacted to collect information under the Paperwork Reduction Act (5 C.F.R. § 1320.3(c)) (1995) without approval from the Office of Management and Budget. Time constraints prevented us from obtaining this approval.



**_Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded_**

series income tax package and in the "What's New" section of the instructions. Although the message was accurate, it may not have been informative enough and it did nothing to attract a taxpayer's attention. Knowing that most households qualified for the TETR, the IRS could have (1) let the taxpayers know just that and (2) leveraged other techniques to grab taxpayers' attention, such as using bright color. By changing the message from, "You may be able to request a credit for the federal excise tax paid on long distance or bundled telephone service," and using color (e.g., red) to inform the taxpayers, _"You Most Likely Qualify for a One-Time Refund of Taxes Paid on Your Long-Distance Telephone Bill,"_ the IRS might have ensured more taxpayers were aware of this important message.

We cannot state what specific changes or additions to the IRS' communications strategy would have reached those taxpayers that were unaware of the TETR. However, because the IRS was attempting to reach virtually every facet of the taxpaying population, it is in a unique position to evaluate its communications efforts on different taxpayer demographics. For example, one specific group of taxpayers that made relatively few claims involved those that were not obligated to file individual income tax returns. Only 8 percent of the 10 million to 30 million taxpayers in this group estimated by the IRS to be eligible for the TETR actually claimed it.[5] The IRS can use this information to test the effectiveness of its communications efforts on this and other demographics and to identify other nontraditional outreach options for certain taxpayers.

As significant as the total number of taxpayers that did not claim the TETR is the fact that an estimated $4 billion remains unclaimed by individual taxpayers.[6] Collecting approximately $8 billion and refunding nearly one-half that amount leaves one of the IRS' major objectives for this initiative unrealized, and additional efforts may be needed to ensure all taxpayers have an opportunity to claim the TETR. Although the IRS intended to refund at least what was collected, falling short by such a large portion leaves it open to criticism, particularly considering it was responsible for refunding the money and communicating this fact to taxpayers.

The IRS has no plans to make the TETR available for Tax Year 2007 and expects taxpayers to file amended returns for Tax Year 2006 if they failed to claim the credit. It has recognized the need for additional efforts and plans to provide additional information in next year's tax packages and tax preparation software, to make taxpayers aware of how to claim the refund if they need to amend their 2006 returns.

---

[5] Percentage was based on the number of taxpayers with no filing obligation that claimed the credit (approximately 800,000) and the most conservative number of taxpayers the IRS estimated to be eligible (10 million).
[6] Based on subsequent discussions with the IRS, this estimate may be just less than $4 billion.



***Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded***

## Recommendation

**<u>Recommendation 1</u>:** The Commissioner, Wage and Investment Division, should identify demographics that had relatively low rates of claims and provide additional information to these taxpayers on how they might still claim the TETR; evaluate outreach methods used to notify taxpayers and determine what was and what was not effective; and use the information gained from the evaluation to develop more effective outreach programs in the future.

> **<u>*Management's Response*</u>:** The Commissioner, Wage and Investment Division, agreed with this recommendation and has already taken steps to implement it. The IRS has reviewed demographic data throughout the filing season[7] and performed targeted outreach as needed. Also, based on its communications, the IRS has identified "lessons learned" that will be used to develop outreach strategies for future initiatives. In addition, the IRS plans to include TETR information in the 2007 tax package and will work with tax preparation software providers to include guidance to taxpayers on filing amended returns or Forms 1040EZ-T to request the refund.

## Many Taxpayers May Have Misunderstood the Form 8913 and Related Instructions and Claimed Refunds of Their Entire Telephone Bills

We reviewed a random nonstatistical sample of 30 individual income tax returns and determined taxpayers filing large TETR claims appeared to be entering the total amounts billed for long-distance and bundled service rather than just the Federal excise tax associated with those amounts. The IRS came to this conclusion on its own early in the 2007 Filing Season and addressed it in a press release in late January 2007.

The instructions for Form 8913 expressly stated that taxpayers were to claim the amount of Federal excise tax on long-distance or bundled service only, which amounts to 3 percent of the amounts billed for these services. However, the column headings for taxpayers to enter those amounts were labeled "Long distance service" and "Bundled service." (See Figure 2)

---

[7] The filing season is the period from January through mid-April when most individual income tax returns are filed.



***Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded***

## Figure 2: Partial Form 8913

| Form **8913**<br>Department of the Treasury<br>Internal Revenue Service | **Credit for Federal Telephone Excise Tax Paid**<br>► See the separate instructions.<br>► Attach to your income tax return. | OMB No. 1545-2051<br>20**06**<br>Attachment<br>Sequence No. **63** |
|---|---|---|

Name(s) as shown on your income tax return.                    Identifying number

Enter the federal telephone excise tax billed during each period as listed in column (a) of lines 1–14 below.

By filing this form, you are certifying that you (1) have not received from your service provider a credit or refund of the tax paid on long distance service or bundled service billed after February 28, 2003, and before August 1, 2006, and (2) will not ask your provider for a credit or refund or have withdrawn any request submitted to the provider for a credit or refund.

Caution. See the instructions for explanations of the services that qualify for a credit or refund of the federal telephone excise tax.

| | Amount of federal excise tax on long distance or bundled service only | | | |
|---|---|---|---|---|
| **(a) Bills dated during:** | **(b) Long distance service** | **(c) Bundled service** | **(d) Tax credit or refund (add columns (b) and (c))** | **(e) Interest (see instructions)** |
| 1  March, April, and May 2003 | $ | | | $ |
| 2  June, July, and August 2003 | | | | |
| 3  September, October, and November 2003 | | | | |

*Source: Internal Revenue Service Form 8913.*

Taxpayers and preparers may have misunderstood those column headings and entered the total amounts of their long-distance and/or bundled service. During examinations of their tax returns, some taxpayers cited confusion with the Form 8913 as the reason their claims were so high.

The IRS had a very short amount of time to develop the Form 8913 and stated that this short time period did not allow for the Form to be focus tested. In our opinion, if the IRS had focus tested the Form (even on a very quick and informal basis, given the limited amount of time available to develop the Form), it might have discovered that the Form could be misunderstood. Such a discovery may have helped the IRS avoid many of the 11,541 TETR examinations initiated through June 9, 2007.

## *Recommendation*

***Recommendation 2:*** The Commissioner, Wage and Investment Division, should ensure new forms, particularly those of a complex nature, are focus tested on some level before issuance.

> ***Management's Response:*** The Commissioner, Wage and Investment Division, agreed with this recommendation even though the IRS generally does not conduct focus tests for one-time use forms. In the future, the IRS will, on a case-by-case basis, assess whether focus testing should be conducted for new forms depending on the unique factors in each case (e.g., distribution to a large percentage of taxpayers).



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

### A Significant Number of Claims on Forms 8913 That Were Obviously Either Incorrect or Potentially Abusive Were Processed and Refunded Without Being Challenged

The IRS had developed a comprehensive Examination strategy to address the most egregious TETR claims. Because it had very limited authority to recover TETR payments made to taxpayers once they had been refunded, this strategy focused on prefund screening and examination.[8] Approximately 22,500 examinations were originally planned for Fiscal Year (FY) 2007; more than 13,700 of these examinations were planned for claims made by individual rather than business taxpayers. In addition, very early in the 2007 Filing Season, the IRS issued several news releases warning taxpayers and preparers about making specious claims. Further, special agents[9] from the IRS Criminal Investigation Division participated with revenue agents[10] in a series of "educational" visits to return preparers involved in filing questionable claims.

Early in the 2007 Filing Season, we raised concerns about the implementation of the IRS compliance strategy for TETR claims. We believed the dollar threshold used to identify potentially egregious claims was set too high because it was significantly above the maximum standard amount. We performed an analysis of more than 52,000 tax forms filed through June 2, 2007, that contained claims for amounts we considered to be highly questionable but did not meet the IRS criteria for further review. We found the following:

- The amounts on these claims totaled more than $43 million, plus an additional $6 million in interest claimed. The average claim for these cases was $826. Taxpayers would have to have spent more than $27,000 on long-distance fees over a 41-month period to qualify for claims of that amount.

- Taxpayers making 65 percent of these claims would have to have had yearly telephone bills amounting to more than 25 percent of their total annual incomes to justify the claims.

- Taxpayers making 16 percent of these claims would have to have paid more for long-distance or bundled telephone service in a year than their yearly incomes to justify the claims.

---

[8] A TETR that is subsequently determined to have been made in error may be recovered only by the Federal Government's filing of a suit for refund to recover any amount the taxpayer did not voluntarily repay. Because of the high costs involved, the IRS expected very few TETR suits to be filed.

[9] Special agents are IRS law enforcement officers who investigate potential criminal and financial violations of the Internal Revenue Code.

[10] Revenue agents are IRS employees responsible for planning and conducting examinations of individuals and businesses to determine tax liability.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

- More than 38,000 of these claims were on tax returns with no indication that the taxpayers were business owners (which might have explained a slightly higher long-distance telephone bill and thus a higher claim).

Many of these claims may have resulted from taxpayers and preparers misunderstanding the Form 8913 and related instructions. Others appeared to be fraudulent based on (1) the amount of the claim compared to the taxpayer's total income, (2) the combination of credits and claims made by the taxpayer, or (3) the filing patterns of the tax return preparer. We identified filing patterns of paid preparers that had filed returns for many taxpayers with TETR claims exceeding the standard amounts, but very few of these returns contained claims that exceeded the IRS dollar threshold. These preparers seemed to have learned what would be accepted as filed by the IRS. We referred the most egregious of these preparers to the IRS for action.

The IRS set its dollar threshold high because Examination function resources are limited and because it believed examinations of Earned Income Tax Credit cases as well as other discretionary Examination function cases would result in higher assessment rates than those from the TETR claims discussed. We acknowledge that the IRS has to deal with limited Examination function resources in deciding how many of these claims could be examined. However, we also believe other factors should have been considered, including:

- The TETR issue became very high profile, with a great deal of effort made by the IRS to prevent the claiming and subsequent refunding of inappropriate credit amounts. For example, inappropriate TETR claims were the number one item in the IRS' "Dirty Dozen" tax issues.[11] In a news release issued early in the 2007 Filing Season, Commissioner Everson stated, "People requesting an inflated [TETR] amount will likely see their refund frozen, may have their entire tax return audited and even face criminal prosecution where warranted. We won't stand idly by while some people try to cheat their neighbors and make off with money they don't deserve."

  If the IRS allows fraud to go unchecked in an area it has declared as a major priority, it may have a very negative effect on taxpayer compliance in the future.

- Inappropriate TETR claims had to be identified and stopped before refunds were issued because tax laws require that the Federal Government file suit in court to recover these refunds. Tax assessments resulting from most other Examination programs could be made without filing suit, even after refunds were issued, so these other Examination function cases were not nearly as time sensitive.

- TETR cases worked prior to refund release represented dollars already in the Federal Government's possession. In contrast, other Examination function cases generally result in tax assessments that may or may not be collected. A recently issued Treasury

---

[11] The "Dirty Dozen" is an annual listing of notorious tax scams published by the IRS on its public web site (IRS.gov)



**Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded**

Inspector General for Tax Administration report[12] points out that, in FY 2004, the IRS assessed more than $2.1 billion in additional taxes on high-income taxpayers through its Examination program. The report estimates approximately $1.2 billion (57 percent) of that amount was either abated or not collected after an average of 608 calendar days from the date of assessment. Even if the assessments are collected, the costs of collection need to be factored in when comparing other Examination function cases to TETR cases.

- Taxpayers making legitimate mistakes may have very well been willing to self-correct their returns if they had been informed by the IRS, prior to refunds being issued, that they appeared to have claimed their entire telephone bills or entire long-distance or bundled service bills rather than just the Federal excise tax associated with their services.

During the audit, we recommended that, taking into consideration the factors listed above, the IRS reexplore all options at its disposal to address significantly more inappropriate TETR claims, including sending notices (prior to refunds being issued) that offered taxpayers the opportunity to self-correct their returns; the postponement of some Examination function work; and the working (or partial working) of some of the simpler TETR cases by non-Examination function employees.

The IRS responded to our concerns but made no adjustments to its dollar threshold. The response focused on the IRS' competing priorities for Examination function resources; management believed that, to work more TETR cases, they would have to forgo working other more productive cases. The response did not address the recommendation to allow taxpayers to self-correct; however, in discussions with the IRS, we were advised it had no plans to issue notices to taxpayers to allow them to self-correct their errors because it believed such notices would be ineffective, it had limited resources with which to work the responses, and there would be many no-response cases to work.

In our opinion, the results of actual IRS examinations of TETR claims indicate notices offering taxpayers the chance to self-correct their claims would have been very effective and should have been pursued by the IRS as we had recommended. The IRS has reported that through May 2007 more than 97 percent of the TETR cases examined resulted in a change to the amount of credit claimed. On these cases, the amounts were significantly reduced, or were changed to a standard amount, as requested by the taxpayers once they were contacted and asked to provide evidence of the excise taxes paid. Although data on this subject were not collected, IRS tax examiners indicated taxpayers were claiming the entire amounts shown on their telephone bills and most often attributed the mistake to their tax preparers or confusion with Form 8913.

---

[12] *While Examinations of High-Income Taxpayers have Increased, the Impact on Compliance May Be Limited* (Reference Number 2006-30-105, dated July 25, 2006).



### *Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

If the IRS had sent to the more than 52,000 taxpayers included in our analysis notices giving them the opportunity to self-correct their TETR claims before the refunds were issued, and if even 50 percent of these taxpayers had amended their claims, the IRS could have avoided paying erroneous refunds totaling $23,377,443.[13]

## Controls Needed Strengthening to Ensure Taxpayers Claiming More Than Standard Amounts Had Adequate Documentation to Support Their Claims

As stated previously, to reduce the number of overstated refund requests and minimize the administrative burden on individual taxpayers, the IRS established standard TETR amounts. If a standard amount was not claimed, a taxpayer was required to document the amount of TETR claimed on Form 8913.

### *Dollar thresholds*

One of the controls established to prevent erroneous claims from being processed involved computer routines to identify returns claiming TETR amounts greater than the standard amounts but without the required Forms 8913. The control established to catch this error was based on a dollar threshold that, if exceeded, would flag the claim for further scrutiny in the IRS Error Resolution function. Although IRS instructions required taxpayers to attach Form 8913 for any claim of more than a standard amount, taxpayers' claims were allowed without the Form unless the claim was higher than a specified dollar threshold. We reviewed the amount of the dollar threshold and determined that it was set too high, which allows some taxpayers to claim erroneous TETR amounts without IRS detection.

A second control established to prevent refunding of erroneous claim amounts involved comparisons of refund amounts entered on Forms 1040, Forms 1040A, or Income Tax Returns for Single and Joint Filers With No Dependents (Form 1040EZ) with amounts entered on Forms 8913. The amount on the Form 8913 should agree with the amount carried over to the Form 1040 series return. If these entries disagreed by more than a specified dollar threshold, the returns were identified for IRS action. However, we believe the dollar threshold established by the IRS for this control was also set too high, which allowed some taxpayers to claim erroneous TETR amounts without detection. It also could have invited abuse of these claims, particularly as unscrupulous taxpayers and preparers learned that the IRS was not taking action on these returns.

---

[13] Calculated as follows: 52,360 taxpayers included in our analysis of questionable cases not examined by the IRS multiplied by the maximum standard amount of $60 = $3,141,600 (which most likely should have been claimed). These taxpayers actually claimed $49,896,486. Thus, $49,896,486 - $3,141,600 = $46,754,886, and 50 percent of this amount equals $23,377,443.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

### Processing instructions for IRS employees

As discussed, when an individual taxpayer claimed one amount on the tax return and a different amount on Form 8913, and the difference was more than the specified dollar threshold, the return was routed to the Error Resolution function, where tax examiners were instructed to correspond with the taxpayer to determine the reason for the difference. The Internal Revenue Manual instructions on how to resolve this issue were not clear and provided no guidance on the steps to take if the taxpayer did not reply.

*Standards for Internal Control in the Federal Government* state that control activities should be effective and efficient in accomplishing the agency's control objectives. However, in the cases previously discussed, management had not ensured controls were as effective as they should have been. As a result, inappropriate claims could have been accepted and refunded as filed.

We reported these issues to the IRS early in the 2007 Filing Season. Management agreed to lower the dollar thresholds for cases with missing or inconsistent documentation and revised the instructions in the Internal Revenue Manual.

## Some Taxpayers Will Be Mailed 2007 Tax Packages Even Though They Will Not Be Required to File 2007 Tax Returns

Form 1040EZ-T was to be used by certain individuals who did not have to file Federal individual income tax returns but wanted to get the one-time refund of the Federal excise taxes they had paid on long-distance or bundled telephone service. Generally, when a taxpayer files a paper tax return, the IRS mails a tax package to that taxpayer the next year, so he or she can file again. However, in the case of taxpayers filing Forms 1040EZ-T, the IRS did not want tax packages mailed in the following year because most of these taxpayers have no taxable income and will not be required to file subsequent year returns. As a result, tax packages for taxpayers filing a 1040EZ-T were suppressed by the IRS and will not be mailed.

However, we identified 26,068 taxpayers who should have claimed the TETR on a Form 1040EZ-T but instead filed another Form 1040 series return. Based on the information in our computer extracts, these taxpayers had no income, no deductions, and no credits other than the telephone tax excise credit. These taxpayers filed paper returns and did not use a tax preparer. The IRS program designed to suppress the mailing of subsequent year tax packages applied only to taxpayers filing Forms 1040 EZ-T and not to taxpayers filing other returns in the Form 1040 series. Based on further research, we found some of these taxpayers would receive a regular tax package while others would receive a postcard. Postcards are sent to taxpayers who used a computer to prepare their 2006 tax returns but filed paper returns; they describe the advantages of electronic filing and cost about 20 cents each for printing and postage. The regular tax packages are sent to those who filed paper tax returns but did not use a computer to prepare the returns. The regular tax packages cost about 65 cents each for printing and postage.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

Of the 26,068 tax returns we identified, 16,263 (62 percent) meet the criteria for the taxpayers to receive postcards and 9,805 meet the criteria for the taxpayers to receive regular tax packages next year. Based on further discussions with management, it appears the IRS may change the programming for 2008 to discontinue sending postcards to those who prepare their paper returns using a computer. However, we have been unable to verify whether this programming will be implemented for 2008. Although 26,068 tax returns is not a large number when compared to the almost 700,000 Forms 1040EZ-T filed, the receipt of postcards or tax packages does create a burden for these taxpayers. It also creates additional costs to the IRS for preparing and mailing the documents and answering telephone calls or correspondence associated with them.

We advised IRS officials of this condition during the audit, and they requested the details for the 26,068 taxpayers so they could suppress postcards and tax packages from being mailed next year. [14]

## Recommendation

**_Recommendation 3:_** The Commissioner, Wage and Investment Division, should follow up on the 26,068 taxpayers we provided to the IRS to ensure the postcards or tax packages are suppressed from being mailed next year.

> **_Management's Response:_** The Commissioner, Wage and Investment Division, agreed with this recommendation and will manually suppress the 2007 tax packages for filers who did not have a 2006 filing requirement but used an individual income tax form to request the TETR instead of using Form 1040EZ-T.

## Performance Data Relating to the Telephone Excise Tax Were Not Always Accurate

Performance measurement data were compiled weekly, and a report was provided to executive management on the TETR Oversight Committee as well as third parties, including the Treasury Inspector General for Tax Administration and the Government Accountability Office, for information purposes. These data included various summarized weekly and cumulative statistics regarding the refund for individuals and businesses related to specific numbers and dollars of returns filed, various performance indicators developed, and compliance issues. The data were used by management on the TETR Oversight Committee to help make decisions and formulate strategies for addressing TETR issues during the 2007 Filing Season.

---

[14] We identified only those taxpayers with no income or deductions. Other taxpayers with income below certain levels, resulting in zero tax, would also have been exempted from filing tax returns, and may not need a tax return package sent to them in the future.



**_Although Strong Efforts Were Made, a Significant Amount_**
**_of the Telephone Excise Tax Overcollected From_**
**_Individual Taxpayers May Never Be Refunded_**

During the course of our audit work, we identified portions of the performance measurement report that contained inaccurate information. The inaccuracies existed because data for the weekly reports were being extracted from IRS files that contained cumulative yearly data rather than weekly data.

Accurate performance data are necessary for managers to compare actual performance to planned or expected results and to provide management officials and external stakeholders with data necessary to make decisions regarding an agency and its goals. Inaccurate data could result in unsound decisions by management and can give external stakeholders a false perception of a program's success.

During the audit, we notified the IRS of the inaccurate information, and it took immediate corrective actions to revise the incorrect information and to ensure the proper computer files were accessed to prepare future reports. Because this issue was identified relatively early, and because the IRS took immediate corrective action, we do not believe inappropriate decisions were made based on the inaccurate data.

 **Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded**

**Appendix I**

# Detailed Objective, Scope, and Methodology

Our overall audit objective was to determine whether the IRS was taking proper steps to facilitate the refunding of the Federal excise tax on toll telephone services. To accomplish this objective, we:

I.    Determined whether all forms and instructions were updated to allow taxpayers to claim the appropriate telephone excise tax credit.

    A. Determined whether the IRS had a coordinated implementation plan for the TETR and discussed plans and reviewed documents related to this implementation.

    B. Reviewed changes made to the U.S. Individual Income Tax Returns (Form 1040 series) and the related instructions, including instructions related to the standard amounts individual taxpayers could claim. We also analyzed the standard amounts allowed for basis and reasonableness.

    C. Determined what documentation was required to substantiate amounts claimed and what efforts were made by the IRS to ensure the amounts claimed were appropriate.

II.   Determined whether the IRS effectively advertised and communicated to the appropriate taxpayer segments the available opportunities for the tax credit.

    A. Discussed outreach efforts made by the office of Stakeholder Partnerships, Education, and Communication.

    B. Reviewed IRS.gov (the public IRS web site) for information provided to various taxpayer segments regarding the telephone excise tax credit.

    C. Identified and reviewed any other published material or other media used to communicate provisions of the telephone excise tax credit to taxpayer communities.

III.  Determined whether the IRS properly modified computer programs as they related to the telephone excise tax credit.

    A. Determined how the credit was treated on the various tax forms, including the Form 1040 series, and determined whether the IRS had provided a separate line for taking the credit or allocated it to a miscellaneous refundable credit line.

    B. If the tax returns addressed the telephone excise tax credit on separate lines, contacted the analysts responsible for programming, reviewed the relevant documentation needed to make these changes, and reviewed any computer programming-related documents.



***Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded***

    C. Identified all tax returns allowed the telephone excise tax credit and reviewed early filed returns to ensure:

        1. The credits were properly posting to the Master File.[1]

        2. Claimed amounts were properly supported (or within the standard amounts on individual returns).

        3. Amounts claimed in excess of tolerances were identified and properly processed.

        4. Taxpayers qualifying for the credit had, in fact, claimed the credit.
(We worked with another audit team to identify individual tax return issues. We made computer extracts of returns on which the credit was not taken and returns on which credit amounts were more than the standard amounts. We randomly sampled (nonstatistical) the first three records in each extract to assess the accuracy of the data and determined the data to be reliable. Tests conducted to assess the data's reliability included matching extracted data to original IRS databases and also verifying that the returns met required criteria.)

IV.   Determined whether the IRS made provisions for the telephone excise tax credit as it applies to individuals not otherwise needing to file tax returns.

    A. Discussed outreach efforts specific to those individuals not required to file tax returns.

    B. Reviewed the form/forms the IRS had developed for these taxpayers for accuracy and clarity.

V.    Determined whether the IRS took steps to identify and protect the TETR program from fraudulent claims.

    A. Discussed with the project coordinator whether this issue had been considered and what steps had been implemented to protect against fraudulent claims.

    B. Evaluated any controls implemented to protect against fraud for effectiveness and efficiency.

VI.   Determined why some taxpayers claimed excessive amounts of the credit.

    A. Reviewed the Form 8913 and its instructions to determine whether procedures and instructions were clear as to the amounts that are authorized to be claimed.

    B. Reviewed and analyzed a random nonstatistical sample of 30 returns on which an excessive amount of TETR appeared to have been claimed on Form 8913. We

---

[1] The Master File is the IRS database that stores various types of taxpayer account information. This database contains individual, business, and employee plans and exempt organizations data.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

selected our random nonstatistical sample by using a random selection computer program to identify 30 cases from the population of 28,049 taxpayers (processed through February 24, 2007) filing a Form 8913 with a TETR amount claimed that exceeded a specific dollar amount. We used a random nonstatistical sample because we were not projecting outcomes from our sample.

C. Obtained and reviewed audit reports available on taxpayers whose audits resulted in reduction of the amounts claimed. Also held discussions with tax examiners reviewing TETR returns to determine causes for excessive claims.

VII. Determined why some taxpayers did not claim the credit and whether the IRS had plans to allow these taxpayers to claim the credit in the future.

A. Selected a random nonstatistical sample of 500 taxpayers who had not claimed the credit. We selected our random nonstatistical sample by using a random selection computer program to identify returns from the population of 24,894,530 taxpayers (processed through April 4, 2007) filing a return but not claiming TETR. We used a random nonstatistical sample because we were not projecting outcomes from our sample.

B. Developed a list of standard questions to ask the taxpayers when contacted.

C. Contacted nine[2] taxpayers who had prepared their own returns and determined why they did not claim the credit.

D. Determined whether the IRS had any additional actions planned to address those individuals that did not claim the credit.

VIII. Determined whether the IRS had controls and procedures in place to properly work duplicate returns (taxpayers who filed both a Request for Refund of Federal Telephone Excise Tax (Form 1040EZ-T) and a Form 1040 series return).

A. Discussed with the project coordinator whether this issue had been considered and what steps had been implemented to identify and prevent or reject duplicate returns.

B. Evaluated any controls and procedures implemented to prevent duplicate claims.

C. Evaluated any controls and procedures implemented to prevent claims from being disallowed when a second return was filed to claim the TETR not claimed on the original return.

---

[2] Nine is the maximum number of people that can be contacted to collect information under the Paperwork Reduction Act (5 C.F.R. § 1320.3(c)) (1995) without approval from the Office of Management and Budget. Time constraints prevented us from obtaining this approval.



*Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

IX.  Determined whether the IRS made provisions to address individuals not required to file tax returns.

   A.  Determined whether programming was in place to ensure the filing of a Form 1040EZ-T did not establish new filing requirements for the individual.

   B.  Determined how and whether the IRS had estimated the number of affected individuals.

X.  Determined whether efforts made by the Compliance function were adequate to deter and prevent excessive TETR claims.

   A.  Obtained and evaluated IRS performance measurement data regarding the claims as provided weekly by IRS personnel. We determined the accuracy of the data by comparing IRS data to data extracted from the Treasury Inspector General for Tax Administration Data Center Warehouse[3] and resolved any discrepancies. A computer extract was made identifying returns in which the TETR was claimed by filing a Form 8913. We scanned records in the extract to assess the accuracy of the data and determined the data to be reliable. Tests conducted to assess the data's reliability included matching extracted data to original IRS databases and also verifying that the returns met required criteria.

   B.  Reviewed and analyzed a statistically valid sample of 600 returns with TETR claims for amounts greater than the dollar threshold levels and determined whether the returns had been frozen and selected for audit. Our sample was chosen from the population of 12,122 taxpayers (processed through May 19, 2007) who claimed TETR by filing a Form 8913 with a claim amount greater than the dollar threshold. We selected our sample using a 95 percent confidence level, 15 percent expected error rate, and 5 percent precision.

   C.  Analyzed the extract of claims filed on Form 8913 to determine whether suspicious and egregious claims existed by focusing on large-dollar claims, common preparers, common amounts, etc.

---

[3] The Data Center Warehouse is a collection of IRS databases containing various types of taxpayer account information that is maintained by the Treasury Inspector General for Tax Administration for the purpose of analyzing data for ongoing audits.

 *Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

**Appendix II**

# *Major Contributors to This Report*

Daniel R. Devlin, Assistant Inspector General for Audit (Small Business and Corporate Programs)
Kyle R. Andersen, Director
Larry Madsen, Audit Manager
L. Jeff Anderson, Lead Auditor
Greg A. Schmidt, Lead Auditor
Kyle D. Bambrough, Senior Auditor
Douglas C. Barneck, Senior Auditor
Bill R. Russell, Senior Auditor
Joseph Butler, Information Technology Specialist
Arlene Feskanich, Information Technology Specialist



**Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded**

**Appendix III**

# *Report Distribution List*

Acting Commissioner  C
Office of the Commissioner – Attn:  Acting Chief of Staff  C
Assistant Deputy Commissioner for Services and Enforcement  SE
Commissioner, Small Business/Self-Employed Division  SE:S
Commissioner, Wage and Investment Division  SE:W
Director, Campus Compliance Services, Small Business/Self-Employed Division  SE:S:CCS
Director, Communications, Liaison, and Disclosure, Small Business/Self-Employed Division SE:S:CLD
Director, Compliance, Wage and Investment Division  SE:W:CP
Director, Customer Assistance, Relationships, and Education, Wage and Investment Division SE:W:CAR
Director, Earned Income and Health Coverage Tax Credits, Wage and Investment Division SE:W:EITC
Director, Examination, Small Business/Self-Employed Division  SE:S:E
Director, Media and Publications, Wage and Investment Division  SE:W:CAR:MP
Director, Submission Processing, Wage and Investment Division  SE:W:CAS:SP
Director, Tax Forms and Publications, Wage and Investment Division  SE:W:CAR:MP:T
Chief Counsel  CC
National Taxpayer Advocate  TA
Director, Office of Legislative Affairs  CL:LA
Director, Office of Program Evaluation and Risk Analysis  RAS:O
Office of Internal Control  OS:CFO:CPIC:IC
Audit Liaisons:
     Deputy Commissioner for Services and Enforcement  SE
     Commissioner, Small Business/Self-Employed Division  SE:S
     Commissioner, Wage and Investment Division  SE



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

**Appendix IV**

# *Management's Response to the Draft Report*

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
ATLANTA, GA 30308

September 5, 2007

┌ RECEIVED
SEP - 5 2007

COMMISSIONER
WAGE AND INVESTMENT DIVISION

MEMORANDUM FOR MICHAEL R. PHILLIPS
DEPUTY INSPECTOR GENERAL FOR AUDIT

FROM:        Richard J. Morgante    
             Commissioner, Wage and Investment Division

SUBJECT:     Although Strong Efforts Were Made, a Significant Amount of the
             Telephone Excise Tax Overcollected From Individual Taxpayers
             May Never Be Refunded (Audit # 200630036)

Thank you for your positive assessment of IRS' efforts to successfully plan and manage
the Telephone Excise Tax Refund (TETR) initiative, the most widespread refund
program of its type ever undertaken by the IRS. I appreciate the opportunity to respond
to your report.

The IRS was successful in developing and implementing a process for eligible
taxpayers to request the TETR through the traditional IRS income tax processing
channels. Every individual, business, and tax-exempt organization was potentially
eligible to request the refund. As of August 6, 2007, the IRS had refunded $4.27 billion
for 92.76 million TETR requests including 92.22 million individual taxpayer returns
($3.96 billion in TETR requests) and .54 million business returns ($312 million in TETR
requests). Of individuals who requested the TETR, over 99 percent requested the
standard amount, greatly exceeding IRS expectations.[1]  We are currently conducting
analysis to review this unexpected trend as well as the lower than estimated filings of
1040EZ-T, *Request for Refund of Federal Telephone Excise Tax*, for individuals with no
filing requirement.

In administering the TETR, the IRS faced significant challenges. First, TETR was a
refund of excise tax that was collected and paid by a party other than the party entitled
to the refund. Second, the IRS did not have deficiency authority because it is an excise
tax, not an income tax refund, and there is no tax to assess against the party entitled to
the refund. In addition, the IRS could not use regular collection activities to recover
refunds if they were issued erroneously. For this reason, we decided to screen every

---

[1] The IRS estimated 74 percent of individual taxpayers would choose the standard amount.



**_Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded_**

2

refund prior to issuing it to the taxpayer. In addition, phone companies that collected and paid the tax to the IRS did not have complete records of the amount paid by individual taxpayers, keep billing records readily available beyond a certain period of time, or maintain records on how much tax each customer paid. Most individuals did not know how much they paid in Telephone Excise Tax (TET) and lacked the records to compute the TET amount paid. In addition to its known taxpayer base, we needed to educate and persuade approximately 10-30 million individuals[2] who did not have a filing requirement to request the telephone excise tax refund.

To address these challenges, we developed objectives for managing and implementing the TETR. The objectives were to 1) minimize taxpayer and IRS burden associated with requesting, processing, and paying the refund, 2) minimize TET refunds in excess of taxes collected, and 3) discourage overstated refund requests. Moreover, we put processes in place to monitor the TETR implementation, including regular communication, issues and risk management, and capturing and reporting performance measures.

To reduce the burden of requesting the refund, we developed alternative methods (i.e., Standard Amounts and the Estimation Formula) to request the refund in addition to allowing taxpayers to request a refund of the actual tax amount paid. Extensive feedback was solicited from taxpayers, tax preparers, advocacy groups, and the telecommunications industry to develop a fair and reasonable method of refunding the monies collected.

Telephone companies received approximately $8 billion from residential customers and $5 billion from business customers in excise tax for their long-distance and bundled service during the applicable refund period.[3] When developing the standard amount, we estimated that approximately $10 billion would be refunded to eligible individuals – above the amount we estimated to have been collected. However, the IRS refunded just over $4 billion.

The 2006 tax forms were updated to include a line for the TETR. Utilizing the existing income tax filing system encouraged compliance and reduced burden on taxpayers and IRS. For the 2007 tax year, TETR language will be included in tax packages and will provide similar language to tax software vendors that explain to taxpayers they may still request TETR by filing an amended 2006 return or filing a 2006 1040EZ-T, if eligible. The TETR will not be available on 2007 tax forms.

As you mention in your report, the IRS developed detailed strategies to educate taxpayers about TETR. We implemented a comprehensive communications and

---

[2] *'Repaying An Invalid Excise Tax To Low-Income Households That Do Not File Income Tax Returns',* Center on Budget and Policy Priorities, August 3, 2006
[3] Source: TNS Telecom data



*Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

3

outreach strategy focused on awareness, education, maximizing media reach, and publicizing compliance issues. Before and during the filing season, the IRS issued twenty-two news releases and eight "Tax Tips." The TETR message was included in over 4,000 articles and interviews in magazines and various media outlets throughout the country, and the estimated media reach of magazines alone was more than eighty-eight million readers. In addition, the reach for paid advertising (i.e., advertising the IRS paid to have included in newspapers and other media) exceeded fourteen million taxpayers.

The IRS also launched a comprehensive TETR web page, which has been viewed by more than four and a half million taxpayers, tax practitioners, and other stakeholders. The TETR site included an extensive list of frequently asked questions (FAQs) to answer taxpayer and employee questions about TETR. Over two and a half million people viewed the TETR FAQs. Over one million TETR forms were downloaded from the site. Additionally, we provided information to individual tax preparers and representative organizations through newsletters, national phone forums, teleconferences, and multiple tailored briefings, reaching over one hundred thousand tax professionals.

As noted in the report, the IRS developed a comprehensive strategy to address the most egregious TETR claims. The TETR Compliance Review Council met weekly to monitor TETR requests, discuss emerging issues, adjust the weekly work plan, and plan appropriate compliance and communications activities. Early in the filing season, we set audit selection criteria based on available resources, exam time required, and the estimated dollars protected per case (compared to other exam cases). We also considered exam priorities for other refund programs in developing a balanced compliance program and utilized all available resources to examine virtually every return that met the audit selection criteria. To date, we have examined over twelve thousand TETR returns.

Although TIGTA correctly reported that 97 percent of the TETR cases examined resulted in a change to the amount of credit claimed, we do not agree with TIGTA's belief that sending out notices giving the taxpayers the opportunity to self-correct their TETR claims before the refunds were issued would have been effective. The majority of audit cases were closed without a taxpayer response within 30 days.

We believe sending notices allowing for self-correction to taxpayers who did not meet the audit selection criteria, but had unusually high claims, would have garnered little response and further strained scarce compliance resources. It is important to keep in mind that without taxpayer response to the notices, the refunds would have been released without further follow-up. The IRS would not have been able to open examinations on all returns of taxpayers who were sent notices but did not self-correct.



***Although Strong Efforts Were Made, a Significant Amount
of the Telephone Excise Tax Overcollected From
Individual Taxpayers May Never Be Refunded***

4

These additional examinations would have only been possible at the expense of other scheduled examination work.

Our response to your recommendations is attached.  If you have any questions, please call me at (404) 338-7060, or members of your staff may contact David R. Williams, Director, Electronic Tax Administration and Refundable Credits, at (202) 622-7990.

Attachment



*Although Strong Efforts Were Made, a Significant Amount of the Telephone Excise Tax Overcollected From Individual Taxpayers May Never Be Refunded*

Attachment

**RECOMMENDATION 1**
The Commissioner, Wage and Investment Division, should identify demographics that had relatively low rates of claims and provide additional information to these taxpayers on how they might still claim the TETR; evaluate outreach methods used to notify taxpayers and determine what was and what was not effective; and use the information gained from the evaluation to develop more effective outreach programs in the future.

**CORRECTIVE ACTION**
We agree with this recommendation and had begun to implement the recommendations before the issuance of this report. We have reviewed demographic data throughout the filing season and performed targeted outreach such as placing TETR advertisements in markets that initially showed low telephone excise tax request rates. However, post April 17 state-by-state data did not reveal significant variances in TETR request rates across geographic regions that would have facilitated additional targeted outreach and educational campaigns. We identified "lessons learned" in our communications efforts to determine what was and was not effective and are using those findings to help develop outreach strategies for other initiatives.

We will include TETR information in the 2007 tax package and will work with tax preparation software providers to include guidance to taxpayers on filing amended returns or Form 1040EZ-Ts to request TETR.

**IMPLEMENTATION DATE**
December 15, 2007

**RESPONSIBLE OFFICIAL**
Director, Customer Assistance, Relationships & Education (CARE), Media and Publications, Wage and Investment (W&I) Division

**CORRECTIVE ACTION MONITORING PLAN**
We will monitor this corrective action as part of our internal management control system.

**RECOMMENDATION 2**
The Commissioner, Wage and Investment Division, should ensure new forms, particularly those of a complex nature, are focus tested on some level before issuance.

**CORRECTIVE ACTION**
We agree with this recommendation and appreciate TIGTA's recognition of the short timeframe that was available to develop Form 8913, *Credit for Federal Telephone Excise Tax Paid*. The instructions for the form were still being developed in November 2006 due to open policy decisions on how the telephone excise tax would be refunded. Therefore, focus tests could not be conducted late in the development process and still make the form available in a timely fashion. The IRS generally does not conduct focus



*Although Strong Efforts Were Made, a Significant Amount*
*of the Telephone Excise Tax Overcollected From*
*Individual Taxpayers May Never Be Refunded*

2

tests for one-time use forms. However, the IRS will, on a case-by-case basis, assess whether focus testing should be conducted for new forms, depending on the unique factors in each case (e.g., distribution to a large percentage of taxpayers).

**IMPLEMENTATION DATE**
N/A

**RESPONSIBLE OFFICIAL**
N/A

**CORRECTIVE ACTION MONITORING PLAN**
N/A

**RECOMMENDATION 3**
The Commissioner, Wage and Investment Division, should follow up on the 26,068 taxpayers we provided to the IRS to ensure the postcards or tax packages are suppressed from being mailed next year.

**CORRECTIVE ACTION**
We agree with this recommendation and will manually suppress the 2007 tax packages for filers who did not have a 2006 filing requirement but used a 1040EZ, 1040A, or 1040 form to request TETR instead of using Form 1040EZ-T. TIGTA supplied the list of identified taxpayers that fall into this situation, and we will suppress the mailing of unnecessary tax packages to these individuals.

**IMPLEMENTATION DATE**
January 15, 2008

**RESPONSIBLE OFFICIAL**
Director, CARE, Media and Publications, W&I Division

**CORRECTIVE ACTION MONITORING PLAN**
We will monitor this corrective action as part of our internal management control system.