## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | : | |
| | : | MDL Docket No. 1798 |
| LONG-DISTANCE TELEPHONE SERVICE | : | Master File: 07-mc-0014 (RMU) |
| FEDERAL EXCISE TAX REFUND LITIGATION | : | |
| | : | |
| This Document Relates To | : | |
| *Cohen v. United States* | : | 07-cv-0051 (RMU) |
| *Gurrola v. United States* | : | 07-cv-0050 (RMU) |
| *Sloan v. United States* | : | 06-cv-0483 (RMU) |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTIONS TO DISMISS

### I. INTRODUCTION

Transferred to this district and coordinated for pretrial purposes, these cases collectively challenge the Internal Revenue Service's ("IRS") procedure for issuing refunds of a defunct long-distance telephone excise tax. The plaintiffs, 14 individuals and 2 companies, allege that the IRS illegally collected federal taxes from them in connection with their purchase of long-distance telephone services. They seek recovery of sums paid, as well as certain injunctive and declaratory relief. The sole defendant, the United States, submits that the court lacks subject-matter jurisdiction over any of the plaintiffs' claims, contending that they failed to comply with the terms of waiver of sovereign immunity; that injunctive and declaratory relief is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a), the Declaratory Judgment Act, 28 U.S.C. § 2201, and is moot following the IRS's decision to cease collecting the tax; and that the complaints fail to state claims for relief under either the U.S. Constitution or any federal statute, including the Administrative Procedure Act, 5 U.S.C. § 702. Because the court agrees that the plaintiffs failed to exhaust their administrative remedies before filing suit, it dismisses their refund claims.

Likewise, as intervening events have mooted the plaintiffs' claims for injunctive and declaratory relief, the court dismisses those. And, finally, because the plaintiffs' remaining causes of action under federal law fail to state a claim, they too fail.

## II. BACKGROUND

### A. Factual History

The facts are free of conflict. For nearly forty years, § 4251 of the Internal Revenue Code empowered the IRS to collect a three-percent excise tax on long-distance telephone calls. *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 374-75 (D.C. Cir. 2005). Two years ago, in a span of decisions separated by not more than twelve months, five federal appeals courts unanimously declared the IRS's reliance on § 4251 to be unlawful. *Reese Bros., Inc. v. United States*, 447 F.3d 229, 234 (3d Cir. 2006); *Fortis, Inc. v. United States*, 447 F.3d 190, 190 (2d Cir. 2006); *Nat'l R.R. Passenger Corp.*, 431 F.3d at 379; *OfficeMax, Inc. v. United States*, 428 F.3d 583, 600 (6th Cir. 2005); *Am. Bankers Ins. Group, Inc. v. United States*, 408 F.3d 1328, 1338 (11th Cir. 2005).

The IRS heeded this juridical clarion and, on May 25, 2006, announced that it was discontinuing collection of the tax effective July 31, 2006. IRS Not. 2006-50, 2006-25 I.R.B. 1141 § 4(c) (May 26, 2006) ("Notice 2006-50"). Notice 2006-50 also announced the implementation of a refund procedure for taxes paid between February 28, 2003 and August 1, 2006, by which taxpayers could file claims on their federal income tax returns, requesting either a full refund (provided they retained substantiating records) or a "safe harbor" amount (ranging between thirty and sixty dollars). *Id.*

**B. Procedural History**

This MDL combines three lawsuits. Plaintiffs Oscar Gurrola and Rosalva Gurrola filed a complaint against the defendant on June 5, 2006. Gurrola Compl. They filed their first amended complaint on June 22, 2006. It adds Bernadette Carol Duffy as a plaintiff, alleges that the collection of the excise tax violates the Fifth Amendment's Takings Clause and the Uniformity Clause of Art. I, §8 of the U.S. Constitution, portrays the collection of the tax as an illegal exaction, claims unjust enrichment and violations of 47 U.S.C. § 201(b) and Truth-In-Billing regulation 47 C.F.R. 64.2401(b), and seeks restitution, a refund of sums paid, and injunctive relief. Gurrola First Am. Compl. ¶¶ 90, 95, 99, 103, 109, 114, 117, 133.

Plaintiffs Virginia Sloan, Gary Sable, Robert McGranaham, Shari Perlowitz, Catering by Design, Inc., Joan Denenberg, Carolyn Hrusovsky, Reginald Krasney, Stacy Markowits, Marion Sachuk, James Gillins and NCS Companies, Inc. filed a complaint against the defendant on March 15, 2006, which contained claims for violations of the Fifth Amendment's Due Process and Takings Clauses, unjust enrichment, injunctive and declaratory relief enjoining the IRS from continuing collection of the excise tax, and APA claims alleging that collection of the tax exceeds IRS authority and that the IRS has unreasonably refused to promulgate regulations to enable taxpayers to seek refunds of the excise tax. Sloan Compl. ¶¶ 43, 39, 52, 56, 64, 70. They filed an amended complaint on May 3, 2006, which added a claim of illegal exaction, a claim for a tax refund and a claim for a writ of mandamus. Sloan First Am. Compl. ¶¶ 94, 118, 123. They filed a second amended complaint on July 6, 2006, which alleged new due process violations, infringements on substantive due process rights, and new APA claims that Notice 2006-50 exceeds the IRS's authority and was improperly promulgated without rulemaking, and sought

3

declaratory and injunctive relief against implementation of Notice 2006-50. Sloan Second Am. Compl. ¶¶ 67, 76, 82, 89, 112, 118.

Plaintiff Neiland Cohen submitted an administrative refund claim to the IRS on November 18, 2005, then filed suit on his own behalf and that of similarly situated taxpayers on November 29, 2005 for an injunction against enforcement of the excise tax. Cohen Compl. ¶¶ 5, 24. Cohen filed an amended complaint on February 6, 2006 to add a tax-refund count to his suit, alleging exhaustion of administrative remedies in that the U.S. "has formally rejected [the plaintiff's] refund request." Cohen Am. Compl. ¶¶ 16-19. On July 24, 2006, the defendant filed a request for dismissal of the refund claim for lack of subject-matter jurisdiction. On July 26, 2006, the court, in recognition of the IRS's decision to stop collection of the excise tax, granted the plaintiff's motion to deny as moot the defendant's motion to dismiss the plaintiff's injunction claim. Order (July 26, 2006). On November 27, 2006, Cohen filed a second amended complaint, adding an APA claim for judicial review of the IRS's new refund mechanism. Cohen Second Am. Compl. ¶¶ 26-29; 5 U.S.C. § 702. At this time, Cohen also updated his refund request to include the period from July 1, 2002 through July 31, 2006 (the last day the tax was collected), reflecting a total refund claim of $54.84. Cohen Second Am. Compl. ¶¶ 22-25. On August 10, 2007, the court issued an order and opinion sustaining Cohen's APA claim against a motion to dismiss filed by the defendant. Mem. Op. (Aug. 10, 2007).

The proceeding analysis addresses and resolves all outstanding dispositive motions, to wit: (1) the defendant's motion to dismiss Gurrolas' first amended complaint for lack of subject-

matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process[1], and failure

to state a claim; (2) the defendant's motion to dismiss Sloan's second amended complaint for

lack of subject-matter jurisdiction and failure to state a claim; and (3) the defendant's motion to

dismiss the tax refund claim raised in Cohen's second amended complaint for lack of subject-

matter jurisdiction.

## III.  ANALYSIS

### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)[2]

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.*

*Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a

---

[1]     The court here summarily considers the claim that the Gurrola plaintiffs fail to
demonstrate personal jurisdiction because of a deficiency of service.  The defendant argues that
the court lacks personal jurisdiction over the defendant because service was not effectuated
according to Federal Rule of Civil Procedure 4(i)(1)(A) and 4(i)(1)(B) respectively, as the
plaintiffs sent the summons and complaint by regular rather than certified or registered mail, and
the plaintiffs did not send copies to the Attorney General or IRS.  Gurrola Def.'s Mot. to Dismiss
at 25.  The Gurrola plaintiffs respond that they have 120 days from filing to perfect service, i.e.,
until October 3, 2006, and have now done so.  Gurrola Pls.' Opp'n at 22 (citing FED. R. CIV. P.
4(m)).  The defendant does not counter this point in its reply.  Gurrola Def.'s Reply.  The docket
indicates that proof of service was executed on the defendant United States on September 5,
2006.  Proof of Service at 81, *Oscar Gurrola v. United States*, No. 06-3425 (C.D. Cal. Oct. 5,
2006).  Absent indication by the defendant that it objects to an amendment of service, and
recognizing that the courts routinely permit a defendant to, in a timely fashion, cure defective
service on the government, FED. R. CIV. P. 4(i)(3) and *Gargano v. IRS*, 207 F.R.D. 22, 23 (D.
Mass. 2002), the court denies the defendant's motion on this issue.

[2]     Because it was filed after the close of pleadings, the defendant's request is (technically)
denominated a "suggestion" to the court that it lacks subject-matter jurisdiction but (effectively)
treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  *S.J. v. Hamilton*
*County*, 374 F.3d 416, 418 n.1 (6th Cir. 2004).

court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

As subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

6

### B.  The Procedure for Challenging an Unlawful Federal Tax

Before treading into this jurisdictional maze, the court pauses to review the established

legal infrastructure for obtaining a tax refund.  At the outset, a taxpayer challenging a tax must

first file a refund claim with the IRS.  *See* I.R.C. § 7422(a) (providing that "[n]o suit or

proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until

a claim for refund . . . has been duly filed with the Secretary, according to the provisions of law

in that regard, and the regulations of the Secretary established in pursuance thereof").  The

Secretary by regulation requires that claims for refund:

> set forth in detail each ground upon which a credit or refund is claimed and facts
> sufficient to apprise the Commissioner of the exact basis thereof.  The statement of
> the grounds and facts must be verified by a written declaration that it is made under
> the penalties of perjury.  A claim which does not comply with this paragraph will not
> be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402-2(b)(1).  The requirement for filing a proper refund claim "is designed

both to prevent surprise and to give adequate notice to the Service of the nature of the claim and

the specific facts upon which it is predicated, thereby permitting an administrative investigation

and determination."  *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cl.

2006) (citation omitted).  The claim must be filed timely: after the tax has been paid, *Rosenman

v. United States*, 323 U.S. 658, 658 (1945), but before the expiration of the time for filing, *United

States v. Dalm*, 494 U.S. 596, 602 (1990), which occurs "3 years from the time the [tax] return

was filed or 2 years from the time the tax was paid, whichever of such periods expires the later,"

I.R.C. § 6511(a).

If a claim is filed and the IRS denies it or withholds a response for six months, a claimant

may file a refund suit against the United States in the Federal Claims Court or a federal district

7

court.  I.R.C. § 7422(a); I.R.C. § 6532; 28 U.S.C. § 1346(a).  In a refund suit, the taxpayer must

prove both the excessiveness of the assessment and the correct amount of any refund to which

she is entitled.  *United States v. Janis*, 428 U.S. 433, 434 (1976).  When the claim is filed within

the three-year limitation period, "the amount of the credit or refund shall not exceed the portion

of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years."

I.R.C. § 6511(b)(2).  This is the only limit on recovery in a refund suit – thus, "where the

taxpayer timely files a tax return, pays the tax, files a timely administrative claim, and then is

assessed an additional tax, which the taxpayer pays, . . . . a taxpayer . . . [need not] exhaust his

administrative remedies twice."  *Keeter v. United States*, 957 F. Supp. 1160, 1163, 1165 (E.D.

Cal. 1997).  Simply stated, a refund may include additional taxes paid after the filing of a refund

claim, so long as the total does not exceed the portion of tax paid prior to the administrative

claim.  *Lundy v. IRS*, 45 F.3d 856, 858 (4th Cir. 1995); *Keeter*, 957 F. Supp. at 1164.

### C.  The Court Lacks Subject-Matter Jurisdiction over the Plaintiffs' Refund Claims

#### 1.  The Gurrola Plaintiffs Fail to Allege Exhaustion of Administrative Remedies

The defendant takes pains to make clear that a tax refund suit is the exclusive remedy for

a taxpayer to recovery wrongfully collected taxes.  The United States has waived its sovereign

immunity against such suits, but only to the extent that a plaintiff has first filed a timely claim

with the IRS.  Gurrola Def.'s Mot. to Dismiss at 19.  The Gurrola plaintiffs admit that they have

filed no claims with the IRS for refunds of sums they have paid on the excise tax.  Gurrola Am.

Compl. ¶ 108.  Nevertheless, they argue that the defendant has "waived the requirements of a

prior administrative request by rendering futile all possible current requests for the refund."  *Id.* ¶

107.  In support thereof, they observe that Notice 2005-79 "preemptively denied all possible

8

refund requests" when it declared that the IRS would continue to litigate the legality of the tax. Gurrolas' Opp'n to Def.'s Mot. to Dismiss ("Gurrolas' Opp'n") at 18. Moreover, they continue, Notice 2006-50 (which superceded Notice 2005-79) announced that refund claims could only "be brought after the close of the 2006 calendar year," the effect of which "was to place Plaintiffs on notice that, even if they had filed an administrative request, no such request would be processed within the six month time period required by statute." *Id.* at 18-19. These circumstances, along with the fact that the IRS has "fully investigated the merits of the [plaintiffs'] claims," *id.* at 21, should leave the court disposed to treat the exhaustion requirement as either waived by the IRS or excused as futile. *Id.* In the alternative, the plaintiffs propose that the court treat their civil complaint as "a satisfactory request for a refund," because "it put the Treasury on notice of the nature of the claims and permitted the Commissioner's agents to focus on the merits of the claims." *Id.*

The Gurrola plaintiffs' arguments fail. As for their defense that Notice 2005-79 preemptively denied all refund requests, this point is inapposite. Notice 2006-50 superceded Notice 2005-79 on May 25, 2006, advising tax payers of a new procedure for filing excise tax refund requests that the IRS would honor. IRS Not. 2006-50, 2006-25 I.R.B. 1141. The Gurrola plaintiffs did not file suit until June 5, 2006. Thus, they cannot credibly claim that the IRS had foreclosed any opportunity for them to file an administrative refund.

Nor is the fact that Notice 2006-50 restricted the filing of refund claims to the close of the 2006 calendar year of consequence. The Gurrola plaintiffs complain that if they had – presumably in willful disregard of agency instructions – filed a refund request immediately, the IRS would not have rendered a decision on it within the six-month time period required by

9

statute. Gurrola's Opp'n at 18. But the six-month time period does not commence until the

refund is filed, I.R.C. § 6532(a)(1), and the Gurrola plaintiffs cite no authority for the proposition

that a taxpayer has a right to file a refund claim in preemption of the dates set by the IRS's

regulations – so long as the agency's schedule does not prejudice the taxpayer's claims under the

statute of limitations. *See* 26 U.S.C. § 6511(a) (requiring that a claim be filed "within 3 years

from the time the return was filed or 2 years from the time the tax was paid, whichever of such

periods expires the later"); 26 U.S.C. § 6511(b) (limiting the amount of refund to taxes paid with

reference to periods in §6511(a)). In fact, Notice 2006-50 explicitly advises:

> The Commissioner will authorize the scheduling of an overassessment under § 6407
> to preserve the period of limitations during which taxpayers may request refunds of
> the tax on nontaxable service that was billed to customers after February 28, 2003,
> and before August 1, 2006. Therefore, requests may be made for credits or refunds
> of tax paid for nontaxable service billed after February 28, 2003, and before August
> 1, 2006.

2006-25 I.R.B. 1141 § 5(b). The prescribed filing date, therefore, does not excuse the Gurrola

plaintiffs' failure to file a refund claim.

Finally, the Gurrola plaintiffs' suggestion that the court treat their civil complaint as a

substitute for a properly filed administrative refund claim deserves little comment beyond the

observation that it is meritless. The fact that the IRS has full knowledge of the subject matter of

the claim or would probably reject it if filed does not dispense with the necessity of filing a

claim. *E.g.*, *Miller v. United States*, 949 F.2d 708, 711 (4th Cir. 1991) (refusing to recognize that

IRS had informal notice of a claim when taxpayer submitted no written refund request); *United*

*States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 270 (1931) (refusing to recognize futility as

excuse for failing to file refund claim); *Bartley v. United States*, 123 F.3d 466, 468 (7th Cir.

1997) (same) (citing *Felt*, 283 U.S. at 270). The cases to the contrary cited by the Gurrola

10

plaintiffs are uniformly off point. *See Dale Distrib. Co. v. Comm'r*, 269 F.2d 444, 446 (2d Cir.

1959) (allowing plaintiff, who filed a refund claim, to recover additional taxes not mentioned

initially but ultimately discovered by IRS after a complete investigation); *Continental Ill. Nat'l*

*Bank & Trust Co. of Chicago v. United States*, 39 F. Supp. 620, 629 (Fed. Cl. 1941) (finding

waiver of requirement that refund not precede overpayment of tax when IRS investigated merits,

collected tax, approved refund, then reversed itself by invoking technicality). In six simple

words: no refund claim, no refund suit.

### 2. The Sloan Plaintiffs Who Did File Refund Claims Cannot Demonstrate Exhaustion of Administrative Remedies Because They Failed to Follow IRS Claims Procedures

Plaintiffs Sloan, Sable, McGranahan and Perlowitz admit that they did not file refund

claims with the IRS. Sloan First Am. Compl. ¶ 11. None of the pleadings indicates that plaintiff

James Gillins ever filed a refund. Plaintiffs Sachuk, Hrusovsky, Markowitz, Denenberg and

Catering by Design, Inc. allege that they each filed refund claims on dates within five months

prior to the filing of the amended complaint but do not allege that the IRS has acted upon the

claims. Sloan Second Am. Compl. ¶ 23. Only plaintiffs Krasney and NCS Companies received

a response from the IRS, requesting additional documentation to process their claims. *Id.*, Exs.

8, 10. Additionally, only NCS Companies indicated an amount to be repaid in its claim, though

it did not set forth a legal basis for the claim. *Id.*, Ex. 9. On the basis of the preceding facts, the

defendant argues that the Sloan plaintiffs have not demonstrated that they satisfy the

prerequisites to suit: (1) filing a timely administrative refund claim; and (2) waiting to file suit

until six months after filing a claim or until receiving a decision on the claim by the IRS. Sloan

Def.'s Mot. to Dismiss at 14.

The Sloan plaintiffs assay numerous defenses. First, they argue that, before the IRS

issued Notice 2006-50, the Secretary of the Treasury had not promulgated any regulations

enabling individual taxpayers (in contradistinction to phone companies who collected the tax) to

claim excise tax refunds.  Sloan Pls.' Opp'n to Def.'s Mot. to Dismiss ("Sloan Pls.' Opp'n") at

31.  Moreover, they consider even Notice 2006-50 to be unsatisfactory because it limits refund

claims to a method (2006 income tax returns) "not available to the literally millions . . . who do

not file income tax returns."  *Id.* at 34.  The defendant replies that difficult or confusing IRS

instructions do not excuse jurisdictional prerequisites to suit.  Sloan Def.'s Reply at 19.

The Sloan plaintiffs have not alleged that Sloan, Sable, McGranahan, Perlowitz or Gillins

ever filed a refund.  Their defense that the Secretary of the Treasury never promulgated any

regulations enabling individual taxpayers to claim excise tax refunds rings hollow.  Even

assuming, *arguendo,* that the IRS had not promulgated a formal refund mechanism for

individuals, the law permits a plaintiff to satisfy the exhaustion requirement by filing an informal

claim that contains the requisite minimal information.  *See, e.g.*, *United States v. Kales*, 314 U.S.

186, 194  (1941); *PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United

States*, 234 F.3d 873, 877 (5th Cir. 2000) (explaining that an informal administrative claim is

sufficient to confer jurisdiction on a district court if it is timely filed and: (1) puts the Internal

Revenue Service (IRS) on notice that the taxpayer believes an erroneous tax has been assessed;

(2) describes the tax and year with sufficient particularity to allow the IRS to undertake an

investigation; and (3) has a written component").  Thus, they could have filed an informal claim,

then perfected it by later filing a formal claim under Notice 2006-50.  *See PALA*, 234 F.3d at 879

(explaining that "courts will excuse harmless noncompliance with the formalities prescribed for

refund claims . . . predicated on an expectation that these formal deficiencies will at some point

be corrected") (internal quotation omitted).  And even had they used the wrong form, or if the IRS had failed to prescribe a form for individual taxpayers, these *Sloan* plaintiffs could have filed an inadequate formal claim that might constitute an adequate informal claim – as other *Sloan* plaintiffs actually did.  *See infra*.  Indeed, Notice 2005-79, which announced that the IRS would not process any claims while cases were still pending on the legality of the excise tax, explicitly advised taxpayers to "preserve any claims for overpayments by filing administrative claims for refund with the Service pursuant to § 6511."  IRS Not. 2005-79.  These plaintiffs chose to do nothing at all, which is what now remains of their refund claims.

Likewise, the plaintiffs' dissatisfaction with Notice 2006-50's use of 2006 income tax returns for filing refund claims does not excuse their omissions.  Congress has clearly stated: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary."  26 U.S.C. § 7422(a); *Lindsey v. United States*, 448 F. Supp. 2d 37, 60 (D.D.C. 2006).  The procedure promulgated by the IRS for filing such refund claims with the Secretary is contained in 26 C.F.R. § 301.6402-2.  That regulation directs taxpayers seeking non-income tax refunds to use the appropriate form: in this case, Notice 2006-50.  *Id.*  Claims for tax refunds must conform strictly to statutory requirements, *Rosenman v. United States*, 323 U.S. 658, 661 (1945), and the Commissioner has a right to insist on strict compliance with the regulations promulgated by him relating to refund claims, *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 295 (1945).  The proper procedure for pursuing a grievance with the duly prescribed rebate form is "to petition the Secretary for an amendment of the regulation and, if rejected, to seek review." *Amerikohl Min., Inc. v. United*

13

*States*, 16 Cl. Ct. 623, 627 (1989).  Granted, the plaintiffs have added APA claims directed against Notice 2006-50 for that purpose precisely, but that will not preserve their separate, discrete refund claims.  Because none of their arguments withstands inspection, the plaintiffs Sloan, Sable, McGranahan Perlowitz, and Gillins's refund claims are dismissed.

Moving along, plaintiffs Sachuk, Hrusovsky, Markowitz, Denenberg, and Catering by Design, Inc. allege that they each filed refund claims on dates within five months prior to the filing of their amended complaint, without having received a response from the IRS.  Because they do not allege that the IRS communicated a decision on their claim, which would excuse the six-month waiting period, their refund claims, for the same reasons given in the preceding analysis, cannot survive.

Krasney and NCS Companies do indicate that the IRS responded to their administrative request for a refund.  Krasney, however, did not indicate a refund amount in his claim.  Sloan Second Am. Compl., Ex. 2.  And while NCS Companies did do so, it did not set forth a legal basis for the claim.  *Id.*, Ex. 10.  The defendant contends that neither of their claims, therefore, includes "appropriate supporting evidence or facts sufficient to apprise the Commissioner of the exact basis of the claim, as is required by the [applicable statute and regulation]."  Sloan Def.'s Mot. to Dismiss at 13 (citing 26 U.S.C. § 7422(a) and 26 C.F.R. § 301.6402-2) (internal quotations omitted).

Section 301.6402-2 requires a taxpayer to state the specific grounds upon which a refund is claimed and the factual basis pertinent thereto.  26 C.F.R. § 301.6402-2(b)(1) (stating that "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof").  The regulation stresses

14

that "[a] claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." *Id.* This is precisely how the IRS treated Krasney and NCS's claims. In its letter to Krasney, the IRS states "we are unable to process your letter" and give it "no consideration," explaining that "we cannot allow your claim as filed as this time" without further information about the amounts and tax periods claimed broken down by quarter. Sloan Second Am. Compl., Ex. 8. Writing to NCS, the IRS indicates the same result, requesting more information about: (1) how NCS qualifies for this exemption; (2) evidence of the amounts and date the tax was paid to NCS; and (3) a summary of the total refund requested by quarter. *Id.*, Ex. 10. Krasney and NCS's claims might nevertheless qualify as inadequately-formal-but-satisfactorily-informal-claims, except for the fact that the former's does not describe the tax and year with sufficient particularity to allow the IRS to undertake an investigation, *PALA*, 234 F.3d at 877, and the latter's does not describe the basis for the refund, *Stoller v. United States*, 444 F.2d 1391, 1393 (5th Cir. 1971); *Iowa 80 Group, Inc. & Subsidiaries v. United States*, 203 F. Supp. 2d 1058, 1063 (S.D. Iowa 2002). The court, therefore, dismisses their refund claims as well.[3]

---

[3]    In a last ditch attempt to salvage their claims, the Sloan plaintiffs argue that if "§ 7422 is held to require more than what have [sic] Plaintiffs have done for their claims . . . this Court would be imposing an impossible burden on Plaintiffs," to wit, (1) requiring them to file a claim when no mechanism existed by which to do so; and (2) expecting individual taxpayers to be aware of statutes of limitations and keep records of their excise taxes. Sloan Pls.' Opp'n at 39. This, the plaintiffs claim, would, by defeating the right of taxpayers to secure a refund, render § 7422 unconstitutional as applied. *Id.* at 40.

The above argument is refuted by the fact that plaintiff Krasney did file a refund claim (on February 6, 2006 on Form 8849), Sloan Second Am. Compl., Ex. 2, which the IRS rejected, not because he used the wrong form or procedure, but because (1) he claimed a refund on behalf of other persons and (2) he did not specify refund amounts and tax periods claimed broken down by quarter, *id.*, Ex. 8. Thus, the government did provide a post-deprivation remedy sufficient to satisfy due process concerns, *see Lepre v. Dep't of Labor*, 275 F.3d 59, 71 (D.C. Cir. 2001)

### 3. Plaintiff Cohen Filed His Refund Claim Prematurely, as the IRS's January 4, 2006 Letter Does Not Constitute a "Decision" Abrogating the Six-Month Waiting Period

Plaintiff Cohen claims that in November 2005 he filed a claim with the IRS for excise taxes exacted in 2004 and 2005.[4]  Cohen Decl. Supporting Mot. for Summ. J. ("Cohen Summ. J. Decl.") ¶ 8.  In a letter dated December 20, 2005, the IRS related that it had received his refund claim but stated: "We haven't resolved this matter because we haven't completed all the research necessary for a complete response.  We will contact you again within 45 days to let you know what action we are taking.  You don't need to do anything further now on this matter."  Def.'s Request for Dismissal of Pl.'s Refund Claim for Lack of Jurisdiction ("Cohen Def.'s Mot. to Dismiss") at 2, Cohen Summ. J. Decl., Ex. D.  The plaintiff waited and received a follow-up letter dated January 4, 2006.  Cohen's Opp'n to Def.'s Mot. to Dismiss ("Cohen Opp'n") at 2. That letter reads in its entirety: "We are unable to process your claim for the tax period(s) [ending Dec. 31, 2004] . . . .  The tax is currently a subject in litigation and additional information will be provided to you as it is received."  *Id.*; Cohen Summ. J. Decl., ¶ 10.  The

---

(holding that availability of post-deprivation remedy satisfied due process rights), even if it placed the burden of establishing the amount of the tax and the timeliness of the claim on the taxpayer, *see United States v. Janis*, 428 U.S. 433, 440 (1976) (affirming that taxpayer bears the burden of establishing not only the erroneousness of the collection but the amount thereof).

[4]    The parties disagree on whether the plaintiff's claim encompassed taxes for 2005 or only 2004. The plaintiff claims that his November 2005 claim comprised taxes paid over the past three years, Cohen Decl. Supporting Mot. for Class Certification ("Cohen Class Decl.") ¶ 2, but, as evidence thereof, he attaches only an undated, unsigned claim for 2005 taxes, Cohen Decl. Supporting Mot. for Summ. J. ("Cohen Summ. J. Decl."), Ex. C.  The defendant avoids directly stating whether it received a claim for 2005 taxes, instead focusing on the plaintiff's statement that the IRS never responded to his claim for 2005 taxes.  Def.'s Mot. to Dismiss at 2-3, 5. Where one party fails to be both comprehensive and forthright in his filings, he diminishes his own reputation and the persuasiveness of his briefings.  Where, as here, both parties fail, they undermine the adversarial process and thereby compromise the integrity of the court.  Because, however, the court's disposition does not turn on whether the January 4, 2006 letter addresses the plaintiff's 2005 taxes or only his 2004 taxes, the court will refrain from ordering clarification. The plaintiff's refund claim must be dismissed in either event.

plaintiff interpreted this as a denial of his claims for both 2004 and 2005, Pl.'s Opp'n at 13; he, therefore, proceeded to add a refund claim to his civil suit on February 6, 2006.

Section 6532(a)(1) of the Internal Revenue Code provides that: "No suit or proceeding . . . for the recovery of any internal revenue tax . . . shall be begun before the expiration of 6 months from the date of filing the claim . . . unless the Secretary *renders a decision* thereon within that time." I.R.C. § 6532(a)(1) (emphasis added). The defendant argues that the January letter did not render a "decision" on the plaintiff's claim. Rather, the letter withheld a decision, contingent on the outcome of pending litigation. Cohen Def.'s Mot. to Dismiss at 8. Thus, the defendant reasons, the plaintiff should have waited until May 18, 2006 before adding a refund claim to his civil suit. *Id.* at 7.

The defendant appeals to the plain meaning of the word "decision." A "decision," it states, "is a choice between alternatives . . . [either] allowance or disallowance." *Id.* Because an allowance would render a suit unnecessary, "the only 'decision' that the IRS could have made with respect to Plaintiff's claim that would have triggered the application of § 6532(a)(1) would have been a disallowance." *Id.* at 8. None of the hallmarks of finality – "disallow," "deny," "right to appeal"– appear in the letter, however. *Id.* Next, the plaintiff maintains that to adopt a broad definition of "decision" would obstruct the purpose of the statute, namely, to afford the IRS a period in which to consider the merits of claims and thereby avoid unnecessary litigation. Def.'s Reply at 3. Finally, to the extent that the word "decision" is ambiguous, the statute in which it appears must be construed favorably to the United States because it waives sovereign immunity. Def.'s Mot. to Dismiss at 10.

The plaintiff counters that a decision not to proceed is still a decision. Pl.'s Opp'n at 2.

He argues that because the January letter formally communicated the IRS's intention to take no further action on his claim, the letter constituted a decision or its equivalent. *Id.* at 4. Moreover, the plaintiff continues, if Congress had meant "disallowance," it could have used that word, as it in fact did in the next clause of the very same sentence. *See id.* at 7 (citing 26 U.S.C. § 6532(a)(1) (providing that "[n]o suit . . . shall be begun before the expiration of 6 months . . . unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing . . . by the Secretary to the taxpayer of a notice of the disallowance of the . . . claim")).

The issue is razor close, but the defendant's arguments cut deeper. The term "decision" as used in the statute should receive a reasonable interpretation in light of its purpose. *See A.G. Reeves Steel Const. Co. v. Weiss*, 119 F.2d 472, 476 (6th Cir. 1941) (holding that it is not "necessary that any particular form should be used by the Commissioner in allowing or rejecting a claim for refund . . . . [so long as] the taxpayer has adequate notice of the Commissioner's action on the claim"). Different policy considerations underlie the two deadlines established by § 6532. The first portion of the statute establishes a six-month period – unless the IRS "renders a decision" in the interim – for the IRS to consider the claim before suit is filed, so that a meritorious claim "can be resolved administratively, thereby avoiding needless litigation." *Sorenson v. Sec'y of U.S. Treasury*, 752 F.2d 1433, 1439 (9th Cir. 1985). The second portion establishes a 2-year period, initiated by the mailing of a "notice" of "disallowance," as a deadline after which suit is precluded. 26 U.S.C. § 6532(a)(1). The statute is carefully worded – its language virtually unaltered since its enactment in 1921, *Register Pub'g Co. v. United States*, 189 F. Supp. 626, 628 (D. Conn. 1960) – and is structured so that the first portion focuses on the

18

IRS's objective, decision-making process, while the second portion focuses on the taxpayer's subjective awareness of the onset of the statute of limitations. *See Sorenson*, 752 F.2d at 1439 (explaining that "[n]otice to the taxpayer has no bearing on the policy reasons [behind the waiting period]").

With this in mind, a number of principles resolve into focus. First, the statute does not require more than one decision or a decision plus further administrative action. *Register*, 189 F. Supp. at 628. If the IRS, by its actions or representations, puts the ball in the taxpayer's court, then the court will hold the IRS accountable as having rendered a decision, even if the IRS holds out the possibility that it could change its mind later. *Id.* at 630, 631; *see also Gervasio v. United States*, 627 F. Supp. 428, 430 (N.D. Ill. 1986) (holding that IRS's refusal to accept and later mailing back of plaintiff's refund claim constituted a decision denying the claim). Second, the IRS's action should be construed in the context of surrounding circumstances; thus, when the IRS denies a claim by necessary implication even if not by explicit action, it cannot hide behind this pretense to later claim that it never rendered a decision. *Stephens v. United States*, 216 F. Supp. 854, 856 (E.D. Ark. 1963). Third, unlike an implicit denial, a communication from the IRS that is either unresponsive to the precise claim at issue, *Milbank v. Duggan*, 54 F. Supp. 555, 556 (S.D.N.Y. 1944), inconclusive, *Tidewater, Inc. v. United States*, 2007 WL 3046167, at *3 (E.D. La. Oct. 17, 2007), or ambiguous, *Block-Southland Sportswear Co. v. United States*, 1972 WL 455, at *2-3 (E.D.N.C. Nov. 24, 1972), cannot be construed as a denial. Indeed, such a communication could memorialize the parties' understanding that the IRS is withholding a decision, contingent on the outcome of pending litigation. *Milbank*, 54 F. Supp. at 557. Finally, the statute does not require a claimant to simply "mark time" and endure "unnecessary delay,"

19

particularly on a refund decision that is "vital to the orderly conduct of its business." *Register*, 189 F. Supp. at 631.

Applying these principles, the court concludes that the IRS never rendered a decision on the plaintiff's refund claim. The first letter the IRS sent to the plaintiff clearly communicated that it had made no decision, and would have to investigate further. *See* Cohen Summ. J. Decl., Ex. D. (stating that "[w]e haven't resolved this matter . . . . [w]e will contact you again . . . . you don't need to do anything further"). The second letter is more laconic, but no less inconclusive. *See* Cohen Opp'n at 2 (advising that "[w]e are unable to process your claim . . . . [as] [t]he tax is currently a subject in litigation[;] . . . additional information will be provided to you as it is received"). The letter does not advise the plaintiff of his right to administratively appeal or sue. *Cf. Register*, 189 F. Supp. at 628. It does not inform him that the IRS might reconsider its decision at a later date. *Cf. id.* It does not, *sub silentio*, implicitly deny the plaintiff's claim. *Cf. Stephens*, 216 F. Supp. at 856. To the contrary, reading the letter in the context of the pending tax litigation and Notice 2005-79, the most plausible interpretation is precisely the one that the defendant suggests: that the IRS was halting all decisions to wait for further rulings clarifying their merits. *See Milbank*, 54 F. Supp. at 557; *see also Western Intern. Hotels Co. v. United States*, 399 F.2d 209, 213 (Ct. Cl. 1968) (concluding that the IRS's statement that refund claim had "been given full consideration" did not constitute a disallowance or allowance because it "fail[ed] to indicate the determination of that consideration"). This is precisely the purpose of the six-month period. *E.g.*, *Sorenson*, 752 F.2d at 1439. Allowing the IRS to take time to consider claims in an intelligent, informed manner in no way imposes an "unnecessary delay" on a claimant's march to the courthouse, *Register*, 189 F. Supp. at 631, especially when the amount

20

in dispute is of such a trifling sum individually, *see* Cohen Second Am. Compl. ¶ 9 (claiming

$54.84 in aggregate refund over four-year period).

The plaintiff emphasizes Congress's choice of the word "decision" in the waiting period

clause and "disallowance" in the statute of limitations clause to argue for a liberal interpretation

of the former. In the plaintiff's favor, the Court has often said that "every clause and word of a

statute should, if possible, be given effect." *Chickasaw Nation v. United States*, 534 U.S. 84, 93

(2001) (internal quotations omitted). But a court will regard a word as surplusage only if a

reasonable construction which will give it some force and meaning is impossible. *Lamie v. U.S.*

*Trustee*, 540 U.S. 526, 536 (2004) (explaining that "[w]here there are two ways to read the text . .

. applying the rule against surplusage is, absent other indications, inappropriate"). Moreover, the

canon requiring a court to give effect to each word is sometimes offset by the canon that permits

a court to reject words as surplusage if "inadvertently inserted or if repugnant to the rest of the

statute." *Chickasaw Nation*, 534 U.S. at 93.

The court finds no difficulty in reconciling its interpretation with Congress's diction. The

selection of the word "decision" instead of "disallowance" could reflect the different focuses on

the clauses. The waiting period (and use of the word "decision") focuses on the IRS's decision-

making process; here, the IRS is the actor, given a breathing period to try to resolve meritorious

claims. The statute of limitations (and use of the word "disallowance") focuses on the claimant;

here, the civil plaintiff is the actor, given notice of his actionable claim and a deadline for filing.

Significantly, the subsequent clause, 26 U.S.C. § 6532(a)(4), provides that "[a]ny consideration,

reconsideration, or action by the Secretary . . . following the mailing of a notice . . . of

disallowance shall not operate to extend the [statute of limitations]." Here one sees the

21

plaintiff's argument backfire – for if it is true (as the plaintiff maintains) that Congress could have used the term "disallowance" instead of "decision" had it meant to narrow the term, then it is equally true that it could have used the term "consider" instead of "decision" to be even more explicit. It is not unreasonable, then, to conclude that Congress used the word "decision" rather than "disallowance" in anticipation that the IRS would take further "consideration, reconsideration, or action" on claims to which it had already responded. Section 6532(a)(4) clarifies that this would not extend the statute of limitations, but it would trigger the lapse of the waiting period. *Compare* 26 U.S.C. § 6532(a)(4) (stating that prospect of further action does not extend statute of limitations) *with Register*, 189 F. Supp. at 628 (stating that prospect of further action does terminate waiting period). In any event, the existence of an ambiguity only strengthens the defendant's case, as a waiver of sovereign immunity must be interpreted narrowly such that, when in doubt, the government's consent to suit will not be assumed. *United States v. Williams*, 514 U.S. 527, 531 (1995).

As a last resort, the plaintiff argues that, even if he prematurely added his refund claim, the court had independent subject-matter jurisdiction over his suit for injunctive relief until July 26, 2006 when the court declared the injunction claim moot. Cohen Pl.'s Opp'n at 13. If this is so, the plaintiff reasons, the only effect of categorizing his refund amendment as premature is that the effective date of the amendment is postponed to May 18, 2006. *Id.* The defendant points out that the court never decided whether it had jurisdiction over the injunction count, and, in fact, a motion to dismiss on that basis was pending when the appeals courts decisions mooted the question. Cohen Def.'s Reply at 10.

The court agrees with the defendant that the plaintiff cannot piggy back his untimely

refund claim on his defunct injunction claim.  By agreement of the parties, on July 26, 2006, the

court dismissed as moot the defendant's motion to dismiss the plaintiff's claim for injunctive and

declaratory relief.  Order (July 26, 2006).  The court had no occasion to rule on the question of

whether it possessed subject-matter jurisdiction over the injunction claim.  *See* FED. PRAC. &

PROC. § 3533.2, at 238-39 (observing that individual issues may be mooted by a defendant's

voluntary compliance).  The plaintiff bears the burden of proving by a preponderance of evidence

that jurisdiction exists.  *Lujan*, 504 U.S. at 561.  Here, he attempts to discharge that burden by

urging the court to resolve an imminent question of jurisdiction by resolving a moot question of

jurisdiction.  But, federal courts cannot decide moot issues that the parties seek to have resolved

for their own ancillary purposes.  *Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120, 120

(1985).  It is true that "[w]here one of the several issues presented becomes moot, the remaining

live issues supply the constitutional requirement of a case or controversy."  *Powell v.*

*McCormack*, 395 U.S. 486, 497 (1969); *Envtl. Defense Fund, Inc. v. Costle*, 636 F.2d 1229, 1250

(D.C. Cir. 1980).  But, the remaining live issues must be capable of judicial adjudication on their

independent merits.  *Powell*, 395 U.S. at 499 (explaining that "where one claim has become moot

and the pleadings are insufficient to determine whether the plaintiff is entitled to another remedy,

the action should be dismissed as moot").  The court is not the Worm Ouroboros, able to move

forward by swallowing its own tail.  The plaintiff's refund claim, therefore, cannot survive.

### D.  The Court Lacks Subject-Matter Jurisdiction over the Following Claims

#### 1.  The Court Lacks Subject-Matter Jurisdiction over the Gurrola Plaintiffs' Uniformity Clause Claim

The Gurrola plaintiffs' complaint also alleges that the IRS violated the Uniform Excise

Tax Clause of the U.S. Constitution, which provides:

23

> The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties, Imposts and excises shall be uniform throughout the United States.

U.S. CONST., art. I, § 8, cl. 1.  They claim that the defendant did not collect the telephone excise tax in a uniform manner, alleging that other taxpayers had not been required to pay the tax since as far back as 2000.  Gurrola Pls.' Opp'n at 15.  The defendant explains that the taxpayers to which the plaintiffs refer were in fact corporations who sought and received final judgments that absolved them of tax liability, then submitted timely refund claims for the year 2000 and forward – actions the instant plaintiffs never took.  Gurrola Def.'s Opp'n at 9.  But even this is irrelevant, the defendant argues, as the court cannot entertain the Uniformity Clause claim in the first place because it is not within the purview of the predicate jurisdiction-conferring statute, the Tucker Act.  Gurrola Def.'s Mot. to Dismiss at 24.

Jurisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.  *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).  The plaintiff also must demonstrate that the source of substantive law "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216 (1983), or, in fewer words, that the source is "money-mandating."  To determine whether a provision is money-mandating, "the court should entertain and decide the jurisdictional and merits test in a single step in which the trial court determines both the question of whether the provision provides the predicate for its jurisdiction, and lays to rest the question of whether the statute on its merits provides a money-mandating remedy." *Wopsock v. Natchees*, 454 F.3d 1327, 1330-32 (Fed. Cir. 2006).  "If the court's conclusion is that the source as alleged and pleaded is not

24

money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule

12(b)(1) dismissal – the absence of a money-mandating source being fatal to the court's

jurisdiction under the Tucker Act." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir.

2005).

        In this case, the complaint alleges that the Uniformity Clause mandates the payment of

money for the allegedly *ultra vires* and nonuniform enforcement of 26 U.S.C. § 4251. Gurrola

First Am. Compl. ¶¶ 95-98. But the Uniformity Clause is a limitation on legislative, not

executive, action. *See United States v. Ptasynski*, 462 U.S. 74, 80 (1983) (holding that "[t]he

Uniformity Clause conditions Congress' power to impose indirect taxes"). The issue before the

court is, therefore, whether the Uniformity Clause, "as alleged and pleaded," is

money-mandating. *See Fisher*, 402 F.3d at 1173 (instructing that "[i]f the court's conclusion is

that the source as alleged and pleaded is not money-mandating, the court shall so declare, and

shall dismiss the cause for lack of jurisdiction"). The complaint alleges that the IRS's *ultra vires*

and nonuniform collection of the tax proscribed in § 4251 violates the Uniformity Clause. But

the complaint does not allege or plead that Congress violated the Uniformity Clause. Nor does

the plaintiffs' brief even defend the proposition that a Uniformity-Clause-violation claim may be

predicated on executive rather than congressional action. Gurrola Pls.' Opp'n at 15-16.

Accordingly, the court cannot conclude that the Uniformity Clause is money-mandating as

alleged and pled in this case. Therefore, the court does not have jurisdiction over the plaintiffs'

Uniformity Clause claim.

### 2. The Court Lacks Subject-Matter Jurisdiction over the Plaintiffs' Illegal Exaction and Unjust Enrichment Claims

        The defendant proposes that the plaintiffs are mistaken in believing that they can

characterize the IRS's collection of the excise tax as an illegal exaction and/or unjust enrichment claim under the Tucker Act based on a quasi-contract theory of recovery.[5]  Gurrola Def.'s Reply at 11.  The plaintiffs' sole recourse, the defendant maintains, is a timely refund claim, the prerequisite to recovery "entrenched in Federal tax law [to] serve purposes Congress deems important."  *Id.* at 12 (quoting *West Pub'g Co. Employees Preferred Stock Ass'n v. United States*, 198 Ct. Cl. 668, 673-74 (1972)).  The defendant refers the court to the case *Shelter Island & Greenport Ferry Co. v. United States*, in which the court allowed a plaintiff who had continued paying a tax for years after it was repealed to proceed under an illegal exaction claim rather than the tax refund statute (and its correspondingly shorter statute of limitations).[6]  246 F. Supp. 488, 494 (E.D.N.Y. 1965).  The defendant characterizes *Shelter Island* as superannuated by subsequent cases limiting its holding.  Gurrola Def.'s Reply at 11.

In fact, *Shelter Island* need not be disregarded as stale precedent, because that case itself explicitly distinguishes the circumstances at issue here.  There, the court explained: "plaintiff's claim is really one to recover a payment made because of plaintiff's erroneous belief . . . about

---

[5]    The Gurrola plaintiffs seem to argue that the IRS's collection of the tax gives rise to an unjust enrichment or illegal exaction claim under a quasi-contract theory of recovery.  Gurrola Pls.' Opp'n at 18.  The Sloan plaintiffs embrace this notion – which the court repudiates in the proceeding text – but also argue that Notice 2006-50 gives rise to similar claims by creating an implied-in-fact contract.  Sloan Pls.' Opp'n at 22.  For the Sloan plaintiffs to maintain that they have a right of recovery on a contract that they fundamentally renounce, however, offends reason.  While Notice 2006-50 does possibly constitute an offer of sorts by the IRS, the plaintiffs have not taken any steps to indicate acceptance of it; therefore, it hardly meets the elements of an executed implied contract.  *See Rinaldi v. United States*, 30 Fed. Cl. 164, 167 (1993) (enumerating elements as "mutuality of intent, unambiguous offer and acceptance, consideration, and actual or implied authority on the part of the IRS to bind the government").

[6]    The plaintiffs also refer the court to *United States v. State Nat'l Bank*, 96 U.S. 30, 35-36 (1877), a case cited by the *Shelter Island* court as a basis for its holding.  But the Supreme Court later abrogated *State National*.  *See United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28, 31-32 (1915) (characterizing claims for money wrongfully exacted as taxes as properly sounding under internal revenue laws).

the continued existence of the obligation to pay the tax, a mistake on a point of fact." *Shelter Island*, 246 F. Supp. at 493.  Significantly, "[t]he Government at no time after [the tax's repeal] claimed that a tax was due . . . , and it retained the money only because it too mistook the nature of the payment."  *Id.*  The words could not be more apposite had just this court formulated them for just this case:

> It is simply exact to say that the payments had *nothing* to do with taxes or the policies that require that the revenues and claims about them be quickly determined. Here however were revenues and no possibly facts or any over her interpretation *or application of the revenue laws*.  There was only *gross mistake* . . . . It seems, therefore, that the general right to relief does exist in the narrow class of case in which there is no intimation of a Government belief, even a mistaken belief, that it was entitled to the funds.

*Id.* at 494 (emphasis added).  And, as if this were not warning enough, the sea change of superceding law barraging *Shelter Island* should have alerted the plaintiffs to the impossibility of seeking any refuge there.  *See, e.g.*, *Rinaldi v. United States*, 30 Fed. Cl. 164, 168 (1993) (describing as error *Shelter Island's* assumption that jurisdiction under Tucker Act extended beyond implied-in-fact contracts to implied-in-law contracts); *Sea Products, Inc. v. United States*, 578 F. Supp. 1485, (D. Wash. 1983) (characterizing *Shelter Island* as "clearly an aberration [which] should be limited to its facts").  Thus, the plaintiffs' use of *Shelter Island* to buttress their illegal exaction claim betrays a blithe ignorance of the case's significance, suggesting either reckless indifference to the integrity of the law or cavalier disdain for the court's own powers of reasoning.  The court, without hesitation, dismisses the Gurrola plaintiffs' illegal exaction (and corollary unjust enrichment) claims.

### 3. The Court Lacks Subject-Matter Jurisdiction over the Plaintiffs' Injunctive and Declaratory Claims Regarding the Collection of the Excise Tax Because they are Moot

As per the court's discussion, *infra*, Plaintiff Cohen's claims for declaratory and injunctive relief regarding the collection of the excise tax were declared, by consent of the

parties, moot nearly two years ago. Order (July 26, 2006). Likewise, the Gurrola parties agree

that the declaratory and injunctive claims are mooted by the issuance of Notice 2006-50. Gurrola

Def.'s Mot. to Dismiss at 9; Gurrola Pls.' Opp'n at 5. And while the Sloan defendant directly

attacks the injunctive and declaratory claims by portraying them as incompatible with the Anti-

Injunction Act and the Declaratory Judgment Act, Sloan Def. Mot. to Dismiss at 18-23, the

issuance of Notice 2006-50 moot this question as well. *See* Notice 2006-50 (averring that the

IRS will no longer continue to enforce or collect the long-distance telephone excise tax). The

injunctive and declaratory claims regarding the collection and enforcement of the excise tax are,

therefore, dismissed.

### E.  The Plaintiffs' Following Causes of Action Fail to State a Claim

#### 1.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v.

Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his

prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or

"plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134,

136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

### 2. The Gurrola Plaintiffs' Complaint Fails to State a Takings Clause Claim

The defendant argues that the Gurrola plaintiffs' Fifth Amendment Takings Clause claim has no merit. The defendant first observes that sovereign immunity bars suit for a violation of the U.S. Constitution. Gurrola Def.'s Mot. to Dismiss at 22. It then proceeds to touch upon the substance of the claim, citing precedent to the effect that the collection of taxes does not violate the Fifth Amendment "unless the taxation is so arbitrary [and capricious] as to . . . [be] a confiscation of property." *Id.* (quoting *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 24-25

29

(1916)).  The government's collection of the excise tax, the defendant concedes, may have been

mistaken, but it represented an exercise of the taxation power, not an "arbitrary and capricious"

confiscation of property.  *Id.*

The plaintiffs rebut that the court may entertain their Takings claim under 28 U.S.C. §

1346(a)(2) ("the Little Tucker Act"), which confers jurisdiction for claims under $10,000

founded upon federal law.  Gurrola Pls.' Opp'n at 5.  In addition, the plaintiffs argue that their

complaint sufficiently alleges that the government's collection of the excise tax did constitute

"arbitrary and capricious" action because the government: (1) continued to collect the tax after

acknowledging in 1979 that it was taxing services that did not meet the statutory requirements,

i.e., time and distance traveled; (2) collected the tax in contravention of clear and unambiguous

language; (3) refused to acquiesce to the opinions of five appeals courts; (4) permitted private

entities to arbitrarily decide whether to continue collecting the tax for an arbitrary length of time,

even after conceding the illegality of the tax; and (5) issued a Notice "without any period for

public comment, fact-finding, or evidence."  *Id.* at 13-14.

The defendant replies in detail.  First, it points out that it was not until the late 1990s that

the telephone companies changed the way they computed long-distance tolls, thereby placing the

validity of the excise tax in doubt.  Gurrola Def.'s Reply at 1.  Moreover, it was not until 2005

that any appeals court declared the tax invalid.  *Id.* at 2.  Pursuing an aggressive litigation

strategy by seeking multiple appellate decisions is not an unreasonable practice, the government

maintains.  *Id.*  Nor was Notice 2006-50 "arbitrary and capricious," as it merely created a two-

month phase-out of the tax.  *Id.* at 3.  The telecommunication companies had collected the tax for

many decades, and "a short phase-out period was necessary to enable them to reconfigure their

30

billing programs to conform to the new legal regiment." *Id.* Furthermore, customers prejudiced

by the temporary continuance of the tax could recoup their losses through the refund procedure

established by Notice 2006-50, which established safe harbor refund amounts of $30 to $60. *Id.*

In any event, the defendant proceeds, the "arbitrary and capricious" analysis has not been

applied to overturn a tax statute in 90 years. *Id.* at 5. In so much as the excise tax is concerned,

no court of appeals reviewing its validity ever characterized it as a taking; rather, they uniformly

analyzed it as a "tax." *Id.* at 6.

The Takings Clause is indeed a poor fit for the plaintiffs' grievance. In the first place,

courts "generally reject the argument that taxing provisions can be classified as 'taking of

property.'" *Murphy v. IRS*, 362 F. Supp. 2d 206, 216 (D.D.C. 2005). Taxation does indeed

"take" income, "but this is not the sense in which the constitution uses 'takings.'" *Coleman v.

Comm'r*, 791 F.2d 68, 70 (7th Cir. 1986). Action represented by the government as a tax will be

construed as a takings-in-disguise only when the tax is so arbitrary that no other conclusion is

plausible. *U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1384 (Fed. Cir. 2002). It has been

said that a tax statute must have "an ascertainable purpose and represent a rational means to

achieve that purpose." *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 547 (1977) (White, J.,

dissenting on other grounds). The plaintiffs do not challenge the excise tax statute itself but,

rather, the IRS's application of it. But their objections reveal only their own policy

disagreements with the agency, not arbitrary action amounting to an attempt to "achieve through

special taxes what the Takings Clause of the Fifth Amendment forbids if done directly."

*Coleman*, 791 F.2d at 70. The plaintiffs cite no law for the propositions that the IRS may not

persevere in its defense of its legal positions or, once it chooses to no longer defend that position

31

through legally available means, institute a transitional phase-out of the tax.  These may be

unwise, stubborn, or inconsiderate positions, but because rational explanations support them, one

can hardly characterize them as exclusively and definitively arbitrary.  *Cf. Brushaber*, 240 U.S. at

25-26 (holding that progressive tax statute was not arbitrary and capricious even though it treated

high-income earners differently than others); *Nationsbank of Texas, N.A. v. United States*, 269

F.3d 1332, 1336 (Fed. Cir. 2001) (holding that a retroactive tax that reached back one month did

not constitute a takings); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust

for S. Cal.*, 508 U.S. 602, 641 (1993) (recognizing that where "due process arguments are

unavailing, it would be surprising indeed to discover the challenged statute nonetheless violat[ed]

the takings clause") (internal quotations omitted).

   The plaintiffs urge the court to defer the question until after discovery, arguing that

because the nature of the IRS's action involves a mixed question of fact and law, to resolve it

beforehand would be premature.  Gurrola Pls.' Opp'n at 9-10.  But the court's conclusion

requires no resolution of a disputed factual question, because the deficiency lies on the face of

the complaint.  *See Brushaber*, 240 U.S. at 25-26 (affirming motion to dismiss for failure to state

a claim after concluding that tax was not a taking).  Indeed, whether the IRS's action was

"arbitrary and capricious" is a question of law.[7]  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d

1077, 1083 (D.C. Cir. 2001) (reiterating that "the question of whether [an] agency acted in an

arbitrary and capricious manner is a legal one which the district court can resolve . . . regardless

---

[7]   Even adopting, *arguendo*, the plaintiffs' approach, the complaint still fails to set forth "facts
consistent with the allegations." *Twombly*, 127 S. Ct. at 1967.  The facts alleged recounting the
IRS's actions are so routine and unremarkable that they simply do not "possess enough heft to
'sho[w] that the pleader is entitled to relief.'" *Id.* at 1964.  In any event, the court need not
accept as true legal conclusions – e.g., that the IRS's behavior was "arbitrary and capricious"–
cast as factual allegations.  *Warren*, 353 F.3d at 40; *Browning*, 292 F.3d at 242.

of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment"). The plaintiffs' takings claim is, therefore, dismissed.

### 3. The Sloan Plaintiffs' Amended Complaint Fails to State a Mandamus Claim

The Sloan plaintiffs bring a claim for a writ of mandamus requiring the defendant to: (a) comply with appeals court decisions; (b) reinstate the administrative refund process; (c) process pending refund applications; and (d) develop and implement a "Court-supervised program that will effect a refund to all persons who have paid the Communications Excise Tax, at no cost to such taxpayers and without the necessity of submission of a refund application." Sloan First Am. Compl. ¶¶ 127. Due to the issuance of Notice 2006-50, the first three requests are moot. The last request, the defendant maintains, is beyond the court's ability to grant. Sloan Def.'s Mot. to Dismiss at 25. The defendant argues that the plaintiffs cannot demonstrate the prerequisite to mandamus relief, to wit: (1) a clear right to the relief sought; (2) a clear and peremptory duty of the government to act; and (3) no other adequate remedy. *Id.* (citing *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)). The implementation of a refund mechanism to the plaintiffs' specifications is not, the defendant proposes, a "ministerial duty that was clearly set out in the Constitution or by statute and that was devoid of the exercise of judgment or discretion." *Id.* at 26. Moreover, they have a right to recover their losses by filing a refund claim and, if they are denied full recompense, a civil suit. *Id.*

The plaintiffs do not respond to these points in their opposition. The court would be within its discretion to treat the point as conceded, Local Civil Rule 7(b), but it will spare a few keystrokes to dispatch it on substance. Mandamus is a drastic remedy, reserved for extraordinary circumstances. *Allied Chem. Corp. v. Daiflon, Inc.*, 499 U.S. 33, 34-35 (1980). Accordingly, the

33

party requesting mandamus bears the burden of showing that "its right to issuance of the writ is clear and indisputable." *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (internal quotations omitted).  A court has no authority to order a government official to perform a discretionary duty. *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996).  In their amended complaint, the plaintiffs allege that individual refund claims would not fully compensate those taxpayers who are unlikely to follow Notice 2006-50's refund procedures, such as filing an income tax return.  Sloan Pls.' Am. Compl. ¶ 126.  Even if this is true, it is of no consequence because every taxpayer, considered individually, has a remedy to recoup their loss. *See Fornaro*, 416 F.3d at 69 (pointing to fact that each individual plaintiff and putative class member could file his own claim for benefits in denial of mandamus relief).  The D.C. Circuit has plainly stated: "however unsatisfactory [an agency's] approach may appear to the plaintiffs, the fact that a remedial scheme chosen by Congress vindicates rights less efficiently than a collective action does not render [those] remedies inadequate for purposes of mandamus." *Id.* Congress has provided that the process governing tax refunds is to be fashioned by regulations established by the Secretary of the Treasury.  26 U.S.C. § 7422(a).  This amounts to a delegation of a certain amount of discretion from Congress to the IRS to delineate the boundaries of the administrative refund mechanism, resulting in a state of affairs inimical to court intervention *via* the writ of mandamus.  *Swan v. Clinton*, 100 F.3d at 977.  For these reasons, the court dismisses the Sloan plaintiffs' claim for a writ of mandamus.

### 4. The Plaintiffs' Complaints Fail to State an APA Claim

On August 10, 2007, the court denied the defendant's motion to dismiss plaintiff Cohen's APA claim, rejecting the arguments that the plaintiff lacked standing, that the government had

not waived sovereign immunity, that the promulgation of Notice 2006-50 was committed to agency discretion, and that Notice 2006-50 did not constitute final agency action.  Mem. Op. (Aug. 10, 2007).

The defendant's briefs in the Gurrola and Sloan cases raise distinct arguments.[8]  Meriting particular attention is the proposition that Notice 2006-50 is not subject to judicial review under the APA, because it is "merely a statement of [IRS] policy" that carries no force of law.  Def.'s Opp'n to Sloan Pls.' Second Mot. for Prelim. Inj. ("Opp'n to Inj. Mot.") at 5.  Instead, what does have force of law, the defendant argues, are the Treasury regulations requiring a refund applicant to prove the total amount owed and the legal basis for the refund.  Opp'n to Inj. Mot. at 2, 6.  As merely a statement of the IRS's policy for processing excise tax refund claims, Notice 2006-50 is exempt from the notice-and-comment procedures required of formal rule-making.  Opp'n to Inj. Mot. at 5.  It simply extends an offer to resolve outstanding claims.  Opp'n to Inj. Mot. at 6.

Moreover, the defendant observes, the IRS has no duty in the first place to process refunds – Congress has afforded it an *opportunity* to do so, but only for the agency's own convenience.  Opp'n to Inj. Mot. at 6 n.2.  Congress has addressed the taxpayers' welfare by making available the remedy of a civil suit should the IRS deny a claim or fail to process one after six months.  This represents Congress's preferred scheme.  Opp'n to Inj. Mot. at 7.  As a final point, the defendant notes that billions of taxes go unclaimed every year, but the IRS has no

---

[8]     In its motions to dismiss, the defendant argues that an individual refund suit is an adequate remedy at law, that suit under the APA is prohibited for claims for money damages, and that the Anti-Injunction Act and the Declaratory Judgment Act preclude the APA's waiver of sovereign immunity.  Def.'s Mot. to Dismiss Sloan Pls.' Am. Compl. ("Sloan Mot. to Dismiss") at 27-29; Def.'s Mot. to Dismiss Gurrola Pls.' Am. Compl. (Gurrola Mot. to Dismiss") at 24.  The court does not reach these questions, however, as it finds that the dispositive question – whether Notice 2006-50 carries the force of law – is (unaccountably) best articulated in the briefing on the plaintiffs' second motion for a preliminary injunction.

duty, in light thereof, to reform its refund mechanisms. Def.'s Reply to Sloan Pls.' Opp'n to Mot. to Dismiss ("Reply to Mot. to Dismiss") at 17. The design of a remedial scheme for administering the refund of overpaid taxes requires the expertise of an executive agency and the authority of Congress – it should not be entrusted to judicial policymaking. Opp'n to Inj. Mot. at 13.

The plaintiffs vigorously contest the defendant's interpretation. The IRS Manual, the plaintiffs point out, defines a "notice" as "a public pronouncement by the Service that may contain guidance that involves *substantive* interpretations of the Internal Revenue Code or other provisions of the law." Sloan Pls.' Reply to Def.'s Opp'n to Second Mot. for Prelim. Inj. ("Pls.' Reply to Inj. Mot.") at 10-11 (emphasis added by plaintiffs). The plaintiffs then cite to a bevy of cases purportedly holding that agencies cannot evade review by styling law-bound rules as discretionary policy. *Id.* at 12.

The plaintiffs make a valiant effort to protect their APA claim, but their defense is futile, as it proceeds from a crucially mistaken premise. To bring an APA claim, a plaintiff must qualify as a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. When agency decisions do not appear to relate to rights accorded to individuals, but instead simply function as internal operating instructions, they are deemed to be solely for in-house agency use and are not judicially enforceable against the agency. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981); *First Alab. Bank, N.A. v. United States*, 981 F. 2d 1226, 1230 n.5 (11th Cir.1993); *In re Romagnolo*, 269 B.R. 63, (M.D. Fla. 2001). Thus, guidelines adopted solely for the internal administration of the IRS rather than for protection of the taxpayer, do not confer any rights upon

the taxpayer. *Reph v. United States*, 615 F. Supp. 1236, 1243 (D. Ohio 1985); *United States v. Will*, 671 F. 2d 963, 967 (6th Cir. 1982) (citing *United States v. Arthur Andersen & Co.*, 598 F. 2d 610 (2d Cir. 1979)); *Cleveland Trust Co. v. United States*, 421 F. 2d 475, 481-82 (6th Cir. 1970).

The court is convinced that Notice 2006-50 serves such an internal, administrative purpose. Notice 2006-50 articulates the IRS's internal policy for processing excise tax refund claims. Congress authorized administrative refund claims to afford the IRS an opportunity to review refund claims in the first instance and (where appropriate) grant them in full, thereby avoiding burdensome and interminable civil litigation. *See, e.g.*, 26 C.F.R. § 301.6402-4 (conferring power on IRS district director or director of regional service center to determine that the payments by the taxpayer are in excess of the amount of tax shown on the return and make credit or refund of such overpayment without awaiting examination of the completed tax return and without awaiting filing of a claim for refund); *K.O. Lee Co. v. United States*, 279 F. Supp. 146, (D.S.D. 1968) (acknowledging that within statutory period of limitations and in absence of a binding settlement, Commissioner of Internal Revenue has authority to re-examine and redetermine taxpayer's tax liability); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 747 (1974) (affirming "the powerful governmental interests in protecting the administration of the tax system from premature judicial interference . . . [and] the opportunities for review that are available"). Undoubtedly, the refund claim procedure is of great value to both the taxpayer and the government in framing disputed issues and in avoiding the expense and delay of litigation. But this does not alter the court's conclusion (explained below) that Notice 2006-50 is a statement of internal IRS policy without the force and effect of law. *Luhring v. Glotzbach*, 304

F.2d 560, 565 (4th Cir. 1962).

In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The central distinction among agency regulations found in the APA is that between "substantive rules" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. 5 U.S.C. §§ 553(b), (d). A substantive or "legislative-type" rule "does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy, " it "grant[s] rights, impose[s] obligations, or produce[s] other significant effects on private interests." *Nat'l Family Planning v. Sullivan*, 979 F.2d 227, 238 (D.C. Cir. 1992); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979). Such rules are "binding" and have the "force of law." *Id.* In contrast, "interpretive rules" and "general statements of policy" do not have the force and effect of law. *Id.* at 302 n.31. Interpretive rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.* General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Id.* That an agency regulation is "substantive," however, does not by itself give it the "force and effect of law." *Id.* at 302. The rule must be rooted in a grant of power by the Congress and subject to limitations which that body imposes. *Id.*; *Ward v. Comm'r*, 784 F.2d 1424, 1431 (9th Cir. 1986).

Notice 2006-50 is neither a legislative-type rule nor a rule promulgated pursuant to a specific statutory grant of authority by Congress and in conformance with rule-making procedures. Notice 2006-50 reads: "This notice provides guidance regarding [excise tax refund]

requests." 2006-25 I.R.B. 1141, §1(b). Here, the plaintiffs' citation to the IRS Manual cuts

against their position. The manual provides that a notice "may contain" or "may involve"

substantive interpretations for public "guidance." *Id.* at 11. The plaintiffs highlight the word

"substantive," but the operative word is "may," an auxiliary verb indicating possibility or (more

precisely) permissive or precatory language. *See Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d

32, 64 (D.D.C. 1998) (recognizing that an agency "has significant discretion to determine

whether a provision is binding 'law' or precatory policy"). Moreover, by referring to a notice as

"guidance," the manual classifies it among other forms of policy statement, such as enforcement

guidelines. The courts have repeatedly articulated that policy statements such as notices that are

found in manuals and enforcement guidelines do not carry the weight of law. *See, e.g.*,

*Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (stating that "[i]nterpretations such as

those in . . . policy statements, agency manuals, and enforcement guidelines . . . lack the force of

law").

      This conclusion is reinforced by the fact that Notice 2006-50 was not promulgated

according to the notice-and-comment procedures that typically accompany congressional

delegations of authority and was not codified in the Federal Register. *See Molycorp, Inc. v.

Envtl. Prot. Agency*, 197 F.3d 543, 545 (D.C. Cir. 1999) (considering whether agency action was

published in the Federal Register or the Code of Federal Regulations). Rather, it was published

in the *Internal Revenue Bulletin*, which, according to the IRS Procedural Rules, includes

"information that, although not necessarily affecting the rights and duties of the public, should be

a matter of public knowledge." Treas. Reg. § 601.601(b)(2)(b),

      Moving along to the crux of the matter, Notice 2006-50 informs the reader: "The

Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this notice." *Id.*, §5(a)(1). "Taxpayers may request a credit or refund of tax . . . only on their 2006 Federal income tax returns." *Id.*, §5(a)(2). "[A] request for this credit or refund on any other form . . . will not be processed by the Service." *Id.*

Clearly, this is an agency policy statement. By its own words, the notice indicates that it is providing "guidance" on claims procedures, not legislating the underlying rights of citizens to those claims. *Ward*, 784 F. 2d at 1431; *see Am. Hosp. Ass'n v. Bowen*, 834 F. 2d 1037, 1047 (D.C. Cir. 1987) (recognizing that "an agency's characterization of its own action, while not decisive, is a factor [to] consider"). The claim procedure, framed as an offer to automatically satisfy a refund claim if the taxpayer accedes to specific conditions, does not affect any underlying rights. *Compare Chicago & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 578 (1971) (holding that provision imposing duty on carriers and employees to exert every reasonable effort to maintain bargaining agreements was more than mere statement of policy or an exhortation and was designed to be a legal obligation) *with United States v. Walter Dunlap & Sons, Inc.*, 800 F. 2d 1232, 1238 (3d Cir. 1986) (holding that a regulation, which merely instructed agency employees how to answer inquiries from purchasers of securities on how to discharge the agency's lien, did not impose a legal duty on purchasers to issue checks in a prescribed manner). It does not set out an interpretation of the validity of any single or collective excise tax refund claims and does not impose any obligations; it merely states to the public the IRS's "current enforcement or adjudicatory approach." *Molycorp, Inc.*, 197 F. 3d at 546; *cf. Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (holding that the Bureau of Indian Affairs's

40

unpublicized eligibility criteria restricting apportionment of funds that would limit the ability of Native Americans to receive federal benefits affected their substantial individual rights).

Indeed, Notice 2006-50 is a rule designed to "serve merely as [a] guideline[] for conducting the internal affairs of the [IRS]." *Doulez v. Comm'r*, 810 F. 2d 209, 215 (D.C. Cir. 1987) (endorsing the distinction between "directory" and "mandatory" rules). Such rules do not confer procedural rights on taxpayers. *See, e.g.*, *Luhring*, 304 F.2d at 565; *United States v. Horne*, 714 F. 2d 206, 207 (1st Cir. 1983); *Reph*, 615 F. Supp. at 1243. They merely govern the internal affairs of an agency. *Romagnolo*, 269 B.R. at 63; *Schweiker*, 450 U.S. at 789. It is undisputed that the IRS's internal procedures are left to the agency's discretion and carry no force of law. *United States v. Caceres*, 440 U.S. 741, 754 (1979); *see Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970) (concluding that agency's procedural rules were promulgated for the benefit of the agency in "reach[ing] an informed and equitable decision").

The notice does declare that the IRS will not "process" any claims deviating from the form provided therein. But this is simply a natural consequence of a taxpayer's rejection of the IRS's offer. And it does not mean that a deviant form could not substantially comply with the duly promulgated regulations governing the form of refund claims. *See generally* Mem. Op. (Aug. 10, 2006) (discussing the prerequisites for an informal claim to be recognized by the courts for the purpose of administrative exhaustion). In fact, it is these regulations that were issued pursuant to Congress's delegation of authority on the fundamental form of a claim request required for purposes of administrative exhaustion. 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402-2. They, rather than Notice 2006-50, correspond to Congress's delegation of rule-making authority.

41

The plaintiffs argue that the court should recognize that Notice 2006-50 has indirect legal effects, e.g., individuals who choose not to comply with Notice 2006-50 will not have their claims processed by the IRS. But just because an agency action might have legal implications does not mean that its carries the force of law. *See Bowen*, 834 F.2d at 1056 (concluding that agency's use of merely hortatory language in policy statement to focus enforcement discretion, forbearance from codifying the policy, and assurance that it would not sanction any organization noncompliant with its policy mitigated any residual legal effects that policy might engender). If that were so, then the APA would, rather than protecting individual rights by ensuring a modicum of separation of powers through judicial review, provide the judiciary with a license to review every Executive decision, no matter how trivial or discretionary. *See* George B. Shepherd, *Fierce Compromise: The Administrative Procedure Act Emerges from New Deal Politics*, 90 Nw. U. L. Rev. 1557, 1558 (1996) (describing the APA as "the bill of rights" for the modern regulatory state).

Accordingly, an APA claim cannot rest on just any agency action; it must be predicated on a "legal wrong . . . within the meaning of a relevant statute." 5 U.S.C. § 702. Here, the relevant statute is 26 U.S.C. § 7422. Nothing therein suggests that it confers a right to taxpayers to judicial review of the IRS's claims review process. Congress decided to provide two paths that a taxpayer may follow for the purpose of obtaining a judicial determination of his tax liability: (1) petition the Tax Court for redetermination of a tax deficiency asserted by the Commissioner; or (2) pay the deficiency, file a claim for refund or credit with the Commissioner, and then (if the claim is unsuccessful) file a tax refund suit against the United States in either the district court or the Claims Court. *See* 26 U.S.C. §§ 6213(a) (1994) (outlining path one); 26

42

U.S.C. §§ 6532(a), 7422(a), 28 U.S.C. § 1346(a)(1) (1994) (outlining path two). Nothing in the statutes or case law leads the court to believe that Congress contemplated a third path: backdoor judicial review of the IRS's claims consideration procedure.[9] Congress took particular care to develop a tax refund mechanism that balanced taxpayer rights of recovery against agency administrative discretion and judicial oversight. The Supreme Court itself has commented on the inadvisability of courts tinkering with this balance, as such judicial policymaking could lead to unintended, even perverse consequences. *See Schweiker*, 450 U.S. at 790 n.5 (worrying that if the courts were to "take away from the Executive Department the primary responsibility for fashioning the appropriate remedy for the violation of its regulations . . . the result might well be fewer and less protective regulations"). The court, therefore, dismisses the plaintiffs' APA claims.

Because these are consolidated actions, and because these new legal arguments undermine the court's subject-matter jurisdiction over the Cohen plaintiff's APA claim, the court dismisses the Cohen plaintiff's APA claim *sua sponte*.[10]

---

[9]    The plaintiffs submit a catalogue of cases purportedly authorizing judicial review of the IRS's informal policies, but the court has found them uniformly inapposite. *See O'Shaughnessy v. Comm'r*, 332 F. 3d 1125, 1130-31 (8th Cir. 2003) (reviewing IRS revenue ruling that was interpretation of statute); *Constantino v. TRW, Inc.*, 13 F. 3d 969, 981 (6th Cir. 1994) (same); *Threlkeld v. Comm'r*, 848 F. 2d 81, 84 (6th Cir. 1988) (same); *Sugar Cane Growers Coop. v. Veneman*, 289 F. 3d 89, 94-95 (D.C. Cir. 2004) (premising holding – that plaintiff has standing to challenge procedural violation even without proof that substantive outcome (had procedure been followed) would have favored him – on assumption that plaintiff has a right to the procedural protection in the first instance).

[10]   A court, of course, has the authority (and even the obligation) to assure itself of subject-matter jurisdiction, whether on the motions of the parties or *sua sponte*. *Doe by Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). Here, the court is not, strictly speaking, modifying its August 10, 2007 decision on the specific issues briefed in the defendant's motion to dismiss the Cohen plaintiff's complaint. As noted, those briefs highlighted different issues. There, the focus of the parties and the court was on the issues of finality, prosecutorial discretion, and standing. To the extent that the court's reasoning there depended on the false premise that the

**IV.  CONCLUSION**

For the reasons stated herein, the court grants the defendant's motions to dismiss pending in all of the member cases, and *sua sponte* dismisses the Cohen plaintiff's APA claim.  An order consistent with this memorandum opinion is separately and contemporaneously issued this 25th day of March, 2008.

RICARDO M. URBINA
United States District Judge

---

plaintiffs have a right to review of the IRS's claims review process and that Notice 2006-50 is a substantive rule, the instant opinion supercedes it.  *See Smith v. Mallick*, 514 F.3d 48, 51 (D.C. Cir. 2008) (recognizing that federal courts "are entitled to apply the right body of law").